# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: FKF Madison Park Group Owner, LLC, <br><br> Debtor. | ) Chapter 7 <br> ) <br> ) Case No. 10-11867(KG) <br> ) <br> ) |
| In re: JMJS 23rd Street Realty Owner, LLC, <br><br> Debtor. | ) Chapter 7 <br> ) <br> ) Case No. 10-11868(KG) <br> ) <br> ) |
| In re: Madison Park Group Owner, LLC, <br><br> Debtor. | ) Chapter 7 <br> ) <br> ) Case No. 10-11869(KG) <br> ) |
| In re: Slazer Enterprises Owner, LLC, <br><br> Debtor. | ) Chapter 7 <br> ) <br> ) Case No. 10-11870(KG) <br> ) <br> ) Obj. Deadline: August 18, 2010 @ 4:00 p.m. <br> ) Hearing Date: August 25, 2010 @ 1:30 p.m. |

## MOTION TO DISMISS THE INVOLUNTARY PETITIONS FILED AGAINST THE ALLEGED DEBTORS FKF MADISON PARK GROUP, LLC, JMJS 23rd STREET REALTY OWNER, LLC, MADISON PARK GROUP LLC, AND SLAZER ENTERPRISES OWNER, LLC

FKF Madison Group Owner LLC (incorrectly named in the Involuntary Petition as "FKF Madison Park Group Owner, LLC"), JMJS 23rd Street Realty Owner LLC, Madison Park Group Owner LLC, and Slazer Enterprises Owner LLC (collectively referred to as the "One Madison TIC"), through their undersigned counsel, submits this motion for an Order dismissing the Involuntary Petitions. In support of its motion, the One Madison TIC respectfully represents as follows:

595258.1 6/29/10

## ALLEGED DEBTORS

1. The alleged debtors **FKF Madison Park Group, LLC, JMJS 23rd Street Realty Owner, LLC, Madison Park Group, LLC, and Slazer Enterprises Owner, LLC** are each Delaware Limited Liability Companies that were formed for the single purpose of acquisition, ownership, financing and development of a high rise condominium building located at 20-22 East 23rd Street, New York, New York (the "Condominium Building").

2. Each of the alleged debtors is a tenant in common developer in the Condominium Building and the sponsor of the Plan (collectively, "One Madison TIC").

3. The Condominium Building is a fifty story residential building known as the One Madison Condominium. Construction has been substantially completed. A declaration of condominium and seventeen amendments have been approved by the New York Attorney General's Office for sale of units at the One Madison Condominium. Several of the condominium units have been conveyed by the One Madison TIC. Importantly, for the purpose of this proceeding, two of the three petitioning creditors have been deeded condominium units in full satisfaction of One Madison TIC's obligations.[1] The remaining petitioning creditor is an entity affiliated with the other petitioning creditors.

## INVOLUNTARY CHAPTER 7 PETITIONS

4. On June 8, 2010, Involuntary Petitions under Chapter 7 were filed by Stephen Kraus, Mitchell Kraus, Barbara Kraus and Kraus Hi-Tech Home Automation, Inc. (by Stephen Kraus) against each of the alleged debtors, allegedly pursuant to 11 U.S.C. § 303(b) (collectively, the "Krauses"). A copy of each of the petitions is annexed as **Exhibit A**.

---

[1] The Involuntary Petition is actually signed by four purported creditors. However, two are husband and wife who purchased a unit as joint tenants in the entirety. Accordingly, they are united in interest and effectively a single purported creditor.

5. Summons to each of the alleged debtors were issued on June 9, 2010, a copy of which is annexed as **Exhibit B**.

6. The Petitions allege the following claims for each of the petitioners:

(i) Stephen Kraus, residing at 260 Park Avenue South, Apartment PH-J, New York, New York, "nature of claim-Guaranty Agreement; Contract Claims" "Amount of claim $6,457,000.00".

(ii) Mitchell Kraus, residing at 510 Park Avenue South, Apartment 9A New York, New York, "nature of claim- Contract Claim" "Amount of claim $2,100,000.00".

