# EXHIBIT "B"

# PLAN SUPPORT AGREEMENT

## AMONG

FKF MADISON GROUP OWNER, LLC, JMJS 23RD STREET REALTY OWNER, LLC, MADISON PARK GROUP OWNER, LLC, AND SLAZER ENTERPRISES OWNER, LLC; AND

IRA SHAPIRO; AND

MAD 52, LLC, STEPHEN KRAUS AND MITCHELL KRAUS; AND

NEW ONE MADISON PARK MEMBER I, LP

**Dated as of November 18, 2010**

# EXHIBITS

**EXHIBIT A** - Debtor in Possession Loan Commitment Letter

**EXHIBIT B** - Joint Plan Funding Commitment Letter

**EXHIBIT C** - Joint Plan of Reorganization Summary of Terms

**EXHIBIT D** – Reorganized Debtor Operating Agreement

**EXHIBIT E** - Joinder

## PLAN SUPPORT AGREEMENT

This Plan Support Agreement, dated as of November 18, 2010 (as the same may be amended, modified or extended, the **"Agreement"**) is entered into by and among: (w) FKF Madison Group Owner, LLC, JMJS 23rd Street Realty Owner, LLC, Madison Park Group Owner, LLC, and Slazer Enterprises Owner, LLC (the **"Debtors"**); (x) Ira Shapiro (**"Shapiro"**); (y) Mad 52, LLC, Stephen Kraus and Mitchell Kraus (each a **"Sponsor Creditor"** and collectively, the **"Sponsor Creditors"**); and (z) New One Madison Park Member I, LP (the **"Sponsor"**).

**WHEREAS**, the Debtors are the tenant in common owners of the land, the improvements, the unsold Units which have been or will be developed, designed, and constructed at 23 East 22nd Street, New York, New York 10010 (and sometimes also referred to as 20 East 23rd Street) consisting of a fifty (50) story hi rise tower containing sixty nine (69) residential units of which fifty-seven (57) units remain unsold and contain approximately 117,982 net sellable square feet, and amenities, and limited common elements (the **"North Tower"**), as well as a to be constructed mid-rise building located on an adjacent lot known as 23 East 22nd containing a ground level residential lobby and approximately 7,000 square feet of net sellable residential FAR (the **"South Tower"**, together with the North Tower, the land underlying and abutting the North Tower and the South Tower, the improvements, the unsold Units, all easements, air rights, development rights, sewer rights, water rights, servitudes, rights of way, streets, ways, alleys and other appurtenances thereto in any way relating to the foregoing, are referred to collectively herein as the **"Property"**).

**WHEREAS**, on June 8, 2010 (the **"Petition Date"**), involuntary petitions under chapter 7 of the Bankruptcy Code were filed in the United States Bankruptcy Court for the District of Delaware (the **"Bankruptcy Court"**), by certain creditors of the Debtors (the **"Original Petitioning Creditors"**) and subsequently joined in by other creditors of the Debtors, thereby commencing the Debtors' involuntary Chapter 7 Cases.

**WHEREAS**, the Debtors filed a motion to dismiss the involuntary petitions (the **"Dismissal Motion"**).

**WHEREAS**, the Debtors have outstanding debt to iStar Tara LLC (**"iStar"**) pursuant to the Loan Documents (as defined below).

**WHEREAS**, the Debtors filed in the Chapter 7 Cases a *Notice of Consolidated List of Alleged Creditors* [Docket No. 74].

**WHEREAS**, the Debtors have outstanding general unsecured obligations owing to various parties (the **"General Unsecured Creditors"**) and have outstanding obligations owing to various parties who assert that their respective claims are secured by a mechanic's lien on the Property (the **"Mechanics' Lien Creditors"**).

**WHEREAS**, on February 18, 2010, iStar commenced a foreclosure proceeding against the Debtors in the Supreme Court of the State of New York, County of New York (the **"State Court"**) styled as iStar Tara LLC v. FKF Madison Group Owner LLC, et al., No. 600423/2010

(the **"Foreclosure Proceeding"**) asserting, *inter alia,* that the Debtors had committed numerous defaults under the Loan Documents. Subsequently, upon application of iStar, on May 7, 2010, the State Court entered its *Order Expanding the Powers of Receiver in Mortgage Foreclosure Action* (the **"Receiver Order"**) appointing Jonathan H. Newman (the **"Receiver"**) as receiver during the pendency of the Foreclosure Proceeding and vesting the Receiver with full possession and control of the Mortgaged Property (as defined in the Receiver Order) as against any other person or entity.

**WHEREAS**, on November 3, 2010, iStar filed in the Chapter 7 Cases the *Motion of iStar Tara LLC for Relief from the Automatic Stay to Foreclose on Mortgaged Property* [Docket No. 105 (the **"Relief From Stay Motion"**) asserting, *inter alia,* that cause exists to lift the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code because the Debtors have no equity in the property and, as the Debtors' Chapter 7 Cases are proceeding under chapter 7 of the Bankruptcy Code, the Property is not necessary to a reorganization. A hearing on the Relief From Stay Motion before the Bankruptcy Court is currently scheduled for December 2, 2010.

**WHEREAS**, the Debtors, Shapiro, the Sponsor Creditors and the Sponsor desire to implement a restructuring of the Debtors pursuant to the transactions contemplated by this Agreement and in accordance with the terms and conditions set forth in this Agreement and the Exhibits hereto, to provide for, among other things: (i) development of the Property; (ii) the payment, in full, of the Debtors' secured obligations as allowed under the Bankruptcy Code; (iii) a partial recovery to the Mechanics' Lien Creditors on account of their respective Claims as allowed under the Bankruptcy Code; and (iv) the potential for a recovery for General Unsecured Creditors on account of their respective Claims as allowed under the Bankruptcy Code.

**WHEREAS**, the alternative to the consummation of the transactions contemplated by this Agreement is the potential granting by the Bankruptcy Court of the Relief From Stay Motion and the eventual foreclosure of the Property by iStar thereby eliminating any potential recovery for the Mechanics' Lien Creditors or the General Unsecured Creditors.

**WHEREAS**, the Sponsor has delivered to the Debtors concurrently with this Agreement a duly executed Debtor in Possession Loan Commitment Letter, dated as of the date hereof, in favor of the Debtors with respect to the Sponsor providing the debtor in possession financing in accordance therewith.

**WHEREAS**, the Sponsor has delivered to the Debtors, concurrently with this Agreement, a duly executed Joint Plan Funding Commitment Letter, attached hereto as Exhibit B, dated as of the date hereof, with respect to the Sponsor being issued 100% of the equity interests in the Reorganized Debtor and providing the Reorganized Debtor with an equity investment enabling the Reorganized Debtor to make payments under the Joint Plan and develop the Property.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements hereinafter contained, and for good and valuable consideration, the receipt of which is hereby acknowledged, and intending to be bound hereby, the parties agree as follows:

## 1.    Definitions.

In addition to the terms defined elsewhere herein, for purposes of this Agreement, the following terms shall have the meanings specified in this Section 1 when used herein:

"**Actions**" shall have the meaning ascribed to it in section 21 herein.

"**Agreement**" shall have the meaning ascribed to it in the preamble.

"**Allowed**" when used in reference to a Claim or Interest means as allowed under Section 502 of the Bankruptcy Code, or the Joint Plan.

