# Exhibit B to EXHIBIT 1
(Form of Interim DIP Order)

# Exhibit B

# Form of Interim DIP Order

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FKF MADISON PARK GROUP OWNER, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-11867 (KG)<br><br>(Joint Administration Pending)<br><br>Related Docket No. [ ] |

## INTERIM DIP ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(d)(1), AND 364(e) AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-PETITION SECURED FINANCING AND (B) TO UTILIZE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES AND (III) SCHEDULING A FINAL HEARING

FKF Madison Park Group Owner, LLC, JMJS 23rd Street Realty Owner, LLC, Madison Park Group Owner, LLC and Slazer Enterprises Owner, LLC (collectively, the "Debtors")[2] having moved on November 22, 2010 (the "Motion") for interim and Final DIP Orders authorizing them to, among other things, (i) incur postpetition secured indebtedness, (ii) grant security interests and superpriority claims, and (iii) grant adequate protection, pursuant to sections 105(a), 362, and 364(c), (d), and (e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and having sought the following relief:

(a) This Court's authorization, pursuant to Bankruptcy Code sections 105(a), 362, and 364(c), (d), and (e) and Bankruptcy Rules 2002, 4001 and 9014, for (i) FKF Madison Park

---

[1] The Debtors in these cases, along with the last four digits of their EIN, are: FKF Madison Group Owner, LLC (Case No. 10-11867) (3699); JMJS 23rd Street Realty Owner, LLC (Case No. 10-11868) (6651); Madison Park Group Owner, LLC (Case No. 10-11869) (3701); and Slazer Enterprises Owner, LLC (Case No. 10-11870) (4339). The Debtors' address is 230 Congers Road, New City, NY 10920.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Amended DIP Loan Commitment Letter.

Group Owner, LLC, (ii) JMJS 23rd Street Realty Owner, LLC, (iii) Madison Park Group Owner, LLC and (iv) Slazer Enterprises Owner, LLC, in their capacity as borrowers (the "Borrowers"), to enter into a debtor in possession financing loan pursuant to the terms and conditions of that certain Amended Debtor In Possession Loan Commitment Letter (as amended, restated or otherwise modified from time to time in accordance with the terms hereof and thereof, the "Amended DIP Loan Commitment Letter"), a copy of which is attached to the Motion as Exhibit A with New One Madison Park Member I, LP (the "DIP Lender"), to obtain a debtor-in-possession financing loan (the "DIP Loan") in an aggregate principal amount not to exceed $1,100,000 on the terms and conditions of the Amended DIP Loan Commitment Letter (together with the Interim DIP Order (as defined below), the Final DIP Order (as defined below) (the "DIP Loan Documents").

(b) This Court's ordering, pursuant to Bankruptcy Code sections 364(c)(1) and (2) and 364(d)(1), that the obligations of the Debtors under the DIP Loan Documents (collectively, the "DIP Obligations") are, as more specifically set forth in this Interim DIP Order, the grant of security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) of the Bankruptcy Code, and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the DIP Lender to secure all obligations of the Debtors under and with respect to the DIP Loan;

(c) This Court's approval pursuant to Bankruptcy Code sections 361 and 364 of the form and manner of adequate protection set forth herein to be provided to iStar Tara, LLC ("iStar") and other lienholders as applicable (the "Other Lienholders") including, without limitation, authorizing and directing the Debtors to employ and retain Lee Buchwald of

2

Buchwald Capital Advisors LLC as the Chief Restructuring Officer of each of the Debtors (the "CRO");

(d) This Court's scheduling of an interim hearing (the "Interim Hearing") pursuant to Bankruptcy Rule 4001(c)(2) to consider the entry of an Interim DIP Order in the form hereof (this "Interim DIP Order") which, among other things, (i) approves, on an interim basis, the postpetition secured financing to be made pursuant to the DIP Loan Documents, (ii) authorizes the Debtors to obtain Loan Advances on an interim basis in accordance with the DIP Loan Documents following the entry of this Interim DIP Order, in the aggregate principal amount of up to $315,000 (the "Interim Borrowing"), and (iii) grants adequate protection to iStar and the Other Lienholders for as provided in this Interim DIP Order;

