Loan Advances, or (ii) the granting of the DIP Liens, iStar shall have a superpriority administrative expense claim in the Chapter 11 Cases (the "iStar Adequate Protection Priority Claim"). Except as set forth in the Interim DIP Order, the Adequate Protection Priority Claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114; provided, however, that the iStar Adequate Protection Priority Claim shall be junior in priority to the Superpriority Claim of the DIP Lender, the Carve-Out and the Other Lienholder Adequate Protection Claims to the extent that the Other Liens are senior to the iStar Prepetition Liens and shall not extend to the proceeds of Avoidance Actions (hereinafter defined).

      (c)    Appointment of CRO. As additional adequate protection for the use of the Prepetition Collateral by the Debtors, and in accordance with Bankruptcy Code sections 361 and 364, the Debtors are hereby authorized and directed to employ and retain Lee Buchwald of Buchwald Capital Advisors LLC as the Chief Restructuring Officer ("CRO") of each of the Debtors on the terms and conditions set forth in Mr. Buchwald's proposed retention agreement with the Debtors annexed to the Declaration of Lee Buchwald Regarding Disinterestedness filed as Docket No. [ ]. The CRO is authorized to operate and manage the day-to-day business activities of the Debtors including, without limitation, the administration of the DIP Loan.

      (d)    Reporting. As additional adequate protection for the use of the Prepetition Collateral by the Debtors, and in accordance with Bankruptcy Code sections 361 and 364(d), iStar shall receive, as applicable, from the Debtors the same documentation and reports provided

18

LA-129,207,737v5

by the Debtors to the DIP Lender pursuant to the terms of the Amended DIP Loan Commitment Letter, this Interim DIP Order or the Final DIP Order.

11. <u>Adequate Protection for Other Lienholders.</u>

(a) Pursuant to Bankruptcy Code sections 361 and 364(d), as adequate protection of the interests of Other Lienholders against any diminution in value of such interests in the Collateral on account of (i) the use of the Collateral from and after the funding of the Loan Advances and (ii) the granting of the DIP Liens, the Debtors will grant to such Other Lienholders, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the Collateral (the "<u>Other Lienholder Replacement Liens</u>"). The Other Lienholder Replacement Liens shall be junior in priority only to: (i) DIP Liens; (ii) the Carve-Out (as described below); and (iii) the iStar Prepetition Liens and the iStar Replacement Liens to the extent that the iStar Prepetition Liens are senior to the Other Liens; and will be of the same priority, validity and enforceability as the Other Liens. The Other Lienholder Replacement Liens shall be senior to all other liens.

(b) As further adequate protection of the interests of Other Lienholders in the Collateral against any diminution in value of such interests in the Collateral on account of (i) the use of the Collateral from and after the funding of the Loan Advances, or (ii) the granting of the DIP Liens, Other Lienholders shall have superpriority administrative expense claims in the Chapter 11 Cases (the "<u>Other Lienholder Adequate Protection Priority Claims</u>"). Except as set forth in the Interim DIP Order, the Other Lienholder Adequate Protection Priority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to

19

Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114; provided, however, that the Other Lienholder Adequate Protection Priority Claims shall be junior in priority to the Superpriority Claim of the DIP Lender, the Carve-Out and the iStar Adequate Protection Priority Claim to the extent the iStar Prepetition Liens are senior to Other Liens and shall not extend to the proceeds of Avoidance Actions (hereinafter defined).

(c) <u>Appointment of CRO</u>. The Debtors' employment and retention of the CRO shall serve as further adequate protection for the use of the Collateral by the Debtors.

