IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>FKF MADISON PARK GROUP OWNER, LLC, et al.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 10-11867 (KG)<br><br>(Joint Administration Pending)<br><br>**Hearing Date: December 16, 2010 at 2:00 p.m. (ET)**<br>**Obj. Deadline: December 15, 2010 at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR ORDER (1) APPOINTING CHIEF RESTRUCTURING OFFICER, AND (2) REQUIRING RECEIVER TO DELIVER IMMEDIATELY TO THE DEBTORS ALL PROPERTY OF THE ESTATE PURSUANT TO SECTION 543(b)(1) OF THE BANKRUPTCY CODE

FKF Madison Park Group Owner, LLC, JMJS 23rd Street Realty Owner, LLC, Madison Park Group Owner, LLC and Slazer Enterprises Owner, LLC (the "Debtors"), by and through their undersigned counsel, hereby submit the *Debtors' Motion for Order (1) Appointing Chief Restructuring Officer, and (2) Requiring Receiver to Deliver Immediately to the Debtors All Property of the Bankruptcy Estate Pursuant to Section 543(b)(1) of the Bankruptcy Code* (the "Motion"). In support of the Motion, the Debtors respectfully represent as follows:

### PRELIMINARY STATEMENT

1. The Debtors have reached an agreement with a capital source (the "Sponsor") to fund these chapter 11 cases and a restructuring of the Debtors. The Debtors, Ira J. Shapiro, the Sponsor and certain of the creditors who commenced the Debtors' involuntary cases (the "Sponsor Creditors") have entered into that certain Plan Support Agreement dated November 18,

---

[1] The Debtors in these cases, along with the last four digits of their EIN, are: FKF Madison Group Owner, LLC (Case No. 10-11867) (3699); JMJS 23rd Street Realty Owner, LLC (Case No. 10-11868) (6651); Madison Park Group Owner, LLC (Case No. 10-11869) (3701); and Slazer Enterprises Owner, LLC (Case No. 10-11870) 4339). The Debtors' address is 230 Congers Road, New City, NY 10920.

54160-001\DOCS_DE:165805.6

2010[2] to support a joint plan of reorganization (the "Joint Plan") that will provide for: (i) new equity funding for developing the Debtors' Property (as described in detail below); (ii) satisfaction from sales of the Property of the allowed secured claim of the Debtors' senior lender iStar Tara, LLC ("iStar") in an amount equal to the value of the Property; (iii) provide an immediate cash payment to holders of allowed mechanic's lien claims; (iv) payment in full of unpaid administrative expenses and certain priority claims on the effective date of the Joint Plan, to the extent not already paid on such effective date; and (v) the potential for a recovery to holders of allowed general unsecured claims. The Joint Plan or Reorganization Summary of Terms was attached to the Plan Support Agreement as Exhibit C. Accordingly, the Joint Plan will enable the Debtors to reorganize, exit chapter 11 and maximize the value of the Property for the benefit of the Debtors' creditors and stakeholders.

2. In order to fund the administrative expenses of their chapter 11 cases through plan confirmation and the essential operating and maintenance expenses for the real property, the Debtors have secured debtor-in-possession financing. The Debtors have filed concurrently herewith a motion authorizing them to obtain postpetition financing (as defined below, the "DIP Loan") from the Sponsor.

3. The New York Supreme Court at the behest of iStar appointed Jonathan H. Newman as receiver for the Debtors' property (the "Receiver") prior to the filing of the involuntary petitions against the Debtors and the entry of the orders for relief in these cases.

4. Section 543(b) of title 11 of the United States Code (the "Bankruptcy Code") requires a custodian such as the Receiver to deliver to the Debtors possession of the Property, the proceeds, product, rents and profits thereof, and all books and records related to the Property on

---

[2] The Plan Support Agreement was appended as Exhibit B to the Debtors' *Emergency Motion for Immediate Entry of Orders for Relief and Conversion of Cases from Chapter 7 to Chapter 11* filed on November 18, 2010 [Docket No. 114].

the date on which the custodian acquires knowledge of the commencement of the case. 11 U.S.C. § 543(b).. The Receiver has yet to do so, though both the Order for Relief and the Conversion Order (both as defined below) has been entered in each of these cases [see e.g., Docket Nos. 119 and 118 in Case No 10-11867 (KG)] and the Receiver has knowledge of such events.

