# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FKF MADISON PARK GROUP OWNER, LLC, *et al.,*[1] | Case No. 10-11867 (KG) |
| Debtors. | (Joint Administration Pending) |

## JOINT PLAN OF REORGANIZATION FOR FKF MADISON PARK GROUP OWNER, LLC AND ITS AFFILIATED DEBTORS

| PACHULSKI, STANG, ZIEHL & JONES LLP | GREENBERG TRAURIG, LLP |
|---|---|
| Bruce Grohsgal, Esq. (No. 3583) | Michael H. Goldstein, Esq. |
| 919 North Market Street | 2450 Colorado Avenue |
| 17th Floor | Suite 400E |
| Wilmington, DE 19801 | Santa Monica, CA 90404 |
| Telephone: (302) 652-4100 | Telephone: (310) 586-7750 |
| Facsimile: (302) 652-4400 | Facsimile: (310) 586-0250 |
| | |
| *[Proposed] Counsel to the Debtors and Debtors in Possession* | Scott Cousins, Esq. |
| | The Nemours Building |
| | 1007 North Orange Street |
| | Suite 1200 |
| | Wilmington, DE 19801 |
| | Telephone: (302) 661-7373 |
| | Facsimile: (302) 661-7175 |
| | |
| | *Counsel to New One Madison Park Member I, LP* |

A DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THE FILING AND DISSEMINATION OF THIS JOINT PLAN SHOULD NOT BE CONSTRUED AS A SOLICITATION OF ACCEPTANCES OF THE JOINT PLAN. ACCEPTANCES OF THE JOINT PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE. THE DEBTORS MAY SUPPLEMENT OR AMEND THIS JOINT PLAN OR ANY EXHIBITS ATTACHED HERETO AT ANY TIME PRIOR TO THE HEARING TO APPROVE THE DISCLOSURE STATEMENT.

---

[1] The Debtors in these cases, along with the last four digits of their EIN, are: FKF Madison Group Owner, LLC (Case No. 10-11867) (3699); JMJS 23rd Street Realty Owner, LLC (Case No. 10-11868) (6651); Madison Park Group Owner, LLC (Case No. 10-11869) (3701); and Slazer Enterprises Owner, LLC (Case No. 10-11870) 4339). The Debtors' address is 230 Congers Road, New City, NY 10920.

*CHI 60,494,600 v.15  129612-010000*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................1

Article I DEFINED TERMS AND RULES OF INTERPRETATION ..........................1

Article II CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS.................................................................................13

2.1    Claims Against Debtor FKF Madison Park Group Owner, LLC. ...............14

2.2    Claims Against Debtor JMJS 23rd Street Realty Owner, LLC. ..................14

2.3    Claims Against Debtor Madison Park Group Owner, LLC. ........................15

2.4    Claims Against Debtor Slazer Enterprises Owner, LLC. ...........................15

2.5    Treatment of Unclassified Claims. ...........................................................16

2.6    Treatment of Classified Claims and Equity Interests. ...............................17

2.7    Special Provision Regarding Claims. .......................................................19

Article III ACCEPTANCE OR REJECTION OF THE JOINT PLAN .......................19

3.1    Acceptance by an Impaired Class. ...........................................................19

3.2    Presumed Acceptances by Unimpaired Classes. ......................................19

3.3    Presumed Rejection by Certain Impaired Classes. ...................................19

3.4    Impaired Classes of Claims Entitled to Vote on the Joint Plan. ................19

Article IV MEANS FOR IMPLEMENTATION OF THE JOINT PLAN ...................20

4.1    Sale of Assets.........................................................................................20

4.2    Capitalization of Reorganized Debtor. .....................................................20

4.3    IJS Consulting Agreement. ......................................................................21

4.4    Development and Sale of the Property. .....................................................21

4.5    Debtors Corporate Existence. ..................................................................22

4.6    Reorganized Debtor's Corporate Existence...............................................22

4.7    Cancellation of Notes, Instruments, Debentures and Equity Interests. ......22

4.8    Cancellation of Liens. .............................................................................23

4.9    Cram-Down. ...........................................................................................23

4.10   Additional Transactions...........................................................................23

4.11   Dissolution of the Committee. .................................................................23

Article V PROVISIONS GOVERNING DISTRIBUTIONS .....................................23

5.1    Distributions for Claims or Equity Interests Allowed as of the Initial
Distribution Date. ...................................................................................23

i

| 5.2 | Interest on Claims. | 24 |
|---|---|---|
| 5.3 | Distributions by Disbursing Agent. | 24 |
| 5.4 | Delivery of Distributions and Undeliverable or Unclaimed Distributions. | 24 |
| 5.5 | Record Date for Distributions. | 25 |
| 5.6 | Allocation of Joint Plan Distributions Between Principal and Interest. | 25 |
| 5.7 | Means of Cash Payment. | 25 |
| 5.8 | Withholding and Reporting Requirements. | 25 |
| 5.9 | Setoffs and Recoupment. | 26 |
| 5.10 | Compromises and Settlements. | 26 |
| 5.11 | De Minimis Distributions. | 26 |
| 5.12 | Claims Administration Responsibility. | 26 |
| 5.13 | Determination of Allowed Claims. | 27 |
| 5.14 | No Distributions Pending Allowance. | 27 |
| 5.15 | Reserves. | 27 |
| 5.16 | Reports. | 28 |

Article VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................28

| 6.1 | Assumption Generally. | 28 |
|---|---|---|
| 6.2 | Approval of Assumption. | 29 |
| 6.3 | Objections to Assumption. | 29 |
| 6.4 | Payments Related to Assumption. | 30 |
| 6.5 | Rejection Generally. | 30 |
| 6.6 | Approval of Rejection. | 30 |
| 6.7 | Objections to Rejection. | 31 |
| 6.8 | Bar Date for Bankruptcy Code § 365(n) Election. | 31 |

Article VII PROVISIONS FOR RESOLVING DISPUTED CLAIMS AND DISPUTED EQUITY INTERESTS ............................31

| 7.1 | Objections to and Estimation of Claims. | 31 |
|---|---|---|
| 7.2 | No Distributions Pending Allowance. | 32 |
| 7.3 | Distributions on Account of Disputed Claims Once They Are Allowed. | 32 |
| 7.4 | Reinstated Claims. | 32 |

Article VIII CONFIRMATION AND CONSUMMATION OF THE JOINT PLAN ............................32

| 8.1 | Conditions to Confirmation. | 32 |
|---|---|---|

CHI 60,494,600 v.15  129612-010000

| 8.2 | Conditions to Effective Date. | 33 |
|---|---|---|
| 8.3 | Waiver of Conditions. | 33 |
| 8.4 | Effect of Non-Occurrence of Effective Date. | 34 |
| 8.5 | Notice of Effective Date. | 34 |

