(iv)    payments of Cure Amounts under the executory contracts and unexpired leases to be assumed and assigned under the Joint Plan; and

(v)    the Expense Reimbursement.

4.2.3    In addition, on the Effective Date the Reorganized Debtor will:

(i)    assume the Restructured iStar Debt and execute the Restated iStar Loan Documents in substantial conformity with the terms and conditions described in **Exhibit 1** hereto;

(ii)    assume the Net Waterfall Proceeds Plan Obligation; and

(iii)    execute the Development Agreement.

4.2.4    The Reorganized Debtor shall make payments on account of the Net Waterfall Proceeds Plan Obligation as Net Waterfall Proceeds are received but no more frequently than twice in any twelve (12) month period. For purposes of calculating the Net Waterfall Proceeds at any date of Distribution, the ordinary course operating expenses of the Reorganized Debtor that have been paid to such date and not paid from the proceeds of the Equity Funding Commitment shall be taken into account (without duplication) in such calculation and the costs for the allowance/disallowance of Claims in Classes 5A-5D and 7A-7D and distributing the payments from the Net Waterfall Proceeds that have been paid to date shall be taken into account (without duplication) in such calculation.

4.2.5    From and after the Effective Date, the equity capital provided to Reorganized Debtor pursuant to the terms and conditions of the Joint Plan Funding Commitment Letter will be used by the Reorganized Debtor to pay working capital expenses (including payment of interest on the Restructured iStar Debt) and to pay the cost of development of the Property and the marketing and sale of the Units.

4.3    IJS Consulting Agreement.

On the Effective Date, the Reorganized Debtor shall enter into the IJS Consulting Agreement.

4.4    Development and Sale of the Property.

From and after the Effective Date, the Reorganized Debtor intends to develop the Property as is more particularly described in the Disclosure Statement but which, in summary, and under and pursuant to this Joint Plan includes: (x) (i) completing the open punch lists for thirty-seven (37) Units in the North Tower for which TCOs have been issued; (ii) finishing the build-out of the twenty (20) Units in the North Tower currently without TCOs; and (iii) completing the amenities in the North Tower; (y) marketing the Property and the Units; and (z) selling the Units. While the Debtors' development plan contemplated building a mid-rise building over the Lobby, such a building is not part of the Reorganized Debtor's current development plan. The development of the Property will be undertaken by the Reorganized

21

Debtor under the management and supervision of the Sponsor. The Sponsor's affiliate, Continuum, shall be the developer for the Property and will assist the Reorganized Debtor in the day to day operations of the Reorganized Debtor. The Reorganized Debtor will receive equity capital to fund its operations pursuant to the terms and conditions of the Joint Plan Funding Commitment Letter.

4.5     Debtors Corporate Existence.

On and after the Effective Date, the Debtors shall be authorized to take such action as they deem necessary and appropriate to wind-down their affairs.

4.6     Reorganized Debtor's Corporate Existence.

(a)     On and after the Effective Date, the Reorganized Debtor, after giving effect to the transaction contemplated under this Joint Plan, shall exist and operate in accordance with its Operating Agreement.

(b)     Directors and Officers of Reorganized Debtor. The Reorganized Debtor shall be 100% owned by Sponsor. Sponsor's limited partners are 45 Margaux LLC, a Delaware limited liability company, Kraus OMP LLC, a Delaware limited liability company, and Glimcher Bernard One Madison, LLC, a Delaware limited liability company. Sponsor's general partner is New One Madison Park GP, LLC, a Delaware limited liability company. The developer for the Property to be engaged by the Reorganized Debtor is Continuum.

(c)     Corporate Action. On the Effective Date, the creation of the Reorganized Debtor, the filing of its Operating Agreement, and all other corporate actions contemplated to be taken by the Debtors and the Sponsor pursuant to this Joint Plan shall be authorized and approved in all respects or shall have otherwise occurred. All matters provided for in this Joint Plan involving the corporate structure of the Reorganized Debtor and any corporate action required by the Debtors in connection with this Joint Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirement of further action by the security holders, members, directors or officers of the Debtors. On the Effective Date, Ira Shapiro is authorized and directed to issue, execute, deliver and perform the agreements, documents, securities and instruments contemplated by this Joint Plan in the name of an on behalf of the Debtors.

4.7     Cancellation of Notes, Instruments, Debentures and Equity Interests.

On the Effective Date, except as otherwise provided herein, all credit documents, notes, bonds, operating agreements, member agreements, registration rights agreements, and/or all documents plans, or agreements evidencing or creating any indebtedness or obligations of a Debtor that relate to Claims or Equity Interests that are Impaired under this Joint Plan (the "Cancelled Documents"), shall be cancelled, void and of no further force and effect and the obligations of the Debtors under any such Cancelled Documents shall be discharged. From and after the Effective Date, except as otherwise provided herein, the Cancelled Documents shall solely evidence a right to receive a Distribution under this Joint Plan to the extent provided for herein.

22

4.8    Cancellation of Liens.

Except as otherwise provided in this Joint Plan, on the Effective Date, in consideration for the Distributions to be made under the Joint Plan, (i) all Liens, charges, encumbrances, ownership interests related to the Deeds, and rights relating to any Claim or Equity Interest shall be terminated, null and void and of no effect, and (ii) any Lien securing any Secured Claim (other than a Lien securing an Other Secured Claim that is Reinstated pursuant to the Joint Plan), including without limitation, any Lien or Deed asserted or held by a Holder of a Claim classified in Classes 2A-2D and 5A-5D shall be authorized and directed to release any collateral or property of any Debtor held by such Holder and to take such actions as may be requested by the Reorganized Debtor to evidence the release of such Lien or Deed, including the execution, delivery and filing or recording of such release documents as my be requested by the Reorganized Debtor.

4.9    Cram-Down.

If any Impaired Class fails to accept the Joint Plan by the requisite statutory majorities, the Proponents reserve the right (i) to confirm the Joint Plan by a "cram-down" of such non-accepting Class pursuant to section 1129(b) of the Bankruptcy Code and (ii) to propose any modifications to the Joint Plan and to confirm the Joint Plan as modified, without re-solicitation, to the extent permitted by the Bankruptcy Code.

4.10    Additional Transactions.

On or prior to the Effective Date, the Debtors shall be authorized to take any such actions as may be necessary or appropriate to Reinstate Claims, or Equity Interests or render Claims and Equity Interests not Impaired, as provided for under the Joint Plan.

4.11    Dissolution of the Committee.

On the Effective Date, the Committee shall dissolve automatically as to the Estates and the Chapter 11 Cases, whereupon their members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code; provided that such parties shall continue to be bound by any obligations arising under confidentiality agreements or joint defense/common interest agreements (whether formal or informal) entered during the Chapter 11 Cases, which shall remain in full force and effect according to their terms, and provided further that the Committee and its Professionals shall continue to have a right to be heard with respect to their Professional Fee Applications.

