UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:

FKF MADISON PARK GROUP
OWNER, LLC, et al.

Debtors.

Chapter 11 Case No. 10-11867 (KG)

(Jointly Administered)

Ref: D.I. 212, 218

## OBJECTIONS OF GREEN BRIDGE CAPITAL S.A. AND SPECIAL SITUATION S.A. TO THE MOTION OF IRA SHAPIRO, PURPORTING TO ACT IN THE NAME OF THE DEBTORS, FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR TO TERMINATE EXCLUSIVITY

Green Bridge Capital S.A. ("Green Bridge"), the 35% interest holder in Slazer Enterprises LLC ("Slazer")[1], and Special Situation S.A. ("Special Situation"), the holder of an irrevocable proxy for the 32.5% interest of Marc Jacobs in Slazer (together, the "Majority Interest Holders"), by their undersigned counsel, hereby submit these Objections to the Motion for the Appointment of a Chapter 11 Trustee or to Terminate Exclusivity [D.I. 212], nominally filed by the "Debtors" but in fact filed by Ira Shapiro ("Shapiro") in his unauthorized guise as spokesperson for the Debtors (the "Shapiro/Debtor Trustee Motion"). Shapiro, assisted by the attorneys he retained to represent the Debtors, filed a Joinder to the Shapiro/Debtor Trustee Motion [D.I. 218].

---

[1] Slazer Enterprises LLC is the sole Manager of debtors FKF Madison Group Owner LLC, JMJS 23rd Street Realty Owner LLC, and Madison Park Group Owner LLC, and it is the sole and managing Member of debtor Slazer Enterprises Owner LLC.

By separately filed Objections, the Majority Interest Holders will respond to the Motion of Certain Petitioning Creditors[2] for Order (I) Directing the Appointment of a Trustee Pursuant to 11 U.S.C. §§ 1104(a)(1)-(2); or (II) In the Alternative, Terminating the Debtors' Exclusive Rights Pursuant to 11 U.S.C. §1121(d) to Allow the Filing of Competing Plans of Reorganization by Green Bridge Capital S.A. and Special Situation S.A. and New One Madison Park Member I, LLC [D.I. 224] (the "Kraus/Eichner Trustee Motion"), as well as the United States Trustee's Motion for Entry of an Order Directing Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104, or in the Alternative, Entry of an Order Converting or Dismissing this Chapter 11 Case [D.I. 232] (the "UST Trustee, Convert or Dismiss Motion").

I. **The Shapiro/Debtor Trustee Motion Was Unauthorized and Should Be Stricken**

While the Kraus/Eichner Trustee Motion and the UST Trustee, Convert or Dismiss Motion compel a detailed response, the same cannot be said for the Shapiro/Debtor Trustee Motion. Simply stated, the Shapiro/Debtor Trustee Motion should be rejected and stricken, as having been filed without authority.

At the TRO hearing on January 20, 2011, in the adversary proceeding *Green Bridge Capital S.A., et al. v. Shapiro*, Adv. No. 10-56158, the following colloquy transpired between the Court and counsel for the Plaintiffs, Green Bridge and Special Situation:

> THE COURT: I still think we're at the authority stage. The Chapter 11 motion is
> – the trustee motion isn't even before me.
> MR. KUNZ: Correct.
> THE COURT: <u>If Mr. Shapiro didn't have authority to file the -- or to agree to the conversion,</u> et cetera, and any actions taken, <u>then he doesn't have authority on behalf of the debtor to move for the appointment of the Chapter 11 trustee.</u>

1-20-2011 Tr. at 15 (emphasis added).

---

[2] As defined in the Moving Creditors' Trustee Motion, the "Moving Creditors" are Stephen Kraus, Mitchell Krauss, Barbara Kraus, Hi-Tech home Automation, Inc. and Mad 52, LLC.

2

In its Memorandum Opinion dated January 31, 2011 (D.I. 66), issued in the adversary proceeding, this Court ruled that Shapiro lacked authority "to take unilateral action on behalf of Slazer and the Debtors." Mem. Op. at 8.

