# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> FKF MADISON PARK GROUP OWNER, LLC, *et al.*, <br><br><br> Debtors. | Chapter 11 <br><br> Case No. 10-11867 (KG) <br><br> **Hearing Date: 2/8/2011 @ 2:00 p.m.** <br><br> **Re: Dkt. Nos. 212 & 224** |

## STATEMENT BY MCDONALD'S CORPORATION IN SUPPORT OF MOTIONS FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR TERMINATION OF EXCLUSIVITY

McDonald's Corporation ("McDonald's") — the prior owner of the property at the heart of these proceedings and the current holder of a non-dischargeable demand for equitable relief against the Debtors' estates — respectfully submits this statement in support of the motions by the above-captioned Debtors and certain petitioning creditors [Docket Nos. 212 and 224] for the appointment of a chapter 11 trustee or to terminate the Debtors' exclusive period to file a Plan. It is McDonald's position that these proceedings must be salvaged from the mire of in-fighting over control of the Debtors and be placed on track for reorganization. In support of its position, McDonald's respectfully represents as follows.

### MCDONALD'S NON-DISCHARGEABLE INTEREST IN THE REAL PROPERTY

1. By way of background, McDonald's previously owned the property at issue here, which is located at 22 East 23rd Street, New York, New York (the "Property"). For seventeen years, McDonald's rented the ground floor of the Property, then a low-rise building, to one of its franchisees, who operated a profitable McDonald's restaurant at the site.

2. In late 2005, McDonald's agreed to sell the Property to 23rd Street LLC, a company owned and controlled by the principals of Atlantic Development Group LLC, in

exchange for, *inter alia*, express obligations from the purchaser to build a retail condominium unit to McDonald's precise specifications at the Property, and then, by a date certain, to deliver a deed to that retail unit to McDonald's for use by a McDonald's restaurant franchise.

3. As required by the "Purchase Agreement," dated December 15, 2005, the purchaser's obligations were placed into a Memorandum of Obligations and recorded against the Property. This Memorandum of Obligations created an encumbrance on the land and runs with the land, binding all successors and assigns and future purchasers to comply with obligation to deliver a retail unit to McDonald's under the terms of Purchase Agreement.

4. Upon being deeded the Property by McDonald's, 23rd Street LLC immediately agreed to flip the Property to the Debtors herein. 23rd Street LLC had, upon information and belief, acted as the agent for, and was acting at the direction of, the Debtors, in connection with the negotiations with McDonald's.

5. After the Debtors took title to the Property, they failed and/or refused to comply with their obligations, as successor and assignee of 23rd Street LLC, to construct the retail unit and to then deed it back to McDonald's. Instead, Debtors sought to implement a plan to construct and develop a luxury condominium building on the Property and the adjacent lots. Though the Debtors' plan included ground level retail space, they failed and/or refused to construct the Retail Unit to McDonald's specifications and further failed to deed the space to McDonald's.

6. The Debtors (and affiliated entities) ultimately entered into a settlement agreement with McDonald's dated December 19, 2008 (as thereafter amended, the "Settlement Agreement"), through which McDonald's would permit the Debtors to satisfy their breached obligations under the Purchase Agreement by delivering to McDonald's an adjacent property

with a street address of 26 East 23rd Street, New York, New York. But the Debtors did not fulfill their obligations to McDonald's under the Settlement Agreement.

7. To date, McDonald's has been delivered <u>neither</u> property and the Debtors are in breach of both agreements, leaving McDonald's without a restaurant at this important location, which is uniquely situated just across from Madison Park, at the intersection of Madison Avenue and East 23rd Street in Manhattan.

8. Additionally, the Debtors breached their contractual obligations by failing and/or refusing to submit their Declaration of Condominium or "ZLDA" to McDonald's for its review and approval. As such, the Declaration of Condominium and "ZLDA" recorded by the Debtors, are unauthorized and invalid, and (together with any subsequent lien such as iStar's subsequent mortgage lien) are subordinate to McDonald's interest in the property under the Memorandum of Obligations, the Purchase Agreement and the Settlement Agreement.

9. Faced with these contractual breaches for which is there is no adequate remedy in law, McDonald's asserted cross-claims against the Debtors in iStar's foreclosure action pending in New York State Supreme Court, seeking specific performance of the Purchase Agreement and the Settlement Agreement.

10. McDonald's demands for specific performance, summarized above, are not dischargeable as "claims" under the Bankruptcy Code. *See In re Ben Franklin Hotel Assocs.*, 186 F.3d 301 (3rd Cir. 1999) (finding than equitable demand in state court action is not a claim dischargeable in subsequent bankruptcy proceeding when monetary payment is not viable alternative).[1]

---

[1] McDonald's discussion of the factual background herein is intended only as a general summary of its state court causes of action against Debtors, and is not a full recital of all pertinent facts and issues. Nothing contained should be construed as a waiver of any rights to

**MCDONALD'S SUPPORT OF THE MOTIONS**

11. As a holder of a non-dischargeable interest, McDonald's is concerned that these proceedings and the potential for productive communications between the various constituencies have been derailed, first by extended litigation over whether the involuntary petitions should be dismissed, and more recently, by the litigation over control of the Debtors.

12. McDonald's believes that, absent a clear path toward confirmation of a viable plan of reorganization for the Debtors, either the appointment of a chapter 11 trustee or the termination of Debtors' exclusive period to file a Plan would move these proceedings forward and, hopefully, beyond the issue of who has the right to manage the Debtors' affairs while these cases are pending.

13. McDonald's further believes that it would be helpful for the Court and all parties-in-interest to learn who is actually prepared to propose a plan for the Debtors' emergence from bankruptcy and on what terms. These cases ought to be on a reorganization track, with the goal of restructuring debts, resolving disputes and having the Debtors emerge from bankruptcy.

14. Unfortunately, these cases have been plagued by uncertainty, even as to the basic question of who may speak for the Debtors. This uncertainty has made it difficult if not impossible for meaningful progress to be achieved in connection with these cases.

15. Accordingly, McDonald's respectfully requests that this Court grant the motions for appointment of a chapter 11 trustee or termination of exclusivity.

---

which McDonald's may be entitled, including any rights, claims, actions, defenses, setoffs or recoupments to which it may be entitled under agreements, in law or in equity, all of which are expressly reserved.

{00006002. }                                           4

Dated: February 3, 2011
Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s / Frederick B. Rosner*
Frederick B. Rosner (No. 3995)
824 Market Street, Suite 810
Wilmington, Delaware 19801
Telephone: 302.777.1111
Email: rosner@teamrosner.com

and

Paul Rubin, Esquire
**HERRICK, FEINSTEIN LLP**
2 Park Avenue
New York, NY 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500
prubin@herrick.com

*Attorneys for McDonald's Corporation*