IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FKF MADISON PARK GROUP OWNER, LLC, et al.,[1] | ) ) ) | Case No. 10- 11867 (KG) |
| | ) | Jointly Administered |
| Debtors. | ) ) | |
| | ) ) | **Hearing Date: February 25, 2011 at 10:00 a.m. (ET) (REQUESTED)** |
| | ) ) ) | **Objections Due: February 22, 2011 at 4:00 p.m. (ET) (REQUESTED)** |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF MORRIS, NICHOLS, ARSHT & TUNNELL LLP AS COUNSEL FOR THE DEBTORS, *NUNC PRO TUNC* TO FEBRUARY 4, 2011

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby present this application (the "Application") to the Court for the entry of an order, pursuant to sections 327(a) and 1107(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing the retention and employment of Morris, Nichols, Arsht and Tunnell LLP ("Morris Nichols") as counsel to the Debtors *nunc pro tunc* to February 4, 2011. In support of this Application, the Debtors rely upon and incorporate by reference the Declaration of Derek C. Abbott (the "Abbott Declaration"), attached hereto as **Exhibit A**, and represent as follows:

---

[1] The Debtors, followed by the last four digits of their tax identification numbers, are as follows: FKF Madison Group Owner, LLC (6399); JMJS 23rd Street Realty Owner, LLC (6651); Madison Park Group Owner, LLC (3701); and Slazer Enterprises Owner, LLC (4339). The Debtors' mailing address is 230 Congers Road, New City, NY 10920.

## JURISDICTION

1. The Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and the Application in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 327(a) and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

## INTRODUCTION

3. On June 8, 2010 (the "Petition Date"), involuntary Chapter 7 petitions were filed in this Court against each of the Debtors by Stephen Kraus, Mitchell Kraus, Barbara Kraus, and Kraus Hi-Tech Automation, Inc. (the "Kraus Petitioning Creditors"), thereby commencing the Debtors' involuntary Chapter 7 cases (the "Chapter 7 Cases"). Additional creditors, including Joe Coffey, Harvey Schiller, Pace Plumbing, Gotham Greenwich Construction Co., LLC, and Mad 52, LLC (together with the Kraus Petitioning Creditors, the "Petitioning Creditors") later joined in the Kraus Petitioning Creditors' petitions [Case No. 10-11867, D.I. 44, 45, 46, 47, 67].

4. On June 29, 2010, the Debtors filed a motion to dismiss the involuntary petitions [D.I. 23]; however, the Debtors later withdrew such motion on November 18, 2010 [D.I. 113].

5. On November 19, 2010 (the "Conversion Date"), this Court entered Orders for relief in the Chapter 7 Cases and entered Orders converting the Chapter 7 Cases to cases under Chapter 11 of the Bankruptcy Code [Case No. 10-11867, D.I. 119; Case No. 10-11868, D.I. 111; Case No. 10-11869, D.I. 112; and Case No. 10-11870, D.I. 117].

6. The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. On January 20, 2011, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") [D.I. 211].

7. The Debtors are owners as tenants in common of a condominium tower located at 23 East 22nd Street in New York City (the "Project"). Slazer Enterprises, LLC ("Slazer"), a non-Debtor entity, is the sole member of Debtor Slazer Enterprises Owner LLC and serves as the manager for all of the Debtors. Slazer, in turn, is controlled by Green Bridge Capital S.A. (35%), Special Situation S.A. (by proxy for Marc Jacobs) (32.5%), and Ira Shapiro (32.5%).

8. On December 15, 2010, Green Bridge Capital S.A. ("Green Bridge") and Special Situation S.A. ("Special Situation" and together with Green Bridge, the "Controlling Members") instituted Adversary Proceeding No. 10-56158 (KG) (the "Adversary Proceeding") in this Court by filing a complaint (the "Complaint"). The Complaint sought declaratory and injunctive relief providing that Ira Shapiro ("Shapiro") did not have corporate authority to act on the Debtors' behalf. Pachulski, Stang, Ziehl & Jones LLP, as the Debtors' then-proposed counsel, represented Shapiro in the Adversary Proceeding.

9. On January 31, 2011, after a lengthy evidentiary hearing in the Adversary Proceeding, the Court issued an Order restraining Shapiro from taking further action in violation of Slazer's and the Debtors' governing instruments (the "Control Order") [Adv. D.I. 67].

