# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

IN RE:

FKF MADISON PARK GROUP OWNER, *et al*.

Debtors.

Case No. 10-11867 (KG)

(Jointly Administered)

**Re: Docket No. 311**

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c) AND FED. R. BANKR. P. 2002, 4001 AND 9014 SEEKING TO AUTHORIZE THE DEBTORS TO OBTAIN INTERIM POST-PETITION FINANCING**

The Official Committee of Unsecured Creditors (the "**Committee**") of FKF Madison Group Owner, LLC, JMJS 23rd Street Realty Owner, LLC, Madison Park Group Owner, LLC and Slazer Enterprises Owner, LLC (collectively, the "**Debtors**") hereby objects to the Motion of the Debtors (the "**Motion**"), for an order authorizing them to, among other things, incur post-petition indebtedness and grant administrative priority claims pursuant to sections 105(a), 362, and 364(c) of title 11 of the United States Code, 11 U.S.C.§§ 101-1532 (the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"):[1]

1. As discussed during the Initial Hearing, it is apparent that no emergency exists and that no irreparable harm will occur if the Motion is not approved on an emergency basis. Indeed, the Debtors' sole asset is being operated by a receiver and the Debtors have survived without DIP financing since the Petition Date – almost 9 months ago.

---

[1] As discussed at the hearing on March 2, 2011, this objection is being filed to provide the Court with a very brief overview, in summary fashion, of the Committee's concerns. Accordingly, this Objection does not recite the facts, background, applicable law or other matters that normally would be contained in an objection of this nature.

1928028.1

2. Even assuming *arguendo* that the Debtors could satisfy their burden to demonstrate that irreparable harm will result, the terms of the proposed financing are inappropriate and should be modified. Following are the terms which the Committee believes are most inappropriate.

3. Paragraph 4 on page 8 of the proposed Order grants the DIP Lenders a super-priority claim against Chapter 5 claims. This provision should be stricken so that unsecured creditors are not deprived of the only assets presently available to them. In addition, certain claims arising under Chapter 5 may be asserted against iStar and iStar should not be entitled to the benefit of any avoidance or recovery.

4. Recovery from the sole asset available to unsecured creditors is particularly inappropriate under the present circumstances, because both iStar and HFZ are acting solely for their own benefit in entering into this financing. iStar has advanced monies to allow its receiver to operate the property since the filing of these cases and has done so without any of the protections requested here. iStar's goal is to allow the receiver to continue operating the property - so that it may liquidate its collateral. iStar should not be permitted to better its position for doing what it already has done and what is in its best interest.

5. HFZ also is acting solely for its own benefit. HFZ intends to act as the Plan sponsor for the Debtors and to purchase the property via that plan. HFZ's clear goal in providing financing is to ensure it obtains a head start in later bidding for the property – or better yet, to exclude other bidders altogether.

6. The Committee has spoken with several parties that have indicated both a willingness and ability to confirm a plan which has the purchase of the property at its foundation. Many of these parties have expressed concern over the terms of the proposed financing, in that it
1928028.1   2

establishes an unfair advantage for HFZ. The Committee wants to make sure that there is a level playing field and that all parties are able to bid in a competitive process – such that the maximum value is achieved for the benefit of creditors – rather than equity holders.

7. The Committee is particularly concerned with these issues because both of the Debtors' equityholders – Messrs. Caner and Shapiro – testified recently that they each had reached agreements with HFZ, that provide for substantial sums to be paid to them by HFZ (directly to Caner and indirectly to Shapiro).[2] The Committee believes that these sums represent an improper diversion of funds that should be paid to creditors.

8. Paragraph 6 on page 9 provides for a maturity date of June 30, 2011. This short period is unrealistic and designed to provide HFZ with an unfair advantage over others parties, such that HFZ can limit other parties ability to present alternatives and force the Debtors to proceed with its plan or face the prospect of maturity.

9. Paragraph 8(b) on page 10 permits only the Debtors to investigate the liens and claims asserted by the DIP Lenders, provides an insufficient amount of funding to conduct such investigation and limits the time within which to do so to less than 60 days. These provisions should be stricken for several reasons.

10. First, the Committee should not be precluded from investigating or challenging the DIP Lenders' liens and claims. Rather, as in most cases, the Committee should be entitled to investigate and should be authorized to prosecute an action or objection to the extent such claims have merit. To provide otherwise (as proposed in the Order), simply ensures there will be disputes and further litigation over these issues – which likely will occur on an emergency basis as a result of the very limited time provided.

