# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE:<br><br>FKF MADISON PARK GROUP<br>OWNER, *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 10-11867 (KG)<br><br>(Jointly Administered)<br><br>**Re: D.I. 311 and 329** |

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c) AND FED. R. BANKR. P. 2002, 4001 AND 9014 AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING

FKF Madison Group Owner, LLC, JMJS 23rd Street Realty Owner, LLC, Madison Park Group Owner, LLC and Slazer Enterprises Owner, LLC (collectively, the "**Debtors**") having moved on March 1, 2011 (the "**Motion**"), for interim and final orders (respectively, the "**Interim DIP Order**" and "**Final DIP Order**") authorizing them to, among other things, incur post-petition indebtedness and grant administrative priority claims pursuant to sections 105(a), 362, and 364(c) of title 11 of the United States Code, 11 U.S.C.§§ 101-1532 (the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and having sought the following relief from the Court:

    (a)        Authority to enter debtor in possession financing arrangements (the "**DIP Loans**") with HFZ Capital Group, LLC, or its designee (the "**Administrative DIP Lender**") pursuant to the terms and conditions of that certain term sheet, dated as of March 1, 2011 (the "**Administrative DIP Term Sheet**"), a copy of which is annexed as Exhibit A to the Motion, and SFI Belmont LLC (as successor in interest to iStar Tara, LLC) ("**iStar**" or the "**Operations DIP Lender**" and together with the Administrative DIP Lender, the "**DIP Lenders**") pursuant to the terms and conditions of that certain term sheet dated

as of March 1, 2011 (the "**Operations DIP Term Sheet**"), a copy of which is annexed as Exhibit B to the Motion, pursuant to which the DIP Lenders will make loans to the Debtors (the "**Loan Advances**") in an aggregate principal amount of up to $3,083,229, the availability of which shall be limited pursuant to the Approved Budget (as defined below) annexed hereto as Exhibit A and the variances from such Approved Budget permitted herein and to enter into all documents necessary to implement the terms of the DIP Loans which may, in the discretion of the DIP Lenders, be the Administrative DIP Term Sheet and/or the Operations DIP Term Sheet and such other documents as the DIP Lenders, or either of them, request (the "**DIP Loan Documents**");

(b)     A ruling that amounts owed by the Debtors to the DIP Lenders under the DIP Loans, including accrued default interest, if any, pursuant to Paragraph 7 below, shall constitute claims having super-priority administrative expense priority under section 364(c)(1) of the Bankruptcy Code (the "**Super-Priority Claims**") which Super-Priority Claims shall be *pari passu* with one another and repaid on a pro rata basis and shall be secured by first priority liens pursuant to section 364(c)(2) of the Bankruptcy Code on cash collateral consisting solely of any amounts advanced by the DIP Lenders to the Debtors but not expended, including any iStar Administrative Advances (the "**Cash Collateral**").

(c)     A finding, pursuant to Bankruptcy Rules 2002 and 4001(c)(1), and the Local Rules of this Court that notice of the Interim and Final Hearings (as defined below) was sufficient having been given to (i) the United States Trustee (the

"**U.S. Trustee**"), (ii) counsel to the DIP Lenders, (iii) counsel to the Official

Committee of Unsecured Creditors (the "**Committee**"), and (iv) all parties

having requested notice in these proceedings (collectively, the "**Notice**

**Parties**") ; and such notice being sufficient and adequate, and no other or

further notice being required; and

an interim hearing on the Motion having been held on March 2 and 3, 2011 (the "**Interim**

**Hearing**"); and the Court having entered the Interim DIP Order on March 3, 2011; and a final

hearing on the Motion having been held on March 17, 2011 (the "**Final Hearing**"); and based

upon all of the pleadings filed with this Court, the evidence presented at the Interim and Final

Hearings and the entire record herein; and this Court having heard and resolved or overruled all

objections to the relief requested in the Motion; and this Court having noted the appearances of

all parties in interest; and it appearing that the relief requested in the Motion is in the best

interests of the Debtors, their estates, and their creditors; and after due deliberation and

consideration, and sufficient cause appearing therefor:

**IT IS HEREBY FOUND**[1]

     A.    <u>Jurisdiction; Venue</u>. This Court has jurisdiction over these chapter 11 cases, the

parties, and the Debtors' property pursuant to 28 U.S.C. §§157(b)(2)(D) and 1334. This is a core

proceeding pursuant to 28 U.S.C . §157(b)(2)(D). Venue for these chapter 11 cases and the

Motion is proper under 28 U.S.C. §§ 1408 and 1409.

     B.    <u>iStar Loans</u>. As of the Petition Date, iStar asserts that the Debtors are indebted to

iStar in an amount not less than $234,150,572.74 (the "**iStar Prepetition Claim**") pursuant to (i)

that certain Senior Loan and Security Agreement between the Debtors and iStar, dated

---

[1]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052

November 16, 2007 (the "**Senior Loan**"), (ii) that certain Building Loan and Security Agreement between the Debtors and iStar, dated November 16, 2007, as amended (the "**Building Loan**"), and (iii) that certain Project Loan and Security Agreement, dated November 16, 2007, as amended (the "**Project Loan**" and together with the Senior Loan and Building Loan, the "**iStar Loans**"). The iStar Loans are secured by liens and mortgages on substantially all of the Debtors' property pursuant to the following collateral documents, among others: (a) that certain Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing [Senior Loan] from the Debtors in favor of iStar, dated as of November 16, 2007, (b) that certain Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing [Building Loan] from the Debtors in favor of iStar, dated as of June 24, 2009, and (c) that certain Second Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing [Project Loan] from the Debtors in favor of iStar, dated as of June 24, 2009, together with all other agreements and documents evidencing, liens, security interests and mortgages securing iStar Gap Claims (as defined below) and the iStar Loans (the "**iStar Collateral Documents**").

C.      iStar Post-Petition Advances.  Pursuant to orders of the Court dated June 30, 2010, July 30, 2010, September 22, 2010 and October 6, 2010, iStar made protective advances on behalf of the Debtors for operating expenses and for payment of the professional fees and expenses of the Debtors' New York State court-appointed receiver (the "**Receiver**") incurred during the gap period in the aggregate amount of $2,487,441.04 (the "**iStar Gap Claims**"). From the Petition Date until the entry of the Interim DIP Order, the Receiver administered payment of the Debtors' operating expenses and oversaw or assisted in the management of the Debtors' property.  Pursuant to orders of the Court dated January 14, 2011, January 21, 2011,

January 28, 2011 and February 18, 2011, iStar made further advances to the Debtors for operating expenses constituting administrative expenses which aggregate $229,661.86 as of March 1, 2011 (the "iStar **Administrative Advances**").

D.   Purpose and Necessity of Financing.  The Debtors require the financing described in the Motion to fund the necessary and critical ordinary course expenses of maintaining and preserving the Property and to fund the administrative expenses related to the prosecution of their chapter 11 cases (including professional fees and US Trustee fees) consistent with the terms set forth in the DIP Loan Documents, and for other purposes permitted by the DIP Loan Documents.  If the Debtors do not obtain authorization to borrow under the DIP Loan Documents and the DIP Loans are not approved, the Debtors will suffer immediate and irreparable harm.  The Loan Advances in the amount provided by the DIP Loan Documents are not available to the Debtors without granting the DIP Lenders administrative claims as provided in this Final DIP Order and the DIP Loan Documents.  After considering all alternatives, the Debtors have concluded, in the exercise of their prudent business judgment, that the DIP Loans provided under the DIP Loan Documents represent the best financing package presently available to it, that it cannot obtain DIP financing on more favorable terms and that approval of the DIP Loans is in the best interests of the estates and their creditors.

E.   Good Faith. The DIP Loan Documents of record as of the date hereof have been negotiated in good faith and at arm's-length by and among the Debtors and the DIP Lenders. The DIP Loans and/or other financial accommodations made to the Debtors by the DIP Lenders pursuant to this DIP Order and/or the DIP Loan Documents of record as of the date hereof shall be deemed to have been extended by the DIP Lenders in good faith, as that term is used in Bankruptcy Code section 364(e), and the DIP Lenders shall be entitled to all protections afforded

thereunder, including, without limitation, the full protection of Bankruptcy Code section 364(e) in the event that this Final DIP Order or any provision thereof is vacated, reversed or modified, on appeal or otherwise. The terms of the DIP Loan Documents are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

F. <u>Consideration</u>. The Debtors will receive and have received fair and reasonable consideration in exchange for access to the DIP Loans and all other financial accommodations provided under the DIP Loan Documents and this Final DIP Order.

G. <u>Notice</u>. Sufficient and adequate notice of the Hearing and the entry of this Final DIP Order have been given in accordance with Bankruptcy Rule 4001, and no other or further notice need be given for entry of this Final DIP Order.

H. <u>Immediate Entry of DIP Order</u>. The Debtors have requested immediate entry of this Final DIP Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The Motion and this Final DIP Order comply with Local Bankruptcy Rule 4001-2. The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Final DIP Order is in the best interests of the Debtors' estates and their creditors as its implementation will provide for payment of the necessary and critical ordinary course expenses of maintaining and preserving the Property and further enhance the Debtors' prospects for a successful restructuring. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim and Final Hearings, and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.     Disposition. The Motion is granted, to the extent set forth herein, and the terms and provisions of the Administrative DIP Term Sheet annexed as Exhibit A and the Operations DIP Term Sheet annexed as Exhibit B to the Motion are approved to the extent set forth in this Order. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits. This Final DIP Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.

2.     Authorization. The Debtors are hereby authorized immediately to obtain DIP Loans from the DIP Lenders, pursuant to the terms of this Final DIP Order and subject to the terms of the DIP Loan Documents, in the aggregate principal amount of up to $3,083,229 in accordance with the Approved Budget (and the variances permitted thereto).

3.     Authority to Execute and Deliver Necessary Documents. (a) The Debtors are authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, in each case including any non-material amendments thereto.

(b)     The Debtors are hereby further authorized to (i) perform all of their obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein and in this Final DIP Order, and (ii) perform all acts required under the DIP Loan Documents and this Final DIP Order.

(c)     All obligations under the DIP Loan Documents shall constitute valid and binding obligations of the Debtors, enforceable against them and their successors and assigns (including, without limitation, any successor trustee or other estate representative in these chapter 11 cases or subsequent or superseding chapter 7 or chapter 11 cases (each, a "**Successor**

**Case")), in accordance with the terms of the DIP Loan Documents and the terms of this Final DIP Order, and no obligation, payment, transfer or grant of security under the DIP Loan Documents or this Final DIP Order shall be voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Bankruptcy Code section 502(d) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.     DIP Lenders' Liens and Super-Priority Administrative Claims. Subject to the Carve-Out (as defined below), (i) pursuant to section 364(c)(1) of the Bankruptcy Code, all advances by the DIP Lenders pursuant to the DIP Loans shall constitute allowed administrative expense priority claims having priority over all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code (the "**DIP Lenders Super-Priority Claims**"), which DIP Lenders Super-Priority Claims shall be *pari passu* with one another and repaid on a pro rata basis and (ii) pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Lenders shall have a first priority lien on all Cash Collateral; provided, however, that Operations DIP Lender's Super-Priority Claims shall not share in payments from any action against the Operations DIP Lender arising under Chapter 5 of the Bankruptcy Code or proceeds thereof on a super-priority basis, but shall share *pari passu* with other administrative expenses; further provided, however that as between the DIP Lenders, the lien of the DIP Lender who advanced such unexpended Cash Collateral shall have priority over the other DIP Lender therein. No other liens shall be granted on the Cash Collateral and no administrative expense priority shall be granted a priority senior to or *pari passu* with the DIP Lenders Super-Priority Claims prior to, or

that is not conditioned on, the indefeasible payment of the DIP Loans in full, in cash, or as otherwise agreed by the DIP Lenders.

5.      <u>Amendments, Consents, Waivers and Modifications</u>. The Debtors, after consultation with the Committee, and the DIP Lenders may enter into any non-material amendments, consents, waivers or modifications to the DIP Loan Documents without the need for further notice and hearing or any order of this Court; including amendments to the Approved Budget, *provided, however*, that without the consent of the DIP Lenders, no such amendment or waiver shall increase the lending commitment of either of the DIP Lenders; provided, further, however, that the Debtors shall provide the Committee and the U.S. Trustee with three days written notice of any material modification to the DIP Loan Documents.

6.      <u>Term</u>. All amounts due under the DIP Loans shall be due and payable, and repaid in full, in cash, on the date (the "**Maturity Date**") that is the first to occur of (i) June 30, 2011; (ii) the effective date of a plan of reorganization in form and substance acceptable to the DIP Lenders; and (iii) the occurrence of a Termination Event.

7.      <u>Interest on DIP Loans</u>. The DIP Loans shall not bear interest except, that, from and after the Maturity Date, upon the occurrence of an event of default under the DIP Loan Documents or upon the termination of all or any portion of the DIP Loans following a Termination Event (as defined below), the DIP Loans shall accrue interest at a variable rate per annum equal to the Prime Rate as reported in The Wall Street Journal.

8.      <u>Loan Advances, Budget and Reporting</u>. (a) Proceeds from Loan Advances funded by the Administrative DIP Lender shall be used exclusively for funding the expenses (collectively, the "**Approved Administrative Expenses**") that are set forth in amount on the budget (the "**Approved Budget**") annexed hereto as Exhibit A under the heading Petitioner

Related Expenses. Proceeds from Loan Advances funded by the Operations DIP Lender shall be used exclusively for funding the expenses (collectively, the "**Approved Operation Expenses**") that are set forth in amount on the Approved Budget under the heading Property Operating Expenses. The Debtors will be permitted variances of up to 10% for each line item on the Approved Budget forming a part of the Approved Operation Expenses but shall not be permitted any variances with respect to Approved Administrative Expenses. The Debtors shall be permitted to carry forward from a prior month any unused portion of the Loan Advances attributable to a particular line item, in respect of either the Approved Operation Expenses or the Approved Administrative Expenses (including amounts previously carried forward), to pay the same line item during the next succeeding month.

(b)     For the avoidance of doubt, no portion of the DIP Loan may be used in connection with the initiation or prosecution of any claims, causes of action, objection or other litigation against the DIP Lenders or with respect to the DIP Loans; provided, however, that the Debtors' professionals may use up to $50,000 of the DIP Loans to *investigate* the claims, liens and mortgages of iStar; provided, however, that all of the iStar Prepetition Claim under the iStar Loans, iStar Gap Claims and iStar Administrative Advances shall be deemed allowed claims, allowed gap claims entitled to priority under section 502(f) of the Bankruptcy Code, and allowed administrative expenses entitled to priority under section 503(b) of the Bankruptcy Code, respectively, in the minimum amounts set forth above, jointly and severally against the Debtors' estates (which claims shall not be subject to avoidance under chapter 5 of the Bankruptcy Code), and all of the mortgages, liens and security interests provided for in the iStar Collateral Documents shall be conclusively presumed to be valid, enforceable and perfected, shall not be subject to avoidance under chapter 5 of the Bankruptcy Code and shall have the priority provided

under applicable state law (and/or in the case of the iStar Gap Claims and iStar Administrative Advances under the Bankruptcy Code), unless, and solely to the extent that, the validity, enforceability or perfection of such claims, liens, security interests or mortgages is challenged in an action against iStar (including any action under chapter 5 of the Bankruptcy Code) commenced by the Debtors or the Committee (to the extent the Committee obtains standing after notice and a hearing to commence such action) by April 30, 2011, unless such date is extended by agreement of iStar.

(c)     Loan Advances shall occur no more frequently than once a month and shall be in a minimum amount of $100,000 unless less than $100,000 remains to be funded hereunder, provided, however, that either of the DIP Lenders in their sole discretion may provide Loan Advances in an amount less than $100,000 upon request by the Debtors.  No later than the fifth (5th) business day of every month commencing April 7, 2011, the Debtors shall deliver: (i) a variance report detailing: (x) the cash expenditures for the prior month and a comparison to the Approved Budget for that month; (y) the cumulative cash expenditures for all of the prior months since the entry of the Final DIP Order as compared to the Approved Budget for such months; and (z) a narrative explanation of the variances between the actual monthly expenditures and the budgeted monthly expenditures; and (ii) an updated monthly cash flow forecast for the then remaining period of the Approved Budget (the "**Updated Budget**"), consistent with the Approved Budget (collectively, the "**Monthly Budget Reports**").  The Monthly Budget Reports shall be subject to review and approval by the DIP Lenders.  Subject to the approval of the DIP Lenders, but without the need for any further Bankruptcy Court approval, the Updated Budget shall be deemed the Approved Budget; provided, however, that the line item for Creditor's Committee Fee shall not be reduced without consent of the Committee or further Court order.

(d)     The Debtors shall additionally provide to the DIP Lenders the following reports and information:

        (i)     monthly financial statements, operating reports, and budget and operating plans for each such monthly period (the "**Monthly Reports**");

        (ii)     on an as-requested basis, all such other reports and information respecting the Debtors' business, financial condition or prospects as the DIP Lenders from time to time reasonably request; and

        (iii)     copies of all pleadings, motions, applications, judicial information and other documents filed by or on behalf of the Debtors with the Bankruptcy Court or the U.S. Trustee.

(e)     The delivery of the Monthly Budget Reports and the Monthly Reports shall be accompanied by a certification from the Debtors that such Monthly Budget Reports and Monthly Reports are true and correct in all material respects.

(f)     Any report regularly provided to the DIP Lenders shall be provided simultaneously to the Committee, through its proposed counsel, Perkins Coie LLP, 30 Rockefeller Plaza, New York, New York 10112 (Attn: Schuyler G. Carroll, Esq.).

9.     <u>Access</u>.  The DIP Lenders and their agents and advisors shall have full access, upon reasonable notice during normal business hours, to the Debtors' business records, and business premises to enable the DIP Lenders or its agents and advisors to (a) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' business and the Property and (b) evaluate the Debtors' overall financial condition and all other records relating to the operations of the Debtors and the Property.  The Debtors shall fully cooperate with the DIP Lenders regarding such reviews, evaluations, and inspections, and

shall make their employees and professionals available to the DIP Lenders and its professionals and consultants to conduct such reviews, evaluations, and inspections.

10.  Termination Events.  The occurrence of any of the following shall constitute a Termination Event under this Final DIP Order upon notice to the Debtors by the DIP Lenders:

(a)  Appointment of a chapter 11 trustee or examiner with expanded powers for any of the Debtors;

(b)  Dismissal of any of the Debtors' cases or conversion of any of the Debtors' cases to chapter 7;

(c)  the entry of an order reversing, staying, vacating, or otherwise modifying in any material respect the terms of this Final DIP Order;

(d)  Any material violation of the covenants annexed to the Operations DIP Term Sheet;

(e)  Any request for authorization to obtain post-petition loans or other financial accommodations pursuant to Bankruptcy Code section 364, or otherwise, other than from the DIP Lenders;

(f)  Granting of relief from the automatic stay to permit any creditor to take action with respect to the Debtors' real property or improvements thereon;

(g)  Filing of a plan of reorganization not acceptable in form and substance to either DIP Lender; and

(h)  Termination or expiration of exclusivity.

In the event one of the DIP Lenders elects to terminate funding upon the occurrence of a Termination Event (in either case, the **"Terminating DIP Lender"**), the remaining DIP Lender (the **"Non-Terminating DIP Lender"**), in its sole and absolute discretion, may continue to fund

the expenses in the Approved Budget for which it was previously authorized to fund and may, in its sole and absolute discretion, elect to fund some or all of the amounts of the type previously funded by the Terminating DIP Lender, which funding shall be entitled to the same rights, priorities and liens as the Non-Terminating DIP Lender has under the Final DIP Order prior to such election by the Terminating DIP Lender ("**Post-Termination Event Funding**"); provided, however, that the Non-Terminating DIP Lender may cease any such Post-Termination Event Funding at any time upon notice to the Debtors and, provided further, that notwithstanding Paragraph 8(c) above, the Non-Terminating DIP Lender shall then have sole and absolute discretion to review and approve any Updated Budgets with respect to any Post-Termination Event Funding.

   11. <u>Automatic Stay Vacated and Modified</u>.  (a) Notwithstanding section 362 of the Bankruptcy Code, the automatic stay is hereby vacated and modified to the extent necessary to permit the DIP Lenders, to: (x) immediately (A) deliver a notice of the occurrence of an event of default; and (B) terminate or suspend the making of any further Loan Advances contemplated by the Approved Budget; and (y) upon five (5) business days' written notice (within which period the Debtors or the Committee may only dispute the DIP Lenders' declaration of the occurrence of a Termination Event on the basis of the events described in Paragraph 10 above, in the Bankruptcy Court on an expedited basis), the automatic stay of section 362 of the Bankruptcy Code shall be terminated without further order of the Court, without the need for filing any motion for relief from the automatic stay or any other pleading, for the limited purpose of permitting either or both of the DIP Lenders to do anyone or more of the following: (A) charge default interest on their respective Loan Advances in accordance with Paragraph 7 above, (B) declare their respective DIP Loans to be due and payable and (C) exercise their respective

remedies with respect to the Cash Collateral. The DIP Lenders acknowledge that absent DIP financing from a source other than the DIP Lenders, the DIP Loans might not be repaid except pursuant to a confirmed chapter 11 plan in these cases and that neither DIP Lender will use funds advanced to the Debtors by the other as a source of repayment. The Debtors are deemed to waive any right under section 105 of the Bankruptcy Code, or otherwise, to enjoin the exercise of the foregoing rights and remedies by the DIP Lenders following the occurrence of a Termination Event.

(b)     The rights and remedies of the DIP Lenders specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lenders may have under the DIP Loan Documents or otherwise and the DIP Lenders may exercise any such rights or remedies independently of one another or jointly. The Debtors shall cooperate fully with the DIP Lenders in their exercise of rights and remedies in accordance herewith.

(c)     This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Final DIP Order and relating to the application, re-imposition or continuance of the automatic stay of Bankruptcy Code section 362(a) or other injunctive relief requested.

12.     Indemnification. The Debtors shall indemnify and hold harmless the DIP Lenders, its affiliates and each of the respective officers, directors, members, partners, employees, agents, advisors, attorneys and representatives of each (each, an "**Indemnified Party**") from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, reasonable fees and disbursements of counsel), joint or several, that may be incurred by or asserted or awarded against any Indemnified Party (including, without limitation, in connection with or relating to any investigation, litigation or proceeding or the preparation of

15

any defense in connection therewith), in each case arising out of or in connection with or by reason of the DIP Loans, the DIP Order or any of the transactions contemplated thereby, or any actual or proposed use of the proceeds of the DIP Loans, except to the extent such claim, damage, loss, liability or expense is found in a final judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct. In the case of an investigation, litigation or other proceedings to which the indemnity in this paragraph applies, such indemnity shall be effective whether or not such investigation, litigation or proceeding is brought by the Debtors, any of their directors, security holders or creditors, an Indemnified Party or any other person, or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated by the DIP Loan Documents; provided, however, that notwithstanding anything to the contrary herein, the Debtors are not obligated to and shall not indemnify any party for any claims, damages, losses, liabilities and expenses (including, without limitation, reasonable fees and disbursements of counsel) arising prior to the entry of this Final DIP Order. The Debtors further agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any of their security holders or creditors for or in connection with the transactions contemplated by the DIP Loan Documents, except for direct damages (as opposed to special, indirect, consequential or punitive damages (including, without limitation, any loss of profits, business or anticipated savings)) determined in a final judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct.

13.     Successors and Assigns.  The DIP Loan Documents and the provisions of this Final DIP Order shall be binding upon the Debtors, the DIP Lenders, and each of their respective

successors and assigns, and shall inure to the benefit of the Debtors, the DIP Lenders, and each

of their respective successors and assigns including, without limitation, any trustee, responsible

officer, estate administrator or representative, or similar person appointed in a case for any

Debtors under any chapter of the Bankruptcy Code, *provided, however*, that nothing contained in

this Paragraph 13 shall be deemed to modify or waive any Termination Event. The provisions of

this Final DIP Order shall also be binding on all of the Debtors' creditors, equity holders, and all

other parties in interest.

14.     Binding Nature of Agreement. Each of the DIP Loan Documents to which the

Debtors are or will become a party shall constitute legal, valid, and binding obligations of the

Debtors party thereto, enforceable in accordance with their terms. The DIP Loan Documents

have been or will be properly executed and delivered to the DIP Lenders by the Debtors as soon

as practicable after entry of this Final DIP Order. Unless and until the DIP Loans have first been

indefeasibly paid in full in cash and completely satisfied and the commitments terminated in

accordance with the DIP Loan Documents, the rights, remedies, powers, privileges, liens, and

priorities of the DIP Lenders provided for in this Final DIP Order and in the DIP Loan

Documents shall not be modified, altered or impaired in any manner by any subsequent order

(including a confirmation order), by any plan of reorganization or liquidation in these chapter 11

cases, by the dismissal or conversion of these chapter 11 cases or in any Successor Case under

the Bankruptcy Code.

15.     Subsequent Reversal or Modification. This Final DIP Order is entered pursuant

to Bankruptcy Code section 364, and Bankruptcy Rules 4001(b) and (c), granting the DIP

Lenders all protections afforded by Bankruptcy Code section 364(e). If any or all of the

provisions of this Final DIP Order are hereafter reversed, modified, vacated or stayed, that action

will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtors to the DIP Lenders, solely to the extent of funds that were actually advanced to the Debtors hereunder, prior to the date of receipt by the DIP Lenders of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under this DIP Order or pursuant to the DIP Loan Documents. Notwithstanding any such reversal, stay, modification or vacatur, any post-petition indebtedness, obligation or liability incurred by the Debtors to the DIP Lenders prior to written notice to the DIP Lenders of the effective date of such action, shall be governed in all respects by the original provisions of this Final DIP Order, and the DIP Lenders shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liability.

16.     Restriction on Use of DIP Lenders' Funds.  No proceeds from the DIP Loan may be used to pay any claims for services rendered by any of the professionals retained by the Debtors (or any successor trustee or other estate representative in these chapter 11 cases or any Successor Case), any creditor or party in interest, any committee or any other party to (a) request authorization to obtain post-petition loans or other financial accommodations pursuant to Bankruptcy Code section 364, or otherwise, other than from the DIP Lenders; and/or (b) except as expressly provided in paragraph 8(b) hereof, investigate, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, the Administrative DIP Lender, iStar or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns. or successors, with respect to any transaction, occurrence, omission, or action,

including, without limitation, (i) any action arising under Chapter 5 of the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of action; and/or (iii) any action with respect to the validity and extent of the DIP Loans or the validity, extent, and priority of the DIP Liens.

17. As used in this Final DIP Order, "Carve Out" means: (i) unpaid fees of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (ii) in the event of a conversion of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, fees and expenses incurred by any trustee and any professionals retained by such trustee, in an aggregate amount not exceeding $20,000; (iii) to the extent permitted by the Approved Budget and allowed at any time by final order, all unpaid fees and expenses (the "Professional Fees"), incurred by persons or firms retained by the Debtor pursuant to section 327, 328 or 363 of the Bankruptcy Code and the Committee pursuant to section 1103 of the Bankruptcy Code (the "Professionals"), at any time before or on the first business day following notice of a Termination Event to the Debtors, whether allowed by the court prior to or after the Termination Event; and (iv) after the first business day following a Termination Event, to the extent allowed by a final order, the payment of reasonable fees of Professionals in an aggregate amount not to exceed $50,000. The Carve-Out shall be senior to the security interests in and liens of the DIP Lenders on the Cash Collateral and shall be senior to the Super-Priority Claims. Nothing herein shall be construed to impair the ability of any party in interest to object to any fees, expenses, reimbursement, or compensation of any Professionals. For purposes of calculating the amount of Professional Fees permitted to be paid to a Professional as part of the Carve Out under subsection (iv) of this paragraph 17, the Carve-Out shall be reduced by the aggregate amount of all unapplied retainers held by Professionals. For the avoidance of doubt, and notwithstanding Paragraph 11 above, following the occurrence of a Termination Event, the Administrative DIP

Lender shall make Loan Advances necessary to fund all Professional Fees and U.S. Trustee fees incurred prior to a Termination Event to the same extent required to be made if a Termination Event had not occurred.

18. <u>Limitation on Charging Expenses Against Collateral</u>. The DIP Lenders Super-Priority Claims, the iStar Gap Claims, the iStar Administrative Advances and the liens granted to the DIP Lenders on the Cash Collateral shall not be subject to sections 506(c), 549, or 550 of the Bankruptcy Code. No costs or expenses of administration which have been or may be incurred at any time in the chapter 11 cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from any of the Administrative DIP Lender, iStar, or any of their respective pre-petition or post-petition claims or collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise.

19. <u>No Waiver by Failure to Seek Relief; Reservation of Rights</u>. The failure of the DIP Lenders to seek relief or otherwise exercise their rights and remedies under this Final DIP Order, the DIP Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights thereunder, or otherwise of the DIP Lenders, including, without limitation, the right of iStar to seek adequate protection in respect of any collateral described in the iStar Collateral Documents. All claims, rights and defenses of the DIP Lenders are reserved in all respects.

20. <u>Limits on DIP Lenders' Liability</u>. Nothing in this Final DIP Order or in any of the DIP Loan Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lenders of any liability

for any claims arising from any and all activities by the Debtors in the operation of their business or in connection with their restructuring efforts.

21.     Priority of Terms.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final DIP Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Loan Documents, the terms and provisions of this Final DIP Order shall govern.

22.     No Third Party Beneficiary.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

23.     Survival.  Except as otherwise provided herein, the protections afforded to the DIP Lenders under this Final DIP Order, and any actions taken pursuant thereto, shall survive the entry of an order (1) dismissing any of these chapter 11 cases or (2) converting these chapter 11 cases into a case pursuant to chapter 7 of the Bankruptcy Code and shall not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Lenders in accordance with this Final DIP Order), or any conversion of these chapter 11 cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these chapter 11 cases, or by any other act or omission until all obligations under DIP Loan Documents are indefeasibly paid in full in cash and completely satisfied, and the commitments under the DIP Loan Documents are terminated in accordance therewith.

24. <u>Proofs of Claim</u>. The DIP Lenders are hereby relieved of the requirement to file proofs of claim in these Chapter 11 Cases with respect to any DIP Loans, iStar Administrative Advances, iStar Gap Claims, and any other claims or liens granted hereunder or created hereby; provided, however, that iStar shall file a proof of claim for the iStar Prepetition Claim.

25. <u>Entry of DIP Order; Effect</u>. This Final DIP Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Final DIP Order on this Court's docket in these chapter 11 cases.

26. <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction overall all matters pertaining to the implementation, interpretation and enforcement of this Final DIP Order and/or the DIP Loan Documents.

27. <u>Binding Effect of Final DIP Order</u>. The terms of this Final DIP Order shall be binding on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

Dated: Wilmington, Delaware
March 18 , 2011

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

4142265.2