UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FKF MADISON PARK OWNER, LLC, et al.,<br><br>Debtors. | Chapter 11<br>Case No. 10-11867 (KG)<br>(Jointly Administered) |
| THE WILLS GROUP FAMILY LIMITED PARTNERSHIP,<br><br>Plaintiff,<br>v.<br><br>FKF MADISON GROUP OWNER LLC,<br>JMJS 23RD STREET REALTY OWNER LLC,<br>MADISON PARK GROUP OWNER LLC,<br>SLAZER ENTERPRISES OWNER LLC,<br>iSTAR TARA LLC,<br>FOREST MALL, LLC,<br>RANCE MASHECK, and<br>TIM LIN,<br><br>Defendants. | Adv. Proc. No. 11-_____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, IMPOSITION OF CONSTRUCTIVE TRUST AND OTHER RELIEF RELATING TO DETERMINATION OF RIGHTS IN REAL PROPERTY; [FOR DAMAGES AND CONSTRUCTIVE TRUST AGAINST SECURED CREDITOR;] AND FOR RELATED RELIEF** |

Plaintiff The Wills Group Family Limited Partnership ("Wills Group" or "Plaintiff"), by its attorneys, alleges as follows:

NATURE OF ADVERSARY PROCEEDING

1. This is an adversary proceeding by Wills Group to obtain various relief relating to two condominium units in the building known as One Madison Park Condominium, located at premises known as 23 East 22nd Street, New York, New York (the "Premises"). Wills Group seeks relief against debtors FKF Madison Group Owner, LLC ("FKF Owner"), Slazer Enterprises Owner LLC ("Slazer Owner"), JMJS 23rd Street Realty Owner, LLC ("JMJS Owner"), and Madison Park Group Owner, LLC ("Madison Owner" and, collectively with

Slazer Owner, JMJS Owner and FKF Owner, the "Sponsor Defendants" or "Debtors"), the Debtor's mortgage lender iStar Tara LLC ("iStar"), Forest Mall LLC ("Forest Mall"), and Lance Masheck and Tim Lin (together "Masheck and Lin") to declare that Wills Group is the owner of such units, or that the Debtors hold the units in constructive trust for the sole benefit of Wills Group.

2. As is further detailed below, Wills Group paid approximately $7,550,000 to Debtors and $3,650,000 to iStar, and was the equitable owner of condominium units 8A ("Unit 8A") and 49B ("Unit 49B") of the Premises (together, the "Units") pursuant to purchase agreements and assignments. Alternatively if the Units are determined for any reason to be the property of the Debtor's Estate, iStar or some other entity, then by reason of having received and accepted $11,200,000 from Wills Group and refusing to close, Debtors and iStar were unjustly enriched by the amounts paid by Wills Group.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the order of reference of bankruptcy cases and proceedings in the District of Delaware to the Bankruptcy Court. This is a core proceeding that the Bankruptcy Court may hear and determine pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## THE PARTIES

4. Plaintiff Wills Group is a limited partnership organized and existing under the laws of the State of Nevada, with its principal place of business in the State of New York.

5. Upon information and belief, Defendant FKF Owner is a limited liability

company organized and existing under the laws of the State of Delaware, with its principal place of business at 230 Congers Road, New City, New York 10956.

6. Upon information and belief, Defendant Slazer Owner is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 230 Congers Road, New City, New York 10956.

7. Upon information and belief, Defendant JMJS Owner is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 230 Congers Road, New City, New York 10956.

8. Upon information and belief, Defendant Madison Owner is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 230 Congers Road, New City, New York 10956.

9. Upon information and belief, Slazer Owner, Madison Owner, FKF Owner and JMJS Owner are co-owners, as tenants in common, of the Premises and the Units, in the following percentages:

| | |
|---|---|
| Defendant Slazer Owner | 78% undivided interest |
| Defendant Madison Owner | 12% undivided interest |
| Defendant FKF Owner | 6% undivided interest |
| Defendant JMJS Owner | 4% undivided interest |

10. FKF Owner, Slazer Owner, Madison Owner and JMJS Owner are also the sponsors of One Madison Park Condominium, including the Premises and the Units.

11. Upon information and belief, Defendant iStar is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 1114 Avenue of the Americas, New York, New York 10036.

12. iStar alleges that it made certain loans, advances and other financial accommodations to Debtors, purports to hold a blanket first mortgage on the Premises, and has attempted to foreclose on this first mortgage following Debtors' alleged default.

13. Upon information and belief, Defendant Forest Mall is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business at 100 Route 306, Monsey, New York 10952.

14. Upon information and belief, Defendants Masheck and Lin are individuals residing at 3251 Sea Shell Road, Fort Myers, Florida 33931.

15. Defendants Forest Mall, Masheck and Lin have asserted interests in Unit 49B.

**A.** **Unit 8A**

*1.* *Wills Group Is the Lawful Purchaser of Unit 8A*

16. On June 29, 2007, Wills Group entered into a contract with Debtors and ISMJ Corporate Office LLC ("ISMJ"), a limited liability company organized and existing under the laws of the State of Delaware and wholly owned or controlled by the Sponsor Defendants, pursuant to which Wills Group, in exchange for a payment of approximately $4,000,000.00 to Debtors, received a contingent interest in Unit 8A of the Premises. A true and correct copy of the promissory note evidencing the $4,000,000.00 indebtedness is annexed hereto as Exhibit A (the "8A Promissory Note"). Among other things, the 8A Promissory Note provided for repayment on its maturity date, June 30, 2008.

17. Under the contract, in the event of a default under the 8A Promissory Note, Madison Owner, on its own behalf and as agent for Slazer Owner, JMJS Owner and FKF Owner, agreed to sell Unit 8A to Wills Group, together with the applicable percentage of undivided interest in the common elements at the Premises, for the sum of $4,500,000.00 (the "8A

Purchase Agreement"), and to deliver a deed conveying to Wills Group good and marketable title in fee simple to Unit 8A, free and clear of all encumbrances other than those set forth in Schedule A to the 8A Purchase Agreement. A true and correct copy of the 8A Purchase Agreement is annexed hereto as Exhibit B.

18. The 8A Purchase Agreement and an Assignment were to be held in escrow and released to Wills Group promptly upon a default under the 8A Promissory Note. A true and correct copy of the 8A Assignment is annexed hereto as Exhibit C.

19. It was further agreed that, in the event of a default, Wills Group would receive from Debtors at closing a credit, to be applied against the purchase price of Unit 8A, equal to $4,000,000.00, plus all accrued and unpaid interest and all other sums due and owing under the 8A Promissory Note. Wills Group was obligated to pay to Debtors any additional monies above the credit necessary to complete the purchase for the agreed upon sale price of $4,500,000.00. The minimum release price for Unit 8A is $4,140,000.00.

20. Thereafter, Debtors and ISMJ defaulted under the 8A Promissory Note by failing to repay the principal balance on its maturity date, June 30, 2008. No payments of principal or interest have been made before or since the above-described maturity date of the 8A Promissory Note, despite repeated due demand therefor.

21. The amount past due and owing under the 8A Promissory Note exceeds both the minimum release price and the $4,500,000 sale price set forth in the 8A Purchase Agreement.

22. Accordingly, the 8A Purchase Agreement and 8A Assignment were released from escrow and delivered to Wills Group, and Wills Group became the equitable owner of Unit 8A.

    *2. Borrowers' Subsequent Failure to
      Close in Breach of the Purchase Agreement*

23. On or about January 29, 2010, Wills Group set a closing date for March 3, 2010,

having duly notified the Debtors of same and demanded, time being of the essence, that Debtors perform their obligations under the 8A Purchase Agreement; namely, that the Debtors appear at closing and deliver to Wills Group an executed deed conveying title to Unit 8A to Wills Group pursuant to the terms of the 8A Purchase Agreement and 8A Assignment.

24. In breach of, <u>inter alia</u>, the 8A Purchase Agreement, Debtors failed to appear at the closing and deliver an executed deed and/or convey title to Unit 8A to Wills Group.

25. On January 29, 2010 and at all times thereafter, Wills Group was, and remains, ready, willing and able to close on Unit 8A.

26. On or about February 18, 2010, defendant iStar commenced a mortgage foreclosure action against ISMJ, Borrowers and other parties in the Supreme Court of the State of New York, County of New York, under the caption *iStar Tara LLC v. FKF Madison Group Owner LLC, et al.,* Index No. 600423/10 ("Foreclosure Action"). iStar alleged that it has an interest in the Premises, including Unit 8A, as holder of a senior mortgage in the Premises.

27. A receiver was appointed in the Foreclosure Action on or about May 7, 2010.

**B. Unit 49B**

*1. Wills Group Is the Lawful Purchaser of Unit 49B*

28. On June 20, 2008, Wills Group entered into a contract with Debtors and ISMJ pursuant to which Wills Group, in exchange for a payment of sums totaling approximately $7,200,000.00 ($3,550,000.00 to Debtors and $3,650,000.00 to iStar), received a contingent interest in Unit 49B. A true and correct copy of the promissory note evidencing the $7,200,000.00 indebtedness is annexed hereto as Exhibit D (the "49B Promissory Note"). Among other things, the 49B Promissory Note provided for repayment on its maturity date, June 30, 2008.

29. Under the contract, in the event of a default under the 49B Promissory Note, Madison Owner, on its own behalf and as agent for Slazer Owner, JMJS Owner and FKF Owner, agreed to sell Unit 49B to Wills Group, together with the applicable percentage of undivided interest in the Common Elements at the Premises, for the sum of $6,200,000.00 (the "49B Purchase Agreement"), and to deliver a deed conveying to Wills Group good and marketable title in fee simple to Unit 49B, free and clear of all encumbrances other than those set forth in Schedule A to the 49B Purchase Agreement. A true and correct copy of the 49B Purchase Agreement is annexed hereto as Exhibit E.

30. The 49B Purchase Agreement and an Assignment were to be held in escrow and released to Wills Group promptly upon a default under the 49B Promissory Note. A true and correct copy of the 49B Assignment is annexed hereto as Exhibit F.

31. It was further agreed that, in the event of a default, Wills Group would receive from Debtors at closing a credit, to be applied against the purchase price of Unit 49B, equal to $6,200,000.00, plus all accrued and unpaid interest and all other sums due and owing under the 49B Promissory Note. Wills Group was obligated to pay to Debtors any additional monies above the credit necessary to complete the purchase for the agreed upon sale price of $6,200,000.00. The minimum release price for Unit 49B is $5,060,000.00.

32. Thereafter, Debtors and ISMJ defaulted under the 49B Promissory Note by failing to repay the principal balance on its maturity date, June 30, 2008, and also failing to pay monthly interest of $84,000.00 due on October 1, 2008, no part of which has been paid except for the sum of $27,000.00, leaving an unpaid balance of interest due on October 1, 2008 of $57,000.00. Borrowers and ISMJ further defaulted in making the monthly interest payment of $84,000.00 due on November 1, 2008 and on the first day of each month thereafter.

7

33. The amount past due and owing under the 49B Promissory Note exceeds both the minimum release price and the $6,200,000 sale price set forth in the 49B Purchase Agreement.

34. Accordingly, the 49B Purchase Agreement and 49B Assignment were released from escrow and delivered to Wills Group, and Wills Group became the equitable owner of Unit 49B.

        *2.    Borrowers' Subsequent Failure to*
             <u>*Close in Breach of the Purchase Agreement*</u>

35. On or about January 29, 2010, Wills Group set a closing date for March 3, 2010, having duly notified the Debtors of same and demanded, time being of the essence, that Debtors perform their obligations under the 49B Purchase Agreement; namely, that the Debtors appear at closing and deliver to Wills Group an executed deed conveying title to Unit 49B to Wills Group pursuant to the terms of the 49B Purchase Agreement and 49B Assignment.

36. In breach of, <u>inter alia</u>, the 49B Purchase Agreement, Debtors failed to appear at the closing and failed to deliver an executed deed and/or convey title to Unit 49B to Wills Group.

37. On January 29, 2010 and at all times thereafter, Wills Group was, and remains, ready, willing and able to close on Unit 49B.

38. iStar thereafter commenced the Foreclosure Action, in which it claims that it has an interest in Unit 49B, as holder of a senior mortgage in the Premises.

39. Upon information and belief, defendants Forest Mall and Masheck and Lin also claim to have obtained an interest in Unit 49B, but only after Wills Group entered into its agreements with Debtors concerning that unit, and after Unit 49B was being held in constructive trust for the sole and exclusive benefit of Wills Group.

40. Upon information and belief, the interest in Unit 49B claimed by Forest Mall and the interest claimed by Masheck and Lin are both unsecured interests subordinate to the interest

of Wills Group.

### C. The Payment Directly to iStar on Account of Unit 49B.

41. Of the $7,200,000 paid by Wills Group with respect to Unit 49B, the sum of $3,650,000 was paid from Plaintiff directly to, and was received and retained by, iStar.

42. Accordingly, upon information and belief, iStar was aware of, and never objected to, the 49B Purchase Agreement, 49B Assignment and Wills Group's rights thereunder.

43. iStar, however, has neither accounted to nor returned any of the funds to Plaintiff, despite continuing to retain what it asserts to be a senior lien and security interest in and to Unit 49B. Accordingly, iStar appears to have assumed the position that it is legally entitled to both possession of Unit 49B and the money Wills Group paid for said Unit.

### D. Debtors Defaulted On Other Loans From Wills Group Totaling $3,326,500

44. From December 1, 2007 through December 7, 2009, Wills and certain related entities (the "Wills Parties") also advanced to or for the benefit of Debtors the additional aggregate amount of not less than $3,557,426.00, repayable with interest on demand. The loans, advances and other financial accommodations were intended to fund the Debtor's business obligations, thereby protecting and preserving Wills Group's collateral.

45. On or about March 3, 2010, Debtors defaulted, failing to pay to Wills Parties the principal and all accrued interest thereon, despite repeated due demand therefor.

### D. The Debtors' Bankruptcy Cases

46. On or about June 8, 2010, involuntary petitions for relief under Chapter 7 of the Bankruptcy Code were filed against the Debtors by various creditors.

47. The Debtors filed motions to dismiss the petitions. Thereafter, additional creditors joined in the involuntary petitions.

48. On or about November 3, 2010, iStar filed a motion in the Bankruptcy Court for relief from the automatic stay to continue the prosecution of the Foreclosure Action in the New York state court. That motion is *sub judice*.

49. On or about November 18, 2010, the petitioning creditors filed motions for the entry of orders for relief and for immediate conversion of the Chapter 7 cases to cases under Chapter 11 of the Bankruptcy Code.

50. The Bankruptcy Court entered orders converting the Debtors' cases from Chapter 7 to Chapter 11 on or about November 19, 2010.

## FIRST CLAIM
### (Declaratory Judgment of Ownership – Unit 8A)

51. Wills Group repeats and realleges paragraphs 1 through 50 above, as though fully set forth herein.

52. The 8A Purchase Agreement and 8A Assignment were properly released from escrow to Wills Group upon Debtors' default, and Wills Group became the equitable owner of Unit 8A. The amount due from Debtors also exceeded the minimum release price and sales price. Thus, all of Wills Group's obligations to close on Unit 8A have been fulfilled.

53. Wills Group set a closing date for March 3, 2010, time being of the essence, having duly notified the Debtors of same and demanded that Debtors perform their obligations under the 8A Purchase Agreement; namely, that the Debtors appear at closing and deliver to Wills Group an executed deed conveying clear, unencumbered title to Unit 8A to Wills Group pursuant to the terms of the 8A Purchase Agreement and 8A Assignment.

54. Though Debtors had the authority to close on Unit 8A, Debtors failed to appear at the closing and failed to deliver an executed deed to Unit 8A to Wills Group, thus breaching the 8A Purchase Agreement.

55. Further, upon information and belief, (i) iStar's November 2007 mortgages have been superseded and extinguished by virtue of the amended and restated June 2009 mortgages; (ii) iStar's June 2009 mortgages were not recorded until March 2010, after Wills Group's rights in the Units accrued; and (iii) in any event, the June 2009 mortgages are deficient because, among other things, they fail to contain a legal description of the property to be liened, list no address for the property, and contain no reference to a tax lot, condominium plan or condominium unit.

56. Additionally, any purported interest of iStar in Unit 8A is extinguished by New York Real Property Law § 339-r. The conveyance of the Unit to Wills Group by corresponding purchase and assignment agreements statutorily necessitates the release of the Units to their rightful owner, Wills Group.

57. In reliance on the 8A Purchase Agreement, Wills Group has expended significant sums in preparation for its anticipated purchase of Unit 8A.

58. Wills Group has no adequate remedy at law for Debtors' breach.

59. Unit 8A, being real property, is unique.

60. An actual controversy exists among Debtors, iStar and Wills Group concerning the rights of the parties in Unit 8A, for which the Bankruptcy Court may grant a declaratory judgment pursuant to 28 U.S.C. § 2201(a).

61. By reason of all of the foregoing, Wills Group is entitled to a judgment declaring:

    a. that Wills Group is the owner of Unit 8A;

    b. that Unit 8A is not property of the Debtors' estates; and

    c. all other entities or individuals are barred from asserting any interest in Unit 8A.

## SECOND CLAIM
### (Declaratory Judgment of Ownership – Unit 49B)

62. Wills Group repeats and realleges paragraphs 1 through 61 above, as though fully set forth herein.

63. The 49B Purchase Agreement and 49B Assignment were properly released from escrow to Wills Group upon Debtors' default, and Wills Group became the equitable owner of Unit 49B. The amount due from Debtors also exceeded the minimum release price and sales price. Thus, all of Wills Group's obligations to close on Unit 49B have been fulfilled.

64. Wills Group set a closing date for March 3, 2010, time being of the essence, having duly notified the Debtors of same and demanded that Debtors perform their obligations under the 49B Purchase Agreement; namely, that the Debtors appear at closing and deliver to Wills Group an executed deed conveying clear, unencumbered title to Unit 49B to Wills Group pursuant to the terms of the 49B Purchase Agreement and 49B Assignment.

65. Though Debtors had the authority to close on Unit 49B, Debtors failed to appear at the Closing and failed to deliver an executed deed to Unit 49B to Wills Group, thus breaching the 49B Purchase Agreement.

66. Defendants Masheck's and Lin's and Forest Mall's respective interests in Unit 49B are later in time, unsecured and subordinate to the prior interest of Wills Group.

67. Further, upon information and belief, (i) iStar's November 2007 mortgages have been superseded and extinguished by virtue of the amended and restated June 2009 mortgages; (ii) iStar's June 2009 mortgages were not recorded until March 2010, after Wills Group's rights in the Units accrued; and (iii) in any event, the June 2009 mortgages are deficient because, among other things, they fail to contain a legal description of the property to be liened, list no address for the property, and contain no reference to a tax lot, condominium plan or

12

condominium unit.

68. In addition, iStar is estopped from asserting any purported mortgage right to Unit 8A. iStar was on notice of Wills Group's interest in the Units when it accepted a direct payment from Wills Group of $3,650,000, and iStar raised no objection based on any purported mortgage interest it claims in the Units. Wills Group reasonably relied on iStar's acts and omissions to its material detriment, as iStar now seeks to assert mortgage interests in the Units against Wills Group despite its earlier silence upon receiving direct payment.

69. Additionally, any purported interest of iStar in Unit 49B is extinguished by New York Real Property Law § 339-r. The conveyances of the Units to Wills Group by corresponding purchase and assignment agreements statutorily necessitates the release of the Units to their rightful owner, Wills Group.

70. In reliance on the 49B Purchase Agreement, Wills Group has expended significant sums in preparation for its anticipated purchase of Unit 49B.

71. Wills Group has no adequate remedy at law for Debtors' breach.

72. Unit 49B, being real property, is unique.

73. An actual controversy exists among Debtors, iStar and Wills Group concerning the rights of the parties in Unit 49B, for which the Bankruptcy Court may grant a declaratory judgment pursuant to 28 U.S.C. § 2201(a).

74. By reason of all of the foregoing, Wills Group is entitled to a judgment declaring:

   a. that Wills Group is the owner of Unit 49B;

   b. that Unit 49B is not property of the Debtors' estates; and

   c. all other entities or individuals are barred from asserting any interest in Unit 49B.

## THIRD CLAIM
(Unjust Enrichment; Units Held in Constructive Trust)

75. Wills Group repeats and realleges each and every allegation contained in paragraphs 1 through 74 as if more fully set forth herein.

76. Wills Group reposed confidence and reliance in Debtors to perform their obligations under the 8A Purchase Agreement and the 49B Purchase Agreement.

77. In the event that monies due thereunder were not repaid, Debtors promised to close on the Units and provide to Wills Group credit for amounts received under the 8A Promissory Note and 49B Promissory Note, plus all accrued and unpaid interest and all other sums due and owing.

78. In reliance on that promise, Wills Group transferred approximately $11,200,000, all for the benefit of Debtors and/or iStar.

79. Debtors and iStar are, and have been, unjustly enriched at the expense of Wills Group by the amounts received by them or on their account from Wills Group for the Units, while continuing to hold, assert interests in, and entitlement and/or ownership of, and exercise dominion and control over, the Units.

80. By reason of the foregoing, Plaintiff is entitled to a determination that the Units are held in constructive trust for the sole and exclusive benefit of Plaintiff.

## FOURTH CLAIM
(Unjust Enrichment; Return of Money Paid to iStar)

81. Wills Group repeats and realleges each and every allegation contained in paragraphs 1 through 80 as if more fully set forth herein.

82. Wills Group transferred $3,650,000 to iStar in connection with the 49B Purchase Agreement.

83. iStar was enriched by the amount transferred to it by Wills Group.

84. In the event that the Court does not award possession of Unit 49B to Wills Group, then iStar will have been unjustly enriched by obtaining both the Unit and the $3,650,000 paid by Wills Group to iStar for the Unit.

85. By reason of the foregoing, Plaintiff is entitled to a determination that Unit 49B is held in constructive trust for the sole and exclusive benefit of Plaintiff, or that iStar must return the $3,650,000 which it received from Plaintiff for the Unit, plus interest.

**FIFTH CLAIM**
(Direction to Convey Title; Specific Performance)

86. Wills Group repeats and realleges paragraphs 1 through 85 above, as though fully set forth herein.

87. Wills Group has performed each and every obligation on its part under the 8A Purchase Agreement and the 49B Purchase Agreement.

88. In violation and breach of the 8A Purchase Agreement and 8A Assignment Agreement and the 49B Purchase Agreement and 49B Assignment Agreement, Debtors failed to appear at the closings on the dates set by Wills Group, to deliver executed deeds conveying to Wills Group good and marketable title in fee simple to the Units free and clear of all encumbrances other than those set forth in the schedules to the 8A Purchase Agreement and the 49B Purchase Agreement, and to otherwise perform their obligations under said Agreements.

89. At all times relevant herein, Wills Group was ready, willing and able to close on Unit 8A on the agreed upon terms under the 8A Purchase Agreement, and Unit 49B on the agreed upon terms under the 49B Purchase Agreement.

90. Wills Group has no adequate remedy at law.

91. Units 8A and 49B, being real property, are unique.

92. By reason of all of the foregoing, Wills Group is entitled to a judgment directing Debtors to close and transfer title to Wills Group with good and marketable title, and otherwise in accordance with the 8A Purchase Agreement and the 49B Purchase Agreement.

## SIXTH CLAIM
### (Conversion)

93. Wills Group repeats and realleges each and every allegation contained in paragraphs 1 through 92 as if more fully set forth herein.

94. Debtors and/or iStar now are in possession of specific money that Wills Group paid for the purchase of the Units.

95. Such possession by Debtors and/or iStar is substantially interfering with Wills Group's right to enjoy the benefits of either that money or the Units.

96. As a direct and proximate result of Debtors and/or iStar's conversion, Wills Group has been damaged in an amount to be proven at trial, but in no event less than $11,200,000.00, plus penalties and pre-petition interest.

97. The foregoing actions of Debtors and/or iStar were wanton, willful and malicious and, therefore, Wills Group is entitled to an award of punitive damages against iStar in an amount at least equal to twice the compensatory damages.

## SEVENTH CLAIM
### (Permanent Injunction)

98. Wills Group repeats and realleges each and every allegation contained in paragraphs 1 through 97 as if more fully set forth herein.

99. Each of Units 8A and 49B is unique, and Wills Group would suffer irreparable damage if either Unit was sold, disposed, conveyed, transferred or encumbered in any way.

100. Nonetheless, Debtors and/or iStar, upon information and belief, intend to sell,

dispose, convey, transfer and/or encumber the Units in connection with the bankruptcy case.

101.	Wills Group has no adequate remedy at law.

102.	The balance of equities favors Wills Group.

103.	The public interest would not be disserved by a permanent injunction.

104.	By reason of the foregoing, Wills Group is entitled to a judgment permanently prohibiting and restraining Debtors and iStar, directly or through their agents and representatives, from:

a.	agreeing to or selling, disposing, conveying, transferring or otherwise encumbering the Units, other than the conveyance of title to Wills Group; and

b.	taking any actions that could impair or damage Wills Group's rights and interest in the Units.

**WHEREFORE**, Wills Group respectfully requests that judgment be entered as follows:

a)	on Wills Group's First Claim, a judicial declaration (i) that Wills Group is the owner of Unit 8A; (ii) that Unit 8A is not property of the Debtors' estates; and (iii) all other entities or individuals are barred from claiming any interest in Unit 8A;

b)	on Wills Group's Second Claim, a judicial declaration (i) that Wills Group is the owner of Unit 49B; (ii) that Unit 49B is not property of the Debtors' estates; and (iii) all other entities or individuals are barred from claiming any interest in Unit 49B;

c)	on Wills Group's Third Claim, a judicial determination that the Units are held in constructive trust for the sole and exclusive benefit of Wills Group;

d)	on Wills Group's Fourth Claim, a judicial determination that the Units are held in constructive trust for the sole and exclusive benefit of Wills Group, or that iStar must return the $3,650,000 which it received for the Unit 49B, plus interest;

e)	on Wills Group's Fifth Claim, directing Debtors to close and transfer title to Wills Group with good and marketable title, and otherwise in accordance with the 8A Purchase Agreement and the 49B Purchase Agreement;

f) on Wills Group's Sixth Claim, awarding damages against Debtors and iStar in the amount of $11,200,000, plus penalties, pre-petition interest and punitive damages against iStar; and

g) on Wills Group's Seventh Claim, prohibiting and restraining Debtors and iStar, directly, or through their agents and representatives, from (i) agreeing to or selling, disposing, conveying, transferring or otherwise encumbering the Units, other than the conveyance of title to Units to Wills Group; and (ii) taking any actions that could impair or damage Wills Group's interest in the Units;

h) together with such other and further relief as this Court deems just and proper.

Dated: March 31, 2011

        PRYOR CASHMAN LLP
        Todd E. Soloway
        Michael G. Goldberg
        Bryan T. Mohler
        7 Times Square
        New York, New York 10036-6569
        (212) 421-4100

        - and -

        /s/ David L. Finger
        David L. Finger (DE Bar ID #2556)
        Finger & Slanina, LLC
        One Commerce Center
        1201 N. Orange Street, 7th Floor
        Wilmington, Delaware 19801-1186
        (302) 573-2525

        *Attorneys for The Wills Group*
        *Family Limited Partnership*