# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FKF MADISON GROUP OWNER LLC, *et al.*[1] | ) Case No. 10-11867 (KG) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Hearing Date: July 14, 2011 at 2:00 p.m. (ET)** |
| | ) **Objection Deadline: June 14, 2011 at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) FURTHER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby move (the "Motion") the Court, pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an order: (i) further extending the period during which the Debtors have the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") by approximately four months, through and including September 30, 2011; and (ii) extending the period during which the Debtors have the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods"), by approximately four months, through and including November 30, 2011. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors, followed by the last four digits of their tax identification numbers, are as follows: FKF Madison Group Owner LLC (6399); JMJS 23rd Street Realty Owner LLC (6651); Madison Park Group Owner LLC (3701); and Slazer Enterprises Owner LLC (4339). The Debtors' mailing address is P.O. Box 49249, Charlotte, NC, 28277.

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory basis for the relief requested herein is section 1121(d) of the Bankruptcy Code.

## BACKGROUND

3. The Debtors are owners as tenants in common of a condominium tower located at 23 East 22nd Street in New York City (the "Project"). Slazer Enterprises, LLC ("Slazer"), a non-Debtor entity, is the sole member of Debtor Slazer Enterprises Owner LLC and serves as the manager for all of the Debtors. Slazer, in turn, is controlled by Green Bridge Capital S.A. (35%), Special Situation S.A. (by proxy for Marc Jacobs) (32.5%), and Ira Shapiro (32.5%).

4. On June 8, 2010 (the "Involuntary Petition Date"), involuntary chapter 7 petitions were filed in this Court against each of the Debtors by Stephen Kraus, Mitchell Kraus, Barbara Kraus, and Kraus Hi-Tech Automation, Inc., thereby commencing the Debtors' involuntary chapter 7 cases (the "Chapter 7 Cases").

5. On November 19, 2010 (the "Conversion Date"), this Court entered Orders for relief in the Chapter 7 Cases and entered Orders converting the Chapter 7 Cases to cases under chapter 11 of the Bankruptcy Code [D.I. 119; Case No. 10-11868, D.I. 111; Case No. 10-11869, D.I. 112; and Case No. 10-11870, D.I. 117].

6. The Debtors are operating their business as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed

in these cases. On January 20, 2011, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") [D.I. 211].

7. On December 15, 2010, Green Bridge Capital S.A. ("Green Bridge") and Special Situation S.A. ("Special Situation" and together with Green Bridge, the "Controlling Members") instituted Adversary Proceeding No. 10-56158 (KG) (the "Adversary Proceeding") in this Court by filing a complaint (the "Complaint"). The Complaint sought declaratory and injunctive relief providing that Ira Shapiro ("Shapiro") did not have corporate authority to act on Slazer's behalf, as manager or member of the Debtors.

8. On January 31, 2011, after a lengthy evidentiary hearing in the Adversary Proceeding, the Court issued the Control Order restraining Shapiro from taking further action in violation of Slazer's and the Debtors' governing instruments [Adv. D.I. 67].

9. Following, entry of Control Order on January 31, 2011, the Controlling Members and Shapiro undertook significant negotiations regarding Slazer's prosecution of the Debtors' chapter 11 cases and quickly reached agreement as to how to move forward together in the stewardship of the Debtors in these chapter 11 cases, including, without limitation, working to develop and propose a plan of reorganization.

10. Only after entry of the Control Order was the locus of control within Slazer as it relates to the Debtors' cases established. At that time, approximately six weeks remained in the Debtors' Exclusive Filing Period pursuant to Bankruptcy Code section 1121(c). As a result and to allow the Debtors a true opportunity to benefit from the exclusive periods contemplated by the Bankruptcy Code, the Debtors filed a motion to extend the Debtors' Exclusive Filing Period through and including May 31, 2011 and the Debtors' Exclusive

Solicitation Period through and including July 30, 2011 (incorporated herein by reference, the "First Extension Motion") [D.I. 374].

11. The First Extension Motion sought to provide the Debtors with Exclusive Periods of 120 days and 180 days provided for under Bankruptcy Code section 1121(c) beginning from the entry of the Control Order. The First Extension Motion was supported by the Debtors' postpetition lenders, and although the Committee submitted a response [D.I. 403], no formal objections were filed. On April 8, 2011, this Court entered an Order granting the First Extension Motion, thereby extending the Debtors' Exclusive Periods as described above (the "Extension Order") [D.I. 407].

12. Since the filing of the First Extension Motion, the Debtors have continued to pursue their primary objective in these cases of maximizing the value of their estates for the benefit of their creditors and other stakeholders. To that end, the Debtors' professionals together with the Controlling Members and Shapiro have worked to:

> (i) maintain the Debtors compliance with the reporting requirements of the Bankruptcy Code and the Office the United States Trustee;
>
> (ii) prepare and file amendments to the Debtors' schedules of assets and liabilities and statements of financial affairs;
>
> (iii) negotiate with the Debtors' creditors and key service providers, including the Project's construction manager and condominium association management company, on numerous issues related to these cases and the Project;
>
> (iv) update the Debtors' books and records in anticipation of preparing financial statements and federal taxes for 2008, 2009, and 2010;
>
> (v) obtain Court approval of the Debtors' retention of an accountant to prepare the Debtors' federal taxes for 2008, 2009, and 2010;
>
> (vi) obtain renewal of various permits related to the Property to remain in compliance with local building codes and regulations;

(vii) complete the transition of the Debtors' property and management of the Project from Jonathan Newman, the receiver for the Project appointed by the New York Supreme Court, to the Debtors' officer;

(viii) file appeals related to the Debtors' real property taxes;

(ix) review the status of the Debtors' application for New York City real property tax abatement benefits;

(x) begin reviewing claims filed against the Debtors;

(xi) analyze the validity and perfection of the liens and claims of the Debtors' secured lender and share the results of such analysis with counsel to the Committee;

(xii) communicate with numerous potential plan proponents regarding the Project, facilitate site visits and diligence for interested parties, and negotiate confidentiality agreements with potential plan proponents;

(xiii) negotiate with multiple plan proponents regarding a plan that could be supported by the Debtors' senior lender and that will provide a meaningful commitment for distributions to unsecured creditors;

(xiv) hold an auction to determine which plan proponent's proposal contained the highest or otherwise best value for the Debtors' creditors;

(xv) negotiate an escrow agreement related to the deposit of the successful bidder at the auction;

(xvi) negotiate plan documents with the successful bidder at the auction, the Debtors' secured lender, and the Committee;

(xvii) review and analyze complaints filed in adversary proceedings initiated against the Debtors and begin negotiations with the plaintiffs in such adversary proceedings; and

(xviii) prepare and provide monthly financial reporting to the Debtors' postpetition lenders in compliance with this Court's Orders.

13. As demonstrated above, the Debtors have used the Exclusive Periods granted by the Extension Order to address a number of key issues. Perhaps most importantly, the Debtors used the extended Exclusive Periods to meet with, provide diligence materials to, and coordinate site visits for numerous entities that expressed interest in sponsoring a chapter 11 plan

for the Debtors. In addition, the Debtors facilitated meetings between potential plan sponsors and several of the Debtors' significant creditors potential plan sponsors. From this process, the Debtors determined that a more formal course of action was necessary to determine the highest or otherwise best plan proponent offer. To that end, in the first two weeks of April of 2011, the Debtors contacted each party that had indicated any level of interest in sponsoring a plan to decipher if such parties were interested in submitting a proposal, as part of an auction process, within the range of values expressed by other potential plan proponents. Only two potential plan sponsors indicated an interest in participating in such a process.

14. On April 13, 2011, the Debtors held an auction at the law offices of Katten Muchin Rosenman LLP in New York, New York. Counsel for the Committee and the Debtors' secured lender, as well as the two remaining potential plan proponents and their counsel were present at the auction. The Debtors opened the auction with a bid from one of the plan proponents that the Debtors believed to represent the highest and best offer. Although another potential plan proponent and its counsel were present at the auction, they declined to submit a higher or better bid. As a result, the opening bid was selected as the winning bid. Following the auction, the successful bidder caused $10 million to be deposited into an escrow account.

15. Since the auction, the Debtors have worked with the successful bidder and the Debtors' prepetition secured lender to finalize a chapter 11 plan for the Debtors. During this process, the parties have exchanged numerous drafts of a plan and related documents and have spent many hours negotiating such documents. In addition, the Debtors have circulated a draft of the plan to the Committee for review and comment. Substantial negotiations regarding a plan have taken place over the past six weeks and the parties have made significant progress in narrowing the open issues. The Debtors anticipate receiving Committee comments to the draft

plan and wrapping up negotiations on the remaining open issues in the next week or two. Thereafter, the Debtors intend to file a plan and use the additional time with respect to this requested exclusivity extension to, inter alia, (1) obtain the Court's approval of a disclosure statement, (2) solicit votes on a plan and (3) confirm a plan.

## RELIEF REQUESTED

16. The current Exclusive Periods will terminate on June 1, 2011 and July 31, 2011, respectively. By this Motion, the Debtors seek the entry of an order pursuant to section 1121(d) of the Bankruptcy Code extending (a) the Exclusive Filing Period through and including September 30, 2011, and (b) the Exclusive Solicitation Period through and including November 30, 2011, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.

## BASIS FOR RELIEF REQUESTED

17. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a plan. Section 1121(c)(3) of the Bankruptcy Code provides that if the debtor proposes and files a plan within the initial 120-day exclusive period, the debtor then has until 180 days after the commencement of the chapter 11 case to solicit and obtain acceptances of such plan. Pursuant to section 1121(d)(1) of the Bankruptcy Code, "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1). Such extensions are capped, however, by section 1121(d)(2) of the Bankruptcy Code, which limits any extension of the

exclusive filing period to eighteen (18) months after the order for relief and any extension of the solicitation period to twenty (20) months after the order for relief.

18. Although the term "cause" is not defined by the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. No. 595, 95th Cong., 1st Sess. 232 (1977); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987); *In re Public Serv. Co. of N.H.*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent . . . [is] to promote maximum flexibility."). To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and non-financial information concerning the ramifications of any proposed plan for disclosure to creditors. *See, e.g., McLean*, 87 B.R. at 833-34; *In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

19. The decision to extend a debtor's exclusive periods is committed to the bankruptcy court's sound discretion, guided by the facts and circumstances of each case. *See, e.g., First Am. Bank of N.Y. v. S.W. Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986). Courts consider a variety of factors in determining whether "cause" exists to warrant an extension of the exclusive periods, including: (a) the size and complexity of the case, (b) the debtor's progress in resolving issues facing the estate and (c) whether an extension of time will harm the debtor's creditors. *See, e.g., In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409-10 (E.D.N.Y. 1989 (listing above-referenced factors); *see also In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (citing *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996)).

20. The existence of good faith progress and the need for additional time to continue such progress is a particularly significant factor in establishing cause for extending the exclusive periods under section 1121(d) of the Bankruptcy Code. *See Express One Int'l, Inc.*, 194 B.R. at 101; *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986). For the reasons set forth below, "cause" exists to extend the Exclusive Periods in these chapter 11 cases.

21. From the Conversion Date in November of 2010 until the entry of the Control Order on January 31, 2011, there was significant disagreement and uncertainty as to whether Shapiro or the Controlling Members had authority to direct Slazer as manager or member of the Debtors. In the period between the Conversion Date and the entry of the Control Order, the focus of these cases was on resolving the control issue. Only after the Court's resolution of this issue were the Controlling Members able to direct Slazer's administration of the Debtors' bankruptcy cases toward the successful negotiation and prosecution of a chapter 11 plan.

22. In the relatively short time since the entry of the Control Order, the Debtors and their professionals have focused on, <u>inter alia</u>, the numerous vital issues detailed above. Significantly, the Debtors have concentrated on canvassing the pool of interested plan sponsors and determining which entity's proposal provides the highest and best value for the Debtors' creditors. As a result of such efforts, the Debtors will soon be filing a disclosure statement and plan. In light of this substantial progress, the Debtors submit that their request for an extension of the Exclusive Periods is justified.

23. The extension of the Exclusive Periods will also give the Debtors additional time to collect and review information regarding the claims filed against them, which information will be critical in confirming a plan. Although the initial deadline for filing proofs

of claim has passed, the Debtors recently noticed a supplemental bar date and expect that additional proofs of claim may be filed. The Debtors intend to use the extended Exclusive Periods to continue a claims administration process and to seek confirmation of a plan, which the Debtors believe provides, among other things, the optimal recovery for the Debtors' creditors. As such, the Debtors submit that creditors will not be prejudiced by an extension of the Exclusive Periods.

24. Moreover, the Debtors' requested extension of the Exclusive Periods does not exceed the eighteen (18) month limitation for the exclusive period to file a plan or the twenty (20) month limitation for the exclusive period to solicit acceptances of a plan. Rather, the Debtors' requested extension is substantially less than these limitations. Based upon the foregoing, the Debtors submit that cause exists to extend the Exclusive Filing Period through and including September 30, 2011, and the Exclusive Solicitation Period through and including November 30, 2011.

25. Finally, the relief requested herein is generally supported by the Debtors' postpetition lenders and the Committee; although, at the time of this filing, none has agreed definitively to the length of extension sought hereby.

## NOTICE

26. Notice of this Motion has been provided to (a) the U.S. Trustee; (b) counsel for the Committee; (c) counsel for the Debtors' post-petition lenders; and (d) those parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

27. No previous motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request the entry of an Order of the Court, in substantially the form attached hereto as **Exhibit A**, authorizing the extension of the Exclusive Periods and granting such other and further relief as the Court deems just and proper.

Dated: May 31, 2011
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (Bar No. 3376)
Erin R. Fay (Bar No. 5268)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel to Debtors and Debtors in Possession*

4283820.2