(iii) Barbara Kraus, residing at 510 Park Avenue South, Apartment 9A New York, New York, "nature of claim- Contract Claim" "Amount of claim $2,100,000.00".

(iv) Kraus Hi-Tech Home Automation, Inc., 33-01 Vernon Boulevard, Long Island City, New York, "nature of claim-Mechanic's Lien" "Amount of claim $957,752.42".

7. Mitchell Kraus and Barbara Kraus are husband and wife and their purported claim is a duplication of a single position.

8. While the Involuntary Petition sets forth no detail as to the nature of the petitioning creditors' claims, the business relationships of the parties was quite simple. Stephen Kraus entered into contracts for the purchase of three condominium units: 37A, 28A and 28B. While contract vendee of these units, Stephen Kraus provided financial accommodations to One Madison TIC in the form of partial pre-payments called "loans". Stephen Kraus received the deed to his units and the contracts, and financial accommodations were satisfied by his receipt of

the deeds (*see* ¶¶ 12 and 13, Shapiro Affidavit; Memorandums of Agreement – Unit 37A, 28A and 28B (attached hereto as **Exhibits E and F**) and Ratification and Amendment (attached hereto as **Exhibit G**); *see also* Guaranty dated October 28, 2009 (attached hereto as **Exhibit H**)). As will be shown below, Stephen Kraus's attorney confirmed this in open court (May 20, 2010 transcript attached hereto as **Exhibit I**).

9. Mitchell Kraus and Barbara Kraus, as husband and wife, contracted to buy Unit 23B at the Condominium, as tenants by the entirety (Purchase Agreement – Unit 23B, attached hereto as **Exhibit C**).

10. Like his brother Stephen, Mitchell provided financial accommodations to One Madison TIC in the form of partial pre-payments for his unit. Mitchell and Barbara Kraus, as tenants by the entirety, received the deed to their unit satisfying their contract and financial accommodations (*see* ¶¶ 12 and 13, Shapiro Affidavit; ¶ 6.6, Stephen Kraus Purchase Agreement – Unit 37A, attached hereto as **Exhibit D**). Once again, as will be shown below, Mitchell and Barbara Kraus's attorney confirmed this in open Court (**Exhibit I**).

11. Kraus Hi-Tech Home Automation, Inc. is a corporation owned in whole or in part by members of the Kraus family. This corporation provided subcontractor services in the construction of the Condominium Building.

12. As will be shown below, each of the petitioning creditor's claims are either fully satisfied, or are subject to a bona fide dispute making them ineligible to be petitioning creditors.

### "WE HAVE RECEIVED THE DEED"

13. Within the context of a foreclosure proceeding against One Madison TIC pending in the Supreme Court of the State of New York, County of New York (Index No. 600423/2010)

(the "Foreclosure Proceeding"), counsel for the Krauses, Barry Slotnick, Esq. confirmed to the court that his clients received the deeds for the units they purchased.

14. A brief history of the foreclosure proceeding is as follows: On November 16, 2007, SFT 1 Inc. ("SFT") loaned One Madison TIC the total sum of $238,500,000 evidenced by three (3) Notes: (i) Senior Note in the sum of $70,943,079; (ii) a Project Note in the sum of $35,025,505 and (iii) a Building Note in the sum of $132,531,416.

15. On June 24, 2009, SFT's successor in interest i-Star Tara LLC ("i-Star") entered into a Modification Agreement. On January 29, 2010, i-Star sent a "default letter" which One Madison TIC contends contained misstatements regarding non-existent defaults. Thereafter, on February 18, 2010, i-Star sent an Acceleration Notice based upon the same statement contained in the Default Notice. One Madison TIC has served an answer in the Foreclosure Proceeding and is vigorously contesting the foreclosure.

16. On February 18, 2010, i-Star filed the Foreclosure Proceeding[2], and on February 22, 2010, i-Star applied to the Court for the appointment of a receiver.

17. It is within the context of the receivership proceedings in the Foreclosure Proceeding that the Kraus's appeared by their attorney Barry Slotnick, Esq. Mr. Slotnick during two separate court proceedings has confirmed that his clients (Stephen Krause, Mitchell Krause and Barbara Krause) have received the deeds for four units at the One Madison Condominium (Tr. p. 10, line 5 and pp. 19-20, 58-59, **Exhibit I**).

18. Specifically, during the court hearing, Mr. Slotnick volunteered the following information; "Your honor, we have received the deed. We have not filed it for reasons that aren't relevant, but we have received the deed" (Tr. p. 10, line 5 , **Exhibit I**).

---

[2] Attached hereto as **Exhibit N** is a copy of Amended Complaint for Foreclosure.

19. The tax lot numbers for the four Kraus Unit Numbers were specifically carved out of the Receiver's powers "[i]ncluding 1931, 1937, 1938 and 1950." (Tr. p. 58, line 3, **Exhibit I**). Mr. Slotnick specifically requested the inclusion of the aforementioned unit numbers pertaining to the deeds that were conveyed to his client "so that there is no question which we are speaking" and the Court responded, "I am going to leave it 'received deed'..." (Tr. p. 59, line 17-21, **Exhibit I**).

20. Mr. Slotnick further recognized a "dispute" when he stated;

> Just one last thing, your Honor.
>
> Hopefully it's clear, and I believe it is clear that the receiver does not have the right or power to lease any of the units that are in dispute.

Tr. p. 89, line 15, **Exhibit I**.

21. The court thereafter referred Mr. Slotnick to the language in the Order that referenced the four units that were conveyed by deed to his clients. Tr. pp. 89-90, **Exhibit I**.

22. Mr. Slotnick again referred to the "four units that his clients bought" that the Krauses received a deed from the One Madison TIC (Tr. pp. 92-94, **Exhibit I**) and the Court agreed to include the language requested by Mr. Slotnick: "So, I have added in a line, 'Will not lease, sell or encumber such units without court approval.'"

23. In fact, the court recognized in its May 5, 2010 Order amending the powers of the Receiver in the Foreclosure Action (May 5, 2010 Order Amending Powers of Receiver, attached hereto as **Exhibit J**):

> FURTHER ORDERED, that all defendants, other than any other unit owner who had received a deed prior to Justice Eileen A. Rakower's no-sale order, dated February 22, 2010, are hereby directed to surrender possession and control of the Mortgaged Property to the said Receiver forthwith.... (p. 3, **Exhibit J**)

> AND FURTHER PROVIDED, that the Receiver shall consult with any other party who has received a deed prior to February 22, 2010 with respect to any construction, development, and/or management, use, possession or occupancy when such unit is affected, in the judgment of the Receiver, by actions contemplated by him, and will not lease, sell or encumber such units without Court approval...(p. 7, **Exhibit J**)

24. Within the receivership application, and as a result of their showing the court that they had received their deeds, the Krauses prevailed in their position that the receiver is without authority over their units.

25. Thus, under the Doctrine of Judicial Estoppel, they are now precluded from taking a position which is contrary to the position which they took in a prior proceeding.[3] The Krauses have admitted that they have received their deeds and they are bound by that admission.

26. As will be discussed further below, the receipt of the deed has acted as a merger and satisfaction of any contractual claims, and accordingly neither Stephen Kraus, nor Mr. and Mrs. Mitchell Kraus have any remaining claim against One Madison TIC. If Stephen Kraus and Mr. and Mrs. Mitchell Kraus continue to believe that they have a claim, it is wholly disputed by One Madison TIC.

27. With respect to Kraus Hi-Tech Home Automation, Inc. ("Kraus Hi-Tech"), while One Madison TIC concedes that this entity performed work at the Condominium Building, for the work performed, it was not in privity of contract with One Madison TIC. This is apparently conceded in the Involuntary Petition because Kraus Hi-Tech does not express the nature of their claim as contractual, but instead states it as "Mechanic's Lien." Any work that Kraus Hi-Tech performed was pursuant to its contract with non-proposed debtor, Slazer Enterprises, LLC and not the One Madison TIC.

---

[3] The Doctrine of Judicial Estoppel is equally applicable under both Federal Law in the Third Circuit and the Law of the State of New York. *See, G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247 (3d Cir. 2009); *Tedesco v. Tedesco*, 882 N.Y.S.2d 298 (N.Y. App. Div. 2008); *Festinger v. Edrich*, 820 N.Y.S.2d 302 (N.Y. App. Div. 2006).

28.     Accordingly, it is legally impossible for Kraus Hi-Tech to have a valid direct claim against One Madison TIC.

29.     Kraus Hi-Tech filed a Notice of Appearance in the Foreclosure Action on April 12, 2010 and has not served an answer nor a cross-claim against the One Madison TIC (attached hereto as **Exhibit K**).

30.     Moreover, when one compares the Mechanic's Lien (attached hereto as **Exhibit M**) to its contract (Krause Home Automation Contract attached hereto as **Exhibit L**), the Mechanic's Lien is clearly overstated. Indeed, the contract with non-proposed debtor, Slazer Enterprises, LLC, refers to work to be performed in 39 Units. The Mechanic's Lien appears to be filed against 55 residential units and a separate commercial unit. Many of the Units wherein work has alleged to been performed are incomplete units. Clearly there exists a bona fide dispute regarding this Kraus related creditor.

## THE INVOLUNTARY BANKRUPTCY PETITION MUST BE DISMISSED

### The Involuntary Petitioners Are Not Qualified

31.     Section 303(b) provides in relevant part that:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title
>
> > (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount....

11 U.S.C. § 303(b).

32.     Although the Bankruptcy Code does not define "bona fide dispute," the courts in the Third Circuit have adopted a summary judgment standard providing that a bona fide dispute exists where there is a genuine issue of material fact or law regarding the validity of the claim. *In re AMC Investors, LLC*, 406 B.R. 478, 484-85 (Bankr. D. Del. 2009); *In re Tobacco Road*

*Associates, LP*, No. 06-cv-2637, 2007 WL 966507, at *6 (E.D. Pa. March 30, 2007); *B.D.W. Assoc. Inc. v. Busy Beaver Bldg. Ctrs., Inc.*, 865 F. 2d 65, 66-67 (3d Cir. 1989). Therefore, where there are substantial factual or legal questions raised by the debtor that touch upon the liability or amount of the claim, the debtor can preclude the creditor from being an eligible petitioning creditor. *Collier on Bankruptcy* ¶ 303.11 (2010).

33. Case law has set forth the standards required to be met by Courts in order to establish whether a claim is subject to a bona fide dispute within the meaning of Section 303(b) of the Bankruptcy Code.

> The Third Circuit has held that a bona fide dispute exists "[i]f there is a genuine issue of a material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." "Under this standard, the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of debt." However, the court's objective is to ascertain the existence of a dispute, not to actually resolve the dispute. The burden is on the petitioning creditor to first establish a prima facie case that no bona fide dispute exists. Once a prima facie case has been established, the burden shifts to the alleged debtor to demonstrate the existence of a bona fide dispute.

*In re AMC Investors, LLC*, 406 B.R. at 484-85 (citing *B.D.W. Associates, Inc. v. Busy Beaver Building Centers, Inc.*, 865 F.2d 65 (3d Cir. 1989); *see also Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111 (2d Cir. 2003); *Liberty Tool & Mfg. v. Vortx Fishing Sys., Inc. (In re Vortx Fishing Sys. Inc.*, 277 F.3d 1057, 1064-65 (9th Cir. 2002).

34. The bona fide dispute provisions of section 303(b) serve to protect debtors from creditor coercion. *See In re AMC Investors, LLC*, 406 B.R. at 485 ("[T]he purpose of the 'bona fide dispute' provision is to prevent creditors from using involuntary bankruptcy to coerce a debtor to satisfy a judgment even when substantial questions may remain concerning the liability of the debtor."). Further, the bankruptcy court is not the correct venue for adjudicating a

contested, bona fide dispute as to liability. *In re Tobacco Road Assocs., LP*, 2007 WL 966507, at *6 ("Under the Bankruptcy Code, involuntary petitions are appropriate only when the creditors' claims are undisputed. Disputes about whether a debt is owed are best resolved in courts of general jurisdiction."). Accordingly, to find that a petitioning creditor does not qualify under section 303(b), the bankruptcy court need only determine that a dispute exists not that the debtor's position is or is likely to be correct.

35. At least one court in the Third Circuit has stated that any dispute over the amount of the claim may disqualify the creditor from filing an involuntary bankruptcy petition even though the remaining undisputed portion of the claim otherwise satisfies the dollar threshold. *See In re Tobacco Road Assocs., LP*, 2007 WL 966507, *6 (dispute as to amount is sufficient to disqualify petitioning creditor); *Collier on Bankruptcy* ¶ 303.11 (2010).

36. The case of *BDC 56 LLC* involved claims asserted by contractors and subcontractors against the debtor hotel for construction services which were allegedly rendered and remained unpaid. *See Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d at 114-15. The Second Circuit ultimately affirmed the decision of the District Court which had affirmed the decision of the Bankruptcy Court that the claims asserted by the Petitioning Creditors were subject to bona fide dispute. *Id.* at 123.

37. The Second Circuit adopted the Seventh Circuit objective test, that "[t]he Bankruptcy Court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt," *id.* at 117 (citing *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987)), explaining:

> [t]he legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal. Congress plainly did not intend to require a debtor to pay a

legitimately disputed debt simply to avoid the stigma of bankruptcy.

*Id.* at 117-18 (citations and internal quotation marks omitted).

38. Courts have also considered the test for showing a "bona fide dispute" as presenting a genuine issue of material fact on liability or a meritorious contention as to the applicability of law to undisputed facts. *In re Imi Acquisition of Boca Raton Corp.*, 221 B.R. 35, 38 (Bankr. S.D. Fla. 1998).

39. The petitioning creditor must establish a prima facie case that no bona fide dispute exists before the burden shifts to the debtor to demonstrate the existence of a bona fide dispute. *Key Mech. Inc. v. BDC 56 LLC,* 330 F.3d at 118.

40. The phrase "as to liability and amount" was added to Section 303(b)(1) and (h)(1) after the phrase "bona fide dispute" in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, making it clear that a dispute limited to the amount of the claim renders the entire claim subject to a bona fide dispute. *See, In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 712 (Bankr. S.D.N.Y. 2007); *see also In re Hentges*, 351 B.R. 758 (Bankr. N.D. Okla. 2006), *In re Orlinsky*, No. 06-15417, 2007 Bankr. LEXIS 1520, at *3 (Bankr. S.D. Fla. April 24, 2007). The primary purpose of disqualifying a creditor whose claim is subject to a bona fide dispute from filing an involuntary bankruptcy petition is to prevent such creditors from using involuntary petitions as a club to coerce the debtor to satisfy claims even when substantial questions remain concerning the debtor's liability. *See In re Tikijian*, 76 B.R. 304, 313-14 (Bankr. S.D.N.Y. 1987) (citing S. 7618, 98th Cong. 2d Sess., June 19, 1984).

41. The Court's objective is to ascertain whether a dispute that is bona fide exists; the Court is not to actually resolve the dispute. *Rimell v. Mark Twain Bank*, 946 F.2d 1363, 1365 (8th Cir. 1991). Even if the Court would be inclined to rule in favor of the creditor on the underlying

claim, it does not mean that the claim is not subject to a bona fide dispute. *Boston Beverage Corp. v. Turner*, 81 B.R. 738, 745 (D. Mass. 1987).

42. A Petitioning Creditor's claim might be the subject of bona fide dispute based on a factual finding, or a legal conclusion or a mixed question of fact and law depending on the nature of the dispute. *Key Mech. Inc. v. BDC 56 LLC,* 330 F.3d at 117.

43. Moreover, the Circuit Courts' requirements set forth in 11 U.S.C. § 303, including the "Bona Fide" creditor requirement are jurisdictional, "We believe the more sound view is that the [non-bona fide dispute] requirement is subject matter jurisdictional and now so held". *Id.* at 118. Any purported creditor wishing to invoke the Bankruptcy Court's jurisdiction in an involuntary case is required to demonstrate at the earliest practicable point that its petition satisfies these jurisdictional requirements. *See, In re Aminian*, No. 07-12957, 2008 Bankr. LEXIS 903, at *7 (Bankr. S.D.N.Y. March 25, 2008), *In re Mt. Dairies, Inc.*, 372 B.R. 623, 630 (Bankr. S.D.N.Y. 2007).

44. Here, there is no question that the Krauses have admitted that they received the deeds to their units. In New York, it is axiomatic that "a real property sales contract merges with the deed," *Roosa v. Campbell*, 737 N.Y.S.2d 461, 462 (N.Y. App. Div. 2002). Where title closes and the deed is delivered, the doctrine of merger extinguishes any claim the buyer may have. *Ka Foon Lo v. Curis*, 815 N.Y.S.2d 131, 133 (N.Y. App. Div. 2006). Based upon this authority, neither Stephen Kraus nor Mr. and Mrs. Mitchell Kraus can have a valid claim against One Madison TIC.

45. The burden of proof is upon the Petitioners to prove that One Madison TIC is "generally not paying" its "debts as such debts become due unless such debts are subject to a bona tide dispute." This determination would have to be made as of the date that the involuntary

petition was filed. *Bishop, Baldwin, Rewald Dillingham & Wong, Inc. v. Hayes*, 779 F.2d 471, 475 (9th Cir. 1985); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1546 (10th Cir. 1988). There is nothing in the boilerplate petition other than the boilerplate hollow assertion that One Madison TIC is not generally paying its debts as they become due.

46. Simply stated, if One Madison TIC were compelled to answer it would dispute all of the allegations in the form Involuntary Petition, except that it could be a debtor in a bankruptcy proceeding.

47. Given the facts of this case, it is respectfully requested that judgment be entered in favor of One Madison TIC for costs, reasonable attorney's fees, and damages (both actual and punitive), which shall be determined upon an inquest such costs, fees and damages.

## RESERVATION OF RIGHTS

48. As this motion presents a "contested matter" pursuant to Bankruptcy Rule 9014, One Madison TIC makes this Motion to Dismiss the Involuntary Petitions and reserves all rights to seek any additional or further relief, including without limitation discovery regarding the delivery of deeds and the Hi-Tech Mechanic's Liens.

## CONCLUSION

49. For the foregoing reasons, the One Madison TIC respectfully requests that the Court enter an Order, in the form annexed hereto dismissing the involuntary petitions and for such other relief as is necessary or appropriate.

Dated: June 29, 2010

                                            SAUL EWING LLP

                                            /s/ Lucian Murley
                                            Mark Minuti (DE Bar No. 2659)
                                            Lucian B. Murley (DE Bar No. 4892)
                                            222 Delaware Avenue, Suite 1200
                                            P.O. Box 1266
                                            Wilmington, DE 19899
                                            Telephone: (302) 421-6840
                                            Facsimile: (302) 421-5873

                                                      -and-

                                            Joseph Haspel, Esq.
                                            JOSEPH HASPEL, PLLC
                                            40 Matthews Street, Suite 301
                                            Goshen, NY 10924

                                            *Counsel to FKF Madison Group Owner LLC,*
                                            *JMJS 23rd Street Realty Owner LLC, Madison*
                                            *Park Group Owner LLC, and Slazer*
                                            *Enterprises Owner LLC*