"**Allowed Administrative Expenses**" means a Claim for costs and administration of the Debtors' Estates that is allowable and entitled to priority under Sections 503, 507(a)(2) and/or 507(b), or 114(e)(2), of the Bankruptcy Code, including, without limitation, any post-petition tax claims, any actual and necessary expenses of preserving the Estates of the Debtors, any actual and necessary expenses of operating the business of the Debtors, and any fees or charges assessed against the Estates of the Debtors under 28 U.S.C. Section 1930.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"**Bankruptcy Court**" shall have the meaning ascribed to it in the recitals.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Chapter 7 Cases**" means the pending involuntary chapter 7 cases of the Debtors pending in the Bankruptcy Court (Case Nos. 10-11867, 10-11868, 10-11869, and 10-11870).

"**Chapter 11 Cases**" means the Chapter 7 Cases as and when converted to cases administered under chapter 11 of the Bankruptcy Code.

"**Chapter 11 Pleadings**" shall have the meaning ascribed to it in section 3(a)(vii) herein.

"**Claim**" shall have the meaning ascribed to such term in the Bankruptcy Code.

"**Development Agreement**" means the development agreement by and between The Continuum Company, LLC and the Reorganized Debtor for the development of the Property.

"**Debtor in Possession Financing**" means the debtor in possession financing to be provided to the Debtors by the Sponsor on terms and conditions in substantial conformity with and not inconsistent with that described in the Debtor in Possession Loan Commitment Letter annexed hereto as Exhibit A.

"**Debtors**" shall have the meaning ascribed to it in the preamble.

**"Definitive Documents"** shall have the meaning ascribed to it in section 8(a) herein.

**"DIP Motion"** shall have the meaning ascribed to it in section 3(a)(ii) herein.

**"Effective Date"** means the effective date of the Joint Plan.

**"Estates"** means the estates created under Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

**"Exhibits"** means collectively each of the Exhibits annexed hereto. The Exhibits annexed hereto are fully incorporated herein by reference and are made part of this Agreement.

**"Joint Plan Funding Commitment"** means the equity funding from the Sponsor to capitalize the Reorganized Debtor as of, and after, the Effective Date such that the Reorganized Debtor has the funds available to make the payments required under the Joint Plan to be made on the Effective Date and have available after the Effective Date funds for developing the Property. The Debtors will be a beneficiary of the Joint Plan Funding Commitment. The Joint Plan Funding Commitment shall be on terms and conditions in substantial conformity with and not inconsistent with that described in the Joint Plan Funding Commitment Letter annexed hereto as Exhibit B.

**"Foreclosure Proceeding"** shall have the meaning ascribed to it in the recitals.

**"General Unsecured Creditors"** shall have the meaning ascribed to it in the recitals.

**"IJS Consulting Agreement"** shall have the meaning ascribed to it in section 7(b) herein.

**"inconsistent with"** or phrases of similar import, shall mean: (x) with respect to a particular class of Claims or Interests under the Joint Plan, that the proposed treatment of such Claims or Interests, respectively, shall have been altered to cause a material adverse change in the treatment of such claims and interests from that set forth in the Joint Plan of Reorganization Summary of Terms; and (y) with respect to the benefits or burdens conferred upon a party to this Agreement, as provided for in this Agreement or the transactions contemplated by this Agreement, that such benefits or burdens shall have been altered to cause a material adverse change in such benefits or burdens.

**"Interest"** means an equity interest in a Person.

**"iStar"** shall have the meaning ascribed to it in the recitals.

**"iStar Secured Indebtedness"** means the Debtors' obligations owing to iStar under the Loan Documents.

**"Joinder"** shall have the meaning ascribed to it in section 9(b) herein.

"**Joint Plan**" means the joint chapter 11 plan of reorganization to be filed by the Debtors in form and substance not inconsistent with the Joint Plan of Reorganization Summary of Terms annexed hereto as Exhibit D.

"**Loan Agreements**" means collectively: (i) Senior Loan and Security Agreement between Borrowers and SFT I, Inc. (as predecessor in interest to iStar) dated as of November 16, 2007; (ii) Project Loan and Security Agreement between Borrowers and SFT I, Inc. (as predecessor in interest to iStar) dated as of November 16, 2007; and (iii) Building Loan and Security Agreement between Borrowers and SFT I, Inc. (as predecessor in interest to iStar) dated as of November 16, 2007; each, as modified by that certain Modification Of Loan Agreements And Other Loan Documents (the "**Modification Agreement**") between Borrowers and iStar as lender dated as of June 24, 2009.

"**Loan Documents**" means collectively the Loan Agreements, Notes, Mortgages, and UCC Filings.

"**Material Adverse Effect**" means any material adverse effect in the business, assets, operations, results of operations or financial or other condition or prospects of the Property or the Debtors, or the occurrence of any fact or circumstance which materially and adversely affects the rights, remedies or benefits of, or conferred by, the transactions contemplated by the Agreement, including, without limitation, strike, lockout, war, terrorism, act of God, fire or other casualty, unusually adverse weather conditions, inability to obtain labor or materials or governmental restriction or other act or thing.

"**Mechanics' Lien Creditors**" shall have the meaning ascribed to it in the recitals.

"**Mechanics' Liens Effective Date Payment**" means the payment to be made (or reserved for) by the Estates to be paid to the holders of Allowed Claims who asserted mechanics liens against the Property and are classified in Classes 2A, 2B, 2C and 2D under the Joint Plan.

"**Modification Agreement**" shall have the meaning set forth within the definition of "Loan Agreements."

"**Mortgages**" means collectively: (i) Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Senior Loan) made by Borrowers in favor of SFT I, Inc. (as predecessor in interest to iStar) dated November 16, 2007, as modified by the Modification Agreement; (ii) Second Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Project Loan) made by Borrowers in favor of iStar dated as of June 24, 2009; and (iii) Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Building Loan) made by Borrowers in favor of iStar dated as of June 24, 2009.

"**Net Proceeds Waterfall Plan Obligation**" means the obligation under the Joint Plan pursuant to which the Reorganized Debtor shall be obligated to the Estates on account of the payments to be made under the Joint Plan to holders of Allowed Claims in Classes 4A, 4B, 4C and 4D.

**"Notes"** means collectively: (i) Consolidated, Amended and Restated Promissory Note (Senior Loan) made by Borrowers in favor of SFT I, Inc. (as predecessor in interest to iStar) dated November 16, 2007, as modified by the Modification Agreement; (ii) Second Consolidated, Amended and Restated Promissory Note (Project Loan) made by Borrowers in favor of iStar dated as of June 24, 2009; and (iii) Amended and Restated Promissory Note (Building Loan) made by Borrowers in favor of iStar dated June 24, 2009.

**"Person"** has the meaning ascribed to such term in the Bankruptcy Code except that it shall include a governmental unit.

**"Petition Date"** shall have the meaning ascribed to it in the recitals.

**"Petitioning Creditors"** shall have the meaning ascribed to it in the recitals.

**"Property"** shall have the meaning ascribed to it in the recitals.

**"Receiver"** shall have the meaning ascribed to it in the recitals.

**"Receiver Order"** shall have the meaning ascribed to it in the recitals.

**"Relief From Stay Motion"** shall have the meaning ascribed to it in the recitals.

**"Restructured iStar Debt"** means the restructured iStar Secured Indebtedness as provided for in the Joint Plan.

**"Restructured iStar Debt Loan Documents"** means the Amended and Restated Loan Documents to be executed by the Reorganized Debtor in favor of iStar under the Joint Plan with terms and conditions in substantial conformity with and not inconsistent with that set forth in Exhibit 1 to the Joint Plan of Reorganization Summary of Terms annexed hereto as Exhibit D.

**"Shapiro"** shall have the meaning ascribed to it in the preamble.

**"Sponsor Creditor"** and **"Sponsor Creditors"** shall have the meaning ascribed to it in the preamble.

**"Sponsor Creditor Motion"** shall have the meaning ascribed to it in section 2(b) herein.

**"State Court"** shall have the meaning ascribed to it in the recitals.

**"support, and not object"** shall mean to affirmatively support and to take all reasonable, necessary and appropriate actions in furtherance of, and to not take any action to hinder, delay or impede, the action to be taken, or the relief sought; provided, however, there shall be no obligation to incur (or suffer) any costs, expenses or obligations with respect to the same unless specifically agreed to in writing by the party that would incur such costs and expenses.

"**Termination Event**" shall have the meaning ascribed to it in section 17(e) herein.

"**UCC Filings**" means those certain UCC Financing Statement filings of record made by iStar (or its predecessor) with respect to the Debtors.

"**Units**" means the residential condominium units, together with the common elements and limited common elements appurtenant thereto, that currently are, or will in the future be, subject to a condominium regime affecting the Property.

## 2. Involuntary Chapter 7 Cases.

a)    On or before November 18, 2010, the Debtors shall, and Shapiro shall cause the Debtors to, file a pleading with the Bankruptcy Court in the Chapter 7 Cases stating: (i) the Debtors withdraw the Dismissal Motion; (ii) the Debtors do not intend to file an answer to the involuntary chapter 7 petitions filed against them; (iii) the Debtors do not intend to file any further opposition to the involuntary chapter 7 petitions filed against them; and (iv) the Debtors consent and join in the Sponsor Creditor Motion.

b)    On or before November 18, 2010, the Original Petitioning Creditors, shall file a motion (the "**Sponsor Creditor Motion**") with the Bankruptcy Court in the Chapter 7 Cases seeking: (i) the immediate entry of orders for relief in the Chapter 7 Cases based upon, among other things, the Debtors' stated position that they do not intend to answer the involuntary petitions; and (ii) the conversion of the Chapter 7 Cases to Chapter 11 Cases.

c)    On or before November 18, 2010, the Debtors and the Sponsor Creditors shall coordinate and cooperate with respect to the filing of an opposition or oppositions to the Relief From Stay Motion.

## 3. Debtors' Chapter 11 Filings.

a)    As soon as practicable following the conversion of the Chapter 7 Cases to Chapter 11 Cases, the Debtors shall file, and Shapiro shall cause the Debtors to file, in their respective Chapter 11 Cases, the following pleadings:

i)    A motion pursuant to Section 543 of the Bankruptcy Code seeking the turnover to the Debtors of all of the assets of the Debtors in the possession of the Receiver. The motion shall be accompanied by a request that it be heard on an emergency, shortened time basis on the earliest date as is available on the Bankruptcy Court's calendar.

ii)    A motion (the "**DIP Motion**") pursuant to Section 364 of the Bankruptcy Code seeking authority to enter into debtor in possession financing arrangement with Sponsor in substantial conformity with and not inconsistent with the terms and conditions of the Debtor in Possession Loan Commitment Letter annexed hereto as Exhibit A. The motion shall be accompanied by a request that it be heard on an emergency, shortened time basis on the earliest date as is available on the Bankruptcy Court's calendar.

iii) A motion pursuant to Section 1125 of the Bankruptcy Code seeking approval of the Disclosure Statement to accompany the Joint Plan, adoption of solicitation procedures, approving forms of ballots and notice, and setting a hearing on (and the procedures related to) confirmation of the Joint Plan.

iv) The Joint Plan and the Disclosure Statement accompanying the Joint Plan.

v) A motion pursuant to Bankruptcy Rule 3003 fixing a deadline for filing proofs of claim against the Debtors.

vi) A motion pursuant to Section 105 of the Bankruptcy Code seeking the joint administration of the Debtors' Chapter 11 Cases, with all pleadings to be filed under a consolidated caption in the docket of the Chapter 11 Case for FKF Madison Park Group Owner, LLC - Case No. 10-11867 (KG).

vii) Other motions to be filed by the Debtors in the Chapter 11 cases seeking: (i) fixing of notice procedures; (ii) employment of counsel for the Debtors; and (iii) such other motions required to provided for the orderly transition to the Debtors operating as debtors in possession in the Chapter 11 Cases as are typically filed in cases similar to the Chapter 11 Cases (along with all subsequent motions, complaints, applications or other pleadings seeking substantive relief (along with all accompanying documents and orders) that are intended to be filed in the Chapter 11 Cases (the **"Chapter 11 Pleadings"**).

Debtors shall, and Shapiro shall cause the Debtors to, provide counsel to the Sponsor Creditors and counsel to the Sponsor with a copy of drafts of all of the Chapter 11 Pleadings reasonably in advance of their being filed and the Debtors shall cooperate in good faith to modify such Chapter 11 Pleadings such that the filed forms of the Chapter 11 Pleadings incorporate to the greatest extent reasonable under the circumstances the comments and changes requested by counsel for the Sponsor Creditors and counsel for the Sponsor. Except with respect to the DIP Motion and the Joint Plan, the form and substance of the Chapter 11 Pleadings (and the orders approving the same) shall be, in each case, acceptable to the Sponsor Creditors and the Sponsor in each of their respective individual reasonable discretion. The DIP Motion and the orders approving the DIP Motion shall be, in each case, in form and substance acceptable to Sponsor in each of their sole and absolute discretion. The Joint Plan shall not be inconsistent in any material respect with the terms of this Agreement and the Joint Plan of Reorganization Summary of Terms, and the order confirming the Joint Plan shall be acceptable to the Sponsor Creditors and Sponsor in each of their respective individual reasonable discretion.

## 4. Debtor In Possession Financing.

a) Pursuant to the terms and conditions set forth in the Debtor in Possession Loan Commitment Letter annexed as Exhibit A, and subject to the terms and conditions of this Agreement, Sponsor will provide the Debtors with debtor in possession financing to fund the Debtors projected operating expenses in the amounts, for the purposes, and during the time period as set forth in the Approved Budget annexed as Exhibit A to the Debtor in Possession

Loan Commitment Letter. The Sponsor Creditors support, and have no objection to, the terms and conditions of the Debtor in Possession Loan Commitment Letter and support, and have no objection to, the DIP Motion or the DIP Motion being heard on an emergency, shortened time, basis.

b)      Concurrently herewith, Sponsor delivered to the Debtors a duly executed copy of the Debtor in Possession Loan Commitment Letter, a copy of which is annexed hereto as Exhibit A.

**5.      Joint Plan.**

a)      The Debtors shall, and Shapiro shall cause the Debtors to, file the Joint Plan which shall be in all respects in substantial conformity with and not inconsistent with the Joint Plan of Reorganization Summary of Terms annexed hereto as Exhibit C. The Debtors and the Sponsor shall be joint proponents of the Joint Plan. The Joint Plan may be amended from time to time by written approval of the Debtors and the Sponsor. Each of the parties hereto agree to negotiate in good faith all amendments and modifications to the Joint Plan as reasonably necessary and appropriate to obtain Bankruptcy Court confirmation of the Joint Plan; provided, however, no party shall be required to agree to any amendment or modification which shall change such party's economic terms and conditions of any of the transactions contemplated by the Joint Plan.

**6.      Plan Funding.**

a)      The Joint Plan provides for one hundred percent (100%) of the equity interests of the Reorganized Debtor to be issued to Sponsor. In consideration thereof, subject to the terms and conditions of the Joint Plan Funding Commitment Letter annexed hereto as Exhibit B and the terms and conditions of this Agreement, the Sponsor shall cause the Reorganized Debtor to, and the Reorganized Debtor shall, as of the Effective Date, fund the Joint Plan including the proposed treatment of holders of unclassified Claims and Allowed Claims under the Joint Plan as follows:

i)      The Reorganized Debtor shall pay in cash in full the outstanding Debtor in Possession Financing obligations;

ii)      The Reorganized Debtor shall pay in cash in full the amounts required to pay all unclassified claims (which shall include all Allowed Administrative Expenses) under the Joint Plan;

iii)      The Reorganized Debtor will assume the Restructured iStar Debt and execute the Restructured iStar Debt Loan Documents;

iv)      The Reorganized Debtor shall make the cash payments required to the Estates such that the Estates can make the Mechanics' Liens Effective Date Payment; and

v)     The Reorganized Debtor will be obligated under the Joint Plan, and shall assume the obligation, with respect to the Net Proceeds Waterfall Plan Obligation.

b)     The Debtors have received concurrently herewith a duly executed copy of the Joint Plan Funding Commitment Letter, a copy of which is annexed hereto as Exhibit B.

c)     Sponsor will provide the funding for the Joint Plan as contemplated by the Joint Plan Funding Commitment Letter by providing the Reorganized Debtor with the Joint Plan Funding Commitment.   The Joint Plan Funding Commitment will provide the Reorganized Debtor with the funding for: (u) refinancing of the debtor in possession financing; (v) payments to be made on account of Claims that are unclassified under the Joint Plan; (w) payments to be made to holders of Allowed Claims in Classes 2A, 2B, 2C and 2D under the Joint Plan; (x) the reimbursement of the Sponsor Creditors and Sponsor for their fees and expenses incurred in connection with the transactions contemplated by this Agreement; (y) working capital for the Reorganized Debtor; and (z) development of the Property. Sponsor has delivered to the Debtors the Joint Plan Funding Commitment Letter annexed hereto as Exhibit B.

7.     **Reorganized Debtor and Sponsor.**

a)     The Joint Plan contemplates that, upon the Effective Date, all of the assets of the Debtors will be sold to in the Reorganized Debtor.  The Reorganized Debtor will be a newly formed single member limited liability company and one hundred percent (100%) of its equity interests will be issued to Sponsor.  The Limited Liability Company Agreement for the Reorganized Debtor is annexed hereto as Exhibit D.  Sponsor is a Delaware limited partnership, the general partner of which is New One Madison Park GP, LLC, a Delaware limited liability company, and the limited partners of which will be 45 Margaux LLC, a Delaware limited liability company, Kraus OMP, LLC, a Delaware limited liability company, and Glimcher Bernard One Madison, LLC, a Delaware limited liability company.

b)     On the Effective Date, the Reorganized Debtor will enter into a consulting agreement with IJS Management, LLC to provide services (to be delineated in a consulting agreement to be executed on the Effective Date(the **"IJS Consulting Agreement"**)) as requested from time to time by Sponsor during the period from the Effective Date through entry into contracts for seventy-five percent (75%) of the Units that are being developed as part of the Project and in consideration for which IJS Management, LLC will be paid ten-thousand dollars ($10,000.00) per month during the term of such agreement, subject to the terms and conditions contained therein. The IJS Consulting Agreement will replace a similar consulting arrangement between the Debtors and IJS Management, LLC providing for the same $10,000 per month payment to the consultant that is being entered into effective on the Conversion Date.

8.     **Definitive Documentation.**

a)     Each party hereto covenants and agrees to negotiate in good faith the definitive documents (the **"Definitive Documents"**) required to implement the transactions contemplated hereby and the Exhibits annexed hereto and to which such party (or such party's affiliate or related party) is a signatory, and shall cooperate with each other party and use

commercially reasonable efforts to obtain confirmation of the Joint Plan, subject to the terms and conditions set forth in this Agreement, and the Exhibits.

      b)      The Definitive Documents necessary to consummate the confirmation of the Joint Plan shall include, without limitation: (A) the Joint Plan; (B) the Confirmation Order; (C) the Operating Agreement for the Reorganized Debtor; (D) the Restructured iStar Debt Loan Documents; (E) the Joint Plan Funding Commitment documentation and all related documents; (F) the Net Proceeds Waterfall Plan Obligation; (G) the IJS Consulting Agreement; (H) the Development Agreement; and (I) any other documents or agreements that are necessary to implement this Agreement and the transactions contemplated hereby, all of which shall not be inconsistent with this Agreement and the Exhibits and shall be in form and substance acceptable to the parties to such documents or agreements.

## 9.    <u>Covenants.</u>

      a)     <u>Support of the Joint Plan</u>. Subject to the terms and conditions of this Agreement and all applicable laws, each of the Debtors, Shapiro, the Sponsor Creditors and the Sponsor shall (i) take, or cause to be taken, all actions reasonably necessary to facilitate, encourage or otherwise support, and not object to, the confirmation of the Joint Plan, and (ii) not take, or cause to be taken, directly or indirectly, any action that would frustrate, delay or be inconsistent with the consummation of, or oppose, the confirmation of the Joint Plan; provided that to the extent any provision hereof shall be construed as constituting a violation of applicable law (including applicable federal or state securities law), such provision shall be deemed stricken herefrom and of no force and effect without liability to any of the parties hereto. Without limiting the foregoing, subject to the terms and conditions of this Agreement and all applicable laws, the Debtors, Shapiro, the Sponsor Creditors and the Sponsor covenant and agree, as the case may be, that:

      i)     Provided that a party hereto has been properly solicited in accordance with Bankruptcy Code Sections 1125 and 1126, each party shall: (x) timely vote (or cause to be voted) its Claims and Interests, respectively, in favor of the Joint Plan, (y) not change, revoke or withdraw (or cause to be changed, revoked or withdrawn) any such vote, and (z) to the extent such election is available, not elect on its ballot to preserve any Claims, if any, such holder may have except as otherwise provided for under the Joint Plan, in each case except to the extent that such Joint Plan is inconsistent with the Joint Plan of Reorganization Summary of Terms;

      ii)     Not object to the Joint Plan or otherwise commence any proceeding to oppose or alter any of the terms of the Joint Plan or any other document filed by the Debtors, the Sponsor Creditors or the Sponsor in connection with the confirmation of the Joint Plan, except to the extent that such Joint Plan and documents are inconsistent with the Joint Plan of Reorganization Summary of Terms;

      iii)    Take all reasonable actions necessary or reasonably requested by the Debtors, the Sponsor Creditors or the Sponsor, as the case may be, to support

the Joint Plan and the transactions contemplated thereby, except to the extent that such Joint Plan and contemplated transactions are inconsistent with the Joint Plan of Reorganization Summary of Terms;

iv)     Not take any actions inconsistent with, or that would delay approval, confirmation, or implementation of, the Joint Plan, the Definitive Documents or any other documents filed, or entered into, in connection therewith, except to the extent that such Joint Plan, the Definitive Documents and other documents are inconsistent with the Joint Plan of Reorganization Summary of Terms;

v)     Support the release, injunction and exculpatory provisions contained in the Joint Plan, except to the extent inconsistent with the release, injunction and exculpatory provisions in the Joint Plan of Reorganization Summary of Terms;

vi)     Not oppose the Debtors' request for the entry of customary "first day" orders; provided that the Debtors provide the Sponsor Creditors and the Sponsor with copies of the proposed "first day" orders and corresponding motions, on as much notice as is reasonably practicable, but in no event less than two (2) business days prior to the filing thereof;

vii)     Not oppose the Debtors' request for the entry of an order authorizing the DIP Motion, except to the extent the DIP Motion is inconsistent with the Debtor in Possession Loan Commitment Letter;

viii)     Not, directly or indirectly, seek, solicit, negotiate, support or engage in any discussions relating to, or enter into any agreements relating to, any restructuring, plan of reorganization, dissolution, winding up, liquidation, reorganization, merger, transaction, sale, or disposition of the Debtors (or all or substantially all of its assets or equity) other than pursuant to the Joint Plan (as it may be amended, supplemented or otherwise modified as provided herein), nor solicit or direct any person or entity, including, without limitation, any member of any Debtor's board of directors or any holder of equity in the Debtors, to undertake any of the foregoing; and

ix)     Not take any action that is inconsistent with, or that would unreasonably delay, the confirmation and consummation of the Joint Plan.

b)     <u>Transfer of Existing Debt and Interests</u>.  Each party that holds a Claim or Interest agrees that, so long as this Agreement has not terminated in accordance with its terms, it shall not sell, transfer, assign or otherwise dispose of any of such Claims or Interests, respectively, or any of its related claims, rights and causes of action arising out of or in connection with or otherwise relating to such Claims or Interests, as applicable, or any option thereon or any right or interest (voting or otherwise) therein, unless the transferee (if not already a party hereto) agrees in writing to be bound by all of the terms of this Agreements by executing a Joinder in substantially the form attached hereto as Exhibit E (a **"Joinder"**), and which transferee will thereby become a party hereunder.  If any such purchaser, transferee or assignee does not execute a Joinder within five (5) days of the completion of such sale, transfer or

assignment, then such sale, transfer, assignment or other disposition shall be deemed void *ab initio*. This Agreement shall in no way be construed to preclude any party from acquiring additional Claims or Interests; provided, however, that any such additional holdings shall automatically be deemed to be subject to all of the terms of this Agreement and in such a case the acquiring party agrees that such additional Claim or Interest shall be subject to this Agreement and that it shall vote (or cause to be voted) any such additional Claims or Interests entitled to vote on the Joint Plan, in each case to the extent still held by it or on its behalf at the time of such vote, in a manner consistent with this Section 9. Each party agrees to provide to the other parties counsel (i) a copy of any executed Joinder, and (ii) a notice of the acquisition of any additional Claims or Interests, in each case within five (5) business days of the consummation of the transaction disposing of, or acquiring, such Claim or Interest.

c)    Shapiro Agreements. In addition to the foregoing, subject to the terms and conditions hereof, Shapiro shall:

i)    not assert any appraisal rights or other remedies in connection with the consummation of the transactions contemplated by the Joint Plan; and

ii)    pending consummation of the Joint Plan, not vote to appoint any person with authority to manage, or to control, the Debtors who, to the knowledge of Shapiro, and subject to such person's fiduciary obligations, opposes the Joint Plan.

d)    Fiduciary Duty. Nothing in this Agreement shall be deemed to prevent a party hereto from taking (or failing to take) any action that it is obligated to take (or fail to take) in the performance of any fiduciary or similar duty which it owes to any other person or entity, including any fiduciary or similar duty that may arise as a result of a Sponsor Creditors' appointment to any Committee; provided, however, that serving as a member of such Committee shall not relieve a Sponsor Creditor of its obligations to affirmatively support, and vote for, the Joint Plan, on the terms and conditions set forth herein.

e)    Inspection; Access to Books and Records. The Sponsor and Sponsor Creditors and their respective employees, professionals, agents, advisors, contractors, and consultants shall have full access, upon reasonable notice during normal business hours, to the Debtors' business records, business premises, and to the Property to enable the Sponsor and/or the Sponsor Creditors or their employees, professionals, agents, advisors, contractors, and consultants to (a) review, appraise, and evaluate the physical condition of the Property, (b) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' business and the Property, and (c) evaluate the Debtors' and Property's overall financial condition and all other records relating to the operations of the Debtors and/or the Property. The Debtors shall fully cooperate with the Sponsor and/or Sponsor Creditors regarding such reviews, evaluations, and inspections, and shall make their employees, professionals, agents, advisors, contractors, and consultants available to the Sponsor and/or the Sponsor Creditors and their employees, professionals, agents, advisors, contractors, and consultants to conduct such reviews, evaluations, and inspections.

## 10. Representations and Warranties of the Sponsor Creditors.

Each Sponsor Creditor hereby represents and warrants to the best of its knowledge, to the other parties hereto as follows:

a) Such Sponsor Creditor (i) if not a natural person, is duly organized, validly existing and in good standing under the laws of such entity's jurisdiction of organization; and (ii) has the requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder and to consummate the transactions contemplated by this Agreement;

b) This Agreement has been duly executed and delivered by such Sponsor Creditor, and, subject to Debtors' compliance with Sections 1125 and 1126 of the Bankruptcy Code with respect to the solicitation of votes on the Joint Plan, constitutes the valid and binding obligation of such Sponsor Creditor, enforceable against such Sponsor Creditor in accordance with its terms;

c) As of the date hereof, such Sponsor Creditor (i) has a valid, binding and enforceable Claim against each of the Debtors, and neither owns nor has investment authority over any other indebtedness of or Interests in any of the Debtors; and (ii) is the legal holder of each such Claim;

d) This Agreement and the exhibits hereto provides such Sponsor Creditor with information sufficient to execute, deliver and perform under this Agreement;

e) Such Sponsor Creditor has not sold, assigned or transferred, or entered into any commitment to sell, assign or transfer, in whole or in part, any portion of its right, title or interests in its Claim, or provided any party with an option with respect thereto, in a manner which has or could divest it of the ability to vote or cause to be voted such Claim in respect to the matters on which its vote is or may be required hereunder or of the ability to comply with any provision of this Agreement with respect to such Claim, including, without limitation, the provisions of Section 9, or which would convey on any person or entity legal standing to take any action which, if taken by such Sponsor Creditor, would constitute a breach of its obligations hereunder;

f) Such Sponsor Creditor has sufficient knowledge and experience to evaluate properly the terms and conditions of this Agreement and has made its own analysis and decision to enter into this Agreement and has obtained such independent advice in this regard as it deemed appropriate and has not relied in such analysis or decision on any person other than its own independent advisors;

g) The execution, delivery and performance hereof (i) are not in contravention of its organizational documents, and (ii) shall not require any registration or filing with, consent or approval of, or notice to, or other action to, with or by, any federal, state or other governmental authority or regulatory body, except such filings as may be necessary and/or required in connection with the Chapter 11 Cases for which Bankruptcy Court approval is required; and

## 11. **Representations and Warranties of the Debtors.**

Each of the Debtors hereby represents and warrants to the best of its respective knowledge, jointly and severally, to the other parties hereto as follows:

a)  Each of the Debtors is duly organized and validly existing under the laws of Delaware;

b)  Each of the Debtors has the requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder and to consummate the transactions contemplated by this Agreement;

c)  This Agreement has been duly executed and delivered by each of the Debtors, and constitutes the valid and binding obligation of each of the Debtors, enforceable against each of them in accordance with its terms;

d)  The execution, delivery and performance hereof (i) are not in contravention of its organizational documents, and (ii) shall not require any registration or filing with, consent or approval of, or notice to, or other action to, with or by, any federal, state or other governmental authority or regulatory body, except such filings as may be necessary and/or required in connection with the Chapter 11 Cases for which Bankruptcy Court approval is required; and

e)  Other than any proceedings, litigation or adversary proceedings currently pending against it in the Bankruptcy Court, no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it which would prohibit it from entering into this Agreement.

## 12. **Representations of Shapiro.**

Shapiro hereby represents and warrants to the best of his knowledge, to the other parties hereto as follows:

a)  Shapiro has the requisite power and authority to execute and deliver this Agreement for himself and to perform his obligations hereunder and to consummate the transactions contemplated by this Agreement and to execute and deliver this Agreement on behalf of the Debtors such that the Debtors have the requisite power and authority to execute and deliver this Agreement and to perform their respective obligations hereunder and to consummate the transactions contemplated by this Agreement;

b)  This Agreement has been duly executed and delivered by Shapiro, and, subject to Debtors' compliance with Sections 1125 and 1126 of the Bankruptcy Code with respect to the solicitation of votes on the Joint Plan, constitutes the valid and binding obligation of Shapiro, enforceable against Shapiro in accordance with its terms;

c)  As of the date hereof, Shapiro (i) asserts that he has valid, binding and enforceable Claims and direct or indirect Interests in each of the Debtors, (ii) has the power and

authority to control the Debtors; and (iii) is the legal holder of each such Claims and direct or indirect Interests;

d) This Agreement and the exhibits hereto provides Shapiro with information sufficient to execute, deliver and perform under this Agreement;

e) Shapiro has not sold, assigned or transferred, or entered into any commitment to sell, assign or transfer, in whole or in part, any portion of its right, title or interests in his Claims or direct or indirect Interests, or provided any party with an option with respect thereto, in a manner which has or could divest it of the ability to vote or cause to be voted such Claims or direct or indirect Interests in respect to the matters on which its vote is or may be required hereunder or of the ability to comply with any provision of this Agreement with respect to such Claims or direct or indirect Interests, including, without limitation, the provisions of Section 9, or which would convey on any person or entity legal standing to take any action which, if taken by Shapiro, would constitute a breach of its obligations hereunder;

f) Shapiro has sufficient knowledge and experience to evaluate properly the terms and conditions of this Agreement and has made his own analysis and decision to enter into this Agreement and has obtained such independent advice in this regard as he deemed appropriate and has not relied in such analysis or decision on any person other than his own independent advisors;

g) The execution, delivery and performance hereof (i) are not in contravention of the Debtors' organizational documents, and (ii) shall not require any registration or filing with, consent or approval of, or notice to, or other action to, with or by, any federal, state or other governmental authority or regulatory body, except such filings as may be necessary and/or required in connection with the Chapter 11 Cases for which Bankruptcy Court approval is required; and

**13. Representations and Warranties of Sponsor.**

The Sponsor hereby represents and warrants, severally and not jointly, to the other parties hereto as follows:

a) The Sponsor (i) is duly organized, validly existing under the laws of such entity's jurisdiction of organization; and (ii) has the requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder and to consummate the transactions contemplated by this Agreement;

b) This Agreement has been duly executed and delivered by the Sponsor and, subject to Debtors' compliance with Sections 1125 and 1126 of the Bankruptcy Code with respect to the solicitation of votes on the Joint Plan, constitutes the valid and binding obligation of the Sponsor, enforceable against the Sponsor in accordance with its terms;

c) As of the date hereof, the Sponsor has no Claims against, or Interests in, the Debtors;

d)     This Agreement and the exhibits hereto provides Sponsor with information sufficient to execute, deliver and perform under this Agreement;

e)     The Sponsor has sufficient knowledge and experience to evaluate properly the terms and conditions of this Agreement and has made its own analysis and decision to enter into this Agreement and has obtained such independent advice in this regard as it deemed appropriate and has not relied in such analysis or decision on any person other than its own independent advisors;

f)     The execution, delivery and performance hereof (i) are not in contravention of its organizational documents, and (ii) shall not require any registration or filing with, consent or approval of, or notice to, or other action to, with or by, any federal, state or other governmental authority or regulatory body, except such filings as may be necessary and/or required in connection with the Chapter 11 Cases for which Bankruptcy Court approval is required.

## 14.     Conditions to Effectiveness.

This Agreement shall become effective and binding on each party hereto upon the release and delivery of signature pages to counsel to the parties hereto, duly executed by each of the parties.  Delivery by telecopier or electronic mail of an executed counterpart of a signature page to this Agreement shall be effective as delivery of an original executed counterpart hereof.

## 15.     Conditions to Consummation of the Transactions Contemplated Hereby.

a)     The respective obligations of the Sponsor Creditors to consummate the transactions contemplated by this Agreement are subject to the satisfaction of the following conditions:

i)     none of the other parties to this Agreement shall have failed to comply with any of their respective material obligations set forth in this Agreement;

ii)     negotiation and execution of the applicable Definitive Documents to which the Sponsor Creditors are a party by the counterparties thereto;

iii)     all authorizations, consents and regulatory approvals required from parties other than the parties hereto, if any, in connection with implementation of the transactions shall have been obtained.

b)     The respective obligations of the Debtors and Shapiro to consummate the transactions contemplated by this Agreement are subject to the satisfaction of the following conditions:

i)     none of the other parties to this Agreement shall have failed to comply with any of their respective material obligations set forth in this Agreement;

ii)     negotiation and execution of the applicable Definitive Documents to which the Debtors and Shapiro are a party by the counterparties thereto;

iii)     all authorizations, consents and regulatory approvals required from parties other than the parties hereto, if any, in connection with implementation of the transactions shall have been obtained.

c)     The obligations of the Sponsor to consummate the transactions contemplated by this Agreement are subject to the satisfaction of the following conditions:

i)     negotiation and execution of the applicable Definitive Documents;

ii)     all authorizations, consents and regulatory approvals required from parties other than the parties hereto, if any, in connection with implementation of the transactions shall have been obtained;

iii)     no Material Adverse Effect shall have occurred;

iv)     neither the Property nor any part thereof shall have suffered any casualty or be subject to any existing or threatened condemnation or taking by eminent domain proceeding or otherwise;

v)     the occurrence of the Effective Date on or before March 18, 2011, unless such date is waived or extended in writing by Sponsor who shall have the sole right to extend such date;

vi)     none of the other parties to this Agreement shall have failed to comply with any of their respective material obligations set forth in this Agreement;

vii)     the conditions precedent to the Joint Plan Funding Commitment to be satisfied as of the Effective Date have been satisfied or waived.

No party hereto may invoke the failure of a condition set forth herein whose breach shall have been the cause of, or shall have resulted in, the failure of such condition.

## 16.     No Solicitation.

In respect of the Chapter 11 Cases, this Agreement is not and shall not be deemed to be a solicitation for consents to the Joint Plan. The votes of the Sponsor Creditors and Shapiro will

not be solicited until the Sponsor Creditors and Shapiro have received the Disclosure Statement and related ballot, the Joint Plan, and other required solicitation materials. In addition, this Agreement does not constitute an offer to issue or sell securities to any person, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful.

## 17. Termination.

This Agreement shall terminate at 5:00 p.m. prevailing Eastern Time on the date which is the first business day following the date on which there is first to occur a Termination Event (as defined below), unless the relevant Termination Event (as defined below) is waived or extended by all the parties hereto, with the exception of subsection (a) and (c) below which shall be governed by its own terms:

a)    if the Chapter 7 Cases are not converted to Chapter 11 Cases on or before November 24, 2010, unless such date is waived or extended in writing by Sponsor who shall have the sole right to extend such date;

b)    upon consummation of the Joint Plan;

c)    if the Joint Plan is not confirmed, or if confirmed is not substantially consummated, on or before March 18, 2011, unless such date is waived or extended in writing by Sponsor who shall have the sole right to extend such date;

d)    the entry of an order of the Bankruptcy Court: (i) dismissing any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, or (iii) appointing a trustee pursuant to Section 1104 of the Bankruptcy Code, in one or more of the Chapter 11 Cases, unless such trustee agrees to be bound in writing by, and perform the obligations of the Debtors pursuant to, this Agreement;

e)    except with respect to the DIP Motion, the Bankruptcy Court grants relief that is inconsistent with this Agreement (in each case with such amendments and modifications as have been as have been effected in accordance with the terms hereof); and

f)    the issuance by any governmental authority, including the Bankruptcy Court in respect of the Chapter 11 Cases, or any other regulatory authority or court of competent jurisdiction, of any ruling or order enjoining the consummation of a material portion of the transactions contemplated hereby and that is inconsistent with this Agreement, (each, a "**Termination Event**"). If any party believes that a Termination Event has occurred, such party may give written notice thereof to all other parties to this Agreement; provided, however, that such written notice shall not be a condition precedent to the termination of this Agreement.

Upon termination of this Agreement, subject to Section 26 hereof, (i) the parties' respective obligations hereunder shall thereafter cease to exist (except for those which by their terms expressly are intended to survive such termination), (ii) in such event, each party, as the case may be, in its sole discretion and without limiting its other rights, may change or withdraw (or cause to be changed or withdrawn) any consents previously given by it or votes previously cast by it, as the case may be, in favor of the Joint Plan, (iii) in the case of each non-breaching

party, all claims of such party shall be fully preserved, (iv) each non-breaching party shall return to the status quo ante, and (v) any breach of this Agreement by one or more parties shall not create any rights or remedies against any non-breaching party. The Debtors, Shapiro and Sponsor will not contest any such decision by a Sponsor Creditor to change or withdraw its consent or vote, as the case may be, or to oppose confirmation of the Joint Plan, as the case may be, by reason of such termination; provided, however, that the Debtors, Shapiro the Sponsor Creditors and Sponsor may contest whether a Termination Event shall have occurred or this Agreement is validly terminated. No party shall have any liability as a result of any valid termination of this Agreement in accordance with the terms hereof. Notwithstanding any other provision hereof, no termination of this Agreement shall relieve a party of liability for any breach occurring on or prior to such termination.

### 18. No Third-Party Beneficiaries.

This Agreement is solely for the benefit of the parties hereto and no other person or entity shall be a third-party beneficiary hereof.

### 19. Entire Agreement.

This Agreement (including the Exhibits hereto and made a part hereof) constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, written and oral, between the parties with respect to the transactions contemplated hereby.

### 20. Amendments.

a) Except as otherwise provided herein, this Agreement and the Exhibits may be amended only upon written approval of (i) the Debtors, (ii) Shapiro; (iii) the Sponsor Creditors; and (iv) the Sponsor.

b) No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any waiver be deemed a continuing waiver. No modification or change to this Agreement or the applicable Definitive Documents shall release any party from obligations under this Agreement if such Definitive Documents remain substantially similar in all economic and other respects to this Agreement and are not inconsistent with this Agreement, and if such modification or change does not, or cannot reasonably be expected to, negatively impact the economic recovery or other rights in any respect that such party will receive under such Definitive Documents.

### 21. Governing Law; Jurisdiction.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to any provision that would require the application of the law of any other jurisdiction. Each party irrevocably and unconditionally (a) agrees that any legal action, suit or proceeding (collectively, **"Actions"**) against it with respect to any matter arising under, out of or in connection with, this Agreement or the restructuring, or for recognition or enforcement of any judgment rendered in any such Action, may be brought in the United States District Court for the Southern District of New York, and (b) accepts and

submits itself to the exclusive jurisdiction of such court, generally and unconditionally, with respect to any such Action. Notwithstanding the foregoing, during the pendency of the Chapter 11 Cases, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising under, out of, or in connection with this Agreement.

### 22. Waiver of Jury Trial.

Each party hereto hereby irrevocably and unconditionally waives any right it may have to a trial by jury in any Action arising under, out of, or in connection with, this Agreement.

### 23. Specific Performance.

The parties hereto acknowledge and agree that money damages may not be an adequate remedy for any breach of the terms of this Agreement and, accordingly, (a) agree that each non-breaching party is entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach, including an order of the Bankruptcy Court or other court of competent jurisdiction requiring any party to comply promptly with any of its obligations hereunder, and (b) waive any requirement for the securing or posting of a bond in connection with such remedy; provided, however, the foregoing shall not be the parties' exclusive remedy and the parties may pursue any and all remedies available at law or equity.

### 24. Several and Not Joint.

The representations, warranties, obligations, liabilities and indemnities of each party hereunder shall be several and not joint, and no party shall have any liability hereunder for any breach by any other party, respectively, of any obligation of such party, as the case may be, set forth herein.

### 25. Publicity.

The parties agree that all public announcements of the entry into or the terms and conditions of this Agreement, the Definitive Documents, and the transactions described in the Joint Plan of Reorganization Summary of Terms shall be made by the Sponsor or upon the Sponsor's written consent; provided, however, that (a) the Debtors and the Sponsor Creditors shall be permitted to disclose the transactions contemplated hereby in any pleading filed in the Chapter 7 Cases and the Chapter 11 Cases, without any consent of the other parties; and (b) any of the parties hereto shall be permitted to make any public disclosure as may be required by law, regulation or generally accepted accounting principles applicable to them.

### 26. Survival.

Notwithstanding any other provision hereof, the agreements and obligations of the parties hereto in Sections 17-35, inclusive, shall survive any termination of this Agreement and shall continue in full force and effect for the benefit of the other parties hereto, as applicable, in accordance with the terms hereof.

## 27. Reservation of Rights.

Nothing herein shall be deemed an admission of any kind with respect to any other proceeding. If the transactions contemplated herein are not consummated, or this Agreement is terminated for any reason, the Parties fully reserve any and all of their rights. Pursuant to Rule 408 of the Federal Rules of Evidence, any applicable state rules of evidence and any other applicable law, foreign or domestic, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms or in the Chapter 11 Cases.

## 28. Representation by Counsel.

Each party hereto acknowledges that it has had the opportunity to be represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement. Accordingly, any rule of law or any legal decision that would provide any party hereto with a defense to the enforcement of the terms of this Agreement against such party based upon lack of legal counsel shall have no application and is expressly waived.

## 29. Successors and Assigns.

This Agreement shall bind and enure to the benefit of the parties and their respective successors, assigns, heirs, executors, administrators and representatives.

## 30. Costs and Expenses.

Each party shall bear their own costs and expenses of negotiating and preparing this Agreement.

## 31. Counterparts.

This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts and by facsimile or other electronic transmission, with the same effect as if all parties had signed the same document. All such counterparts shall be deemed an original, shall be construed together and shall constitute one and the same instrument.

## 32. Severability.

Any term or provision of this Agreement that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction. If any provision of this Agreement is so broad as to be unenforceable, the provision shall be interpreted to be only as broad as is enforceable.

## 33. Headings.

The headings of the paragraphs of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

## 34. **Notice.**

Any notices or other communications required or permitted under, or otherwise in connection with, this Agreement shall be in writing and shall be deemed to have been duly given when delivered in person or upon confirmation of receipt when transmitted by electronic mail (but only if followed by transmittal by national overnight courier or hand for delivery on the next business day) or on receipt after dispatch by registered or certified mail, postage prepaid, or on the next business day if transmitted by national overnight courier, addressed in each case as follows:

    a)    To the Debtors at:

FKF Madison Park Group Owner, LLC
JMJS 23rd Street Realty Owner, LLC
Madison Park Group Owner, LLC
Slazer Enterprises Owner, LLC
Attn. Ira J. Shapiro
P.O. Box 707
New City, NY 10956
Tel: (914) 629-0119
Fax: (845) 215-0175
Email: slazer@optonline.net

with a copy (which shall not constitute notice) to:

| | |
|---|---|
| Jeffrey W. Dulberg, Esq. | Bruce Grohsgal, Esq. |
| Pachulski Stang Ziehl & Jones LLP | Pachulski Stang Ziehl & Jones LLP |
| 10100 Santa Monica Boulevard | 919 North Market Street |
| 11th Floor | 17th Floor |
| Los Angeles, CA 90067-4100 | Wilmington, DE 19801 |
| Tel: (415) 263-7000 | Tel: (302) 652-4100 |
| Fax: (415) 263-7010 | Fax: (302) 652-4400 |
| Email: jdulberg@pszjlaw.com | Email: bgrohsgal@pszjlaw.com |

    b)    If to Mad 52, LLC at:

Michael Merola
The Continuum Company
590 Madison Avenue
26th Floor
New York, NY 10022
(212) 554-3712
(212) 554-3710
michaelm@continuumllc.net

with a copy (which shall not constitute notice) to:

Mary F. Caloway, Esq.
Buchanan Ingersoll & Rooney
1000 West Street
Suite 1410
Wilmington DE 19801
Tel: (302) 552 4200
Fax: (302) 552 4295
Email: mary.caloway@bipc.com

c)      If to Stephen Kraus at:

Stephen Kraus
33-01 Vernon Boulevard
Long Island City, NY 11106
Tel: (718) 274-5000
Fax: (718) 777-4280
srk@krausinc.com

with a copy (which shall not constitute notice) to:

Mary F. Caloway, Esq.
Buchanan Ingersoll & Rooney
1000 West Street
Suite 1410
Wilmington DE 19801
Tel: (302) 552 4200
Fax: (302) 552 4295
Email: mary.caloway@bipc.com

d)      If to Mitchell Kraus at:

Mitchell Kraus
33-01 Vernon Boulevard
Long Island City, NY 11106
Tel: (718) 274-5000
Fax: (718) 777-4280
mhk@krausinc.com

with a copy (which shall not constitute notice) to:

Mary F. Caloway, Esq.
Buchanan Ingersoll & Rooney
1000 West Street
Suite 1410
Wilmington DE 19801
Tel: (302) 552 4200
Fax: (302) 552 4295
Email: mary.caloway@bipc.com

e)    To Sponsor at:

New One Madison Park Member I, LP
590 Madison Avenue
26th Floor
New York, NY 10022

with a copy (which shall not constitute notice) to:

Gregory Fishman, Esq.
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
Tel: (312) 456-8434
Fax: (312) 899-0422
Email: fishmang@gtlaw.com

Michael H. Goldstein, Esq.
Greenberg Traurig, LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404
Tel: (310) 586-7750
Fax: (310) 586-0250
Email: goldsteinmh@gtlaw.com

### 35.    Independent Due Diligence and Decision Making.

Each party confirms that its decision to execute this Agreement has been based upon its independent investigation of the operations, businesses, financial and other conditions and prospects of the Debtors. To the extent any materials or information have been furnished to it by another party, each party acknowledges that it has been provided for informational purposes only, without any representation or warranty.

* * * * *

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

[Signature Pages To Follow]

FKF MADISON GROUP OWNER, LLC,
a Delaware limited liability company

By:    Slazer Enterprises LLC
Its:    Manager

       By:  _____
       Name: Ira J. Shapiro
       Its:    Member


FKF MADISON GROUP OWNER, LLC,
a Delaware limited liability company

By:  _____
Name: Ira J. Shapiro
Its:    President and Secretary

JMJS 23RD STREET REALTY OWNER, LLC,
a Delaware limited liability company

By:    Slazer Enterprises LLC
Its:    Manager

        By:   _____
        Name: Ira J. Shapiro
        Its:    Member


JMJS 23RD STREET REALTY OWNER, LLC,
a Delaware limited liability company

By:   _____
Name: Ira J. Shapiro
Its:    President and Secretary

MADISON PARK GROUP OWNER, LLC,
a Delaware limited liability company

By:    Slazer Enterprises LLC
Its:    Manager

      By:   _____
      Name: Ira J. Shapiro
      Its:    Member


MADISON PARK GROUP OWNER, LLC,
a Delaware limited liability company

By:   _____
Name: Ira J. Shapiro
Its:    President and Secretary

SLAZER ENTERPRISES OWNER, LLC,
a Delaware limited liability company

By:     Slazer Enterprises LLC
Its:     Member

     By:     _____
     Name: Ira J. Shapiro
     Its:     Member


SLAZER ENTERPRISES OWNER, LLC,
a Delaware limited liability company

By:     _____
Name: Ira J. Shapiro
Its:     President and Secretary

Ira J. Shapiro, an individual

Plan Support Agreement Signature Page of Ira Shapiro

60,470,167
CHI 60,470,167v13

MAD 52, LLC
a New York limited liability company

By:
Name: Ian Bruce Eichner
Its:    Member

_Mitchell Kraus_

Mitchell Kraus, an individual

Plan Support Agreement Signature Page of Mitchell Kraus

60,470,167

_(signature)_

Stephen Kraus, an individual

Plan Support Agreement Signature Page of Stephen Kraus

00,470,707

NEW ONE MADISON PARK MEMBER I LP
a Delaware limited partnership

By:    New One Madison Park GP, LLC
Its:    General Partner

By: _____
Name: Ian Bruce Eichner
Its:    Sole Member

60,470,167