(e) This Court's scheduling, pursuant to Bankruptcy Rule 4001(c)(2), of a hearing (the "Final Hearing") to consider entry of a Final DIP Order (the "Final DIP Order") which, among other things, (i) approves, on a final basis, the DIP Loan Documents, (ii) authorizes, on a final basis, the DIP Loans to be made pursuant to the DIP Loan Documents in an aggregate principal amount of up to $1,100,000 the availability of which shall be limited pursuant to the budget attached hereto as Exhibit A (the "Approved Budget") and the variances from such Approved Budget permitted herein, and (iii) grants, on a final basis, adequate protection to iStar and the Other Lienholders as provided in the Final DIP Order;

(f) This court's finding, pursuant to Bankruptcy Rules 2002 and 4001(c)(1), and the Local Rules of this Court that notice of the Interim Hearing was sufficient having been given to (i) the United States Trustee (the "U.S. Trustee"), (ii) counsel to the DIP Lender, (iii) counsel to any known secured creditors of record, (iv) counsel to iStar, (v) the thirty (30) largest unsecured creditors of the Debtors, (vi) any party asserting a lien against any of the Debtors' assets, and

3

(vii) the Internal Revenue Service (collectively, the "Notice Parties"); and such notice being sufficient and adequate, and no other or further notice being required; and

(g) The Interim Hearing having been held on December 16, 2010; and based upon all of the pleadings filed with this Court, the evidence presented at the Interim Hearing and the entire record herein; and this Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and this Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

**IT IS HEREBY FOUND:**[3]

A. <u>The Property</u>. The Debtors are the tenant in common owners of the land, the improvements, the unsold units which have been or will be developed, designed, and constructed at 23 East 22nd Street, New York, New York 10010 (and sometimes also referred to as 20 East 23rd Street) consisting of a fifty (50) story hi rise tower containing sixty nine (69) residential units of which fifty-seven (57) units remain unsold and contain approximately 117,982 net sellable square feet, and amenities, and limited common elements (the "North Tower"), as well as an adjacent lot known as 23 East 22nd, together with the land underlying and abutting the North Tower and the adjacent lot, the improvements, the unsold units, all easements, air rights, development rights, sewer rights, water rights, servitudes, rights of way, streets, ways, alleys and other appurtenances thereto in any way relating to the foregoing.(the "<u>Property</u>").

B. <u>Petition Date</u>. On June 8, 2010 (the "<u>Petition Date</u>"), involuntary chapter 7 petitions were filed against each of the Debtors by creditors Stephen Kraus, Mitchell Kraus,

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052

4

Barbara Kraus and Kraus Hi-Tech Home Automation, Inc. (the "Original Petitioning Creditors") thereby commencing against the Debtors involuntary chapter 7 cases (the "Chapter 7 Cases"). Various creditors subsequently joined in the involuntary petitions.4

  C. The Dismissal Motion and the Conversion Orders. On or about June 29, 2010, the Debtors filed a motion to dismiss the Petitions (the "Motion to Dismiss"). On November 18, 2010, the Petitioning Creditors filed a motion (the "Conversion Motion") seeking immediate entry of orders for relief followed by conversion of the Chapter 7 Cases to proceedings under chapter 11 of title 11 of the Bankruptcy Code. On the same date, the Debtors filed concurrently their Withdrawal Of Opposition To Involuntary Petitions, Notice Of Non-Opposition To Entry Of Order For Relief, And Joinder In Motion To Convert To Cases To Chapter 11 Cases (the "Notice of Withdrawal") [Docket No. 113 in 10-11867, Docket No. 105 in 10-11868, Docket No. 106 in 10-11-11869, and 111 in 10-11870]. On November 19, 2010, the Court entered orders for relief in the Chapter 7 Cases and entered orders converting the Chapter 7 Cases to chapter 11 cases (the "Conversion Date") [Docket Nos. 119 in 10-11867, Docket No. 111 in 10-11868, Docket No. 112 in 10-11-11869, and 117 in 10-11870].

  D. Jurisdiction; Venue. This Court has jurisdiction over the Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. §§157(b)(2)(D) and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D). Venue for the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

  E. iStar Prepetition Loan Agreements. All of the Debtors are alleged parties to the following loan agreements with iStar: (a) Senior Loan and Security Agreement between Debtors and SFT I, Inc. as lender ("SFT") dated as of November 16, 2007 (the "Senior Loan");

---

4 These creditors are: Joe Coffey, Harvey Schiller, Pace Plumbing, Gotham Greenwich Construction, LLC and Mad 52, LLC (the "Joining Creditors" together with the Original Petitioning Creditors, the "Petitioning Creditors")

5

(b) Project Loan and Security Agreement between Debtors and SFT dated as of November 16, 2007 (the "Project Loan"), and (c) Building Loan and Security Agreement between Debtors and SFT dated as of November 16, 2007 (the "Building Loan"), as such Senior Loan, Project Loan and Building Loan (the "Loans"). The Loans allegedly have been modified by that certain Modification Of Loan Agreements And Other Loan Documents between Debtors and iStar Tara LLC ("iStar") (as successor in interest to SFT) as lender dated as of June 24, 2009 (collectively, the "Loan Agreements").

  F.  iStar Prepetition Obligations. For purposes of this Interim DIP Order, (i) the term "iStar Prepetition Obligations" shall mean all indebtedness and other amounts owed, as of the Petition Date, iStar under the Loan Agreements. iStar asserts that as of the Petition Date, the total outstanding obligations due and owing under the Loan Agreements and related promissory notes (collectively, the "Notes") was approximately $233.5 million (collectively, the "iStar Prepetition Obligations").

  G.  iStar Prepetition Liens. To secure the iStar Prepetition Obligations under the Loan Agreements, iStar asserts that the Debtors granted iStar liens and security interests (collectively, the "iStar Prepetition Liens") upon and in substantially all of the Debtors' real property, the leases and rents from the real property and substantially all of the Debtors' personal property and fixtures (collectively, the "Prepetition Collateral") pursuant to the following security documents: (a) Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Senior Loan) dated November 16, 2007; (b) Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Project Loan) dated November 16, 2007; (c) Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases

and Rents and Fixture Filing (Building Loan) dated November 16, 2007; (d) Second Gap Mortgage With Security Agreement, Assignment of Leases and Rents and Fixture Filing (Project Loan) dated June 24, 2009; (e) Second Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Project Loan) dated June 24, 2009 (collectively, the "Mortgages"); and (f) certain UCC Financing Statement filings of record made by iStar (or its predecessor) with respect to the Debtors.

H. <u>iStar Postpetition Obligations</u>. Following the commencement of the Chapter 7 Cases, iStar filed a motion [Docket No. 13] (the "<u>First Funding Motion</u>") seeking authority to continue making protective advances during June and July 2010 in an amount up to $488,610 pursuant to an approved budget, in order to fund (i) operating and maintenance expenses for the Property, including payroll for staff, payment of the Building's managing agent, utilities, insurance, permits and warranty-related costs and (ii) "emergency repairs and construction to ensure the safety of the Building and the health and welfare of the residents and the public." The First Funding Motion was approved by order of the Court on June 30, 2010 [Docket No. 26]. On July 16, 2010, iStar filed a second motion [Docket No. 34] (the "<u>Second Funding Motion</u>") for authority to make protective advances to fund expenses of the Property (consistent with the First Funding Motion) through September 30, 2010 in an amount up to $584,615 pursuant to the budget attached to the Second Funding Motion. Additionally, the Second Funding Motion sought authority to pay the premium to renew the Debtors' construction liability insurance policy through January 20, 2011 estimated in the amount of $65,000. The Second Funding Motion was approved by order of the Court on July 30, 2010 [Docket No. 38]. On September 8, 2010, iStar filed a motion [Docket No. 80] (the "<u>Third Funding Motion</u>") for authority to make protective advances in pay certain professional fees of the Receiver in

7

connection with his management of the Property upon a determination by the New York Supreme Court of the amount of fees the Receiver and his professionals are entitled to be paid under New York law with such advances to be secured by liens on the real and personal property comprising the Prepetition Collateral having the same validity extent and priority as the iStar Prepetition Liens. The Receiver Funding Motion was approved by order of the Court on September 22, 2010 [Docket No. 88]. On September 23, 2010, iStar filed a fourth motion [Docket No. 87] (the "Fourth Funding Motion," and together with the First Funding Motion, the Second Funding Motion, and the Third Funding Motion, the "Funding Motions") for authority to make protective advances to fund the expenses of the Property (consistent with the First and Second Funding Motions) through December 31, 2010 in an amount of up to $664,369 pursuant to the budget attached to the Third Funding Motion. The Third Funding Motion also requested authority to pay the real estate taxes due to the City of New York with respect to the Property for the third and fourth quarters of 2010 in the estimate amount of $430,845.76 for third quarter (and unpaid second quarter) taxes and $248,643.75 for fourth quarter taxes. Third Funding Motion at ¶ 21, and Ex. A. The Third Funding Motion was approved by order of the Court on October 6, 2010 [Docket No. 98]. iStar asserts that as of October 31, 2010, the total amount of protective advances it has disbursed to the Receiver and third parties since the commencement of the Chapter 7 Cases is $886,114.85 (the "iStar Postpetition Obligations" together with iStar Prepetition Obligations, the "iStar Obligations").

    I.    Other Lienholders and the Other Liens. The Debtors believe that certain Other Lienholders may assert that their liens also attach to the Collateral (as defined below) (the "Other Liens") to secure certain prepetition obligations of the Debtors to the Other Lienholders.

J.  Debtors' Stipulations. In requesting postpetition financing under the DIP Loan Documents, the Debtors acknowledge, represent, stipulate, and agree that:

(i) in entering into the DIP Loan Documents, and as consideration therefor, the Debtors hereby agree that until such time as all DIP Obligations are indefeasibly paid in full in cash and the commitments related thereto are terminated in accordance with the terms of the DIP Loan Documents, the Debtors shall not in any way grant, seek to grant, or cause to be granted any lien and/or claim that is senior to or *pari passu* with any of the liens, security interests and claims provided under this Interim DIP Order to the DIP Lender, including, without limitation, by offering a subsequent lender or any other party a superior or *pari passu* lien or claim pursuant to Bankruptcy Code section 364(d), or otherwise, except with respect to the Carve-Out;

(ii) the DIP Lender is not and shall not be deemed to be a control person or insider of the Debtors by virtue of any of the actions taken by such parties in respect of or in connection with the DIP Obligations;

(iii) as of the Petition Date, the Debtors have not brought, and are not aware of, any claims or causes of action belonging to the Debtors that exist or are likely to arise against the DIP Lender; and

K.  Purpose and Necessity of Financing. The Debtors require the financing described in the Motion to fund the necessary and critical ordinary course expenses of maintaining and preserving the Property consistent with the terms set forth in the DIP Loan Documents, and for other purposes permitted by the DIP Loan Documents. If the Debtors do not obtain authorization to borrow under the DIP Loan Documents and the DIP Loan is not approved, the Debtors will suffer immediate and irreparable harm. The Debtors are unable to

9

LA-129,207,737v5

obtain adequate unsecured credit allowable as an administrative expense under Bankruptcy Code section 503, or other financing under Bankruptcy Code sections 364(c) or (d), on equal or more favorable terms than those set forth in the DIP Loan Documents based on the totality of the circumstances. Moreover, loan advances in the amount provided by the DIP Loan Documents are not available to the Debtors without granting the DIP Lender superpriority claims, priming liens, and security interests, pursuant to Bankruptcy Code sections 364(c)(1), (2) and 364(d), as provided in this Interim DIP Order and the DIP Loan Documents. After considering all alternatives, the Debtors have concluded, in the exercise of their prudent business judgment, that the DIP Loan provided under the DIP Loan Documents represents the best financing package available to it and is in the best interests of the estate and its creditors. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and adequately protect any non-consenting parties' interests in the Collateral.

L. <u>Good Faith</u>. The DIP Loan Documents have been negotiated in good faith and at arm's-length by and among the Debtors and the DIP Lender. The DIP Loan and/or other financial accommodations made to the Debtors by the DIP Lender pursuant to this Interim DIP Order and/or the DIP Loan Documents shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in Bankruptcy Code section 364(e), and the DIP Lender shall be entitled to all protections afforded thereunder, including, without limitation, the full protection of Bankruptcy Code section 364(e) in the event that this Interim DIP Order or any provision thereof is vacated, reversed or modified, on appeal or otherwise. The terms of the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business

10

LA-129,207,737v5

judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M. <u>Consideration</u>. The Debtors will receive and have received fair and reasonable consideration in exchange for access to the DIP Loans and all other financial accommodations provided under the DIP Loan Documents and this Interim DIP Order.

N. <u>Notice</u>. Sufficient and adequate notice of the Interim Hearing and the entry of this Interim DIP Order have been given in accordance with Bankruptcy Rule 4001, and no other or further notice need be given for entry of this Interim DIP Order.

O. <u>Immediate Entry of Interim DIP Order</u>. The Debtors have requested immediate entry of this Interim DIP Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The Motion and this Interim DIP Order comply with Local Bankruptcy Rule 4001-2. The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Interim DIP Order is in the best interests of the Debtors' estates and their creditors as its implementation will provide for payment of the necessary and critical ordinary course expenses of maintaining and preserving the Property and further enhance the Debtors' prospects for a successful restructuring. Based upon the foregoing findings, acknowledgements, and conclusions, aid upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED:**

1. <u>Disposition</u>. The Motion is granted on an interim basis, subject to the terms set forth herein, and the terms and provisions of the Amended DIP Loan Commitment Letter annexed hereto as Exhibit A are approved in all respects. Any objections to the Motion that have

11

not previously been withdrawn or resolved are hereby overruled on their merits. This Interim DIP Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014. The terms and provisions of the DIP Loan Documents are approved on an interim basis.

2. <u>Authorization.</u>

(a) The Debtors are hereby authorized to immediately obtain a DIP Loan, pursuant to the terms of this Interim DIP Order and subject to the terms of the DIP Loan Documents, in the aggregate principal amount of up to the Interim Borrowing. Available financing and advances under the Amended DIP Loan Commitment Letter shall be made to fund, in accordance with the DIP Loan Documents, the necessary and critical ordinary course expenses of maintaining and preserving the Property and the costs of the Chapter 11 Cases in accordance with the Approved Budget (and the variances permitted thereto).

3. <u>Authority to Execute and Deliver Necessary Documents.</u>

(a) The Debtors are authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, in each case including any amendments thereto. The Debtors are further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, and mortgages or deeds of trust encumbering all of the Collateral and securing all of the Debtors' obligations under the DIP Loan Documents

(b) The Debtors are hereby further authorized to (i) perform all of their obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein and in this Interim DIP Order, and (ii) perform all acts required under the DIP Loan Documents and this Interim DIP Order, including, without limitation, the payment of fees, and the reimbursement of

present and future costs and expenses (including without limitation, the DIP Lender's attorneys' and other advisors' fees and expenses), paid or incurred by the DIP Lender as provided for in the DIP Loan Documents. All such unpaid fees, costs, and other expenses shall be included and constitute part of the principal amount of the DIP Obligations and be secured by the DIP Liens.

(c) All obligations under the DIP Loan Documents shall constitute valid and binding obligations of the Debtors, enforceable against them and their successors and assigns (including, without limitation, any successor trustee or other estate representative in the Chapter 11 Cases or subsequent or superseding chapter 7 or Chapter 11 Cases (each, a "Successor Case")), in accordance with the terms of the DIP Loan Documents and the terms of this Interim DIP Order, and no obligation, payment, transfer or grant of security under the DIP Loan Documents or this Interim DIP Order shall be voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Bankruptcy Code section 502(d)) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4. DIP Lender's Superpriority Claim. The DIP Lender is hereby granted an allowed superpriority administrative expense claim (the "Superpriority Claim") pursuant to Bankruptcy Code section 364(c)(1) for all DIP Obligations, having priority over any and all other administrative claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 or otherwise, whether or not such expenses or claims may

13

become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof including, without limitation, but subject to the entry of the Final DIP Order; provided that the Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to the payment of the Carve-Out and shall not extend to the proceeds of Avoidance Actions (hereinafter defined). Except as set forth herein, no other superpriority claims shall be granted or allowed in the Chapter 11 Cases.

5. DIP Liens.

    (a) The DIP Obligations shall be secured by:

        i. valid, properly perfected, first priority senior liens on all now existing and hereafter acquired (whether before or after the Petition Date) assets of the Debtors, including, without limitation, all of Debtors' existing and future acquired property and interests of any nature whatsoever, real and personal, tangible and intangible, including without limitation, accounts receivable, general intangibles, payment intangibles, supporting obligations, investment property, development orders, environmental permits or other approvals to develop any real property, machinery, equipment, subsidiary capital stock, chattel paper, documents, instruments, deposit accounts, contract rights, tax refunds, and all rights, claims, and other causes of action of the Debtors and the Debtors' estates (including any actions asserted by the Debtors or any subsequently appointed trustee or representative of the Debtors' estates under any section of the Bankruptcy Code, and in each case, all proceeds resulting therefrom, excluding, however, avoidance actions ("Avoidance Actions") under sections 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code) (collectively, the "Collateral") pursuant to section 364(d)(1) of the Bankruptcy Code, with such liens securing the DIP Obligations to prime and be deemed senior to

14

all other liens maintained with respect to any of Debtors' now existing or hereafter acquired property; <u>provided, however,</u> if it is determined that the Debtors have an interest in any commercial tort claims or tax refunds that is property of the Debtors' estates, the proceeds of such interests shall be part of the Collateral; and

        ii.      perfected, first-priority senior liens, pursuant to Section 364(c)(2) of the Bankruptcy Code, on that portion of the Collateral that is unencumbered property of Debtors.

    (b)    In each case, the Collateral shall also include any and all rents, issues, products, offspring and profits generated by any item of Collateral, without the necessity of any further action or any kind or nature by the DIP Lender in order to claim or perfect such interests.

    (c)    The DIP Liens shall not at any time be (i) made subject or subordinate to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under Bankruptcy Code section 364(d) or otherwise, other than the Carve-Out or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

    (d)    The DIP Liens, Superpriority Claim, and other rights and remedies granted under this Interim DIP Order to the DIP Lender, shall continue in the Chapter 11 Cases and in any Successor Case, and such liens and security interests shall maintain their first priority as provided in this Interim DIP Order until all the DIP Obligations have been indefeasibly paid in full in cash and completely satisfied and the DIP Lender's commitments have been terminated in accordance with the DIP Loan Documents.

6.    <u>Fees</u>.  All fees, costs and/or expenses payable or reimbursable by the Debtors as set forth in the DIP Loan Documents are hereby approved. The Debtors are hereby authorized to

15

pay all such fees, costs, and expenses in accordance with the terms of the DIP Loan Documents and this Interim DIP Order, without the DIP Lender or its counsel having to file any further application with this Court for approval or payment of such fees, costs or expenses.

7. <u>Amendments, Consents, Waivers, and Modifications</u>. The Debtors and the DIP Lender may enter into any non-material amendments, consents, waivers or modifications to the DIP Loan Documents without the need for further notice and hearing or any order of this Court; including amendments to the Approved Budget, <u>provided</u>, <u>however</u>, that without the consent of the DIP Lender, no such amendment or waiver shall increase the lending commitment of any DIP Lender; <u>provided, further, however</u>, that the Debtors shall provide any official committee appointed in the Chapter 11 Cases and the U.S. Trustee with notice of any material modification to the DIP Loan Documents.

8. <u>Term</u>. All DIP Obligations shall be due and payable, and repaid in full, in cash, on the date (the "<u>Maturity Date</u>") that is the first to occur of: (i) March 31, 2011; (ii) the effective date of a plan of reorganization confirmed in one or more of the Chapter 11 Cases; (iii) conversion or dismissal of one or more of the Chapter 11 Cases; (iv) appointment of a trustee in one or more of the Chapter 11 Cases; or (v) the occurrence of an Event of Default including any applicable notice or cure period under, or as otherwise set forth in, the DIP Orders.

9. <u>Interest on DIP Obligations</u>. Interest on the DIP Obligations shall accrue at a variable rate, adjusted monthly, equal to the Prime Rate plus fifty (50) basis points (0.50%), and be paid payable monthly in arrears calculated on the basis of actual days elapsed in a year of three hundred and sixty (360) days. The Prime Rate shall be the prime rate as reported in The Wall Street Journal. The default rate of interest will be two percent (2%) higher than the rate otherwise payable.

16

LA-129,207,737v5

10. _Adequate Protection for iStar_. iStar has not consented to the incurrence of the DIP Obligations by the Debtors under the DIP Loan Documents and the Debtors' granting of priming liens in connection therewith. The Debtors acknowledge and stipulate that iStar is entitled, pursuant to Bankruptcy Code sections 361 and 364(d)(1), to adequate protection of its interests in the Prepetition Collateral, in exchange for the priming of iStar's security interests and liens in the Prepetition Collateral by the DIP Liens being granted to the DIP Lender pursuant to the DIP Loan Documents and this Interim DIP Order. As adequate protection, iStar is hereby granted the protections described in clauses (a), (b), (c) and (d) below, which shall be referred to collectively as the "iStar Adequate Protection Obligations"):

(a) _Adequate Protection Liens_. Pursuant to Bankruptcy Code sections 361 and 364(d), as adequate protection of the interests of iStar in the Prepetition Collateral against any diminution in value of such interests in the Prepetition Collateral on account of (i) the use of the Prepetition Collateral from and after the funding of the Loan Advances, or (ii) the granting of the DIP Liens, the Debtors will grant to iStar, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the Collateral (the "iStar Replacement Liens"). The iStar Replacement Liens shall be junior in priority only to: (i) DIP Liens; (ii) the Carve-Out (as described below); and (iii) to the extent that the Other Liens (as described below) are senior to the Prepetition Liens, the Other Liens and the Other Lienholder Replacement Liens; and will be of the same priority, validity and enforceability as the iStar Prepetition Liens. The iStar Replacement Liens shall be senior to all other liens.

(b) _Adequate Protection Claim_. As further adequate protection of the interests of iStar in the Prepetition Collateral against any diminution in value of such interests in the Property on account of (i) the use of the Prepetition Collateral from and after the funding of the

17

LA-129,207,737v5