12. <u>Carve-Out.</u>

(a) The liens and the superpriority claims securing the DIP Loan, the iStar Replacement Liens, the iStar Adequate Protection Priority Claim, the Other Lienholder Replacement Liens and the Other Lienholder Adequate Protection Claims shall be subject to a carve-out (the "<u>Carve-Out</u>") which shall mean collectively: (i) amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and all fees required to be paid to the Clerk of the Bankruptcy Court, which are incurred after the Conversion Date; (ii) allowed fees, expenses and costs of attorneys, accountants and other professionals retained in the Chapter 11 Cases by the Debtors (the "<u>Debtors' Professionals</u>") or any official committee of unsecured creditors (the "<u>Committee Professionals</u>") pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503 or 1103 to the extent permitted under the Approved Budget for such respective professionals in each case through such date of the Carve-out Trigger Notice, which are actually incurred and unpaid prior to the business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (the "<u>Carve-out Trigger Date</u>"), whether allowed prior to or after such date; and (iii) in the case of the Debtors' Professionals, an amount equal to the lesser of $75,000 and the amount of remaining

amount of the Approved Budget for the Debtors' Professionals after payment of their allowed fees and expenses incurred through the Carve-Out Trigger Date. In all instances, the payment fees and expenses is subject to the rights of the DIP Lender to object to the allowance of any such fees and expenses.

(b) No portion of the Carve-Out may be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, objection or other litigation against the DIP Lender.

(c) The DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals in the Chapter 11 Cases incurred in connection with the Chapter 11 Cases or any Successor Case under any chapter of the Bankruptcy Code. Nothing in this Interim DIP Order or otherwise shall be construed to obligate the DIP Lender in any way to pay compensation to or reimburse expenses of any Professional in the Chapter 11 Cases, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, except to the extent of the Carve-Out.

(d) No liens, claims, interests or priority status, other than the Carve-Out, having a lien or administrative priority superior to *pari passu* with that of the DIP Liens or the Superpriority Claim granted by this Interim DIP Order, shall be granted while any portion of the DIP Obligations remain outstanding, or any commitment under the DIP Loan Documents remains in effect, without the prior written consent of the DIP Lender.

(e) Effective upon entry of this Interim DIP Order, no party shall be entitled, directly or indirectly, to (i) charge the Carve-Out or the Collateral, whether by operation of Bankruptcy Code sections 105, 506(c) or 552(b) or otherwise or (ii) direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control

the disposition of Collateral after an Event of Default under the DIP Loan Documents, or termination or breach under the DIP Loan Documents.

13. <u>Release</u>. Upon entry of this Interim DIP Order, the Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in any Chapter 11 Cases or Successor Case), forever and irrevocably (i) release, discharge, and acquit the DIP Lender, and each of its respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, solely with respect to or relating to the negotiation and entry into the DIP Loan Documents, and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and nonavoidability of the DIP Liens and Superpriority Claims.

14. <u>Limitation on Additional Surcharges</u>. So long as the Maturity Date has not occurred, no action, inaction or acquiescence by the DIP Lender, including funding the Debtors' ongoing operations under this Interim DIP Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Lender to a charge against the Collateral pursuant to Bankruptcy Code sections 506(c), 552(b) or 105(a), and no such costs, fees or expenses shall be so charged against the Collateral without the prior written consent of the DIP Lender, to the extent of its interests in such Collateral. The DIP Lender shall not be subject in any way

22

LA-129,207,737v5

whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

15. <u>Additional Perfection Measures</u>. The DIP Liens, the iStar Replacement Liens and the Other Lienholder Replacement Liens shall be perfected by operation of law immediately upon entry of this Interim DIP Order. None of the Debtors, the DIP Lender, iStar or the Other Lienholders shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction, or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the DIP Liens, the iStar Replacement Liens or the Other Lienholder Replacement Liens.

(a) The DIP Lender, iStar and Other Lienholders may, but shall not be obligated to, obtain consents from any landlord, licensor or other party in interest, file mortgages, financing statements, notices of lien or similar instruments, or otherwise record or perfect such security interests and liens, in which case:

i. all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim DIP Order; and

ii. no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b) In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Lender, iStar and Other Lienholders may, but shall not be obligated to, file a true and complete copy of this Interim DIP Order in any place at which any such instruments would or could be filed, together with a description of

Collateral or Prepetition Collateral, as applicable, and such filings by the DIP Lender, iStar and the Other Lienholders shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim DIP Order.

16. <u>Events of Default</u>. The occurrence of any of the following shall constitute an Event of Default under this Interim DIP Order upon notice to the Debtors by the DIP Lender:

(a) the failure to pay the DIP Obligations in cash in full upon the Maturity Date, or when due if prior to the Maturity Date;

(b) breach by the Debtors of any of their representations, warranties or covenants under the Amended DIP Loan Commitment Letter and the DIP Orders, which breach is not cured within ten business days of written notice by the DIP Lender to the Debtors of such breach;

(c) the filing of a plan of reorganization for one or more of the Debtors that does not provide for the payment in cash in full of the DIP Obligations;

(d) entry of an order in the Chapter 11 Cases to recover from any portion of the Collateral any costs or expenses of preserving or disposing of such Collateral under section 506(c) of the Bankruptcy Code; and

(e) the commencement of any litigation which, if successful, would have a material adverse impact on Debtors, their business, or their ability to repay the DIP Obligations or which would challenge in any respect the DIP Obligations or the DIP Liens.

17. <u>Automatic Stay Vacated and Modified.</u>

(a) Notwithstanding section 362 of the Bankruptcy Code, the automatic stay is hereby vacated and modified to the extent necessary to permit the DIP Lender, to: (x)

24

immediately (A) deliver a notice of an Event of Default; and (B) terminate or suspend any outstanding Loan Advances; and (y) upon five (5) business days' written notice (within which period the Debtors may only dispute the DIP Lender's declaration of an Event of Default on the basis of the events described in Paragraph 16(b) or 16(e), above, in the Bankruptcy Court on an expedited basis), the automatic stay of section 362 of the Bankruptcy Code shall be terminated without further order of the Court, with the need for filing any motion for relief from the automatic stay or any other pleading, for the limited purpose of permitting the DIP Lender to do any one or more of the following: (A) charge the default rate of interest on the Loan Advances; and (B) declare the principal of and accrued interest, fees and expenses constituting the DIP Obligations to be due and payable. Upon and after the occurrence of an Event of Default, except as provided in the preceding sentence, the DIP Lender shall be required to file a motion seeking relief from the automatic stay to enforce any of its other rights or remedies. The Debtors are deemed to waive any right under Section 105 of the Bankruptcy Code to enjoin the exercise of the rights and remedies by DIP Lender following an Event of Default.

(b) The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the DIP Loan Documents or otherwise. The Debtors shall cooperate fully with the DIP Lender in their exercise of rights and remedies, whether against the Collateral or otherwise.

(c) This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim DIP Order and relating to the application, re-imposition or continuance of the automatic stay of Bankruptcy Code section 362(a) or other injunctive relief requested.

18. Loan Advances, Budget and Reporting.

(a) Proceeds from Loan Advances shall be used exclusively for funding the expenses (collectively, the "Approved Expenses") which are set forth in amount on the budget (the "Approved Budget") annexed hereto as Exhibit A, including: (x) normal operating expenses consistent with past practices, including (i) management expenses (ii) insurance (iii) payroll expenses, (iv) operating service and maintenance, and (v) utility expenses, including electricity, gas and telephone; and (y) fees of the United States Trustee and allowed professional fees of the Debtors and any official committee of unsecured creditors (the "Committee") appointed in the Chapter 11 Cases in amounts not to exceed that set forth in the Approved Budget and accrued and unpaid prior to the occurrence of an Event of Default, and, in the case of allowed professional fees of the Debtors, the lesser of $75,000 and the remainder of the amount set forth in the Approved Budget for fees and expenses of the Debtors' professionals and not expended as of the occurrence of such Event of Default. The Debtors will be permitted variances of up to 110% for each line item on the Approved Budget, exclusive of restructuring, legal and professional fees, and shall be permitted to carry forward from a prior month to the next succeeding month any unused portion of the aggregated actual amounts attributable to the prior month. For the avoidance of doubt, no portion of the DIP Loan, the collateral securing the DIP Loan, the proceeds of the DIP Loan or the Carve-Out may be used in connection with discovery proceedings, initiation or prosecution of any claims, causes of action, objection or other litigation against the DIP Lender or with respect to the DIP Obligations.

(b) Loan Advances shall occur no more frequently than once a month and shall be in a minimum amount of $100,000 unless less than $100,000 remains to be funded hereunder. During the period from the entry of the Interim DIP Order until the Final DIP Order becomes a Final DIP Order, Loan Advances shall not exceed $315,000. The DIP Orders

approving the DIP Obligations shall include the Approved Budget. No later than the third (3rd) business day of every week commencing with the week following the week of the approval of the Interim DIP Order, the Debtors shall deliver: (i) a variance report detailing: (x) the cash expenditures for the prior week and a comparison to the Approved Budget for that week; (y) the cumulative cash expenditures for all of the prior weeks since the Conversion Date and as compared to the Approved Budget for such weeks; and (z) a narrative explanation of the variances between the actual weekly expenditures and the budgeted weekly expenditures; and (ii) an updated weekly cash flow forecast for the then remaining period of the Approved Budget (the "Updated Budget"), consistent with the Approved Budget (collectively, the "Weekly Reports"). The Weekly Reports shall be subject to the review and approval by the DIP Lender, which approval shall not be unreasonably withheld. Subject to the approval of the DIP Lender, which shall not be unreasonably withheld and which shall not require any further Bankruptcy Court approval, the Updated Budget shall be deemed the Approved Budget.

(c) The Debtors shall additionally provide to the DIP Lender the following reports and information:

i. monthly financial statements, operating reports, and budget and operating plans for each such monthly period (the "Monthly Reports");

ii. on an as-requested basis all such other reports and information respecting the Debtors' business, financial condition or prospects as the DIP Lender from time to time reasonably requests; and

iii. copies of all pleadings, motions, applications, judicial information and other documents filed by or on behalf of the Debtors with the Bankruptcy Court or the U.S. Trustee.

(d) The delivery of the Weekly Reports and the Monthly Reports shall be accompanied by a certification from the Debtors that such Weekly Reports and Monthly Reports are true and correct in all material respects.

19. <u>Access</u>. The DIP Lender and its respective agents and advisors shall have full access, upon reasonable notice during normal business hours, to the Debtors' business records, business premises, and to the Collateral to enable the DIP Lender or its agents and advisors to (a) review, appraise, and evaluate the physical condition of the Collateral, (b) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' business and the Property, and (c) evaluate the Debtors' overall financial condition and all other records relating to the operations of the Debtors and the Property. The Debtors shall fully cooperate with the DIP Lender regarding such reviews, evaluations, and inspections, and shall make their employees and professionals available to the DIP Lender and its professionals and consultants to conduct such reviews, evaluations, and inspections.

20. <u>Insurance Policies</u>. Upon entry of this Interim DIP Order, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtors which in any way relates to the Collateral. The Debtors are authorized and directed to take any actions necessary to have the DIP Lender be added as an additional insured and loss payee on each insurance policy.

21. <u>Indemnification</u>. The Debtors shall indemnify and hold harmless the DIP Lender, its affiliates and each of the respective officers, directors, members, partners, employees, agents, advisors, attorneys and representatives of each (each, an "<u>Indemnified Party</u>") from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation,

28

reasonable fees and disbursements of counsel), joint or several, that may be incurred by or asserted or awarded against any Indemnified Party (including, without limitation, in connection with or relating to any investigation, litigation or proceeding or the preparation of any defense in connection therewith), in each case arising out of or in connection with or by reason of the DIP Loan, the DIP Orders or any of the transactions contemplated thereby, or any actual or proposed use of the proceeds of the DIP Loan, except to the extent such claim, damage, loss, liability or expense is found in a final judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct. In the case of an investigation, litigation or other proceedings to which the indemnity in this paragraph applies, such indemnity shall be effective whether or not such investigation, litigation or proceeding is brought by the Debtors, any of their directors, security holders or creditors, an Indemnified Party or any other person, or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated by the Amended DIP Loan Commitment Letter are consummated. The Debtors further agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any of their security holders or creditors for or in connection with the transactions contemplated by the DIP Loan Documents, except for direct damages (as opposed to special, indirect, consequential or punitive damages (including, without limitation, any loss of profits, business or anticipated savings)) determined in a final judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct.

22. <u>Successors and Assigns</u>. The DIP Loan Documents and the provisions of this Interim DIP Order shall be binding upon the Debtors, the DIP Lender, iStar and the Other Lienholders, and each of their respective successors and assigns, and shall inure to the benefit of

29

LA-129,207,737v5

the Debtors, the DIP Lender, iStar and the Other Lienholders and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtors under any chapter of the Bankruptcy Code. The provisions of this Interim DIP Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest.

23. <u>Binding Nature of Agreement</u>. Each of the DIP Loan Documents to which the Debtors are or will become a party shall constitute legal, valid, and binding obligations of the Debtors party thereto, enforceable in accordance with their terms. The DIP Loan Documents have been or will be properly executed and delivered to the DIP Lender by the Debtors no later than one business day after entry of this Interim DIP Order. The rights, remedies, powers, privileges, liens, and priorities of the DIP Lender provided for in this Interim DIP Order and in the DIP Loan Documents shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order), by any plan of reorganization or liquidation in the Chapter 11 Cases, by the dismissal or conversion of the Chapter 11 Cases or in any Successor Case under the Bankruptcy Code unless and until the DIP Obligations have first been indefeasibly paid in full in cash and completely satisfied and the commitments terminated in accordance with the DIP Loan Documents.

24. <u>Subsequent Reversal or Modification</u>. This Interim DIP Order is entered pursuant to Bankruptcy Code section 364, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lender all protections afforded by Bankruptcy Code section 364(e). If any or all of the provisions of this Interim DIP Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtors to the DIP Lender, prior to the date of receipt by the DIP Lender of written notice of the effective

LA-129,207,737v5

date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under this Interim DIP Order or pursuant to the DIP Loan Documents. Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtors to the DIP Lender prior to written notice to the DIP Lender of the effective date of such action, shall be governed in all respects by the original provisions of this Interim DIP Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liability.

25. <u>Restriction on Use of DIP Lender's Funds</u>. The Superpriority Claim, the DIP Liens, the iStar Prepetition Liens, iStar Replacement Liens, Other Liens and Other Lienholder Replacement Liens shall be valid and binding liens and claims, enforceable in accordance with the provisions hereof, and no proceeds from the DIP Loan, Collateral or proceeds thereof, or any portion of the Carve-Out may be used to pay, any claims for services rendered by any of the Professionals retained by the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or any Successor Case), any creditor or party in interest, any committee or any other party to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other than from the DIP Lender; and/or (b) investigate, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, the DIP Lender or any of its respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any Avoidance

Actions or other actions arising under Chapter 5 of the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of action; (iii) any action with respect to the validity and extent of the DIP Obligations or the validity, extent, and priority of the DIP Liens; (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens; and/or (v) any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the DIP Lender's assertion, enforcement or realization on the Collateral in accordance with the DIP Loan Documents or this Interim DIP Order.

26. <u>Priming and Subordination of Liens</u>. For avoidance of doubt, and notwithstanding anything to the contrary herein, all liens on the Collateral in existence on the date hereof shall be primed by the DIP Liens, iStar Replacement Liens and Other Lienholder Replacement Liens, and shall be subordinate to the DIP Liens, iStar Replacement Liens and Other Lienholder Replacement Liens.

27. <u>Collateral Rights</u>. In the event that any party who has both received notice of the Interim Hearing and holds a lien or security interest in Collateral or Prepetition Collateral that is junior and/or subordinate to the DIP Liens, iStar Replacement Liens and Other Lienholder Replacement Liens in such Collateral or Prepetition Collateral receives or is paid the proceeds of such Collateral or Prepetition Collateral, or receives any other payment with respect thereto from any other source, prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Loan Documents and the termination of the commitments in accordance with the DIP Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Collateral in trust for the DIP Lender and shall immediately turn over such proceeds (i) first for application to the DIP Obligations under the DIP Loan Documents in accordance with the DIP Loan Documents and this Interim

32

DIP Order until indefeasibly paid in full, and (ii) second for application to the Adequate Protection Claims of iStar and the Other Lienholders.

28. <u>No Waiver</u>. This Interim DIP Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender may have to bring or be heard on any matter brought before this Court.

29. <u>No Waiver by Failure to Seek Relief</u>. The failure of the DIP Lender to seek relief or otherwise exercise their rights and remedies under this Interim DIP Order, the DIP Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights thereunder, or otherwise of the DIP Lender.

30. <u>Limits on DIP Lender's Liability</u>. Nothing in this Interim DIP Order or in any of the DIP Loan Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from any and all activities by the Debtors in the operation of their business or in connection with their restructuring efforts.

31. <u>Priority of Terms</u>. To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim DIP Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Loan Documents, the terms and provisions of this Interim DIP Order shall govern.

32. <u>No Third Party Beneficiary</u>. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

33

LA-129,207,737v5

33. <u>Survival</u>. Except as otherwise provided herein, (a) the protections afforded to the DIP Lender, iStar and the Other Lienholders under this Interim DIP Order, and any actions taken pursuant thereto, shall survive the entry of an order (1) dismissing any of the Chapter 11 Cases or (2) converting the Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, iStar Replacement Liens, Other Lienholder Replacement Liens, the Superpriority Claim, the iStar Adequate Protection Claim and Other Lienholder Adequate Protection Claims shall continue in the Chapter 11 Cases, in any such Successor Case or after any such dismissal. Except as otherwise provided herein, the DIP Liens, iStar Replacement Liens, Other Lienholder Replacement Liens, the Superpriority Claim, the iStar Adequate Protection Claim and Other Lienholder Adequate Protection Claims shall maintain their priorities as provided in this Interim DIP Order, the Final DIP Order, and the DIP Loan Documents, and shall not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Lender in accordance with the Final DIP Order), or any conversion of the Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of the Chapter 11 Cases, or by any other act or omission until all DIP Obligations are indefeasibly paid in full in cash and completely satisfied, and the commitments under the DIP Loan Documents are terminated in accordance therewith.

34. <u>Final Hearing Date</u>. The Final Hearing to consider the entry of the Final DIP Order approving the relief sought in the Motion shall be held on **December [__], 2010 at [_]:00 [_].m.** (as the same may be adjourned or continued by this Court) before the Honorable Kevin Gross, at the United States Bankruptcy Court for the District of Delaware.

35. <u>Adequate Notice</u>. The Debtors shall promptly mail copies of this Interim DIP Order and notice of the Final Hearing to the Notice Parties, any known holder of a lien in any of the Collateral (including, without limitation, any holders of mechanic's liens on the Property), and any other party requesting notice after the entry of this Interim DIP Order. Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with this Court and served so as to be <u>actually received</u> no later than five business (5) days prior to the Final Hearing by the following: (i) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Attn: Bruce Grohsgal, Esq. (bgrohsgal@pszjlaw.com), Debtors' counsel; (ii) Greenberg Traurig, LLP, 2450 Colorado Avenue, Suite 400E, Santa Monica, California, 90404 (Attn: Michael H. Goldstein, Esq. (goldsteinmh@gtlaw.com), counsel to DIP Lender and (iii) the Office of the United States Trustee, J. 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19081 (Attn: Jane Leamy, Esq.).

36. <u>Proofs of Claim</u>. The DIP Lender is hereby relieved of the requirement to file proofs of claim in these Chapter 11 Cases with respect to any DIP Obligations and any other claims or liens granted hereunder or created hereby.

37. <u>Entry of Interim DIP Order; Effect</u>. This Interim DIP Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Interim DIP Order on this Court's docket in the Chapter 11 Cases.

38. <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction overall all matters pertaining to the implementation, interpretation and enforcement of this Interim DIP Order and/or the DIP Loan Documents.

35

LA-129,207,737v5

39. <u>Binding Effect of Interim DIP Order</u>. The terms of this Interim DIP Order shall be binding on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

Dated: December ___, 2010

                                                     The Honorable Kevin Gross
                                                     UNITED STATES BANKRUPTCY JUDGE.