5. A condition of the DIP Loan, and as part of the adequate protection provided pursuant thereto, is the Debtors' obtaining authorization for the appointment of a chief restructuring officer for the disbursement of the DIP Loan. Accordingly, the Debtors by this Motion also seek entry of an order authorizing the Debtors to employ and retain Lee E. Buchwald of Buchwald Capital Advisors LLC as the Chief Restructuring Officer of each of the Debtors pursuant to section 363 of the Bankruptcy Code.

6. Section 543(b) is, by its terms, automatic and self-executing, and the Receiver is compelled without further action by the Debtors or any other party in interest to turn over the property immediately. The Debtors anticipate that the Receiver will comply with his legal obligations and immediately deliver to the Debtors possession of the Property, the proceeds, product, rents and profits thereof, and all books and records related to the Property, as required by section 543(b) of the Bankruptcy Code, promptly following the filing of this Motion or, if not then, upon the appointment of the Chief Restructuring Officer.

7. The turnover sought by this Motion is not only expressly mandated by the Bankruptcy Code, but is essential to the Debtors' obtaining the DIP Loan and implementation of a Joint Plan, and granting the relief requested herein is imperative. Accordingly, the relief sought by this Motion is required to prevent the Receiver from continuing his non-compliance with the mandate of section 543(b).

8. Further, the Debtors are concerned that, in light of iStar's pending motion for relief from stay and concerns about Mr. Shapiro, the Receiver may delay compliance with his legal obligations. A strategy of delaying turnover, filing a motion to excuse turnover under section 543(b), and delaying turnover via litigation is not without precedent. In re 245 Assoc., LLC, 188 B.R. 743, 748 (Bankr. S.D.N.Y. 1995) (seventy-two (72) day delay in turnover by a receiver). Here, the Debtors do not have the luxury of awaiting a potential motion by the Receiver or iStar to excuse compliance with section 543(b) only then to be mired in the litigation of that dispute. Recommencing the development of the Property (hereinafter defined) is an essential component of the Debtors' reorganization efforts, and promptly transitioning to full scale development of the Property requires detailed preparation and advanced planning. The Debtors require possession of the Property, its proceeds, product, rents and profits, and all books and records, so that they promptly can take the steps necessary to implement a Joint Plan.

9. Though the relief sought by the Debtors is plainly compelled by section 543(b), the Court, after notice and a hearing under section 543(d), may excuse compliance with the turnover requirements of section 543(b) if the interests of creditors would be better served if the receiver were to continue in possession, custody or control of the property. Assuming *arguendo* that the Receiver or iStar were to move under section 543(d) to excuse the Receiver's turnover obligations, the facts at hand do not support such relief.

10. As discussed in detail below, in determining whether to excuse compliance with section 543(b), (1) the Debtors' ability to fund these chapter 11 cases and reorganize in the best interests of creditors is paramount, and by the Motion the Debtors also (2) have addressed iStar's concerns with Mr. Shapiro by seeking the appointment by this Court of the Chief Restructuring

Officer, and (2) will reduce the high cost of maintaining the receivership, all of which costs comprise part of the indebtedness of the Debtors asserted by iStar.

11. The reorganization of the Debtors pursuant to the Joint Plan, the Debtors' obtaining the DIP Loan from the Sponsor, and the appointment of the Chief Restructuring Officer and turnover sought by this Motion will benefit and is in the best interest of the Debtors' creditors By contrast, continuing the receivership and a foreclosure by iStar will benefit only iStar and will guaranty that creditors will receive nothing on account of their claims. For the foregoing reasons, the Motion should be approved.

## JURISDICTION

12. This Court has jurisdiction to hear the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The basis for the relief requested is sections 361, 363(b) and 543(b) of the Bankruptcy Code.

## GENERAL BACKGROUND

**The Debtors and The Property**

13. The Debtors are the tenant in common owners of the land, the improvements, the unsold Units which have been or will be developed, designed, and constructed at 23 East 22nd Street, New York, New York 10010 (and sometimes also referred to as 20 East 23rd Street) consisting of a fifty (50) story hi rise tower containing sixty nine (69) residential units with approximately 117,982 net sellable square feet remaining with respect to fifty-seven (57) residential units, and amenities, and limited common elements, as well as an adjacent lot known as 23 East 22nd (the "Property").

14. iStar is the holder of various mortgages encumbering the Property, or units thereof, which secure certain obligations to iStar in the approximate alleged amount of $234 million (the "Existing iStar Indebtedness").

**The Foreclosure Proceeding and the Involuntary Chapter 7 Cases**

15. On February 18, 2010, iStar commenced a foreclosure proceeding against the Debtors in the Supreme Court of the State of New York, County of New York (the "State Court") styled as iStar Tara LLC v. FKF Madison Group Owner LLC, et al., No. 600423/2010 (the "Foreclosure Proceeding") asserting, *inter alia*, that the Debtors had committed numerous defaults under the Loan Documents. Subsequently, upon application of iStar, on May 7, 2010, the State Court entered an order appointing the Receiver as receiver of the Property during the pendency of the Foreclosure Proceeding and vesting the Receiver with full possession and control of the Property as against any other person or entity.

16. On June 8, 2010 (the "Petition Date"), involuntary chapter 7 petitions were filed in this Court against each of the Debtors by creditors Stephen Kraus, Mitchell Kraus, Barbara Kraus and Kraus Hi-Tech Home Automation, Inc. (the "Original Petitioning Creditors") thereby commencing against the Debtors involuntary chapter 7 cases (the "Chapter 7 Cases") and staying the Foreclosure Proceeding. The involuntary petitions were later joined by Joe Coffey, Harvey Schiller, Pace Plumbing, Gotham Greenwich Construction Co., LLC, and Mad 52, LLC (collectively, together with the Original Petitioning Creditors, the "Petitioning Creditors").

**Proceedings In Connection With The Involuntary Chapter 7 Cases**

17. On June 29, 2010, the Debtors filed a motion to dismiss the involuntary petitions [Docket No. 23] (the "Dismissal Motion") which, on November 18, 2010, was withdrawn by the Debtors [Docket No. 113].

18. Shortly after the commencement of the Chapter 7 Cases, iStar filed a motion [Docket No. 13] (the "First Funding Motion") seeking authority to continue making protective advances during June and July 2010 in an amount up to $488,610 pursuant to an approved budget, in order to fund (i) operating and maintenance expenses for the Property, including payroll for staff, payment of the Building's managing agent, utilities, insurance, permits and warranty-related costs and (ii) emergency repairs and construction to ensure the safety of the Building and the health and welfare of the residents and the public. The First Funding Motion was approved by order of the Court on June 30, 2010 [Docket No. 26].

19. On July 16, 2010, iStar filed a second motion [Docket No. 34] (the "Second Funding Motion") for authority to make protective advances to fund expenses of the Property (consistent with the First Funding Motion) through September 30, 2010 in an amount up to $584,615 pursuant to the budget attached to the Second Funding Motion. Additionally, the Second Funding Motion sought authority to pay the premium to renew the Debtors' construction liability insurance policy through January 20, 2011 estimated in the amount of $65,000. The Second Funding Motion was approved by order of the Court on July 30, 2010 [Docket No. 38].

20. On September 8, 2010, iStar filed a motion [Docket No. 80] (the "Third Funding Motion") seeking authority to make protective advances to pay certain professional fees of the Receiver in connection with his management of the Property upon a determination by the New York Supreme Court of the amount of fees the Receiver and his professionals are entitled to be paid under New York law with such advances to be secured by liens on the real and personal property comprising the Prepetition Collateral having the same validity extent and priority as the

iStar Prepetition Liens.³ The Receiver Funding Motion was approved by order of the Court on September 22, 2010 [Docket No. 88].

21. On September 23, 2010, iStar filed a fourth funding motion [Docket No. 87] (the "Fourth Funding Motion") for authority to make protective advances to fund the expenses of the Property through December 31, 2010 in an amount of up to $664,369 pursuant to the budget attached to the Fourth Funding Motion. The Fourth Funding Motion also requested authority to pay the real estate taxes due to the City of New York with respect to the Property for the third and fourth quarters of 2010 in the estimate amount of $430,845.76 for third quarter (and unpaid second quarter) taxes and $248,643.75 for fourth quarter taxes. The Fourth Funding Motion was approved by order of the Court on October 6, 2010 [Docket No. 98].

22. On November 3, 2010, iStar filed a motion seeking relief from the automatic stay to continue the Foreclosure Proceeding and with respect to the Property and to obtain and enforce a judgment of foreclosure and sale with respect to the Property [Docket No. 105] (the "Relief From Stay Motion"). In the Relief From Stay Motion, iStar contends that, based upon an appraisal, that the fair market value of the Property as of October 1, 2010 is in the range of approximately $130.7 million to $137.5 million and, as such, the Property is approximately $100 million under water. Relief From Stay Motion at ¶¶ 6, 29-30.

23. On November 18, 2010, the Original Petitioning Creditors filed their *Objection to Motion of iStar Tara LLC for Relief From the Automatic Stay* [Docket No. 115], to which the Debtors joined [Docket No. 116]. A status conference on the Relief From Stay Motion is presently scheduled for December 16, 2010 at 2:00 p.m.

---

³ On November 17, 2010, the State Court entered such an order approving a total of $955,407.09 in fees and expenses of the Receiver and his professionals during the period of April 15, 2010 to September 30, 2010.

54160-001\DOCS_DE:165805.6                      8

24. On November 19, 2010, the Court entered orders for relief in the Chapter 7 Cases and entered orders converting the Chapter 7 Cases to Chapter 11 Cases (the "Conversion Date"). [Docket Nos. 119 in 10-11867, Docket No. 111 in 10-11868, Docket No. 112 in 10-11-11869, and 117 in 10-11870].

**The Chapter 11 Cases**

25. With the conversion of the Chapter 7 Cases to Chapter 11 Cases, the Debtors have filed concurrently herewith their *Emergency Motion of the Debtor for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing the Debtors to Obtain Post-Petition Financing, (II) Granting Adequate Protection to Pre-Petition Secured Party, and (III) Scheduling a Final Hearing* (the "DIP Motion") seeking authority to obtain up to an aggregate principle of $1,100,000 of debtor-in-possession financing (the "DIP Loan") from the Sponsor (the "DIP Lender"). The DIP Loan will permit the Debtors to fund its administrative and operating expenses as it prosecutes confirmation of a Joint Plan. A condition precedent to the DIP Loan transaction, as described more fully in the DIP Motion, is the entry of the order sought by this Motion, requiring the Receiver to turn over the property of the estate currently in his possession to the Debtors in accordance with 543. See Debtor-in-Possession Loan Commitment Letter, attached to the DIP Motion as Exhibit A.

26. The Joint Plan or Reorganization Summary of Terms represents what will be a comprehensive restructuring of the Debtors, providing for: (i) the sale of the assets of the Debtors to New One Madison Park, LLC--the Reorganized Debtor; (ii) the payment in full of allowed unclassified priority claims and allowed priority claims including administrative claims; (iii) the payment in full of iStar's allowed secured claim in an amount consistent with iStar's

own valuation of the Property with payments to be made over time by the Reorganized Debtor from sales of the Property; (iv) a cash payment on account of the allowed mechanic's lien claims providing for a partial recovery to these creditors; and (v) a potential for a recovery to holders of allowed general unsecured claims. The payments that will be required under the Joint Plan to be paid on the effective date, and the funding for the development of the Property, will be provided through an equity capital investment in the Reorganized Debtor--and thus subordinate to iStar's secured claim, as restructured.

## RELIEF REQUESTED

27. By this Motion, the Debtors seek entry of an order (the "Order") (1) authorizing the Debtors to employ and retain Lee E. Buchwald of Buchwald Capital Advisors LLC as the Chief Restructuring Officer of each of the Debtors (the "CRO") pursuant to section 363(b) of the Bankruptcy Code, and (2) requiring the Receiver to immediately turn over any property of the Debtors, specifically including the Property, any proceeds, product, rents or profits of the Property, and all books and records related to the Property, promptly in accordance with section 543(b) of the Bankruptcy Code.

## BASIS FOR RELIEF

### A. Section 363(b) Authorizes the Employment and Retention of the CRO

28. The Debtors seek approval of Mr. Buchwald's employment and retention as CRO of each of the Debtors under section 363(b) of the Bankruptcy Code, on the terms set forth on Exhibit A to this Motion (the "Engagement").[4]

---

[4] The appointment of Mr. Buchwald also is part of the adequate protection provided as part of the proposed debtor in possession financing.

29. Section 363(b) of the Bankruptcy Code provides in part that a debtor-in-possession "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

30. The retention of interim corporate officers and other temporary employees is proper under section 363 of the Bankruptcy Code. Numerous courts have authorized retention of officers utilizing this provision of the Bankruptcy Code. See In re Global Home Home Products LLC, Case No. 06-10340 (KG) (Bankr. D.Del. May 5, 2006); In re Cable & Wireless USA, Inc., Case No. 03-13711 (CGC) (Bankr. D. Del. Jan. 16, 2004); In re Exide Technologies, Inc., et al., (Case No. 02-11125) (JCA) (Bankr. D. Del. May 10, 2002); In re Bill's Dollar Stores, Inc., Case No. 01-0435 (PJW) (Bankr. D. Del. 2001); In re Integrated Health Services, Inc., Case No. 00-389 (MFW) (Bankr. D. Del. 2000). See also In re WorldCom Group, et al., (Case No. 02-13533) (AJG) (Bankr. S.D.N.Y. September 17, 2002); In re Parmalat USA Corp., Case No. 04-11139 (Bankr. S.D.N.Y. Sept. 2, 2004); In re RCN Corp., Case No. 04-13638 (Bankr. S.D.N.Y July 30, 2004); In re Kmart Corporation, et al., (Case No. 02-B02474) (SPS) (Bankr. N.D. Ill., E.D. May 22, 2002); In re Warnaco Group, Inc., Case No. 01-41643 (Bankr. S.D.N.Y. 2001); In re Iridium Operating LLC, Case Nos. 99-45005 CB (Bankr. S.D.N.Y. 1999).

31. A debtor, pursuant to Section 363(b), may employ one or more professionals to act as their restructuring officers or managers or crisis officers or managers. See e.g., In re Global Home Home Products LLC, Case No. 06-10340 (KG) (Bankr. D.Del. May 5, 2006); In re Tokheim Corp., Case No. 02-13437 (RJN) (Bankr. D. Del. February 25, 2003).

32. Further, under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on part of the debtor, such use should be approved. See, e.g.,

Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.) 722 F.2d 1063, 1070 (2nd Cir. 1983); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); In re Gulf States, Steel, Inc., 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002); Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct").

33. The Debtors submit that the employment of Mr. Buchwald under the terms of the Engagement would greatly benefit the Debtors' estates and creditors by facilitating the turnover by the Receiver, reducing the likelihood of extensive litigation over the control of the Debtors' funds, and furthering the process of obtaining confirmation of the Joint Plan. The absence such appointment would severely hinder the Debtors' ability to reorganize in an efficient and effective manner.

34. Mr. Buchwald is clearly qualified for the position for which he is to be employed. As set forth on Mr. Buchwald's resume attached as <u>Exhibit B</u> to this Motion.

35. The terms of the Engagement are fair and reasonable, and are advantageous to the Debtors. Mr. Buchwald's fees are capped at $15,000 per month The charges of the Receiver and those of his counsel, by comparison, have averaged $145,000 per month for the 5 ½ months through September 30, 2010, for a total of $797,000, all of which costs have substantially increased the indebtedness allegedly owing by the Debtors to iStar and none of which are in

furtherance of a plan or other exit strategy. The Receiver's fees alone have averaged $60,895 per month for the same period, more than 4 times the cap under CRO's proposed Engagement. Absent the granting of the relief sought by this Motion, the costs of the Receiver and his counsel likely will continue at these rates, to the detriment of the Debtors, their estates and creditors.

36. Further, though §363(b) does not require a Chief Restructuring Officer to be "disinterested," to the best of the Debtors' knowledge and as disclosed herein and in the Buchwald Affidavit attached as Exhibit C to this Motion (the "Buchwald Affidavit"), (a) Mr. Buchwald is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, and holds no interest adverse to the Debtors or their estates with respect to the matters as to which Mr. Buchwald is to be employed and (b) Mr. Buchwald has no connection to the Debtors, their creditors, or related parties except as disclosed in the Buchwald Affidavit.

37. Specifically, Mr. Buchwald (a) is not a creditor, equity security holder, or an insider of the Debtors, (b) is not and was not, within the 2 years before the Petition Date, a director, officer, or employee of the Debtors, and (c) does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors.

38. Accordingly, the Debtors' decision to retain and appoint Mr. Buchwald as CRO pursuant to the terms of the Engagement reflects an exercise of the Debtors' sound business judgment, and this Court should enter the Order approving such retention and appointment.

**B.    Section 543(b) Directs Immediate Turnover By The Receiver**

39. Section 543(b)(1) of the Bankruptcy Code provides that a receiver shall:

> deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the

> date that such custodian acquires knowledge of the commencement of the case[.]

11 U.S.C. § 543(b)(1). Under section 101(11)(A) of the Bankruptcy Code, the term "custodian" includes any "receiver or trustee of any property of the debtor appointed in a case or proceeding not under [the Bankruptcy Code.]" 11 U.S.C. § 101(11)(A). The Receiver falls within this definition of "custodian" and, as such, is required to comply with the requirements of section 543(b)(1).

40. Upon a bankruptcy proceeding, "a non-bankruptcy custodian receivership shall terminate and the custodian appointed by a nonbankruptcy court must, as a general proposition, deliver the property to the trustee, or in the case of a relief chapter [11] proceeding, to the Debtor[.]" In re WPAS, Inc., 6 B.R. 40, 43 (Bankr. M.D. Fla. 1980); see also In re 245 Assoc., LLC, 188 B.R. 743, 748 (Bankr. S.D.N.Y. 1995) ("[T]he commencement of the case ordinarily supersedes the receivership[.]"). Thus, section 543(b) is automatic and self executing unless the Receiver files a motion excusing it from the sections requirements.

41. The turnover contemplated under section 543(b) must be done promptly. See In re 245 Assoc., LLC, 188 B.R. at 753 ("We recognize that Section 543 does not say when the receiver must turn over the property, [] the receiver must do so promptly.")

42. The Debtors expect that the Receiver --- immediately on the filing of this Motion --- will confirm in writing his intention to turn over the Property, any proceeds, product, rents or profits of the Property, and all books and records related to the Property, and to coordinate with the Debtors such transition in a smooth and orderly fashion. However, if such immediate turnover does not occur, at least one court has suggested that, for such turnover to be compelled, debtors need only "convince the Court that allowing them to take possession as all other debtors do in Chapter 11 cases will, for the immediate future at least, be in the best interests of

creditors." In re Kramer, 96 B.R. 972, 977 (Bankr. D. Neb. 1989). In seeking turnover under section 543, the debtor's burden of proof is low, "[i]t is not the debtors' burden to prove at a hearing on a motion for turnover that a plan can be confirmed." Id. While this burden of proof is low and easily carried by the Debtors, the court in In re Kramer may be the only court that has allocated *any* burden of proof at all to a debtor. See In re R&G Properties, Inc., 2008 Bankr. LEXIS 3132, *14 (Bankr. D. Vt. 1995) ("At this point, the Court had found only one case that allocates the burden to the debtor.") (citing In re Kramer, 96 B.R. at 977).

1. **Immediate Turnover By The Receiver Is In The Best Interest Of Creditors**

43. Courts have recognized that a court may excuse a receiver from the turnover provisions of section 543 in a case where doing so would be in the best interests of the debtor's creditors. See In re Bryant Manor, LLC, 422 B.R. 278, 289 (Bankr. D. Kan. 2010); In re R&G Properties, Inc., 2008 Bankr. LEXIS 3132, *14 (Bankr. D. Vt. 1995) (terminating a state court ordered receivership after the bankruptcy case was commenced because allowing it to continue would not be in the best interests of the debtor's creditors); In re 245 Assoc., LLC, 188 B.R. at 748-49.

44. Where it is in the best interest of creditors to require turnover by a receiver, there can be no doubt that entry of an order compelling turnover is appropriate. iStar obtained the appointment of the Receiver as a step in the process of foreclosing on the Property. iStar has filed its Relief From Stay Motion, to proceed with its planned foreclosure.[5] iStar's goals are not in the best interests of the Debtors' creditors. Permitting the Receiver to remain in possession of

---

[5] iStar argues that relief should be granted on the grounds that "the Debtors have no equity in the [Property]" and that "the Debtors have no source of funding to maintain the [Property] or to continue construction." Relief from Stay Motion at ¶ 19, 30. Section 362(d) provides that a party in interest after notice and hearing may obtain relief from the stay with respect to property of the estate only if the debtor has no equity in the property *and* the property is not necessary to an effective reorganization and the Debtors have filed the Joint Plan which demonstrates a reorganization in prospect. The Property, turnover of which is sought, is necessary to the Debtors' reorganization, and the Debtors thus submit that iStar's Relief from Stay Motion should be denied.

the Property would serve only to facilitate iStar's foreclosure while leaving other creditors with no chance of recovery and thwarting the Debtors' reorganization. See In re 245 Assoc., LLC, 188 B.R. at 753 ("If [the receiver'] does not turn over the property promptly and thwarts the debtor's right to control it, he prevents the debtor from administering its property for the benefit of the estate and with a view toward reorganization.")

45. The Debtors' ability to fund the chapter 11 cases and reorganize in the best interests of creditors is paramount, and by this Motion the Debtors also have addressed iStar's concerns with Mr. Shapiro by seeking the appointment by this Court of Mr. Buchwald as CRO, and will reduce the high cost of maintaining the receivership, all of which costs comprise part of the indebtedness of the Debtors asserted by iStar.

46. In contrast, even assuming that a motion is filed under Section 543(d) by the Receiver or iStar seeking to leave the Property in the Receiver's hands, this Court's allowing the Debtors to regain possession of the Property and proceed to confirmation of a jointly proposed and support plan of reorganization is clearly in the best interest of creditors as it will provide a mechanism for creditors to obtain a recovery on their claims. As debtors in possession, the Debtors can begin the steps necessary to ensure a smooth transition of the ownership of the Property to the Reorganized Debtor as contemplated by the Plan Support Agreement and toward confirmation of the proposed Joint Plan.

### 2. The Debtors Reorganization Efforts Should Not Be Delayed

47. If the Receiver does not immediately confirm its intention to and actually commence the turnover of the Property, the only reason can be to delay and thwart the Debtors' reorganization efforts. This Court should not condone such actions. If the Receiver and iStar undertook such action, this would not be the first case in which a receiver's delay in

implementing a turnover and a secured creditor's effort to litigate compliance with Section 543(b) would impose prejudicial delay upon a debtor. In a case with facts strikingly similar to the facts at hand, In re 245 Assoc., LLC, the debtor suffered a seventy two (72) day delay before obtaining a turnover from a receiver. 188 B.R. at 747.

### 3. The Debtors Have Funding Available To Operate As Debtors In Possession And To Reorganize

48. Turnover by the Receiver is compulsory absent a Court order to the contrary pursuant to section 543(d). In considering such motions, Courts have found it relevant whether a debtor seeking turnover has sufficient income or financing to fund a successful reorganization, *i.e.*, where there is no financing to fund a reorganization effort, there is no reason to turn the property in question over to the debtor. See In re LCL Income Properties, L.P. VI, 177 B.R. 827, 875 (Bankr. S.D. Ohio 1995) (permitting the receiver to remain in possession where the debtor's three attempts at obtaining financing failed). Here, the Debtors have agreed to terms with the DIP Lender for a DIP Loan of approximately $1,100,000--Court approval of which is concurrently being sought by the Debtors--to fund the operational and administrative expenses leading up to a confirmation hearing on a jointly proposed plan of reorganization. And, on the effective date of a jointly proposed plan or reorganization, funding of approximately $40 million will be available for the Reorganized Debtor to fund the payments contemplated by the Joint Plan of Reorganization Summary of Terms to be made on the effective date and to develop the Property.

### B. iStar Cannot Meet Its Burden Of Proof To Excuse Compliance With Section 543(b).

49. Under section 543(d)(1), the Court may excuse the Receiver's compliance with the sections' mandates:

> After notice and hearing, the bankruptcy court may excuse compliance with [section 543(b)] if the interests of creditors and, if the debtor is not

> insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property[.]

11 U.S.C. § 543(d)(1). Thus, "[t]urnover is the general rule, however, and excuse from compliance is the exception." In re Poplar Springs Apartments of Atlanta, Ltd., 103 B.R. 146, 150 (Bankr. S.D. Ohio 1989).

50. As evidenced by the text of section 543(d), the paramount concern for a court in determining whether to excuse compliance is the interests of creditors. As one court recently stated a "request for excuse for turnover requires the Court to examine (1) the debtor's likelihood of reorganization; (2) the probability that funds required for reorganization will be available; and (3) whether the evidence shows mismanagement of the property by the debtor." In re Bryant Manor, LLC, 422 B.R. at 289 (Bankr. D. Kan. 2010) (excusing turnover where the debtor would be unlikely to attain an impaired consenting class to vote for any plan and the property, an apartment complex, had been grossly mismanaged and dangerous conditions were permitted to continue). "Regardless of what factors are used to aid the court in its decision, the paramount and sole concern is the interests of *all* creditors." In re Falconridge, LLC, 2007 Bankr. LEXIS 3755, *22 (Bankr. N.D. Ill. Nov. 8, 2007) (listing seven (7) relevant factors for a court to analyze in order to determine whether a custodian should remain in place including likelihood of reorganization, availability of funds and mismanagement).

51. There is no ostensible basis for continued possession by the Receiver other than to facilitate iStar's path towards a foreclosure on the Property. It is axiomatic that creditors would be better served by a turnover of the Property to the Debtors--who are seeking to reorganize-- than by a foreclosure by iStar. The Joint Plan will provide for an immediate cash payment to holders of allowed mechanic's lien claims and will provide the potential for a recovery to holders of allowed general unsecured claims. The Debtors have secured commitments for

postpetition financing to fund their chapter 11 cases pending a hearing on confirmation of a Joint Plan and have obtained exit financing for the development of the Property. Though iStar has levied assertions of prior mismanagement against the Debtors in the New York Supreme Court, such assertions have not been fully litigated to trial and, on the entry of the Order for Relief, the Debtors have become subject to the supervision of this Court. Moreover, any concerns of prior mismanagement should be quelled by the Debtors' entry into the Plan Support Agreement, the related filings of the DIP Motion, this Court's ongoing supervision under the Bankruptcy Code, and appointment of the CRO.

## CONCLUSION

52. Section 363 of the Bankruptcy Code permits the appointment of the CRO. Mr. Buchwald is eminently qualified to serve in such capacity and the terms of his appointment are fair and reasonable. Appointment of Mr. Buchwald as CRO will both reduce the cost of maintaining the Property and address iStar's concerns regarding the Debtors' management.

53. Section 543 of the Bankruptcy Code requires turnover by the Receiver. The Receiver should not be permitted to delay the turnover required under section 543 to the detriment of the Debtors' creditors. It has been recognized that "a substantial weight is added to the debtor's burden of attempting to reorganize and to promulgate an acceptable plan of reorganization if [the] debtor cannot have access to all of its assets[.]" In re KCC-Fund V, Ltd., 96 B.R. 237, 239-40 (Bankr. W.D. Mo. 1989). This could not be more true than in a case, such as these cases, where the debtor only has one very valuable asset with which to restructure around. The facts surrounding the Debtors' chapter 11 cases do not support excusing the Receiver from his turnover obligations and duties under section 543. The turnover on the terms set forth in this Motion is in the best interest of the Debtors' estates and creditors, and the

Receiver should be ordered to immediately comply with his legal obligations under section 543(b) as set forth herein.

WHEREFORE, the Debtors request that this Court enter an Order, substantially in the form attached hereto as <u>Exhibit A</u>, (1) authorizing the Debtors to employ and retain Lee E. Buchwald of Buchwald Capital Advisors LLC as the Chief Restructuring Officer of each of the Debtors pursuant to section 363 of the Bankruptcy Code, (2) directing the Receiver, pursuant to section 543(b)(1) of the Bankruptcy Code, to turn over any property of the Debtors, specifically including the Property, any proceeds, product, rents or profits of the Property, and all books and records related to the Property, promptly after entry of the Order, and (3) granting such other and further relief as is just and proper.

Dated: December 10, 2010  
       Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bruce Grohsgal*  
Bruce Grohsgal (No. 3583)  
919 North Market Street  
17th Floor  
Wilmington, Delaware 19801  
Telephone: (302) 652-4100  
Facsimile: (302) 652-4400  
Email: bgrohsgal@pszjlaw.com

*[Proposed] Counsel to the Debtors and Debtors in Possession*