Article IX EFFECT OF JOINT PLAN CONFIRMATION ................................................34

| 9.1 | Binding Effect. | 34 |
|---|---|---|
| 9.2 | Exculpation, Releases and Discharge. | 34 |
| 9.3 | Preservation of Litigation Claims. | 37 |
| 9.4 | Injunction. | 38 |
| 9.5 | Term of Bankruptcy Injunction or Stays. | 38 |
| 9.6 | Termination of Subordination Rights and Settlement of Related Claims. | 38 |

Article X RETENTION OF JURISDICTION .............................................................39

| 10.1 | Retention of Jurisdiction. | 39 |
|---|---|---|

Article XI MISCELLANEOUS PROVISIONS ..........................................................41

| 11.1 | Post-Confirmation Date Retention of Professionals. | 41 |
|---|---|---|
| 11.2 | Bar Date for Certain Administrative Claims. | 41 |
| 11.3 | Effectuating Documents and Further Transactions. | 41 |
| 11.4 | Corporate Action. | 42 |
| 11.5 | Exemption from Transfer Taxes. | 42 |
| 11.6 | Payment of Statutory Fees. | 42 |
| 11.7 | Amendment or Modification of this Joint Plan. | 42 |
| 11.8 | Severability of Plan Provisions. | 42 |
| 11.9 | Successors and Assigns. | 43 |
| 11.10 | Revocation, Withdrawal or Non-Consummation. | 43 |
| 11.11 | Post Effective Date Notice. | 43 |
| 11.12 | Notice. | 44 |
| 11.13 | Governing Law. | 45 |
| 11.14 | Tax Reporting and Compliance. | 45 |
| 11.15 | Exhibits. | 45 |
| 11.16 | Filing of Additional Documents. | 45 |
| 11.17 | Withholding and Reporting Requirements. | 45 |
| 11.18 | No Waiver. | 46 |

iii

11.19  Limitations on Effect of Confirmation. ...................................................................46

11.20  Securities Exemption. ...........................................................................................46

11.21  Controlling Documents. .........................................................................................46

11.22  No Admissions. ......................................................................................................47

11.23  Reservation of Rights. ...........................................................................................47

iv

# INTRODUCTION

The Debtors in the above-referenced Chapter 11 Cases and the Sponsor hereby propose the following Joint Plan for the resolution of the outstanding Claims against and Equity Interests in each of the Debtors. Capitalized terms used but not defined in this paragraph have the meanings assigned to them in Article I of this Joint Plan. The classification and treatment of Claims against and Equity Interests in the Debtors is set forth in Article II of this Joint Plan. The Debtors and the Sponsor are the Proponents of the Joint Plan within the meaning of Section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtors' history, business, properties and operations, projections for those operations, risk factors, a summary and analysis of this Joint Plan, and certain related matters. Subject to certain restrictions and requirements set forth herein, in Section 1127 of the Bankruptcy Code and in Bankruptcy Rule 3019, the Proponents reserve the right to alter, amend, modify, supplement, revoke or withdraw the Joint Plan prior to its substantial consummation in accordance with the terms of this Joint Plan, the Confirmation Order, and the Bankruptcy Code.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

A.    Defined Terms.

As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1    Administrative Claim means a Claim for costs and expenses of administration of the Chapter 11 Cases arising on or after the Petition Date and prior to the Effective Date under Sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2), 507(b) and 1114(e)(2) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors from and after the Petition Date (such as wages, salaries and commissions for services and payments for inventory, leased equipment and premises) and Claims of governmental units for taxes (including tax audits) related to tax years commencing after the Petition Date, but excluding Claims related to tax periods, or portions thereof, ending on or before the Petition Date or later incurred or assumed prior to the Petition Date, or subject to a lien dating prior to the Petition Date; (b) all compensation for actual and necessary legal, financial, advisory, accounting and other services provided by the Professionals and the reimbursement of actual and necessary expenses incurred by the Professionals pursuant to Sections 328 or 330 of the Bankruptcy Code; (c) any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases; (d) any payment to be made under this Joint Plan, or otherwise, to cure a default under an executory contract or unexpired lease that has been or will be assumed by the Debtors under this Joint Plan, or otherwise, (except to the extent that "adequate assurance" of such cure is provided); and (e) any fees and charges assessed against the Estates under Section 1930, Chapter 123, of Title 28 of the United States Code.

*CHI 60,494,600 v.15 129612-010000*

1.2     Allowed means, with respect to a Claim or Equity Interest in the Chapter 11 Cases, or any portion of such Claim or Equity Interest in any Class or category specified herein, a Claim or Equity Interests that is not a Disallowed Claim or Disallowed Equity Interest and: (a) is listed in the Schedules as neither disputed, contingent nor unliquidated and with respect to which no contrary or superseding Proof of Claim or Claim Opposition has been Filed; (b) is evidenced by a Proof of Claim timely Filed on or before the applicable Claims Bar Date, or deem timely Filed by order of the Bankruptcy Court to the extent, and only to the extent, listed in the Schedules in a fixed matured liquidated amount and not listed in the Schedules as disputed, contingent or unliquidated, and as to which either (i) no Claim Opposition has been timely Filed on or before the Claims Objection Deadline; or (ii) the time to File a Claim Opposition has expired and the Claim has been allowed; (c) is not the subject of a Claim Opposition that (i) was Filed on or before the Claims Objection Deadline and (ii) has not been settled, waived, withdrawn or denied pursuant to a Final Order; (d) is expressly allowed (i) pursuant to a Final Order, (ii) pursuant to an agreement between the Holder of such Claim or Equity Interest and the Debtors or the Reorganized Debtor, as applicable, or (iii) pursuant to the terms of this Joint Plan; (e) is a Professional Fee Claim for which allowance of fees and reimbursement of expenses has been approved by order of the Bankruptcy Court; or (f) is the subject to a stipulation of amount and nature of the Claim or Equity Interest executed by the Debtors and the holder of the Claim or Equity Interest and approved by order of the Bankruptcy Court.

1.3     Allowed Claim means a Claim in a particular Class or of a particular type that is also an Allowed Claim.  For example, an Allowed Administrative Claim is an Administrative Claim that is also an Allowed Claim.

1.4     Allowed Secured Claim of iStar means the Allowed Claim of iStar in the amount of one hundred and twenty-four million five-hundred thousand dollars ($124,500,000), to be evidenced by and secured by the Restated iStar Loan Documents.

1.5     Avoidance Actions means causes of action arising under Sections 329, 510, 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, or under similar or related state or federal statutes or common law, including fraudulent transfer laws, in each case whether or not litigation to prosecute such causes of action was commenced prior to the Effective Date.

1.6     Ballot means the ballot form for accepting or rejecting this Joint Plan, in the form approved by the Bankruptcy Court and distributed with the Disclosure Statement to the Holders of Claims in the Chapter 11 Cases that are Impaired under the Joint Plan and entitled to vote to accept or reject the Joint Plan.

1.7     Bankruptcy Code means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with any amendments and modifications thereto subsequently made applicable to the Chapter 11 Cases.

1.8     Bankruptcy Court means the United States Bankruptcy Court for the District of Delaware.

2

1.9    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure promulgated under Section 2075 of Title 28 of the United States Code and any local rules of the Bankruptcy Court, as in effect on the Petition Date, together with any amendments and modifications thereto subsequently made applicable to the Chapter 11 Cases.

1.10    Borrowers means the Debtors, as borrowers under the Loan Documents.

1.11    Business Day means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.12    Causes of Action means, collectively, (i) any and all causes of action that could be asserted either by the Debtors or the Estates, including, without limitation, all Avoidance Actions, suits, accounts, promises, controversies, rights to legal remedies, rights to equitable remedies, and rights to payment and (ii) any and all Claims held by the Debtors, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable, directly or derivatively, in law, equity or otherwise.

1.13    Chapter 7 Cases means the cases commenced upon the filing of the Involuntary Petitions.

1.14    Chapter 11 Cases means the Chapter 7 Cases immediately following entry of the Conversion Order and which are being jointly administered under case no. 10-11867 (KG).

1.15    Claim has the meaning ascribed to such term under the Bankruptcy Code.

1.16    Claims Bar Date means, as applicable, either (i) [DATE],[1] the final date for all Persons or Entities other than governmental units asserting Claims against any of the Debtors to file Proofs of Claim on account of such Claims, (ii) [DATE],[2] the final date for all governmental units asserting Claims against any of the Debtors to file Proofs of Claim on account of such Claims, or (iii) such other date as the Bankruptcy Court may fix with respect to any Claim.

1.17    Claims Objection Deadline means the last day for filing objections to Claims, other than with respect to Administrative Claims and Professional Fee Claims, which day shall be one hundred and twenty (120) days after the Effective Date. The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until the final determination of such motion by the Bankruptcy Court. No such extension of the Claims Objection Deadline shall constitute a modification or amendment of this Plan.

1.18    Claim Opposition means any objection, application, motion, complaint, or pleading seeking to disallow, limit, subordinate, estimate and/or avoid a Claim or Equity Interest.

1.19    Class means each category of Holders of Claims or Equity Interests established under this Joint Plan pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

---

[1]  To be based upon the order of the Bankruptcy Court setting such date.
[2]  To be based upon the order of the Bankruptcy Court setting such date.

CHI 60,494,600 v.15  129612-010000

1.20    Committee means the Official Committee of Creditors Holding Unsecured Claims appointed by the United States Trustee in connection with the Chapter 11 Cases, if any.

1.21    Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.22    Confirmation Order means the order of the Bankruptcy Court confirming this Joint Plan pursuant to Section 1129 of the Bankruptcy Code.

1.23    Continuum means The Continuum Company, LLC.

1.24    Conversion Order means collectively the Orders of the Bankruptcy Court entered on November 19, 2010 in each of the Chapter 7 Cases converting the Chapter 7 Cases to cases under chapter 11 of the Bankruptcy Code [Docket No. 118].[3]

1.25    Debtor in Possession Financing means the debtor in possession financing provided to the Debtors by the Sponsor.

1.26    Debtors means collectively the following entities in the Chapter 11 Cases: FKF Madison Park Group Owner, LLC (Case No. 10-11867 (KG)), JMJS 23rd Street Realty Owner, LLC (Case No. 10-11868 (KG)), Madison Park Group Owner, LLC (Case No. 10-11869 (KG)), and Slazer Enterprises Owner, LLC (Case No. 10-11870 (KG)).

1.27    Deed means documents of title evidencing a transfer of an ownership interest from the Debtors to a Person.

1.28    Deed Holder Claim means the Holder of a Deed transferring title to a portion of the Property which Deed is not subject to a release executed by iStar.

1.29    Development Agreement means the agreement to be entered into by and between the Reorganized Debtor and The Continuum Company, LLC in connection with the development of the Property.

1.30    Disallowed Claim means any Claim, including any portion thereof, that has been disallowed, denied, dismissed, expunged, or overruled pursuant to a Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

1.31    Disbursing Agent means either the Reorganized Debtor, or any Person or Entity designated as the Disbursing Agent by the Reorganized Debtor pursuant to the terms of this Joint Plan.

1.32    Disclosure Statement means the disclosure statement relating to this Joint Plan, including, without limitation, all Exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

---

[3] Unless otherwise noted, all docket references used in this Joint Plan and its accompanying Disclosure Statement shall refer to the docket of the above captioned case, Case No. 10-11867 (KG).

4

1.33   <u>Disputed Claim</u> means any Claim, including any portion thereof, that is (a) neither an Allowed Claim nor a Disallowed Claim, or (b) for which a Proof of Claim has been timely Filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely Claim Opposition, which Claim Opposition has not been withdrawn or determined pursuant to a Final Order.

1.34   <u>Disputed Equity Interest</u> means any Equity Interest, including any portion thereof, that is (a) neither an Allowed Equity Interest nor a Disallowed Equity Interest, or (b) for which a Proof of Claim has been timely Filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely Claim Opposition, which Claim Opposition has not been withdrawn or determined pursuant to a Final Order.

1.35   <u>Distribution</u> means any distribution pursuant to the Joint Plan to a Holder of an Allowed Claim.

1.36   <u>Distribution Date</u> means the Initial Distribution Date and thereafter such date or dates as either: (i) the Reorganized Debtor determines in its discretion that there are funds available to the Estates to make Distributions to holders of Allowed Claims in Classes 5A-5D and 7A-7D as provided for in the Joint Plan; or (ii) a Disputed Claim has become an Allowed Claim and funds are available to make a Distribution on such Allowed Claim.

1.37   <u>Distribution Record Date</u> means the Effective Date.

1.38   <u>Effective Date</u> means the date on which the Debtors' Joint Plan becomes effective pursuant to the terms of the Joint Plan.

1.39   <u>Entity</u> means any Person, estate, trust, governmental unit, and United States trustee.

1.40   <u>Equity Interest(s)</u> means an equity interest in the Debtors.

1.41   <u>Estate(s)</u> means the estates created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Debtors' Chapter 11 Cases.

1.42   <u>Exhibit</u> means an exhibit annexed either to this Joint Plan or the Disclosure Statement.

1.43   <u>Existing iStar Indebtedness</u> means the indebtedness owed by the Debtors to iStar.

1.44   <u>Expense Reimbursement</u> means the amount necessary to reimburse the Sponsor Creditors and the Sponsor for their fees and expenses incurred in connection with the transactions contemplated in this Joint Plan, which amounts shall be included in the approved uses of funds under the Equity Funding Commitment and shall be paid on the Effective Date.

1.45   <u>Face Amount</u> means (i) when used in reference to a Disputed Claim, the full stated amount claimed by the Holder of such Claim in any Proof of Claim timely Filed with the

Bankruptcy Court or otherwise deemed timely Filed by any Final Order of the Bankruptcy Court, and (ii) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

1.46    File, Filed or Filing means properly and timely filed, filed or filing with the Bankruptcy Court, as reflected on the official docket of the Bankruptcy Court for the Chapter 11 Cases, and served on Persons, as such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or order of the Bankruptcy Court.

1.47    Final Order means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or on the docket of any other court of competent jurisdiction), which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

1.48    FKF Madison means the above-captioned debtor and debtor in possession which was Filed as FKF Madison Park Group Owner, LLC, Case No. 11867 (KG) but which is in fact named FKF Madison Group Owner, LLC.

1.49    GAP Claim means an unsecured Claim against any Debtor arising from the date of commencement of the Chapter 7 Cases to the date of the entry of the order for relief in the Chapter 7 Cases that are Allowed pursuant to Section 502(f) of the Bankruptcy Code.

1.50    General Unsecured Claim means a Claim against any Debtor that is not an Administrative Claim, a GAP Claim, a Priority Tax Claim, an Other Priority Claim, an Other Secured Claim, a Mechanic's Lien Claim, a Deed Holder Claim or the Allowed Secured Claim of iStar.

1.51    Gross Proceeds means the gross proceeds received from Unit Sales by the Debtors or another person or entity on behalf of the Reorganized Debtor.

1.52    Holder means an Entity holding a Claim against, or Equity Interest in, any Debtor.

1.53    IJS Consulting Agreement means that certain agreement entered into by the Reorganized Debtor and IJS Management, LLC, on the Effective Date, for IJS Management, LLC to provide services (to be delineated in the IJS Consulting Agreement) as requested by the Sponsor from time to time during the period from the Effective Date through entry into contracts for seventy-five percent (75%) of the Units as approved under the Offering Plan and in consideration for which IJS Management, LLC will be paid ten-thousand dollars ($10,000) per

6

month during the term of such agreement, subject to the terms and conditions contained therein. The IJS Consulting Agreement will replace a similar consulting arrangement between the Debtors and IJS Management, LLC providing for the same ten-thousand dollars ($10,000) per month payment to the consultant that is being entered into effective on the Conversion Date.[4]

1.54    Impaired means "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

1.55    Involuntary Petitions means the involuntary petitions under chapter 7 of the Bankruptcy Code Filed on the Petition Date by the Petitioning Creditors and were later joined in by the Joining Petitioning Creditors.

1.56    Initial Distribution Date means a date selected by the Reorganized Debtor that is not later than forty-five (45) days after the Effective Date.

1.57    iStar means iStar Tara LLC.

1.58    JMJS means JMJS 23rd Street Realty Owner, LLC.

1.59    Joining Petitioning Creditors means collectively, Dr. Harvey Schiller; Joe Coffey; Mad 52, LLC; Pace Plumbing Corp.; and Gotham Greenwich Construction Co., LLC., Rance Mashek and Tim Lin.

1.60    Joint Plan means the Debtors' joint chapter 11 plan of reorganization as confirmed by the Bankruptcy Court.

1.61    Joint Plan Funding Commitment means the approximately $40 million equity commitment from the Sponsor made to the Reorganized Debtor as of the Effective Date as evidenced by, and subject to the terms and conditions of, the Joint Plan Funding Commitment Letter annexed as Exhibit B to the Plan Support Agreement.

1.62    Lien means any mortgage, lien, pledge, security interest, claim of ownership, or other charge or encumbrance of any kind in, upon, or affecting any asset of the Debtors or the Estates, including as described in Section 101(37) of the Bankruptcy Code.

1.63    Loan Agreements means collectively: (i) Senior Loan and Security Agreement between Borrowers and SFT I, Inc. (as predecessor in interest to iStar) dated as of November 16, 2007; (ii) Project Loan and Security Agreement between Borrowers and SFT I, Inc. (as predecessor in interest to iStar) dated as of November 16, 2007; and (iii) Building Loan and Security Agreement between Borrowers and SFT I, Inc. (as predecessor in interest to iStar) dated as of November 16, 2007; each, as modified by that certain Modification Of Loan Agreements And Other Loan Documents (the "**Modification Agreement**") between Borrowers and iStar as lender dated as of June 24, 2009.

---

[4] Any description of the IJS Consulting Agreement herein or in the accompanying Disclosure Statement is for informational purposes only. In any and all respects, the terms of the IJS Consulting Agreement shall control.

1.64     Loan Documents means, collectively the Loan Agreements, the Modification Agreement, the Mortgages and the Notes, and all other documents, agreements, notes, certifications, schedules and exhibits evidencing, securing or related to the Existing iStar Indebtedness.

1.65     Litigation Claim means any Causes of Action that any Debtor or Estate may hold against any Entity as of the Effective Date, except any Causes of Action that (i) have been settled by the Debtors on or prior to the Effective Date or (ii) shall be released by the Debtors pursuant to the terms of this Joint Plan.

1.66     Madison Park means Madison Park Group Owner, LLC

1.67     Mechanic's Lien Claim means a Claim held by a Holder derived from a properly and timely asserted (under applicable state law) mechanic's lien on the Property.

1.68     Modification Agreement shall have the meaning set forth within the definition of "Loan Agreements."

1.69     Mortgages means collectively: (i) Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Senior Loan) made by Borrowers in favor of SFT I, Inc. (as predecessor in interest to iStar) dated November 16, 2007, as modified by the Modification Agreement; (ii) Second Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Project Loan) made by Borrowers in favor of iStar dated as of June 24, 2009; and (iii) Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Building Loan) made by Borrowers in favor of iStar dated as of June 24, 2009.

1.70     Net Unit Sale Proceeds means the Gross Proceeds from Unit Sales lessselling costs (brokerage, selling, taxes, marketing, customary closing costs, recording costs, etc.).

1.71     Net Waterfall Percentage equals that percentage calculated by dividing (x) the amount equal to the net proceeds received by the Estates on account of the Net Waterfall Proceeds Plan Obligation by (y) the aggregate total amount of Allowed Claims in Classes 5A-5D and 7A-7D.

1.72     Net Waterfall Proceeds means Gross Proceeds from Unit Sales less: (i) selling costs (brokerage, selling, taxes, marketing, customary closing costs, recording costs, etc.); (ii) ordinary course operating expenses of the Reorganized Debtor, including general marketing and administrative expenses, not otherwise paid with proceeds from the Equity Funding Commitment; (iii) post-Effective Date payments of principal and interest and fees and costs, if any, to iStar until the Restructured iStar Debt is paid in full; (iv) payment to the Sponsor of an amount equal to the dollar amount of the funds provided to the Reorganized Debtor pursuant to the Equity Funding Commitment plus a compounded annual return of twenty percent (20%) per annum; and (v) the costs for the allowance/disallowance of Claims in Classes 5A-5D and 7A-7D and distributing the payments from the Net Waterfall Proceeds.

8

1.73    Net Waterfall Proceeds Plan Obligation means the obligation under the Joint Plan imposed upon, and assumed by, the Reorganized Debtor pursuant to the Joint Plan providing for payments from the Reorganized Debtor to the Estates in an aggregate amount equal to ten percent (10%) of the Net Waterfall Proceeds.

1.74    Notes means collectively: (i) Consolidated, Amended and Restated Promissory Note (Senior Loan) made by Borrowers in favor of SFT I, Inc. (as predecessor in interest to iStar) dated November 16, 2007, as modified by the Modification Agreement; (ii) Second Consolidated, Amended and Restated Promissory Note (Project Loan) made by Borrowers in favor of iStar dated as of June 24, 2009; and (iii) Amended and Restated Promissory Note (Building Loan) made by Borrowers in favor of iStar dated June 24, 2009.

1.75    Offering Plan means the condo offering plan, together with all amendments thereto, as accepted for filing by the New York State Department of Law, Investment Protection Bureau.

1.76    Other Priority Claim means any Claim entitled to priority in payment pursuant to Section 507(a) of the Bankruptcy Code, other than an Administrative Claim, a GAP Claim, or a Priority Tax Claim.

1.77    Other Secured Claim means any Claim secured by the assets of a Debtor other than a Mechanic's Lien Claim, a Claim held by iStar, or a Deed Holder Claim.

1.78    Person means any individual, corporation, partnership, association, joint stock company, joint venture, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity, or any domestic or foreign government, governmental agency, or any subdivision, department or other instrumentality thereof.

1.79    Petition Date means June 8, 2010.

1.80    Petitioning Creditors means, collectively: Stephen Kraus; Mitchell Kraus; Barbara Kraus; and Kraus Hi-Tech Home Automation, Inc.

1.81    Plan Supplement means a supplement to this Joint Plan, in form and substance reasonably satisfactory to the Sponsor which the Debtors shall file with the Bankruptcy Court not later than five (5) Business days prior to the Voting Deadline.

1.82    Plan Support Agreement means that certain Plan Support Agreement dated as of November .18, 2010 by and among the Debtors, Ira Shapiro, the Sponsor Creditors and the Sponsor, a copy of which is annexed to the *Emergency Motion for Immediate Entry of Orders for Relief and Conversion of Cases from Chapter 7 to Chapter 11* [Docket No. 114], as amended from time to time..

1.83    Post Effective Date Notice List means the notice list described in and to be created pursuant to Section 11.11 of the Joint Plan.

9

1.84  Priority Tax Claim means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.85  Professional means any Person retained by the Debtors or the Committee pursuant to a Final Order of the Bankruptcy Court entered pursuant to Sections 327 or 1103 of the Bankruptcy Code.

1.86  Professional Fee Claim means a Claim of a Professional for compensation for services and/or reimbursement of expenses pursuant to Sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Chapter 11 Cases.

1.87  Proof of Claim means the proof of claim form that must be Filed with the Bankruptcy Court on or before the applicable Claims Bar Date by Holders of certain Claims against the Debtors.

1.88  Property means the land, the improvements, the unsold Units which have been or will be developed, designed, and constructed at 23 East 22nd Street, New York, New York 10010 (and sometimes also referred to as 20 East 23rd Street) consisting of a fifty (50) story hi rise tower containing sixty nine (69) residential Units of which fifty-seven (57) Units remain unsold and contain approximately 117,982 net sellable square feet, and amenities, and limited common elements (the "**North Tower**"), as well as an adjacent lot known as 23 East 22nd, together with the land underlying and abutting the North Tower and the adjacent lot, the improvements, the unsold Units, all easements, air rights, development rights, sewer rights, water rights, servitudes, rights of way, streets, ways, alleys and other appurtenances thereto in any way relating to the foregoing.

1.89  Proponents means collectively the Debtors and the Sponsor.

1.90  Reinstated or Reinstatement or Reinstate means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim, or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a nonmonetary obligation other than a default arising from failure to operate under a nonresidential real property lease subject to Section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than any Debtor or an insider of any Debtor) for any pecuniary loss incurred by such Holder as the result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder thereof.

1.91  Released Parties means the Debtors, the Sponsor Creditors, the Sponsor, the Reorganized Debtor, Continuum, Glimcher Bernard One Madison, LLC, Kraus OMP LLC, 45 Margaux LLC, New One Madison Park Member I, LP, New One Madison Park GP, LLC, the

Petitioning Creditors and the Joining Petitioning Creditors and their respective current and former officers, directors, members, partners, agents, representatives, counsel, affiliates and financial advisors.

1.92  Reorganized Debtor means New One Madison Park, LLC, a Delaware limited liability company, the entity under the Joint Plan to which all of assets of the Debtors' Estates shall be sold; the Operating Agreement for the Reorganized Debtor shall be in substantial conformity with that set forth in **Exhibit 2** annexed hereto.

1.93  Restated iStar Loan Agreement means the Loan Agreements amended and restated to reflect the treatment of the Classes 1A–1D (Allowed Secured Claim of iStar) under the Joint Plan in substantial conformity with the terms and conditions set forth in **Exhibit 1** to the Joint Plan.

1.94  Restated iStar Loan Documents means collectively the Restated iStar Loan Agreement, the Restated iStar Mortgage and the Restated iStar Note, the final form of which will be Filed with the Bankruptcy Court as part of the Plan Supplement.

1.95  Restated iStar Mortgage means the Mortgages as amended and restated a single mortgage encumbering the Property and granting a security interest in the assets of the Reorganized Debtor in substantial conformity with the terms and conditions set forth in **Exhibit 1** to the Joint Plan.

1.96  Restated iStar Note means the Notes as amended as a single note from the Reorganized Debtor in favor of iStar Debtor in substantial conformity with the terms and conditions set forth in **Exhibit 1** to the Joint Plan.

1.97  Restructured iStar Indebtedness means the Existing iStar Indebtedness as modified, restructured and restated under the Joint Plan as provided for in the treatment of Classes 1A-1D hereof.

1.98  Schedules means, with respect to each Debtor, the schedules of assets and liabilities and the statement of financial affairs Filed by such Debtor with the Bankruptcy Court pursuant to Sections 521(a)(1) and 1106(a)(2) of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements have been or may be amended or supplemented by such Debtor at any point.

1.99  Slazer Owner means Slazer Enterprises Owner, LLC

1.100  Sponsor means New One Madison Park Member I, LP, a Delaware limited partnership whose limited partners are 45 Margaux LLC, a Delaware limited liability company, Kraus OMP LLC, a Delaware limited liability company, and Glimcher Bernard One Madison, LLC, a Delaware limited liability company and whose general partner is New One Madison Park GP, LLC, a Delaware limited liability company and which shall be issued under the Joint Plan 100% of the equity interests in the Reorganized Debtor.

1.101  Sponsor Creditors means Mad 52, LLC, Mitchell Kraus and Stephen Kraus.

11

1.102    <u>TCO</u> means temporary certificate of occupancy.

1.103    <u>Unimpaired</u> means with respect to a Claim or Equity Interest, a Claim or Equity Interest that is not Impaired as a result of being either (a) Reinstated or (b) paid in full in cash under this Joint Plan.

1.104    <u>Unit</u> means the residential condominium units, together with any limited common elements appurtenant thereto and their respective percentage interests in the common elements, that currently are, or will in the future be, subject to a condominium regime effecting the Property pursuant to that certain Amended and Restated Declaration of Condominium (including the by-laws and all exhibits thereto) dated July 22, 2009.

1.105    <u>Unit Sales</u> means the sale of one or more condominium Units that comprise the Property which may include limited common elements.

1.106    <u>U.S. Trustee</u> means the Office of the United States Trustee for Region 3.

1.107    <u>Voting Deadline</u> means the date by which Holders of Claims who are entitled to vote on the Joint Plan must submit their Ballots in accordance with the terms of the Voting Procedures Order.

1.108    <u>Voting Procedures Order</u> means an order to be entered by the Bankruptcy Court (i) approving the Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code and (ii) setting forth the deadlines, procedures and instructions for submitting votes to accept or reject the Joint Plan

B.    <u>Rules of Interpretation.</u>

For purposes of this Joint Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Joint Plan, any reference in this Joint Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Joint Plan to an existing document, schedule or Exhibit filed or to be filed means such document, schedule or Exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Joint Plan; (d) any reference to an entity as a Holder of a Claim or Equity Interest includes that entity's successors and assigns; (e) all references in this Joint Plan to Sections, Articles and Schedules are references to Sections, Articles and Schedules of or to this Joint Plan, as the same may be amended, waived or modified from time to time; (f) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Joint Plan as a whole and not to any particular section, subsection or clause contained in this Joint Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Joint Plan; (h) subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Joint Plan shall be governed by, and construed and enforced in

12

accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply; and (j) in computing any period of time prescribed or allowed by this Joint Plan, Bankruptcy Rule 9006(a) will apply.

C.    Exhibits.

All Exhibits to this Joint Plan and the Plan Support Agreement are incorporated into and are a part of this Joint Plan as if set forth in full herein. Parties in interest may obtain a copy of the filed Exhibits upon written request to the Debtors' counsel at the address set forth in Section 11.12 hereof. Upon their filing, the Exhibits and the Plan Support Agreement may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours or at the Bankruptcy Court's website at http://www.deb.uscourts.gov/. The documents contained in the Exhibits and the Plan Support Agreement shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

## ARTICLE II
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

All Claims and Equity Interests, except Administrative Claims, GAP Claims and Priority Tax Claims are placed in the Classes set forth below. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, GAP Claims and Priority Tax Claims, as described below, have not been classified and therefore are excluded from the Classes of Claims and Equity Interests set forth in this Joint Plan. The treatment of Administrative Claims, GAP Claims and Priority Tax Claims in the Chapter 11 Cases is set forth below.

The Joint Plan does not provide for substantive consolidation of the Estates and, on the Effective Date, the Estates shall not be deemed to be substantively consolidated for purposes hereof. Claims by one Debtor against another Debtor shall be Disallowed under the Joint Plan. Unless otherwise provided in the Joint Plan or the Confirmation Order, Allowed Claims against a particular Debtor shall be satisfied solely from the cash and other assets of such Debtor and its Estate, provided that, to the extent of any insufficiency, funds or other property may be advanced to the relevant Debtor by any of the other Debtors solely for purposes of consummating this Joint Plan. Except as specifically set forth in the Joint Plan, nothing in the Joint Plan or the Disclosure Statement shall constitute or be deemed to constitute an admission that any Debtor is liable for any Claims against any other Debtor. Except as specifically set forth in the Joint Plan, Claims that are asserted against multiple Debtors shall be treated as separate Claims against each applicable Debtor for purposes of voting and Distribution, provided that (i) there shall only be a single recovery on account of such Claims and the aggregate Distributions to the Holders of such Claims shall not exceed the largest Allowed amount of any such Claim against any particular Debtor, (ii) any Distributions from a particular Estate on account of such Claims shall take into account the Distributions to be made on account of such Claims by the other Estates, and (iii) such Claims shall be administered and treated in the manner set forth below.

Pursuant to Sections 1122 and 1123 of the Bankruptcy Code, Claims against and Equity Interests in the Debtors are classified for all purposes, including, without express or implied limitation, voting, confirmation and Distributions pursuant to the Joint Plan, as set forth herein. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that

13

the Claim or Equity Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. With respect to Classes 2A-2D each Holder of a Claim in Classes 2A-2D shall be deemed to be a separate Sub-Class for purposes of voting on the Joint Plan. With Respect to Classes 5A-5D, to the extent required, each Holder of a Claim in Classes 5A-5D may be deemed to be a separate Sub-Class for purposes of voting on the Joint Plan. A Claim or Equity Interest shall be in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. If there are no Claims or Equity Interests in a particular Class, then such Class of Claims or Equity Interests shall not exist for any purposes under the Joint Plan.

2.1    Claims Against Debtor FKF Madison Park Group Owner, LLC.

(a)    Unclassified Claims. The following Claims against FKF Madison Park Group Owner, LLC are unclassified by the Joint Plan:

(i)    Administrative Claims

(ii)    GAP Claims

(iii)    Priority Tax Claims

(b)    Classes of Claims and Equity Interests. The following Claims against FKF Madison Park Group Owner, LLC are classified by the Joint Plan:

| Classes | Designation | Impairment | Entitled to Vote |
|---------|-------------|------------|------------------|
| 1A | Allowed Secured Claim of iStar | Impaired | Yes |
| 2A | Mechanic's Liens Claims | Impaired | Yes |
| 3A | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4A | Property Tax Claims | Impaired | Yes |
| 5A | Deed Holder Claims | Impaired | Yes |
| 6A | Other Priority Claims | Impaired | Yes |
| 7A | General Unsecured Claims | Impaired | Yes |
| 8A | Equity Interests | Impaired | No (deemed to reject) |

2.2    Claims Against Debtor JMJS 23rd Street Realty Owner, LLC.

(a)    Unclassified Claims. The following Claims against JMJS 23rd Street Realty Owner, LLC are unclassified by the Joint Plan:

(i)    Administrative Claims

(ii)    GAP Claims

(iii)    Priority Tax Claims

14

(b)   Classes of Claims and Equity Interests. The following Claims against JMJS 23rd Street Realty Owner, LLC are classified by the Joint Plan:

| Classes | Designation | Impairment | Entitled to Vote |
|---------|-------------|------------|------------------|
| 1B | Allowed Secured Claim of iStar | Impaired | Yes |
| 2B | Mechanic's Liens Claims | Impaired | Yes |
| 3B | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4B | Property Tax Claims | Impaired | Yes |
| 5B | Deed Holder Claims | Impaired | Yes |
| 6B | Other Priority Claims | Impaired | Yes |
| 7B | General Unsecured Claims | Impaired | Yes |
| 8B | Equity Interests | Impaired | No (deemed to reject) |

2.3   Claims Against Debtor Madison Park Group Owner, LLC.

(a)   Unclassified Claims. The following Claims against Madison Park Group Owner, LLC are unclassified by the Joint Plan:

(i)    Administrative Claims

(ii)   GAP Claims

(iii)  Priority Tax Claims

(b)   Classes of Claims and Equity Interests. The following Claims against Madison Park Group Owner, LLC are classified by the Joint Plan:

| Classes | Designation | Impairment | Entitled to Vote |
|---------|-------------|------------|------------------|
| 1C | Allowed Secured Claim of iStar | Impaired | Yes |
| 2C | Mechanic's Liens Claims | Impaired | Yes |
| 3C | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4C | Property Tax Claims | Impaired | Yes |
| 5C | Deed Holder Claims | Impaired | Yes |
| 6C | Other Priority Claims | Impaired | Yes |
| 7C | General Unsecured Claims | Impaired | Yes |
| 8C | Equity Interests | Impaired | No (deemed to reject) |

2.4   Claims Against Debtor Slazer Enterprises Owner, LLC.

(a)   Unclassified Claims. The following Claims against Slazer Enterprises Owner, LLC are unclassified by the Joint Plan:

(i)    Administrative Claims

(ii)   GAP Claims

15

(iii)    Priority Tax Claims

(b)    <u>Classes of Claims and Equity Interests</u>. The following Claims against
Slazer Enterprises Owner, LLC are classified by the Joint Plan:

| Classes | Designation | Impairment | Entitled to Vote |
|---------|-------------|------------|------------------|
| 1D | Allowed Secured Claim of iStar | Impaired | Yes |
| 2D | Mechanic's Liens Claims | Impaired | Yes |
| 3D | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4D | Property Tax Claims | Impaired | Yes |
| 5D | Deed Holder Claims | Impaired | Yes |
| 6D | Other Priority Claims | Impaired | Yes |
| 7D | General Unsecured Claims | Impaired | Yes |
| 8D | Equity Interests | Impaired | No (deemed to reject) |

2.5    <u>Treatment of Unclassified Claims.</u>

(a)    <u>Administrative Claims</u>.  Subject to the provisions of Sections 328, 330,
331 and 503(b) of the Bankruptcy Code, each Holder of an Allowed Administrative Claim
against a Debtor shall receive, on or as soon as practicable after the Effective Date, on account of
and in full and complete settlement, release and discharge of, and in exchange for, such Allowed
Administrative Claim, either cash equal to the full unpaid amount of such Allowed
Administrative Claim, or such other treatment as the Sponsor and the Holder of such Allowed
Administrative Claim shall have agreed.

(b)    <u>GAP Claims</u>.  Each Holder of an Allowed GAP Claim against a Debtor
shall receive, on or as soon as practicable after the Effective Date, on account of and in full and
complete settlement, release and discharge of, and in exchange for, such Allowed GAP Claim,
either cash equal to the full unpaid amount of such Allowed GAP Claim, or such other treatment
as the Sponsor and the Holder of such Allowed GAP Claim shall have agreed.

(c)    <u>Priority Tax Claims</u>.  Except to the extent that the applicable Debtor and
the Holder of an Allowed Priority Tax Claim agree to a less favorable treatment of such Claim
(in which event such agreement shall govern), each Holder of an Allowed Priority Tax Claim
that is due and payable on or before the Effective Date shall receive, on or as soon as practicable
after the Effective Date, on account of and in full and complete settlement, release and discharge
of, and in exchange for, such Allowed Priority Tax Claim, in the Debtors' sole discretion, either
(i) cash equal to the amount of such Allowed Priority Tax Claim or (ii) pursuant to Section
1129(a)(9)(C) of the Bankruptcy Code, deferred cash payments made on the first Business Day
following each anniversary of the Effective Date over a period not exceeding five (5) years after
the Petition Date, with a total value as of the Effective Date equal to the amount of such Allowed
Priority Tax Claim.  All Allowed Priority Tax Claims that are not due and payable on or before
the Effective Date shall be paid in the ordinary course of business by the Reorganized Debtor in
accordance with the applicable non-bankruptcy law governing such Claims.

16

2.6    Treatment of Classified Claims and Equity Interests.

(a)    Allowed Secured Claim of iStar (Classes 1A-1D). On the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, the Existing iStar Indebtedness, the Existing iStar Indebtedness shall be modified as set forth in the Restructured Secured Debt Term Sheet annexed hereto as **Exhibit 1**. The Restructured iStar Debt shall be evidenced by the Restated iStar Loan Documents. Accordingly, under the Joint Plan the Existing iStar Indebtedness shall be treated as an Allowed Secured Claim in the amount of $124,500,000. Pursuant to the Restated iStar Loan Documents, the Restructured iStar Debt shall be secured by the same liens evidenced by the Loan Documents, to the same extent, validity, priority and enforceability of such liens; provided, however, any and all Causes of Action that the Debtors or the Estates may have against iStar are, and shall be, released, waived and extinguished under the Joint Plan as of the Effective Date. The Reorganized Debtor shall repay the Restructured iStar Debt with interest on a monthly basis at the rate specified, and in accordance with the terms contained, in **Exhibit 1** and with principal payments made from Net Unit Sale Proceeds or funds otherwise available to the Reorganized Debtor. To the extent the Allowed amount of the Existing iStar Indebtedness exceeds the $124,500,000, the difference shall be classified as a General Unsecured Claim in Classes 7A-7D under the Joint Plan.

(b)    Mechanic's Lien Claims (Classes 2A-2D). On the Effective Date, each Holder of an Allowed Mechanic's Lien Claim against a Debtor shall, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Mechanic's Lien Claim, receive a cash payment equal to twenty percent (20%) of the face amount of the Allowed amount of each such Holder's Allowed Mechanic's Lien Claim. On the Effective Date, the Lien asserted by the Holder of a Mechanic's Lien Claim shall be null and void, the Holder of the Mechanic's Lien Claim shall execute all documents requested by the Reorganized Debtor to effectuate the cancellation of its Lien, including the release and/or termination of any recording of the Lien, and the Holder of the Mechanic's Lien Claim shall be enjoined from taking any action against the Reorganized Debtor or the Property to enforce, perfect, or record the Mechanic's Lien.

(c)    Other Secured Claims (Classes 3A-3D). On or as soon as reasonably practicable after the Effective Date, at the election of the Sponsor, Holders of Allowed Other Secured Claims shall, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Other Secured Claims, have their Claims satisfied by either (i) payment in full in cash, (ii) reinstatement pursuant to Section 1124 of the Bankruptcy Code, or (iii) such other recovery necessary to satisfy Section 1129 of the Bankruptcy Code. The Debtors' failure to object to any Other Secured Claim in the Chapter 11 Cases shall be without prejudice to the rights of the Reorganized Debtor to contest or otherwise defend against such Claim in the appropriate forum when and if such Claim is sought to be enforced by the Holder of such Claim. Nothing in the Joint Plan or elsewhere shall preclude the Reorganized Debtor from challenging the validity of any alleged Lien on any asset of any Debtor or the Reorganized Debtor or the value of any such collateral.

(d)    Property Tax Claims (Classes 4A-4D). Except to the extent that the Sponsor and the Holder of an Allowed Property Tax Claim agree to a less favorable treatment of

17

such Claim (in which event such agreement shall govern), each Holder of an Allowed Property Tax Claim that is due and payable on or before the Effective Date shall receive, on or as soon as practicable after the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Property Tax Claim, at the election of the Reorganized Debtor, either (i) cash equal to the amount of such Allowed Property Tax Claim or (ii) pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code, five (5) annual payments each made on the first Business Day following each successive anniversary of the Effective Date during the period not exceeding five (5) years after the Petition Date, with interest on the outstanding Allowed Property Tax Claim at the rate required under Section 511 of the Bankruptcy Code.

(e)     Deed Holder Claims (Classes 5A-5D).  From and after the Effective Date, each Holder of an Allowed Deed Holder Claim against any Debtor shall, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Deed Holder Claim, receive a Distribution from the Estates to the extent funds are available to the Estates for Distribution from payments received by the Estates on account of the Net Waterfall Proceeds Plan Obligation.  For purposes hereof, Distribution to be made to each Holder of an Allowed Deed Holder Claim in Classes 5A-5D is the amount calculated by multiplying the Net Waterfall Percentage by the amount of the Holder's Allowed Deed Holder Claim in Classes 5A-5D.  On the Effective Date, the Deeds issued to the Holder of a Deed Holder Claim shall be null and void, the Holder of the Deed Holder Claim shall return the Deed to the Estates, shall execute all documents requested to effectuate the cancellation of the Deed, including the release and/or termination of any recording of the Deed, and the Holder of the Deed shall be enjoined from taking any action against the Reorganized Debtor or the Property to enforce, perfect, record the Deed or assert any ownership or other rights to the Unit in respect of such Deed.

(f)     Other Priority Claims (Classes 6A-6D).  Each Holder of an Allowed Other Priority Claim against a Debtor shall receive, on or as soon as practicable after the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Other Priority Claim, either cash equal to the full unpaid amount of such Allowed Other Priority Claim, or such other treatment as the applicable Sponsor and the Holder of such Allowed Other Priority Claim shall have agreed.

(g)     General Unsecured Claims (Classes 7A-7D).  From and after the Effective Date, each Holder of an Allowed General Unsecured Claim against any Debtor shall, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed General Unsecured Claim, receive a Distribution from the Estates to the extent funds are available to the Estates for Distribution from payments received by the Estates on account of the Net Waterfall Proceeds Plan Obligation.  General Unsecured Claims shall include any deficiency claim of iStar on account of the Existing iStar Indebtedness.  For purposes hereof, (i) the Distribution to be made to each Holder of an Allowed General Unsecured Claim in Classes 7A-7D is the amount calculated by multiplying the Net Waterfall Percentage by the amount of the Holder's Allowed General Unsecured Claim in Classes 7A-7D; and (ii) to the extent the Claim of a Holder of an Allowed General Unsecured Claim is a Claim against one or more Debtors, the amount of the Allowed General Unsecured Claim shall only be counted once in an amount equal to the amount of the Allowed General Unsecured Claim.

CHI 60,494,600 v.15 129612-010000

(h)    Equity Interests (Classes 8A-8D).  As of the Effective Date, all Equity Interests in each Debtor, including any outstanding warrants, options, or other rights to acquire outstanding Equity Interests, shall be terminated and cancelled and the Holders thereof shall neither retain nor receive any property under the Joint Plan.

2.7    Special Provision Regarding Claims.

Except as otherwise explicitly provided in this Joint Plan, nothing herein shall affect the Debtors' or the Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, the legal and equitable defenses of setoff or recoupment with respect to the Unimpaired Claims.

# ARTICLE III
# ACCEPTANCE OR REJECTION OF THE JOINT PLAN

3.1    Acceptance by an Impaired Class.

In accordance with Section 1126(c) of the Bankruptcy Code and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Joint Plan if this Joint Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject this Joint Plan.

3.2    Presumed Acceptances by Unimpaired Classes.

Classes 3A-3D are Unimpaired by this Joint Plan.  Pursuant to Section 1126(f) of the Bankruptcy Code, the Holders of Claims and Equity Interests in such Classes are conclusively presumed to have accepted this Joint Plan and therefore shall not be entitled to vote to accept or reject the Joint Plan.

3.3    Presumed Rejection by Certain Impaired Classes.

Holders of Equity Interests in Classes 8A-8D will not receive or retain any property under this Joint Plan on account of such Equity Interests.  Pursuant to Section 1126(g) of the Bankruptcy Code, Holders of such Equity Interests are conclusively presumed to have rejected this Joint Plan and therefore shall not be entitled to vote to accept or reject the Joint Plan.

3.4    Impaired Classes of Claims Entitled to Vote on the Joint Plan.

Holders of Claims in Classes 1A-1D, 2A-2D, 4A-4D, 5A-5D, 6A-6D, and 7A-7D are Impaired and shall be entitled to vote to accept or reject this Joint Plan.

19

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE JOINT PLAN

4.1     Sale of Assets.

Pursuant to Section 1123(a)(5)(D) of the Bankruptcy Code, all property of the respective Estate of each Debtor, together with any property of each Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Joint Plan, shall be sold to the Reorganized Debtor on the Effective Date (subject to the effects of any transactions contemplated by this Joint Plan). Thereafter, the Reorganized Debtor may operate its business and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules. As of the Effective Date, all property of the Reorganized Debtor shall be free and clear of all Liens, Claims and Equity Interests, including the Liens and Claims of the Holders of Mechanic's Liens and the Deed Holder Claims, Claims of successor liability, Claims of any owner of a Unit who is an owner as of the Effective Date, including without limitation any claim based on the actions or inactions of the Debtors or their agents, representatives, employees or contractors with respect to the development, construction or sale of the Property or any Unit, or any patent or latent construction defects, except as specifically provided in the Joint Plan or the Confirmation Order. Without limiting the generality of the foregoing, the Reorganized Debtor may, without the need for any application to or approval by the Bankruptcy Court, pay fees that it incurs after the Effective Date for professional services and expenses.

The Operating Agreement for the Reorganized Debtor is annexed hereto as **Exhibit 2**. On the Effective Date, the Proponents are authorized and directed to take all action necessary, and to execute all documents required, to effectuate the sale of the assets of the Debtors' Estates in the Reorganized Debtor.

4.2     Capitalization of Reorganized Debtor.

4.2.1   As set forth in, and pursuant to the terms and conditions of, the Joint Plan Funding Commitment Letter, Sponsor will provide approximately $40 million of equity capital for the Reorganized Debtor. On the Effective Date, the Sponsor shall receive 100% of the membership interests in the Reorganized Debtor.

4.2.2   The equity capital provided by Sponsor to the Reorganized Debtor pursuant to the terms and conditions of the Joint Plan Funding Commitment Letter will be used by the Reorganized Debtor to fund on the Effective Date:

(i)      payment of the Debtor in Possession Financing;

(ii)     payments to be made on account of Claims that are unclassified under the Joint Plan;

(iii)    payments to be made to Holders of Allowed Claims in Classes 2A-2D, 4A-4D, and 6A-6D;