## ARTICLE V
## PROVISIONS GOVERNING DISTRIBUTIONS

5.1    Distributions for Claims or Equity Interests Allowed as of the Initial Distribution Date.

Unless the Holder of an Allowed Claim and the Debtors or the Reorganized Debtor agree to a different Distribution Date and except as otherwise provided herein or as

23

ordered by the Bankruptcy Court, Distributions to be made on the Effective Date on account of Claims that are Allowed as of the Effective Date shall be made on the Initial Distribution Date or as soon thereafter as is practicable. Any payment or Distribution required to be made under this Joint Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

5.2     <u>Interest on Claims.</u>

Except as otherwise specifically provided for in this Joint Plan, the Confirmation Order or other order of the Bankruptcy Court, no penalty or post-petition interest shall accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to penalties or interest accruing on or after the Petition Date or the Effective Date on any Claim.

5.3     <u>Distributions by Disbursing Agent.</u>

Other than as specifically set forth in this Joint Plan, the Disbursing Agent shall make all Distributions required to be made as of the Effective Date under this Joint Plan on the Initial Distribution Date, or such later date as a claim or Disputed Claim entitled to Distribution on the Effective Date becomes an Allowed Claim, and thereafter in the discretion of the Disbursing Agent as funds are available to the Estates pursuant to the Net Waterfall Proceeds Plan Obligation. The Reorganized Debtor may act as Disbursing Agent or may employ or contract with other entities to assist in or make the Distributions required by this Joint Plan.

5.4     <u>Delivery of Distributions and Undeliverable or Unclaimed Distributions.</u>

The following terms shall govern the delivery of Distributions and undeliverable or unclaimed Distributions with respect to Claims.

(a)     <u>Delivery of Distributions in General</u>. Distributions to Holders of Allowed Claims shall be made at the addresses set forth in the Debtors' records unless such addresses are superseded by Proofs of Claim or notices of transfer Filed pursuant to Bankruptcy Rule 3001.

(b)     <u>Undeliverable and Unclaimed Distributions.</u>

(i)     <u>Holding and Investment of Undeliverable and Unclaimed Distributions</u>. If the Distribution to any Holder of an Allowed Claim is returned to the Reorganized Debtor or the Disbursing Agent as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until the Reorganized Debtor or the Disbursing Agent are notified in writing of such Holder's then current address.

(ii)     <u>Failure to Claim Undeliverable Distributions</u>. Any Holder of an Allowed Claim that does not assert a claim pursuant to this Joint Plan for an undeliverable or unclaimed Distribution within one (1) year after the Effective Date shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed Distribution against the Debtors

24

or their Estates or the Reorganized Debtor or its property. In such cases, any cash for Distribution on account of such claims for undeliverable or unclaimed Distributions shall become the property of the Reorganized Debtor free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary. Nothing contained in this Joint Plan shall require any Disbursing Agent, including, but not limited to, the Reorganized Debtor, to attempt to locate any Holder of an Allowed Claim.

5.5     Record Date for Distributions.

(a)     The Reorganized Debtor and the Disbursing Agent will have no obligation to, but may, in their sole and absolute discretion, recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims that are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date. The Reorganized Debtor and the Disbursing Agent shall instead be entitled to recognize and deal for all purposes under this Joint Plan with only those record holders stated on the official claims register as of the close of business on the Distribution Record Date.

5.6     Allocation of Joint Plan Distributions Between Principal and Interest.

Except as otherwise expressly provided in this Joint Plan, to the extent that any Allowed Claim entitled to a Distribution under this Joint Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

5.7     Means of Cash Payment.

Payments of cash made pursuant to this Joint Plan shall be in U. S. dollars and shall be made, at the option and in the sole discretion of the Reorganized Debtor, by (i) checks drawn on or (ii) wire transfer from a bank selected by the Reorganized Debtor. Cash payments to foreign creditors may be made, at the option of the Reorganized Debtor, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

5.8     Withholding and Reporting Requirements.

In connection with this Joint Plan and all Distributions thereunder, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. All persons holding Claims or Equity Interests shall be required to provide any information necessary to affect information reporting and the withholding of such taxes. Notwithstanding any other provision of this Joint Plan, (i) each

Holder of an Allowed Claim that is to receive a Distribution pursuant to this Joint Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution and (ii) no Distribution shall be made to or on behalf of such Holder pursuant to this Joint Plan unless and until such Holder has made arrangements satisfactory to the Reorganized Debtor for the payment and satisfaction of such tax obligations.

### 5.9    Setoffs and Recoupment.

The Reorganized Debtor may, pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy laws, but shall not be required to, set off or recoup against any Claim, the payments or other Distributions to be made pursuant to this Joint Plan in respect of such Claim, or claims of any nature whatsoever that the Debtors or the Reorganized Debtor may have against the Holder of such Claim; provided, however, that neither the failure to assert such rights of setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any Claim that the Debtors or the Reorganized Debtor may assert against any Holder of an Allowed Claim.

### 5.10    Compromises and Settlements.

Up to and including the Effective Date, the Proponents may compromise and settle, in accordance with Bankruptcy Rule 9019(a), any and all Claims against the Debtors. On the Effective Date, such right to compromise and settle Claims shall pass to the Reorganized Debtor and the Reorganized Debtor shall thereafter be authorized to compromise and settle any Disputed Claim and execute all necessary documents, including a stipulation of settlement or release, in its sole discretion, without notice to any party, and without the need for further approval of the Bankruptcy Court.

### 5.11    De Minimis Distributions.

No payment of fractional cents shall be made under the Joint Plan and any such Distribution shall be rounded to the nearest whole cent. All Distributions less than one-hundred dollars ($100) will be held by the Disbursing Agent for the benefit of the Holder of the Allowed Claim entitled to such Distribution. When the aggregate amount held by the Disbursing Agent for the Holder of an Allowed Claim equals or exceeds $100, the Disbursing Agent shall make a Distribution to such Holder. If at the time the Disbursing Agent is to make the final Distribution to Holders of Allowed Claims and the Disbursing Agent is holding a Distribution for a Holder of an Allowed Claim of less than $100, the Disbursing Agent shall make such Distribution at such time.

### 5.12    Claims Administration Responsibility.

(a)    Sole Responsibility of the Reorganized Debtor.   From and after the Effective Date, the Reorganized Debtor shall have sole responsibility and authority for disputing, objecting to, compromising and settling, or otherwise resolving and making Distributions (if any) with respect to all Claims, including all Administrative Claims.

26

(b)    Objections to Claims.  Unless otherwise extended by the Bankruptcy Court, any objections to Claims shall be served and Filed on or before the Claims Objection Deadline. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder thereof if the Reorganized Debtor effects service of such objection in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable in the Chapter 11 Cases by Bankruptcy Rule 7004; (ii) to the extent counsel for a Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory to the applicable Proof of Claim or other representative identified in the proof of claim or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the Holder's behalf in the Chapter 11 Cases and whose appearance has not been revoked or withdrawn.

5.13    Determination of Allowed Claims.

Except as otherwise agreed to by the Proponents in writing or as set forth in this Joint Plan, the Allowed amount of any Claim as to which a Proof of Claim was timely Filed in the Chapter 11 Cases, and which Claim is subject to an objection Filed by the Debtors or the Reorganized Debtor before the Claims Objection Deadline, will be determined and liquidated pursuant to a Final Order of the Bankruptcy Court. Upon such determination, the Claim shall become an Allowed Claim and will be satisfied in accordance with this Joint Plan. Any Claim that has been or is hereafter listed in the Schedules as neither disputed, contingent or unliquidated, and for which no Proof of Claim has been timely Filed, shall be deemed Allowed in the fixed amount so listed in the Schedules for purposes of this Joint Plan unless otherwise ordered by the Bankruptcy Court.

5.14    No Distributions Pending Allowance.

Except as otherwise set forth herein, no Distributions shall be made with respect to any portion of a Disputed Claim unless and until such Disputed Claim has become an Allowed Claim. Promptly after a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor or the Disbursing Agent, as applicable, will distribute on the next succeeding Distribution Date to the Holder of such Allowed Claim any cash or other property that would have been distributed to the Holder of such Allowed Claim on the dates Distributions were previously made to Holders of other Allowed Claims in the same Class had such Claim been an Allowed Claim on such dates.

5.15    Reserves.

As of and after the Effective Date with respect to Distributions to be made under the Joint Plan, to the extent that a Claim is a Disputed Claim and if the Claim was an Allowed Claim that the Holder of the Claim would be entitled to a Distribution, the Disbursing Agent shall establish a reserve for the payment of any such Disputed Claims to the extent such Disputed Claim becomes an Allowed Claim. The amount reserved for each Disputed Claim shall be the amount that the Holder of such Disputed Claim would have been entitled to receive under the Joint Plan it if was an Allowed Claim based upon the Claim being the lower of:  (i) the amount set forth in a Proof of Claim Filed by the Holder of such Claim, or if no Proof of Claim has been Filed, the Scheduled amount set forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed and (ii) the estimated amount of such Claim for

27

Distribution purposes, as determined by the Bankruptcy Court. As soon as practicable after (and to the extent) that a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall make a payment on such Allowed Claim from the reserve established for such Disputed Claim that becomes an Allowed Claim, and any remaining amount reserved on account of such Disputed Claim shall be released from the reserve and either: (i) held by the Disbursing Agent for Distribution to all Holders of Allowed Claims in the Class in which such Disputed Claim was Classified in accordance with the Joint Plan; or (ii) if there are no such other Holders of Allowed Claims in the Class in which such Disputed Claim was classified, the remaining amount reserved on account of such Disputed Claim shall be paid by the Disbursing Agent to the Reorganized Debtor.

5.16  Reports.

From the Effective Date until a Final Decree is entered the Disbursing Agent shall, within thirty (30) days of the end of each fiscal quarter, File with the Bankruptcy Court and submit to the U.S. Trustee reports setting from all receipts and disbursements of the Estates with respect to the Distributions under the Joint Plan.

# ARTICLE VI
# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1  Assumption Generally.

Except as otherwise provided in the Joint Plan, or in any Final Order, on the Effective Date, pursuant to Bankruptcy Code Section 365, each of the executory contracts and unexpired leases designated for assumption and listed on **Exhibit 6.1** to the Joint Plan, which will be Filed with the Plan Supplement and may be amended through the date that is ten (10) days prior to the Confirmation Hearing, by notice Filed by the Debtors and served on the parties affected by such amendment, shall be assumed by the Debtors.

6.1.1  Each executory contract and unexpired lease identified for assumption or not rejected under Section 6.5 shall be assumed only to the extent, if any, that it constitutes an executory contract or unexpired lease on the Effective Date, and the listing of such contract or lease on **Exhibit 6.1** shall not constitute an admission by the Debtors or the Estates that such contract or lease is an executory contract or unexpired lease or that the Debtors, or the Estates have any liability thereunder. Any executory contract that is not listed on **Exhibit 6.1**, or that has not been assumed by the Debtors pursuant to an order of the Bankruptcy Court, or is not the subject of a pending motion by the Debtors to assume the executory contract, shall be deemed rejected as of the Effective Date.

6.1.2  All executory contracts and unexpired leases assumed by the Debtors will be assigned to the Reorganized Debtor. Any executory contract or unexpired lease that the Debtors assume and assign to the Reorganized Debtor shall be deemed to be a permitted assignment notwithstanding a provision in such contract or lease requiring consent of the nondebtor party to such contract or lease. All executory contracts or unexpired leases assumed by the Debtors shall continue in full force and effect from and after the Effective Date.

6.1.3 The execution and recording of any memorandum of lease relating to any unexpired lease listed on **Exhibit 6.1** is hereby exempt from any law or requirement requiring lessor consent or joinder, whether express or otherwise, to such execution or recordation. The Reorganized Debtor or any agent or representative thereof, is hereby authorized to serve upon all filing and recording officers a notice in connection with the execution, filing and recording of any memoranda of lease (whether recorded or unrecorded) in accordance with the Joint Plan, to evidence and implement this paragraph. The appropriate state or local government filing and recording officers are hereby directed to accept for filing or recording any and all memoranda of lease to be executed, filed and recorded in accordance with the Joint Plan and the exhibits thereto, without need for lessor consent or joinder to such execution or recordation, and without the presentation of any affidavits, instruments, or returns otherwise required for recording, other than the Confirmation Order. The Bankruptcy Court retains jurisdiction to enforce the foregoing direction, by contempt proceedings or otherwise.

6.2    Approval of Assumption.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving assumption and assignment of the executory contracts and unexpired leases, as provided for under the Plan, pursuant to Bankruptcy Code Section 365, as of the Effective Date, to the extent such contracts or leases are executory contracts or unexpired leases.

6.3    Objections to Assumption.

Any party in interest wishing to object to the assumption or assignment of an executory contract or unexpired lease, shall File and serve on counsel for the Proponents, counsel for the Committee, if any when appointed, and the U.S. Trustee any objection to such assumption by the same deadline and in the same manner established for filing objections to Confirmation, unless the assumption of such executory contract or unexpired lease is the subject of an amendment to **Exhibit 6.1**, in which case the deadline is the date that is the earlier of: (a) seven (7) days after the date of such amendment; or (b) the day that is five (5) days before the initial Confirmation Hearing. Failure to File and serve any such objection by the applicable deadline shall constitute consent to the assumption and assignment, an acknowledgment that there are no defaults or cure amount claims due under the executory contract or unexpired lease identified for assumption, except as set forth in **Exhibit 6.1**, and that adequate assurance of future performance in connection with the proposed assumption and assignment has been provided.

6.3.1 If an objection to assumption or assignment of an executory contract or unexpired lease is timely Filed and: (a) a Final Order is entered determining that the executory contract or unexpired lease cannot be assumed or assigned; or (b) the Debtors give notice to the other party to such executory contract or unexpired lease stating that assumption and assignment of such contract or lease is not in the best interests of the Estates in light of the objection, then the contract or lease shall automatically thereupon be deemed to have been included on **Exhibit 6.5**, and rejected pursuant to Section 6.5.

6.3.2 If the Debtors' rejection of an executory contract or unexpired lease pursuant to Section 6.5 gives rise to an Allowed Claim, such Claim shall be classified in Classes 7A-7D as applicable; provided, however, that: (a) any Claim arising from such rejection which

29

has not been barred by a prior order of the Bankruptcy Court shall be forever barred and shall not be enforceable unless a proof of Claim is Filed within thirty (30) days after the mailing of notice referred to in Section 6.5, and (b) nothing herein shall otherwise constitute a waiver of the Claims Bar Date, if applicable.

      6.3.3   Nothing herein shall constitute a waiver of any other applicable bar date.

    6.4    <u>Payments Related to Assumption.</u>

      Any defaults under each executory contract and unexpired lease to be assumed and assigned under the Joint Plan, shall be cured, pursuant to Bankruptcy Code Section 365(b)(1), by payment of the amount (the "<u>Cure Amount</u>"), if any, as set forth in **Exhibit 6.1** (or as otherwise agreed by the Reorganized Debtor and the parties to such executory contract or unexpired lease, or as determined by the Bankruptcy Court as provided in a Final Order, if a timely objection is Filed to the assumption), and shall be paid on or as soon as practicable after the Effective Date by the Reorganized Debtor. In the case of a dispute with respect to such Cure Amount set forth in a timely Filed objection to the assumption or assignment, the Reorganized Debtor shall pay such Cure Amount in Cash on or as soon as practicable after entry of a Final Order resolving the dispute, and approving the assumption and assignment.

    6.5    <u>Rejection Generally.</u>

      As of the Effective Date, the following executory contracts and unexpired leases shall be rejected to the extent, if any, that they constitute executory contracts or unexpired leases of the Debtors, including any remaining obligations of the Debtors under any executory contract or unexpired lease assigned by the Debtors prior to the commencement of the Chapter 11 Cases , respectively: (a) each executory contract or unexpired lease of the Debtors that: (i) has not been previously assumed, assumed and assigned, or rejected by Final Order; or (ii) is not the subject of a motion pending on the Effective Date to assume or to assume and assign; (b) each contract or lease of the Debtors that has expired by its own terms before the Confirmation Date; (c) any purchase orders executed or issued by the Debtors before the commencement of the Chapter 11 Cases, which have not been previously performed, assumed and assigned, or terminated; (d) any contract providing for support, guaranty, contribution, indemnity, and similar obligations unless specifically assumed; and (e) the executory contracts and unexpired leases listed on **Exhibit 6.5**, which will be Filed with the Plan Supplement and may be amended through the date that is ten (10) days prior to the Confirmation Hearing, on notice Filed by the Debtors and served on the parties affected by such amendments. The listing of a contract or lease by category above, or on **Exhibit 6.5**, shall not constitute an admission by any party that such contract or lease is an executory contract or unexpired lease, or that the Debtors or the Estates have any liability thereunder, nor shall such listing, the absence of an objection thereto, or Confirmation constitute a finding or determination that any such contract or lease is an executory contract or unexpired lease.

    6.6    <u>Approval of Rejection.</u>

      The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection of the executory contracts and unexpired leases as provided for under the

CHI 60,494,600 v.15 129612-010000

Plan pursuant to Bankruptcy Code Sections 365 and 1123(b)(2). If an executory contract previously has been rejected, or is hereby rejected, under which the Debtors are a licensor of intellectual property (as defined in Bankruptcy Code Section 101(35A)), the licensee under such contract shall retain and may exercise its rights and remedies under Bankruptcy Code Section 365(n); provided, however, that nothing in the Joint Plan, or any Exhibits to the Joint Plan, shall constitute an admission by the Debtors or the Estates that the Debtors are a licensor of intellectual property, or that Bankruptcy Code Sections 101(35A) or 365(n) apply to any such contract.

    6.7    <u>Objections to Rejection.</u>

Any party in interest wishing to object to the rejection of an executory contract or unexpired lease identified for rejection, as provided under the Plan, shall File and serve on counsel for the Proponents, counsel for the Committee, and the U.S. Trustee any objection by the same deadline and in the same manner established for filing objections to Confirmation, unless the rejection is the subject of an amendment to Exhibit 6.5, in which case the deadline is the date that is the earlier of: (a) twenty (20) days after the date of such amendment; or (b) the day that is five (5) days before the initial Confirmation Hearing. Failure to File and serve any such objection by the applicable deadline shall constitute consent to the rejection.

    6.8    <u>Bar Date for Bankruptcy Code § 365(n) Election.</u>

If the rejection of an executory contract pursuant to the Plan gives rise to the right by the other party or parties to such contract to make an election under § 365(n) of the Bankruptcy Code to either treat such contract as terminated or to retain its rights under such contract, such other party to such contract will be deemed to elect to treat such contract as terminated unless such other party Files and serves a notice of its alternative election on the Debtors, the Disbursing Agent and the Committee, and their respective counsel, within thirty (30) days after the Effective Date.

# ARTICLE VII
## PROVISIONS FOR RESOLVING DISPUTED CLAIMS
## AND DISPUTED EQUITY INTERESTS

    7.1    <u>Objections to and Estimation of Claims.</u>

From and after the Effective Date, only the Reorganized Debtor may object to the allowance of any Claim or Administrative Claim. After the Effective Date, the Reorganized Debtor shall be accorded the power and authority to allow or settle and compromise any Claim without notice to any other party, or approval of, or notice to the Bankruptcy Court. In addition, the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Reorganized Debtor has previously objected to such Claim. Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall serve and File any objections to Claims and Equity Interests as soon as practicable, but in no event later the Claims Objection Deadline. Any Claims Filed after the Bar Date or Administrative Claims Bar Date, as applicable, shall be deemed disallowed and expunged in their entirety without further order of

31

the Bankruptcy Court or any action being required on the part of the Debtors or the Reorganized Debtor unless the person wishing to File such untimely Claim has received Bankruptcy Court authority to do so.

### 7.2 No Distributions Pending Allowance.

Notwithstanding any other provision in this Joint Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

### 7.3 Distributions on Account of Disputed Claims Once They Are Allowed.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Joint Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtor or the Disbursing Agent, as applicable, shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Joint Plan as of the Effective Date, without any interest to be paid on account of such Claim.

### 7.4 Reinstated Claims.

Notwithstanding anything contained herein to the contrary, nothing shall affect, diminish or impair the Debtors' or the Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Reinstated Claim, including, but not limited to, legal and equitable defenses to setoffs or recoupments against Reinstated Claims.

# ARTICLE VIII
# CONFIRMATION AND CONSUMMATION OF THE JOINT PLAN

### 8.1 Conditions to Confirmation.

The Joint Plan shall not be confirmed unless and until the following conditions shall have been satisfied or waived in accordance with Section 8.3 of this Joint Plan:

(a)     The Bankruptcy Court shall have entered a Final Order, in a form reasonably acceptable to the Sponsor, approving the adequacy of the Disclosure Statement.

(b)     The Confirmation Order shall be in form and substance reasonably satisfactory to the Sponsor in its sole and reasonable discretion.

(c)     The Plan Support Agreement shall remain in full force and effect and shall not have been terminated in accordance with the terms thereof.

32

(d)     The final version of all of the schedules, documents, and Exhibits to the Joint Plan, including the Plan Supplement, shall have been Filed in form and substance reasonably acceptable to the Sponsor in its sole and absolute discretion.

## 8.2    Conditions to Effective Date.

The Joint Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or waived in accordance with Section 8.3 of this Joint Plan, it being understood that certain of such conditions shall be satisfied at the time the Joint Plan becomes effective:

(a)     All conditions to confirmation in Section 8.1 of the Joint Plan shall have been either satisfied or waived in accordance with Section 8.3 of the Joint Plan.

(b)     The Confirmation Order confirming this Joint Plan shall have been entered by the Bankruptcy Court and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

(c)     The Plan Support Agreement shall remain in full force and effect and shall not have been terminated in accordance with the terms thereof and the conditions to consummation of the transactions contemplated by the Plan Support Agreement as set forth in the Plan Support Agreement (including the exhibits thereto) shall have been satisfied or waived.

(d)     All documents and agreements necessary to implement this Joint Plan on the Effective Date shall have been duly and validly executed and delivered by all parties thereto.

(e)     An amended Offering Plan, as amended by Sponsor, is accepted for filing by the New York State Department of Law, Investment Protection Bureau.

(f)     All other actions, documents, and agreements determined by the Sponsor to be necessary to implement the Joint Plan shall have been effected or executed and shall be in form and substance reasonably acceptable to the Sponsor.

(g)     All authorizations, consents, certifications, approvals, rulings, no-action letters, opinions or other documents or actions required by any law, regulation or order to be received or to occur in order to implement this Joint Plan on the Effective Date shall have been obtained or shall have occurred unless failure to do so will not have a material adverse effect on the Reorganized Debtor.

(h)     Each of the conditions precedent to the Joint Plan Funding Commitment for the funding to be made to enable the Reorganized Debtor to make the payments due on the Effective Date shall be satisfied or waived.

## 8.3    Waiver of Conditions.

Each of the conditions set forth in Sections 8.1 and 8.2 of this Joint Plan may be waived in whole or in part by the Sponsor.

CHI 60,494,600 v.15  129612-010000

8.4    Effect of Non-Occurrence of Effective Date.

If each of the conditions specified in Sections 8.1 and 8.2 have not been satisfied or waived in the manner provided in Section 8.3 within fifteen (15) calendar days after the Confirmation Date (as such date may be extended by notice Filed with the Bankruptcy Court by, or stipulation of, the Sponsor), then: (i) the Confirmation Order shall be vacated and of no further force or effect; (ii) no Distributions under the Joint Plan shall be made; (iii) the Debtors and all Holders of Claims and Equity Interests in the Debtors shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unaffected by the Joint Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors and the Joint Plan shall be deemed withdrawn; and (v) the Plan Support Agreement shall be terminated and the parties thereto shall have all of the rights and remedies under the terms thereof and under applicable law with respect to such termination.  Upon such occurrence, the Debtors shall File a written notification with the Bankruptcy Court and serve it upon such parties as the Bankruptcy Court may direct.

8.5    Notice of Effective Date.

The Reorganized Debtor shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date within a reasonable period of time after the conditions in Section 8.2 of the Plan have been satisfied or waived pursuant to Section 8.3 of the Plan.

## ARTICLE IX
## EFFECT OF JOINT PLAN CONFIRMATION

9.1    Binding Effect.

Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Joint Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is Impaired under the Joint Plan and whether or not such Holder has accepted the Joint Plan.

9.2    Exculpation, Releases and Discharge.

(a)    Exculpation. From and after the Effective Date, the Released Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Equity Interest, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 7 Cases or Chapter 11 Cases, formulating, negotiating or implementing this Joint Plan, the Disclosure Statement, or any of the transactions contemplated under this Joint Plan, the solicitation of acceptances of this Joint Plan, the pursuit of confirmation

CHI 60,494,600 v.15  129612-010000

of this Joint Plan, the confirmation of this Joint Plan, the consummation of this Joint Plan, the Chapter 7 Cases or administration of this Joint Plan, the property to be distributed under this Joint Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 7 Cases or Chapter 11 Cases; provided, however, that this section shall not apply to (i) obligations under, and the contracts, instruments, releases, agreements, and documents delivered, Reinstated or assumed under this Joint Plan, and (ii) any claims or causes of action arising out of willful misconduct or gross negligence as determined by a Final Order. Any of the Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under the Joint Plan.

(b)     Releases by the Debtors.  Except as otherwise expressly provided in the Joint Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and the Reorganized Debtor on its own behalf and as a representative of its respective Estate, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all Claims and Causes of Action (including, without limitation, Avoidance Actions), any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever, and any and all Equity Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, the Reorganized Debtor, their respective assets, property and/or Estates, the Chapter 7 Cases or Chapter 11 Cases or the Joint Plan, the Disclosure Statement, or any transactions contemplated under this Joint Plan that may be asserted by or on behalf of any of the Debtors, the Debtors' Estates, or the Reorganized Debtor against any of the Released Parties; provided, however, that nothing in this section shall be construed to release any Released Party from willful misconduct or gross negligence as determined by a Final Order.

(c)     Releases by Holders of Claims and Equity Interests. Except as otherwise expressly provided in the Joint Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Person that has held, currently holds or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, cause of action or liability of any nature whatsoever, or any Equity Interest, or other right of a Holder of an Equity Interest that is terminated, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally each and all of the Released Parties of and from any and all Claims, any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), and any and all Equity Interests or other rights of a Holder of an Equity Interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to

35

the Petition Date) in connection with or related to any of the Debtors or the Reorganized Debtor or their respective assets, property and/or Estates, the Chapter 7 Cases or the Chapter 11 Cases or the Joint Plan, the Disclosure Statement, or any transactions contemplated under this Joint Plan; provided, however, that EACH PERSON THAT HAS SUBMITTED A BALLOT MAY ELECT, BY CHECKING THE APPROPRIATE BOX ON ITS BALLOT, NOT TO GRANT THE RELEASES SET FORTH IN THIS SECTION 9.2(c), UNLESS OTHERWISE BOUND BY THE PLAN SUPPORT AGREEMENT TO DO SO, WITH RESPECT TO THOSE RELEASED PARTIES OTHER THAN THE DEBTORS, THE REORGANIZED DEBTOR, AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS AND ESTATES (WHETHER BY OPERATION OF LAW OR OTHERWISE); AND PROVIDED, FURTHER, HOWEVER, THAT NOTHING IN THIS SECTION SHALL BE CONSTRUED TO RELEASE ANY PARTY FROM WILLFUL MISCONDUCT OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER.

(d)     Injunction Related to Exculpation and Releases.  Except as provided in the Joint Plan or the Confirmation Order, as of the Effective Date, (i) all Persons that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, causes of action or liability of any nature whatsoever, or any Equity Interest or other right of a Holder of an Equity Interest, relating to any of the Debtors, or the Reorganized Debtor or any of their respective assets, property and/or Estates, that is released or enjoined pursuant to this Section 9.2 of the Plan and (ii) all other parties in interest in these Chapter 11 Cases are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and of all Equity Interests or other rights of a Holder of an Equity Interest: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Section 9.2 of this Joint Plan; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Joint Plan or the Confirmation Order.

(e)     Discharge of Claims and Termination of Equity Interests.  Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under this Joint Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Equity Interests (other than Unimpaired Claims that are Allowed) of any nature whatsoever against the Debtors or any of their Estates, assets, properties or interest in property, and regardless of whether any property shall have been distributed or retained pursuant to this Joint Plan on account of such Claims and Equity Interests.  On the Effective Date, the Debtors shall be deemed discharged and released under Section 1141(d)(l)(A) of the Bankruptcy

Code from any and all Claims and Equity Interests (other than Unimpaired Claims that are Allowed), including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, and the Equity Interests shall be terminated.

As of the Effective Date, except as otherwise expressly provided in the Joint Plan or the Confirmation Order, all Entities shall be precluded from asserting against the Debtors or the Reorganized Debtor and their respective assets, property and/or Estates, any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and all Equity Interests or other rights of a Holder of an Equity Interest, relating to any of the Debtors or Reorganized Debtor or any of their respective assets, property and/or Estates, based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as expressly provided in the Joint Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and any Equity Interest or other rights of a Holder of an Equity Interest and termination of all rights of any Holder of an Equity Interest in any of the Debtors pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors or the Reorganized Debtor, or any of their respective assets, property and/or Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability or terminated Equity Interest in any of the Debtors.

9.3     Preservation of Litigation Claims.

Except as otherwise provided in this Joint Plan, the Confirmation Order, or in any document, instrument, release or other agreement entered into in connection with this Joint Plan, in accordance with Section 1123(b) of the Bankruptcy Code, the Debtors and their Estates shall retain the each and every Litigation Claim whether or not litigation related thereto is pending on the Effective Date, and whether or not any such Litigation Claim has been listed or referred to in the Joint Plan or the Disclosure Statement, or any other document Filed with the Bankruptcy Court, and the Debtors, the Debtors' Estates and the Reorganized Debtor hall not waive, release, relinquish, forfeit, or abandon (nor shall they be estopped or otherwise precluded or impaired from asserting) any Litigation Claim that constitutes property of the Debtors or their Estates: (a) whether or not such Litigation Claim has been listed or referred to in the Plan, the Disclosure Statement, or any other document Filed with the Bankruptcy Court, (b) whether or not such Litigation Claim is currently known to the Proponents, and (c) whether or not a defendant in any litigation relating to such Litigation Claim Filed a Proof of Claim in the Chapter 11 Cases, Filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Joint Plan, or received or retained any consideration under the Joint Plan. The Reorganized Debtor, the successor in interest to the Debtors and the Debtors' Estates solely with respect to each Litigation Claim, and as the duly appointed representative of the Estates pursuant to Section 1123(b) of the Bankruptcy Code, shall have the authority to, and may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any Litigation Claim. The Debtors and/or the Reorganized Debtor expressly reserve all rights to prosecute any Litigation Claim against any Person, except as otherwise expressly provided in the Plan, and no preclusion

CHI 60,494,600 v.15 129612-010000

doctrine, including the doctrines of res judicata, issue preclusion, estoppel (judicial, collateral, equitable or otherwise), or laches, shall apply to any such Litigation Claim. or operate to waive, eliminate, modify, or release the Litigation Claim, upon, after, or as a consequence of the entry of the Confirmation Order or the occurrence of the Effective Date. Notwithstanding the foregoing, the Debtors and the Reorganized Debtor shall not file, commence or pursue any Litigation Claim against iStar, or file, commence or pursue any Litigation Claim under Section 547 of the Bankruptcy Code against a general unsecured creditor on account of a cash payment made to such general unsecured creditor, or seek to disallow any Claim to the extent it may have receive a cash payment otherwise avoidable under section 547 of the Bankruptcy Code. For the avoidance of doubt, the Debtors and the Reorganized Debtor are not waiving, releasing or relinquishing any Litigation Claim against any general unsecured creditor arising under Section 547 of the Bankruptcy Code to avoid any transfer that is not a cash payment.

9.4    Injunction.

(a)    Except as otherwise provided in this Joint Plan or the Confirmation Order, from and after the Effective Date all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtors, are (i) permanently enjoined from taking any of the following actions against the Estate(s), or any of their property, on account of any such Claims or Equity Interests and (ii) permanently enjoined from taking any of the following actions against any of the Debtors, the Reorganized Debtor or their property on account of such Claims or Equity Interests: (A) commencing or continuing, in any manner or in any place, any action, or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting any right of setoff, subrogation or recoupment of any kind and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Joint Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of this Joint Plan.

(b)    By accepting Distributions pursuant to this Joint Plan, except as otherwise provided in section 9.2(c) herein, each Holder of an Allowed Claim shall be deemed to have specifically consented to the releases, exculpations and discharges set forth in Section 9.2 and the injunctions set forth in this section 9.4.

9.5    Term of Bankruptcy Injunction or Stays.

All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

9.6    Termination of Subordination Rights and Settlement of Related Claims.

The classification and manner of satisfying all Claims and Equity Interests and the respective Distributions and treatments hereunder take into account and/or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with the contractual, legal and equitable subordination rights relating thereto, whether arising under

CHI 60,494,600 v.15 129612-010000

contract, general principles of equitable subordination, Section 510(b) of the Bankruptcy Code or otherwise. All subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Distribution to be made under the Joint Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be enjoined permanently. Accordingly, Distributions under the Joint Plan to Holders of Allowed Claims shall not be subject to payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

## ARTICLE X
## RETENTION OF JURISDICTION

10.1    Retention of Jurisdiction.

Pursuant to Sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Joint Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim, GAP Claim, or Priority Tax Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

(b)    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Joint Plan for periods ending on or before the Effective Date;

(c)    resolve any matters related to the assumption or assumption and assignment of any executory contract or unexpired lease to which any Debtor is a party or with respect to which any Debtor or the Reorganized Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(d)    ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Joint Plan;

(e)    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(f)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Joint Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Joint Plan, the Disclosure Statement or the Confirmation Order;

39

(g)    resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Joint Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to this Joint Plan, or any entity's rights arising from or obligations incurred in connection with this Joint Plan or such documents;

(h)    approve any modification of this Joint Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code or approve any modification of the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Joint Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Joint Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Joint Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Joint Plan;

(i)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Joint Plan or under Sections 330, 331, 363, 503(b), 1103 and 1129(c)(9) of the Bankruptcy Code, which shall be payable by the Debtors only upon allowance thereof pursuant to the order of the Bankruptcy Court; provided, however, that the fees and expenses of Professionals retained by the Reorganized Debtor that are incurred after the Effective Date may be paid by the Reorganized Debtor in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(j)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Joint Plan or the Confirmation Order;

(k)    hear and determine causes of action by or on behalf of the Debtors or the Reorganized Debtor;

(l)    hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(m)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated, or if Distributions pursuant to this Joint Plan are enjoined or stayed;

(n)    determine any other matters that may arise in connection with or relate to this Joint Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement, or document created in connection with this Joint Plan, the Disclosure Statement or the Confirmation Order;

(o)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(p)     hear and determine all matters related to (i) the property of the Estates from and after the Confirmation Date and (ii) the activities of the Reorganized Debtor;

(q)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(r)     enter an order closing the Chapter 11 Cases.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

### 11.1    Post-Confirmation Date Retention of Professionals.

On the Effective Date, any requirement that professionals employed by the Reorganized Debtor comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtor will be authorized to employ and compensate professionals in the ordinary course of business and without the need for Bankruptcy Court approval.

### 11.2    Bar Date for Certain Administrative Claims.

All applications for final allowance of compensation or reimbursement of the expenses incurred by any Professional, and all other requests for the payment of Administrative Claims, including all requests for the allowance of any Administrative Claim pursuant to Section 503(b)(3)(D) of the Bankruptcy Code for substantial contributions made in these Chapter 11 Cases (but expressly excluding all requests for the payment of obligations incurred by the Debtors in the ordinary course of their business operations after the Petition Date), must be Filed with the Bankruptcy Court and served on the Reorganized Debtor and its counsel at the addresses set forth in this Joint Plan not later than thirty (30) days after the Effective Date, for Administrative Claims other than Professional Fee Claims, unless otherwise ordered by the Bankruptcy Court (the "Administrative Claims Bar Date"), and not later than sixty (60) days after the Effective Date for Professional Fee Claims, unless otherwise ordered by the Bankruptcy Court (the "Professional Fee Bar Date"). Any request for the payment of an Administrative Claim that is not timely Filed and served by the Administrative Claims Bar Date or the Professional Fee Bar Date as applicable shall be discharged and forever barred and the Holder of such Administrative Claim shall be enjoined from commencing or continuing any action, process, or act to collect, offset or recover such Claim. The Reorganized Debtor shall have sole responsibility for filing objections to and resolving all requests for the allowance of Administrative Claims.

### 11.3    Effectuating Documents and Further Transactions.

Each of the Debtors and the Reorganized Debtor is authorized to execute, deliver, file or record such contracts, instruments, certificates, notes, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Joint Plan and any notes or securities issued pursuant to this Joint Plan.

41

### 11.4   Corporate Action.

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Joint Plan that would otherwise require approval of the stockholders, directors, officers or members of one or more of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to the applicable general corporation law of the states in which the Debtors are incorporated without any requirement of further action by the stockholders, directors, officers or members of the Debtors.

### 11.5   Exemption from Transfer Taxes.

Pursuant to Section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of notes or equity securities under this Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment of any lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer under this Joint Plan in connection with the sale of the Property to the Reorganized Debtor pursuant to this Joint Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, including any transfer, conveyance or sale of the Property and Unit Sales, will not be subject to any stamp tax or other similar tax.

### 11.6   Payment of Statutory Fees.

All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.

### 11.7   Amendment or Modification of this Joint Plan.

Subject to Section 1127 of the Bankruptcy Code, and the Plan Support Agreement the Sponsor may, alter, amend or modify this Joint Plan or the Exhibits at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Joint Plan. Any Holder of a Claim or Equity Interest that has accepted this Joint Plan shall be deemed to have accepted this Joint Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder.

### 11.8   Severability of Plan Provisions.

If, prior to the Confirmation Date, any term or provision of this Joint Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Joint Plan will remain in full force and effect and

will in no way be affected, Impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Joint Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

11.9    Successors and Assigns.

This Joint Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including, without limitation, the Reorganized Debtor. The rights, benefits and obligations of any entity named or referred to in this Joint Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

11.10    Revocation, Withdrawal or Non-Consummation.

Subject to the obligations and covenants of the Plan Support Agreement, the Proponents reserve the right to revoke or withdraw this Joint Plan as to any or all of the Debtors prior to the Confirmation Date and to File subsequent plans of reorganization. If the Proponents revoke or withdraw this Joint Plan as to any or all of the Debtors or if confirmation or consummation of this Joint Plan as to any or all of the Debtors does not occur, then, with respect to all Debtors, (a) this Joint Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Joint Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of executory contracts or leases affected by this Joint Plan, and any document or agreement executed pursuant to this Joint Plan shall be deemed null and void and (c) nothing contained in this Joint Plan shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person or (iii) constitute an admission of any sort by the Debtors or any other Person.

11.11    Post Effective Date Notice.

As of the Effective Date there shall be a Post Effective Date Notice List. From and after the Effective Date, the Reorganized Debtor shall only be required to give notice to Persons with respect to matters arising under, related to, connected with, or pertaining to the Chapter 11 Cases, the Joint Plan, the Confirmation Order, Claims or Equity Interests, executory contracts and/or unexpired leases who are either: (i) Persons who are the subject of, or are directly affected by, a motion, application, complaint, or other request for relief Filed with the Bankruptcy Court; or (iii) are Persons who have after the Effective Date specifically requested to be on the Post Effective Date Notice List. Any Person desiring to be included in the Post Effective Date Notice List must: (1) File a request to be included on the Post Effective Date Notice List and included therein its name, contact person, address, telephone number and facsimile number, within thirty (30) days after the Effective Date, and (2) concurrently serve a copy of its request to be included on the Post Effective Date Notice List on the Reorganized Debtor. On or before sixty (60) days after the Effective Date, the Reorganized Debtor shall compile a list of all Persons on the Post Effective Date Notice List and File such list with the Bankruptcy Court, and serve copies of such list on counsel for the Proponents, the Committee

43

and the U.S. Trustee. The Proponents and their counsel, the Reorganized Debtor and its counsel, and the U.S. Trustee shall be automatically included on the Post Effective Date Notice List and need not File a request to be included thereon.

11.12 <u>Notice.</u>

All notices, requests and demands to or upon the Debtors or the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

FKF Madison Park Group Owner, LLC
JMJS 23rd Street Realty Owner, LLC
Madison Park Group Owner, LLC
Slazer Enterprises Owner, LLC
Attn. Ira J. Shapiro
P.O. Box 707
New City, NY 10956
Tel: (914) 629-0119
Fax: (845) 215-0175
Email: slazer@optonline.net

With a copy (which shall not constitute notice) to:

| | |
|---|---|
| Jeffrey W. Dulberg, Esq. | Bruce Grohsgal, Esq. |
| Pachulski Stang Ziehl & Jones LLP | Pachulski Stang Ziehl & Jones LLP |
| 10100 Santa Monica Boulevard | 919 North Market Street |
| 11th Floor | 17th Floor |
| Los Angeles, CA 90067-4100 | Wilmington, DE 19801 |
| Tel: (415) 263-7000 | Tel: (302) 652-4100 |
| Fax: (415) 263-7010 | Fax: (302) 652-4400 |
| Email: jdulberg@pszjlaw.com | Email: bgrohsgal@pszjlaw.com |

If to the Sponsor:

New One Madison Park Member I, LP
590 Madison Avenue
26th Floor
New York, NY 10022

44

With a copy (which shall not constitute notice to:

Gregory Fishman, Esq.
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
Tel: (312) 456-8434
Fax: (312) 899-0422
Email: fishmang@gtlaw.com

Michael H. Goldstein, Esq.
Greenberg Traurig, LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404
Tel: (310) 586-7750
Fax: (310) 586-0250
Email: goldsteinmh@gtlaw.com

11.13    Governing Law.

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an Exhibit or schedule to this Joint Plan provides otherwise, the rights and obligations arising under this Joint Plan shall be governed by, and construed and enforced in accordance with the laws of New York, without giving effect to the principles of conflicts of law of such jurisdiction.

11.14    Tax Reporting and Compliance.

The Debtors are hereby authorized to request an expedited determination under Section 505 of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

11.15    Exhibits.

All Exhibits to this Joint Plan are incorporated and are a part of this Joint Plan as if set forth in full herein.

11.16    Filing of Additional Documents.

On or before substantial consummation of this Joint Plan, the Reorganized Debtor and the Debtors shall File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Joint Plan.

11.17    Withholding and Reporting Requirements.

In connection all instruments issued in connection herewith and Distributions under this Joint Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions under this Joint Plan shall be subject to any such withholding and reporting requirements; provided, however, that any party entitled to receive any Distribution under this Joint Plan shall be required to deliver to the Reorganized Debtor or the Disbursing Agent an appropriate Form W-9 for (if the payee is a foreign Person) Form W-8 to avoid the incurrence of certain federal income withholding tax obligations on its respective Distribution. Notwithstanding the above, each Holder of an Allowed Claims that is to receive a Distribution

45

under this Joint Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including, withholding and other tax obligations, on account of such Distribution. Any party issuing any instrument or making any Distribution under this Joint Plan has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

11.18 <u>No Waiver.</u>

Neither the failure to list a Claim in the Schedules Filed by the Debtors, the failure of any Person to object to any Claim for purposes of voting, the failure of any Person to object to a Claim prior to Confirmation or the Effective Date, the failure of any Person to assert a Cause of Action prior to Confirmation or the Effective Date, the absence of a proof of Claim having been Filed with respect to a Claim, nor any action or inaction of any Person with respect to a Claim, or Cause of Action other than a legally effective express waiver or release shall be deemed a waiver or release of the right of the Estates or their successors or representatives, before or after solicitation of votes on this Joint Plan or before or after Confirmation or the Effective Date to (a) object to or examine such Claim, in whole or in part or (b) retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any Causes of Action.

11.19 <u>Limitations on Effect of Confirmation.</u>

Nothing contained in this Joint Plan shall limit the effect of Confirmation as described in Section 1141 of the Bankruptcy Code.

11.20 <u>Securities Exemption.</u>

Any rights issued under, pursuant to or in effecting this Joint Plan and the offering and issuance thereof by any party, including without limitation the Proponents and Estates, shall be exempt from section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for Distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation Section 1145 of the Bankruptcy Code.

11.21 <u>Controlling Documents.</u>

In the event and to the extent that any provision of this Joint Plan is inconsistent with any provision of the Disclosure Statement, the provisions of this Joint Plan shall control and take precedence. In the event and to the extent that any provision of this Joint Plan is inconsistent with any provision of the Confirmation Order, the provisions of the Confirmation Order shall control and take precedence.

*CHI 60,494,600 v.15 129612-010000*

11.22  No Admissions.

Notwithstanding anything contained in this Joint Plan to the contrary, nothing contained in this Joint Plan shall be deemed an admission by the Proponents with respect to any matter herein, including, without limitation, liability on any Claim or the propriety of a Claim's classification.

11.23  Reservation of Rights.

Except as expressly set forth herein, this Joint Plan shall have no force and effect unless the Bankruptcy Court has entered the Confirmation Order. The Filing of this Joint Plan, any statement or provision contained in this Joint Plan, or the taking of any action by the Proponents with respect to this Joint Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims and Equity Interests.

Dated: Wilmington, Delaware                            Respectfully submitted,
       December 15, 2010

| | |
|---|---|
| FKF MADISON PARK GROUP OWNER, LLC<br><br>By:  /s/ Ira J. Shapiro<br>Name:  Ira J. Shapiro<br>Its:  President and Secretary<br><br>By: Slazer Enterprises LLC,<br>Its: Manager<br><br>  By:  /s/ Ira J. Shapiro<br>  Name:  Ira J. Shapiro<br>  Its:  Member<br><br>JMJS 23RD STREET REALTY OWNER, LLC<br><br>By:  /s/ Ira J. Shapiro<br>Name:  Ira J. Shapiro<br>Its:  President and Secretary<br><br>By: Slazer Enterprises LLC,<br>Its: Manager<br><br>  By:  /s/ Ira J. Shapiro<br>  Name:  Ira J. Shapiro<br>  Its:  Member | NEW ONE MADISON PARK MEMBER I, LP<br><br>By:  New One Madison Park GP, LLC<br>Its:  General Partner<br><br>  By:  /s/ Ian Bruce Eichner<br>  Name:  Ian Bruce Eichner<br>  Its:  Sole Member<br><br>**GREENBERG TRAURIG, LLP**<br>Michael H. Goldstein, Esq.<br>2450 Colorado Avenue<br>Suite 400E<br>Santa Monica, CA 90404<br>Telephone: (310) 586-7750<br>Facsimile: (310) 586-0250<br><br>Scott Cousins, Esq.<br>The Nemours Building<br>1007 North Orange Street<br>Suite 1200<br>Wilmington, DE 19801<br>Telephone: (302) 661-7373<br>Facsimile: (302) 661-7175<br><br>*Counsel to New One Madison Park Member I, LP* |

CHI 60,494,600 v.15  129612-010000

MADISON PARK GROUP OWNER, LLC

By:     /s/ *Ira J. Shapiro*
Name:  Ira J. Shapiro
Its:    President and Secretary

By:  Slazer Enterprises LLC,
Its:  Manager

   By:     /s/ *Ira J. Shapiro*
   Name:  Ira J. Shapiro
   Its:    Member

SLAZER ENTERPRISES OWNER, LLC

By:     /s/ *Ira J. Shapiro*
Name:  Ira J. Shapiro
Its:    President and Secretary

By:  Slazer Enterprises LLC,
Its:  Sole Member

   By:     /s/ *Ira J. Shapiro*
   Name:  Ira J. Shapiro
   Its:    Member

**PACHULSKI, STANG, ZIEHL & JONES**
Bruce Grohsgal, Esq. (No. 3583)
919 North Market Street
17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

*[Proposed] Counsel to the Debtors and Debtors
in Possession*

48