Accordingly, the Shapiro/Debtor Trustee Motion must be dismissed as unauthorized.

## II. The Shapiro/Debtor Trustee Motion Is Motivated by a Calculated Self-Interest

While no further legal grounds need be spelled out in connection with the Shapiro/Debtor Trustee Motion (again, the *other* Trustee Motions are being addressed in detail separately), Shapiro's motivations for seeking appointment of a Chapter 11 Trustee and for ending exclusivity should not be left unaddressed.

Before a Receiver was appointed in the foreclosure action brought in New York by iStar Tara LLC ("iStar"), the senior lender to the project, Ira Shapiro had committed widespread fraud in the course of steering the development of a luxury condominium project in Manhattan, his first such project. As laid out in affidavits filed in the New York action by Matthew Parrott and by John Kubicko, Shapiro not only caused the Debtors to breach their loan agreements with iStar; he also defrauded numerous private investors and condominium purchasers. He managed to collect no less than $40 million from private investors, which sums Shapiro never accounted for to iStar. See Kubicko Affidavit, __ .[3]

---

[3] Shapiro defrauded investors by accepting loans in the millions of dollars that he knew the Debtors (or the other corporate affiliates in whose names he acted, such as Park Madison Associates and ISMJ Corporate Office LLC) could not and would not repay. He typically persuaded these individuals to loan funds by giving them false security, through the assignment of bogus purchase agreements for condo units, allegedly entered into by ISMJ Corporate Office as purchaser, even though no purchase agreements in the name of ISMJ Corporate Office were ever disclosed to iStar on any condo unit inventory lists. He referred to these as collateral assignments. While he acknowledged in court that these collateral assignments were

Shapiro gave collateral assignments of bogus purchase agreements for condo units in order to obtain loans. Shapiro sold or attempted to sell many units at prices below the minimum sales prices set under agreement with iStar, without iStar's approval for the sales. He funneled monies he received into Park Madison Associates LLC, an entity of which Shapiro was and is the sole member, and without disclosing to iStar any of Park Madison Associates's bank account records. He secretly gave away deeds for condo units – including one to Bruce Eichner (through the entity of which he is sole member, Mad52 LLC), and four units to Stephen Kraus and Barbara and Mitchell Kraus. He evidently was responsible for an untold number of forgeries in connection with key documents in the course of the project. And all the while, he personally drew no less than $3.3 million in "developer fees," most of which were never on any iStar-approved budget, together with hundreds of thousands of dollars in travel and entertainment personal charges that he ran through the Debtors' accounts as a business expense.

Such acts as these led to the appointment of the Receiver. Although the Order expanding the role of the Receiver provided that all documents and records pertaining to the business of the Debtors and the One Madison Park project were to be turned over to the Receiver, it is evident that Shapiro withheld substantial documentation from the Receiver. In deposition, when asked whether he had turned over to the Receiver the bank account records for Park Madison Associates – the account through which, after April or May 2009, Shapiro ran all the business that he previously ran through a Slazer Enterprises account – Shapiro non-credibly said that he

---

unenforceable as the interests in the units were behind the lien of iStar, the text of those collateral assignments do not mention iStar and, in view of the numerous lawsuits against the Debtors that were spawned by these bogus collateral assignments, it is clear that many unsuspecting investors also did not realize that the security interests they thought they were receiving in condo units were unenforceable. In some cases, Shapiro may have defrauded individuals (*e.g.*, Rance Mashek and Tim Lin) by treating partial payments on their condo unit as 'investments' that he did not place in escrow, with the result that the part payments could not be accounted for by iStar when asked to release .

couldn't recall, an answer that, in view of how he answered other questions, could only mean that he did not. For that matter, on Saturday, February 13, 2010, five days before iStar filed its ex parte motion for appointment of a Receiver, Shapiro sent his driver to the One Madison Park building in an attempt to remove a cabinet of files, that apparently was thwarted through instructions to the building manager from Marc Jacobs and Cevdet Caner.

Plainly, Shapiro knows that no court, once made aware of what he has done, would return to him the "keys" to the One Madison Park project. That would be a clear case of turning over the henhouse to the fox.

Nonetheless, Shapiro has a keen interest in turning the project over to someone sufficiently unfamiliar with the background to the project that he or she could be swayed favorably towards Shapiro and his colleagues, Bruce Eichner and Stephen Kraus with respect to both their proposed plan and their intended treatment of various creditor claims. In short, if Shapiro cannot maintain control, he at least wants to maintain influence and the prospect of an outcome that will be personally beneficial.

To that end, Shapiro has attempted to steer this case, in the name of the Debtors, in the following ways:

  a. He proposed a plan that will provide him regular income through a consulting fee, as well as an equity stake (through an interest in New One Madison Park LLC, the entity that would be purchasing the Debtors' property) in the project, post-bankruptcy.

  b. His proposed plan affords him a reasonable prospect of wiping away substantial claims *and judgments* against him, through the release language in the proposed plan, that would cover all present and former directors, officers, and members, with respect to claims connected to the Debtors.

  c. The release language in his proposed plan even goes so far as to wipe out claims of fraud and gross misconduct unless they have already been proven and made subject of a final judgment. Mere claims of gross

misconduct and fraud would be released as to any creditor that did not expressly opt out of the release language.

d. He filed a list of the Top 20 Creditors in which only the claims of Level One US Property LLC and FKF3 LLC (an entity led by the Debtors' former counsel Burt Dorfman) were marked as "Disputed," while the claims of, among others, Mad52 LLC (Bruce Eichner) and Stephen Kraus were *undisputed*. The Kraus and Eichner claims were labeled undisputed notwithstanding that, in July and August, 2010, Shapiro authorized filings on behalf of the Debtors by Mark Minuti and Saul Ewing that stated that Stephen Kraus no longer had a claim for the reason that he was furnished deeds for condo units, and those deeds served to satisfy his claim. That same reasoning would have applied to Bruce Eichner, since he not only was furnished a deed to a unit; he had it recorded as well. Thus, his listing of creditors is evidently aimed towards enhancing the claim-voting posture of dubious creditors, while disputing the claims of the two creditors that he knows he is at odds with.

e. Before even attempting to file any schedules on behalf of the Debtors, and well before the filing of any proofs of claim, Shapiro caused the filing of a complaint, in the name of the Debtors and Slazer, against Green Bridge, Special Situation, and Level One US Property, to subordinate the Level One claim and to avoid it as a claim against the Debtors – thus attempting to set a prospective Trustee on a path of litigating against the Majority Interest Holders, rather than coordinating with them, and further aimed at diminishing Level One's ability to vote upon any prospective plan.

Based on the foregoing, it is evident that, for Shapiro, a fair game would be three card Monte.

In sum, the Court should not sanction these tactics by Shapiro. Shapiro is acting out of strong self-interested motivations, including the goal of insulating him as much as possible from the fraud claims against him, and those actions are improper insofar as he has attempted to cause the Debtors and their collective estate to proceed on Shapiro's behalf. In any event, the Shapiro/Debtor Trustee Motion was unauthorized, and should be rejected on that ground. The other Trustee Motions will be addressed in separately filed objections.

WHEREFORE, for the reasons set forth above, the Majority Interest Holders respectfully request that the Court enter an order striking and/or denying the Shapiro/DebtorTrustee Motion and (ii) granting such other and further relief as is just and proper.

Dated: February 1, 2011
Wilmington, Delaware

**MORRIS JAMES LLP**

_____
Brett D. Fallon (DE Bar No. 2480)
Carl N. Kunz, III (DE Bar No. 3201)
Douglas N. Candeub (DE Bar No. 4211)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: bfallon@morrisjames.com
ckunz@morrisjames.com
dcandeub@morrisjames.com

*Attorneys for Green Bridge Capital S.A. and Special Situation S.A.*