10. Following the entry of Control Order, the Controlling Members and Shapiro undertook significant negotiations regarding the prosecution of the Debtors' Chapter 11 cases and reached agreement how to move forward together in the stewardship of the Debtors in

these Chapter 11 cases, including, without limitation, selecting the plan of reorganization to propose. The parties also made substantial progress in negotiating the terms of fully-funded Chapter 11 plan with HFZ Capital, Group, LLC ("HFZ"). As a part of this process, the parties agreed to retain new bankruptcy counsel for the Debtors.

11. As a result of these and other events, the Debtors now respectfully request the entry of an order authorizing the Debtors to retain and employ Morris Nichols.

## RELIEF REQUESTED

12. The Debtors desire to retain and employ Morris Nichols as their bankruptcy counsel in these Chapter 11 cases. By this Application, the Debtors respectfully request that the Court enter an order authorizing the Debtors to retain and employ Morris Nichols as the Debtors' attorneys, *nunc pro tunc* to February 4, 2011, to represent the Debtors in all phases of these Chapter 11 cases. Accordingly, the Debtors respectfully request the entry of an order, pursuant to section 327(a) of the Bankruptcy Code, authorizing the employment and retention of Morris Nichols to perform the legal services that will be necessary in these Chapter 11 cases.

## BASIS FOR RELIEF

13. Under section 327(a) of the Bankruptcy Code, a debtor in possession may employ one or more attorneys to represent it in carrying out its duties under the Bankruptcy Code, provided that such attorneys are disinterested persons and do not hold or represent an interest adverse to the estate. Section 101(14) of the Bankruptcy Code defines "disinterested person" as one who:

> is not a creditor, an equity security holder, or an insider; [or] is not and was not, within 2 years before the date of the filing of the petition, a director, officer or employee of the debtor; and . . . does not have an interest materially adverse to the interest of the estate

> or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

14. The Debtors request approval of the employment of Morris Nichols *nunc pro tunc* to February 4, 2011. Such relief is warranted by the extraordinary circumstances presented by these cases. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986); *see also In re Indian River Homes, Inc.*, 108 B.R. 46, 52 (D. Del. 1989), *app. dismissed*, 909 F.2d 1406 (3d Cir. 1990). The complexity, intense activity and speed that have characterized these cases have necessitated that the Debtors, Morris Nichols and the Debtors' other professionals focus their immediate attention on time-sensitive matters and promptly devote substantial resources to the affairs of the Debtors pending submission and approval of this Application.

15. Prior to the filing of this Application, the Debtors sought the services of Morris Nichols with respect to, among other things, advice regarding the continued prosecution of these cases and the proposal of a plan of reorganization. The Debtors have employed and retained Morris Nichols as their bankruptcy attorneys, subject to the entry of an order approving the retention of Morris Nichols.

16. The Debtors seek to retain Morris Nichols because of the firm's extensive experience and knowledge in the fields of, *inter alia*, debtors' and creditors' rights, business reorganizations under Chapter 11 of the Bankruptcy Code, and general corporate law, and because of its expertise, experience, and knowledge in practicing before this Court, its proximity to the Court and its ability to respond quickly to emergency hearings and other emergency matters in this Court. In addition, in connection with their engagement by the Debtors, Morris

Nichols has become familiar with the Debtors' business and affairs. Accordingly, Morris Nichols is well qualified to deal effectively with the potential legal issues and problems that may arise in the context of these Chapter 11 cases.

## SERVICES TO BE PROVIDED BY MORRIS NICHOLS

17. The Debtors believe that the services of Morris Nichols are necessary to enable them to execute faithfully their duties as debtors in possession. Subject to further order of this Court, Morris Nichols will render the following professional services to the Debtors:

> (a) perform all necessary services as the Debtors' counsel, including, without limitation, providing the Debtors with advice, representing the Debtors, and preparing necessary documents on behalf of the Debtors in the areas of restructuring and bankruptcy;
>
> (b) take all necessary actions to protect and preserve the Debtors' estate during these Chapter 11 cases, including the prosecution of actions by the Debtors, the defense of any actions commenced against the Debtors, negotiations concerning litigation in which the Debtors are involved and objecting to claims filed against the estates;
>
> (c) prepare or coordinate preparation on behalf of the Debtors, as debtors in possession, necessary motions, applications, answers, orders, reports and papers in connection with the administration of these Chapter 11 cases;
>
> (d) counsel the Debtors with regard to their rights and obligations as debtors in possession; and
>
> (e) perform all other necessary legal services.

18. The Debtors believe that Morris Nichols' employment is in the best interests of the Debtors, their estates, and their creditors.

19. Subject to this Court's approval of the Application, Morris Nichols is willing to serve as the Debtors' counsel and to perform the services described above.

## DISINTERESTEDNESS OF PROFESSIONAL

20. To the best of the Debtors' knowledge, information and belief, and except to the extent otherwise indicated in the Abbott Declaration, none of Morris Nichols' partners, counsel or associates hold or represent any interest adverse to the Debtors' estates or their creditors, and Morris Nichols is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code.

21. Morris Nichols does not, and has not, represented any entities, other than the Debtors, in matters related to these cases. Morris Nichols may represent or may have represented certain parties with interests in the Debtors' cases, on matters unrelated to their Chapter 11 cases. As set forth in the Abbott Declaration, Morris Nichols has conducted, and continues to conduct, research into its relations with the Debtors, their substantial creditors and equity security holders and other parties interested in these cases. As part of this inquiry, Morris Nichols obtained the names of individuals or entities that may be parties in interest in these Chapter 11 cases (the "Potential Parties in Interest" and attached to the Abbott Declaration as **Schedule 1**).[2] Morris Nichols then entered the names of Potential Parties in Interest into a computer database containing the names of all clients and conflict information concerning the clients of Morris Nichols. This inquiry revealed that certain of the Potential Parties in Interest were current or former Morris Nichols clients (the list of such clients is referred to herein as the "Client Match List"). The list of current clients are listed on **Schedule 2** attached to the Abbott Declaration and the list of former clients are listed on **Schedule 3** attached to the Abbott

---

[2] Morris Nichols has obtained a larger list of creditors of the Debtors and is continuing to run this list in the same matter described herein. Morris Nichols will subsequently inform that Court of any creditors that should be added to the list of Client Match List.

7

Declaration. Through the information generated from the above-mentioned computer inquiry, and through follow-up inquiries with Morris Nichols attorneys responsible for certain clients listed on the Client Match List, Morris Nichols determined that the representation of the clients on the Client Match List concerned matters unrelated to these Chapter 11 cases, except to the extent otherwise indicated in the Abbott Declaration. Although Morris Nichols values all of its clients, none of the entities listed on **Schedule 1, Schedule 2** or **Schedule 3** represents significant financial revenues for Morris Nichols.

22. While Morris Nichols has undertaken, and continues to undertake, efforts to identify connections with the Debtors and other parties in interest, it is possible that connections with some parties in interest have not yet been identified. If Morris Nichols, through its continuing efforts or as these cases progress, learns of any new connections of the nature described above, Morris Nichols will so advise the Court.

23. Morris Nichols and certain of its partners, counsel and associates may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest of the Debtors in connection with matters unrelated to the Debtors and these cases.

## COMPENSATION

24. Morris Nichols was retained by the Debtors pursuant to an engagement letter executed by the Debtors on or about February 4, 2011 (the "Engagement Agreement"). On February 8, 2011 and February 9, 2011, Morris Nichols received initial payments of $118,000.00 and $32,000, respectively (together, the "Advance") from HFZ on behalf of the Debtors, constituting an advance of HFZ's proposed administrative expense debtor-in-possession funding to the Debtors to enable the Debtors to provide Morris Nichols with a retainer fee for services to

be rendered and expenses to be incurred in connection with Morris Nichols' representation of the Debtors. Morris Nichols has not been paid any other compensation by the Debtors or any other parties with regard to these cases.

25. In these cases, the Advance to be held by Morris Nichols is appropriate. *See In re Insilco Tech., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("Factors to be considered, include... whether terms of an agreement reflect normal business terms in the marketplace; ... the relationship between the Debtor and the professionals, *i.e.*, whether the parties involved are sophisticated business entities with equal bargaining power who engaged in arms-length negotiation[] [and] . . . whether the retention, as proposed is in the best interests of the estate[] . . . ."). First, agreements regarding retainers are commonplace and "reflect normal business terms in the marketplace." *See id.* at 634 (stating that it not disputed that "the taking of [] retainers is a practice now common in the marketplace."). Secondly, the Debtors and Morris Nichols are sophisticated entities which have negotiated the Advance at arms-length. Thirdly, the Advance is in the best interests of the Debtors and their estates because the Engagement Agreement and the Advance allow the Debtors and Morris Nichols to maintain their relationship and guarantee continuity of legal advice and representation through the prosecution of these bankruptcy cases. Thus, under the standards described by the *Insilco* court, the facts and circumstances of these cases support the Court's approval of the Advance.

26. Morris Nichols' requested compensation for professional services rendered to the Debtors will be based upon the hours actually expended by each assigned professional at each professional's hourly billing rate. Subject to Court approval in accordance with 11 U.S.C. §§ 330 and 331, the Bankruptcy Rules, the Local Rules and the Orders of this Court, the Debtors propose to compensate Morris Nichols for professional services rendered at

its normal and customary hourly rates in effect from time to time as set forth in the Abbott Declaration, plus reimbursement of actual, necessary expenses incurred by Morris Nichols on the Debtors' behalf.

27. At the present time, the following are Morris Nichols' current hourly rates for work of this nature:

| | |
|---|---|
| Partners | $475 to $770 |
| Associates | $275 to $475 |
| Paraprofessionals | $205 to $260 |
| Case Clerks | $130 |

These hourly rates are subject to periodic adjustments to reflect economic and other conditions.

28. Morris Nichols will also seek reimbursement for necessary expenses incurred, which shall include travel, photocopying, delivery service, postage, vendor charges and other out-of-pocket expenses incurred in providing professional services.

29. Morris Nichols intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

30. Because it is probable that the Debtors will require Morris Nichols to render extensive legal services, the cost of which cannot be estimated with certainty, it is necessary and essential that the Debtors, as debtors in possession, employ their attorneys under a system of advance payment to render the foregoing services. As described above, on February 8 and 9, 2011, HFZ on behalf of the Debtors provided Morris Nichols advance payments totaling $150,000.00 constituting an advance of HFZ's proposed administrative expense debtor-in-possession funding to the Debtors to enable the Debtors to provide Morris Nichols with a

retainer fee for services to be rendered and expenses to be incurred in connection with Morris Nichols' representation of the Debtors.

31. Morris Nichols will comply with all of the requirements of this Court, the Bankruptcy Code and the Bankruptcy Rules with respect to fee and expense applications of professionals employed by bankruptcy estates.

## NOTICE

32. No trustee or examiner has been appointed in these Chapter 11 cases. Notice of the Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) counsel to iStar; (d) counsel to the Controlling Members, and (e) such other parties entitled to notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

33. No previous request for the relief sought in this Application has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit B**, (i) granting this Application; (ii) authorizing the Debtors to retain and employ Morris Nichols as its counsel, *nunc pro tunc* to February 4, 2011; and (iii) granting such other and further relief as may be just and proper.

February 14, 2011          Slazer Enterprises Owner LLC
                           By: Slazer Enterprises LLC, its sole Member

                           By: Green Bridge Capital S.A., 35% Member

                           By: Cevdet Caner
                           Director

                           By: Special Situation, S.A., as holder of irrevocable
                           voting proxy from Marc Jacobs 32.5% Member

                           By Cevdet Caner
                           Director

February 14, 2011          Madison Park Group Owner, LLC
                           By: Slazer Enterprises LLC, its Manager

                           By: Green Bridge Capital S.A., 35% Member

                           By: Cevdet Caner
                           Director

                           By: Special Situation, S.A., as holder of irrevocable
                           voting proxy from Marc Jacobs 32.5% Member

                           By Cevdet Caner
                           Director

12

February  14 , 2011

JMJS 23rd Street Realty Owner, LLC
By: Slazer Enterprises LLC, its Manager

By: Green Bridge Capital S.A., 35% Member

By: Cevdet Caner
Director

By: By: Special Situation, S.A., as holder of irrevocable voting proxy from Marc Jacobs 32.5% Member

By Cevdet Caner
Director

February  14 , 2011

FKF Madison Group Owner, LLC
By: Slazer Enterprises LLC, its Manager

By: Green Bridge Capital S.A., 35% Member

By: Cevdet Caner
Director

By: By: Special Situation, S.A., as holder of irrevocable voting proxy from Marc Jacobs 32.5% Member

By Cevdet Caner
Director

4076850.3

13