---

[2] It bears note the Committee requested copies of such agreements from both the Debtors and HFZ, but nothing has been provided.

11.     Second, the time period is barely sufficient for the Debtors to conduct their review (especially at a time when the Debtors and HFZ indicate they will file a plan). But if the Committee believes there are any claims, the Committee will be forced to await the Debtors' review before it can take action – which essentially will result in the expiration of the entire time period before the Committee has any meaningful opportunity to protect the rights of unsecured creditors.

12.     Third, to the extent a creditor (other than the Committee) is entitled to assert a direct claim or objection, such claims should be preserved, rather than requiring solely the Debtors to assert claims. Indeed, in light of certain case law, the Debtors may not even be able to assert such direct claims.

13.     Accordingly, paragraph 8(b) should be amended to permit the Committee to investigate the liens and claims of the DIP Lenders, to give the Committee standing to commence an action or objection, to extend the challenge period and to increase the funding available for investigation.

14.     Paragraph 10 on pages 12-13 addresses Termination Events. Paragraphs 10(g) and (h) should be stricken because they provide HFZ with an unfair advantage against other potential plan sponsors. These provisions essentially ensure that the Debtors cannot take action unless the DIP Lenders consent. The effect of which is to block the Debtors from proposing a plan with any other party – even if that plan is a better alternative – because the filing of such a plan would be a Termination Event. Similarly, the termination of exclusivity is a Termination Event (even to a limited extent, such as solely to allow the Committee to propose a competing plan). Allowing this provision blocks the ability of any other party to come forward and ensures that there will be no real test of the market value of the property via a competitive process.

15. Paragraph 12 on pages 15-16 grants the DIP Lenders indemnification from the Debtors. It is unclear why the DIP Lenders believe they need such protections, but perhaps it is because they are acting in their own self interest and do not want anyone to challenge their lending on that basis. In any event granting such protections would not be appropriate. Moreover, to the extent the Court entertains granting any indemnity, such protections should be limited and should only apply to actions taken solely in the DIP Lenders' capacity as lenders under this order and not as pre-petition creditors or potential plan sponsors or any other capacity.

16. Paragraph 15 on page 17 provides for the protections granted to survive any subsequent reversal or modification. This provision (and, indeed, all other protections of this order) should provide that the protections only survive solely to the extent funds actually have been advanced in reliance upon the validity of the order. For example, the DIP Lenders should not get protections for monies authorized under the budget, but not yet spent by the Debtors.

17. Paragraph 17 on pages 18-19 provides for a Carve-Out for certain professional fees and limits payment thereof after a Termination Event. In order to ensure that the Carve-Out protects the professionals who will act in reliance thereon, fees and expenses incurred prior to the Termination Event should be paid, regardless of whether a Termination Event occurs after the fees and expenses are incurred.

18. Paragraph 18 on page 19 frees the DIP Lenders from any challenge under Sections 506(c), 510, 549 or 550. This provision applies not only to the amounts being funded under the proposed order, but also to all advances made by iStar to date. Each of those advances were made by iStar pursuant to orders of this Court which granted certain protections. iStar's advances were made solely in reliance on such orders and the protections granted under those

orders. It is inappropriate to elevate those claims now – long after the fact and contrary to the terms of the orders – as this provision attempts to.

19. Finally, the budget does not provide for any funding for the Committee for the first two periods, even though the Committee actively participated at that time in these proceedings during that time period and Debtors' counsel is earmarked to receive $150,000 during that same period.

WHEREFORE, the Committee respectfully requests that the Court deny approval of the Motion or should the Court be inclined to grant the Motion, require the proposed order be modified as described above.

Dated: March 3, 2011
Wilmington, Delaware

POLSINELLI SHUGHART PC

 /s/ Christopher A. Ward
Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del. Bar No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
cward@polsinelli.com
skatona@polsinelli.com

-and-

Schuyler G. Carroll, Esq. (*pro hac vice pending*)
PERKINS COIE LLP
30 Rockefeller Plaza, 25th Floor
New York, New York 10112
Telephone: (917) 302-6464
E-mail: scarroll@perkinscoie.com

PROPOSED COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS