# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>FKF MADISON GROUP OWNER LLC, *et al*,[1]<br>Debtors. | Chapter 11<br><br>Case No. 10-11867 (KG)<br>(Jointly Administered) |

## DEBTORS' JOINT CONSOLIDATED PLAN OF REORGANIZATION FOR
## FKF MADISON GROUP OWNER, LLC AND ITS AFFILIATED DEBTORS

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Derek C. Abbott (No. 3376)
Erin Fay (No. 5268)
1201 North Market Street, 18th Floor
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel to FKF Madison Group Owner, LLC,*
*JMJS 23rd Street Realty Owner, LLC,*
*Madison Park Group Owner, LLC and*
*Slazer Enterprises Owner, LLC*

**COHEN TAUBER SPIEVACK WAGNER, P.C.**
Joseph M. Vann, Esq.
Robert A. Boghosian, Esq.
Andrew L. Buck, Esq.
Suite 2400
New York, New York 10170
Telephone: (212) 586-5800
Facsimile: (212) 586-5095

- and -

**SULLIVAN HAZELTINE ALLINSON LLC**
Elihu E. Allinson, III (No. 3476)
901 North Market Street, Suite 1300
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-8195

*Co- Counsel to 23 East 22nd Street (NY), LLC,*
*as Plan Funder*

**A DISCLOSURE STATEMENT IN RESPECT OF THIS PLAN
HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT.
THE FILING AND DISSEMINATION OF THIS PLAN SHOULD NOT BE
CONSTRUED AS A SOLICITATION OF ACCEPTANCES OF THE PLAN. ACCEPTANCES
OF THE PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS
BEEN APPROVED BY THE BANKRUPTCY COURT PURSUANT TO SECTION 1125 OF THE
BANKRUPTCY CODE. THE DEBTORS MAY SUPPLEMENT OR AMEND THIS PLAN OR
ANY EXHIBITS ATTACHED HERETO AT ANY TIME PRIOR TO THE HEARING TO APPROVE
THE DISCLOSURE STATEMENT.**

---

[1] The Debtors in these cases, along with the last four digits of their respective EINs, are: FKF Madison Group Owner LLC (Case No. 10-11867) (3699); JMJS 23rd Street Realty Owner LLC (Case No. 10-11868) (6651); Madison Park Group Owner LLC (Case No. 10-11869) (3701); and Slazer Enterprises Owner LLC (Case No. 10-11870) (4339). The Debtors maintain a mailing address at P.O. Box 49249, Charlotte, NC 28277.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................... 1

ARTICLE I  DEFINED TERMS AND RULES OF INTERPRETATION .......................................... 1

    A.    Defined Terms. ...................................................................................................................... 1

    B.    Rules of Interpretation. ...................................................................................................... 14

    C.    Exhibits. ............................................................................................................................. 14

ARTICLE II  SUBSTANTIVE CONSOLIDATION; CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ................................................................................................. 15

    2.1    Summary. ........................................................................................................................ 16

    2.2    Treatment of Unclassified Claims. ................................................................................ 16

    2.3    Treatment of Classified Claims and Equity Interests. ................................................... 17

    2.4    Special Provision Regarding Claims. ............................................................................ 18

ARTICLE III  ACCEPTANCE OR REJECTION OF THE PLAN ............................................... 18

    3.1    Acceptance by an Impaired Class. ................................................................................ 18

    3.2    Presumed Acceptances by Unimpaired Classes. .......................................................... 18

    3.3    Presumed Rejection by Certain Impaired Classes. ....................................................... 19

    3.4    Impaired Classes of Claims Entitled to Vote on the Plan. ............................................ 19

ARTICLE IV  MEANS FOR IMPLEMENTATION OF THE PLAN ........................................... 19

    4.1    Transfer of Assets. ........................................................................................................ 19

    4.2    Provision for Plan Payments. ........................................................................................ 20

    4.3    Post-Effective Date, Ownership, Development and Sale of the Property. ..................... 20

    4.4    Plan Administrator and Liquidating Debtors. ............................................................... 21

    4.5    Standing of Reorganized Debtor. ................................................................................. 23

    4.6    Cancellation of Notes, Instruments, Debentures and Equity Interests; Assignment of Mortgages. .............. 24

    4.7    Cancellation of Liens. ................................................................................................... 24

    4.8    Cram-Down. .................................................................................................................. 25

    4.9    Dissolution of the Committee. ...................................................................................... 25

ARTICLE V  PROVISIONS GOVERNING DISTRIBUTIONS ................................................... 26

    5.1    Distributions by Disbursing Agent. .............................................................................. 26

    5.2    Interest on Claims. ........................................................................................................ 26

    5.3    Delivery of Distributions and Undeliverable or Unclaimed Distributions. ................. 26

    5.4    Record Date for Distributions. ...................................................................................... 27

    5.5    Allocation of Plan Distributions Between Principal and Interest. ................................. 27

    5.6    Means of Cash Payment. ............................................................................................... 28

    5.7    Withholding and Reporting Requirements. ................................................................... 28

    5.8    Setoffs and Recoupment. .............................................................................................. 28

5.9    Compromises and Settlements. ................................................................. 29

5.10  De Minimis Distributions. ..................................................................... 29

5.11  Claims Administration Responsibility. .................................................. 29

5.12  Determination of Allowed Claims ......................................................... 30

5.13  No Distributions Pending Allowance. .................................................... 30

5.14  Reserves. ............................................................................................... 30

5.15  Reports. ................................................................................................. 31

5.16  Late Filed Claims ................................................................................. 31

ARTICLE VI  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASE ............ 31

6.1    Assumption Generally. .......................................................................... 31

6.2    Approval of Assumption. ....................................................................... 32

6.3    Objections to Assumption. ..................................................................... 32

6.4    Payments Related to Assumption. .......................................................... 33

6.5    Rejection Generally. .............................................................................. 33

6.6    Approval of Rejection. ........................................................................... 34

6.7    Objections to Rejection. ........................................................................ 34

6.8    Bar Date for Bankruptcy Code § 365(n) Election. ................................. 35

ARTICLE VII  CONFIRMATION AND CONSUMMATION OF THE PLAN ....................... 35

7.1    Conditions to Confirmation. .................................................................. 35

7.2    Conditions to Effective Date. ................................................................. 35

7.3    Waiver of Conditions. ........................................................................... 36

7.4    Effect of Non-Occurrence of Effective Date. ......................................... 36

ARTICLE VIII  EFFECT OF PLAN CONFIRMATION ..................................................... 37

8.1    Binding Effect. ...................................................................................... 37

8.2    Exculpation, Releases and Discharge ..................................................... 37

8.3    Preservation of Litigation Claims. ......................................................... 39

8.4    Injunction. ............................................................................................. 40

8.5    Term of Bankruptcy Injunction or Stays. ............................................... 40

8.6    Termination of Subordination Rights and Settlement of Related Claims ... 40

ARTICLE IX  RETENTION OF JURISDICTION ............................................................. 41

9.1    Retention of Jurisdiction. ...................................................................... 41

ARTICLE X MISCELLANEOUS PROVISIONS ............................................................. 43

10.1  Post-Confirmation Date Retention of Professionals. .............................. 43

10.2  Bar Date for Certain Administrative Claims. .......................................... 43

10.3  Effectuating Documents and Further Transactions. ................................ 44

10.4  Action by Debtors Authorized. .............................................................. 44

10.5  Exemption from Transfer Taxes. ............................................................ 44

10.6  Payment of Statutory Fees. .................................................................... 45

{00113754.DOC; 2}

10.7    Amendment or Modification of this Plan. .................................................................................................. 45

10.8    Severability of Plan Provisions. ................................................................................................................. 45

10.9    Successors and Assigns. ............................................................................................................................. 45

10.10   Revocation, Withdrawal or Non-Consummation. .................................................................................... 45

10.11   Post Effective Date Notice. ....................................................................................................................... 46

10.12   Notice. ......................................................................................................................................................... 46

10.13   Governing Law. ........................................................................................................................................... 48

10.14   Tax Reporting and Compliance. ................................................................................................................. 48

10.15   Exhibits. ...................................................................................................................................................... 48

10.16   Filing of Additional Documents. ............................................................................................................... 49

10.17   No Waiver. .................................................................................................................................................. 49

10.18   Limitations on Effect of Confirmation. .................................................................................................... 49

10.19   Securities Exemption. ................................................................................................................................ 49

10.20   Controlling Documents. ............................................................................................................................. 49

10.21   No Admissions. .......................................................................................................................................... 49

10.22   Reservation of Rights. ............................................................................................................................... 50

{00113754.DOC; 2}

# INTRODUCTION

The Debtors in the above-referenced Chapter 11 Cases and the Plan Funder hereby propose the following Plan for the reorganization of the Debtors and the resolution of all Claims against, and Equity Interests in, each of the Debtors. Capitalized terms used but not defined in this paragraph shall have the respective definitions assigned to them in Article I of this Plan. The classification and treatment of Claims against and Equity Interests in the Debtors is set forth in Article II of this Plan. The Debtors and the Plan Funder are the Proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtors' history, business, properties and operations, projections for those operations, risk factors, a summary and analysis of this Plan, and certain related matters. Subject to certain restrictions and requirements set forth herein, in Section 1127 of the Bankruptcy Code and in Bankruptcy Rule 3019, the Proponents reserve the right to alter, amend, modify, supplement, revoke or withdraw the Plan prior to its substantial consummation in accordance with the terms of this Plan, the Confirmation Order, and/or the Bankruptcy Code.

# ARTICLE I
# DEFINED TERMS AND RULES OF INTERPRETATION

A.   Defined Terms.

As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1   Administrative Claim means a claim or request for costs and expenses of administration of the Chapter 11 Cases arising on or after the Relief Date and prior to the Effective Date under Sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors from and after the Relief Date, including, without limitation, the iStar Administrative Advances Claims, the iStar DIP Funding Claim and the HFZ DIP Funding Claim, and Claims of governmental units for taxes (including tax audits) related to tax years commencing after the Relief Date, but excluding Claims related to tax periods, or portions thereof, ending on or before the Relief Date or later incurred or assumed prior to the Relief Date, or subject to a lien dating prior to the Relief Date; (b) all Professional Fee Claims; (c) any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases; (d) any payment to be made under this Plan, or otherwise, to cure a default under an executory contract or unexpired lease that has been or will be assumed by the Debtors under this Plan, or otherwise, (except to the extent that "adequate assurance" of such cure is provided); and (e) any fees and charges assessed against the Estates under Section 1930, Chapter 123, of Title 28 of the United States Code.

1.2   Allowed means, with respect to a Claim or Equity Interest in the Chapter 11 Cases, or any portion of such Claim or Equity Interest in any Class or category specified herein,

a Claim or Equity Interests that is not a Disallowed Claim or Disallowed Equity Interest and: (a) is listed in the Schedules in an undisputed, fixed, liquidated amount and is not disputed, contingent or unliquidated and with respect to which no contrary or superseding Proof of Claim or Claim Objection has been Filed and such Schedule in respect of such portion of such Claim or Equity Interest has not been amended prior to the Claim Objection Deadline; (b) is evidenced by a Proof of Claim timely Filed on or before the applicable Claims Bar Date, or deemed timely Filed by order of the Bankruptcy Court, but to the extent, and only to the extent, listed in the Schedules in an undisputed, fixed, liquidated amount and not listed in the Schedules as disputed, contingent or unliquidated, and as to which either (i) no Claim Objection has been timely Filed on or before the Claim Objection Deadline and the time to File a Claim Objection has expired; or (ii) was the subject of a Claim Objection that has been settled, waived, withdrawn or denied pursuant to a Final Order (and such Claim or Equity Interest will be Allowed as provided by such Final Order); (c) is expressly allowed (i) pursuant to a Final Order, (ii) pursuant to an agreement between the Holder of such Claim or Equity Interest and the Proponents (prior to the Effective Date) or the Reorganized Debtor (after the Effective Date), or (iii) pursuant to the terms of this Plan; (d) is a Professional Fee Claim for which allowance of fees and reimbursement of expenses has been approved by order of the Bankruptcy Court; (e) is the subject of a stipulation of amount and nature of the Claim or Equity Interest executed by the Debtors and the holder of the Claim or Equity Interest and approved by order of the Bankruptcy Court or (f) in respect of a Claim in Class 5, the Plan Administrator has reasonably determined such Claim (or portion thereof) to be valid and payable pursuant to Section 5.13 of this Plan.

1.3    Allowed Claim means a Claim in a particular Class or of a particular type that is Allowed. For example, an Allowed Administrative Claim is an Administrative Claim that is also an Allowed Claim.

1.4    Avoidance Actions means causes of action arising under Sections 329, 510, 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, or under similar or related state or federal statutes or common law, including fraudulent transfer laws, in each case whether or not litigation to prosecute such causes of action is commenced prior to the Effective Date.

1.5    Ballot means the ballot form for accepting or rejecting this Plan, in the form approved by the Bankruptcy Court and distributed with the Disclosure Statement to the Holders of Claims in the Chapter 11 Cases that are Impaired under the Plan and entitled to vote to accept or reject the Plan.

1.6    Bankruptcy Code means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with any amendments and modifications thereto subsequently made applicable to the Chapter 11 Cases.

1.7    Bankruptcy Court means the United States Bankruptcy Court for the District of Delaware.

1.8    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure promulgated under Section 2075 of Title 28 of the United States Code and any local rules of the

Bankruptcy Court, as in effect on the Petition Date, together with any amendments and modifications thereto subsequently made applicable to the Chapter 11 Cases.

1.9 <u>Borrowers</u> mean the Debtors, as borrowers under the Loan Documents.

1.10 <u>Business Day</u> means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.11 <u>Causes of Action</u> means, collectively, (i) any and all causes of action that could be asserted either by the Debtors or the Estates, including, without limitation, all Avoidance Actions, suits, accounts, promises, controversies, rights to legal remedies, rights to equitable remedies, and rights to payment and (ii) any and all Claims held by the Debtors, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable, directly or derivatively, in law, equity or otherwise.

1.12 <u>Chapter 7 Cases</u> means the cases commenced upon the filing of the Involuntary Petitions.

1.13 <u>Chapter 11 Cases</u> means the Chapter 7 Cases immediately following entry of the Conversion Order and which are being jointly administered under case no. 10-11867 (KG).

1.14 <u>Claim</u> has the meaning ascribed to such term under the Bankruptcy Code, and shall also include Administrative Claims.

1.15 <u>Claims Bar Date</u> means, as applicable, either (i) April 11, 2011, the final date for all Entities other than governmental units asserting Claims (including, without limitation, Administrative Claims) arising on or prior to March 2, 2011 against any of the Debtors to file Proofs of Claim on account of such Claims, (ii) May 18, 2011, the final date for all governmental units asserting Claims against any of the Debtors to file Proofs of Claim on account of such Claims, or (iii) such later date prior to the substantial consummation of the Plan as may be fixed in accordance with (a) a Final Order of the Bankruptcy Court, (b) this Plan or (c) in the case of Unclassified Claims and Claims in Classes 1 through 4, by written agreement of the Reorganized Debtor, or, in the case of Claims in Class 5, the Plan Administrator on behalf of the Liquidating Debtors.

1.16 <u>Claim Objection Deadline</u> means the last day for filing objections to Claims (other than with respect to Administrative Claims and Professional Fee Claims), which day shall be three hundred sixty-five (365) days after the Effective Date. The filing of a motion to extend the Claim Objection Deadline prior to the expiration of the Claim Objection Deadline shall automatically extend the Claim Objection Deadline until the final determination of such motion by the Bankruptcy Court. No such extension of the Claim Objection Deadline shall constitute a modification or amendment of this Plan.

1.17 <u>Claim Objection</u> means any objection, application, motion, complaint, answer or other Filing seeking to disallow, limit, subordinate, estimate and/or determine the validity extent or priority of and/or avoid a Claim or Equity Interest or any Lien in respect thereof.

{00113754.DOC; 2}

1.18     Class means each category of Holders of Claims or Equity Interests established under this Plan pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. Each Class or sub-Class required or created under the Plan shall be deemed a separate and distinct Class for all purposes, including, without limitation, in determining which Classes have voted to accept the Plan.

1.19     Committee means the Official Committee of Creditors Holding Unsecured Claims appointed by the United States Trustee in connection with the Chapter 11 Cases.

1.20     Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.21     Confirmation Order means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.22     Conversion Order means collectively the Orders of the Bankruptcy Court entered on November 19, 2010 in each of the Chapter 7 Cases converting the Chapter 7 Cases to cases under chapter 11 of the Bankruptcy Code [D.I. 118].[1]

1.23     Debtors means collectively the following entities in the Chapter 11 Cases: FKF Madison Group Owner, LLC (Case No. 10-11867 (KG)) (formerly captioned as "FKF Madison Park Group Owner, LLC"), JMJS 23rd Street Realty Owner, LLC (Case No. 10-11868 (KG)), Madison Park Group Owner, LLC (Case No. 10-11869 (KG)), and Slazer Enterprises Owner, LLC (Case No. 10-11870 (KG)).

1.24     Deed means documents of title, contract of sale or any other document with respect to the Property purporting to transfer an ownership interest in any portion of the Property or any Unit thereof to any Person or Entity or purporting to secure any obligation of any Entity, whether or not filed in the real property records, and any assignment thereof.

1.25     Deed Holder Claim means any Claim for damages or otherwise, arising from, on account of or in connection with, a Deed transferring or purporting to transfer title to a portion of the Property or any Unit thereof which Deed is not subject to a partial release of lien executed by iStar.

1.26     DIP Financing means the debtor in possession financing provided to the Debtors by HFZ and iStar and approved pursuant to the DIP Financing Orders.

1.27     DIP Financing Orders means (i) the Interim Order Pursuant to 11 U.S.C §§ 105, 361, 362, 364(c) and Fed. R. Bankr. P. 2002, 4001 and 9014 Authorizing Debtors to Obtain Post-Petition Financing, entered on March 3, 2011 [D.I. 311] and (ii) the Final Order Pursuant to 11 U.S.C §§ 105, 361, 362, 364(c) and Fed. R. Bankr. P. 2002, 4001 and 9014 Authorizing Debtors to Obtain Post-Petition Financing, entered on March 18, 2011 [D.I. 369].

---

[1]     Unless otherwise noted, all docket references used in this Plan and its accompanying Disclosure Statement shall refer to the docket of the above captioned case, Case No. 10-11867 (KG).

1.28    Disallowed Claim means any Claim, including any portion thereof, that has been disallowed, denied, dismissed, expunged, or overruled pursuant to a Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

1.29    Disbursing Agent means (a) in connection with Distributions to Holders of Allowed Claims in Class 5 (General Unsecured Claims), the Plan Administrator and (b) in connection with Distributions to Holders of Allowed Claims in Classes 1 through 4 and Allowed Unclassified Claims, the Entity designated as the Disbursing Agent by the Plan Funder to act as Disbursing Agent pursuant to this Plan.

1.30    Disclosure Statement means the disclosure statement relating to this Plan, including, without limitation, all Exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.31    Disputed Claim means any Claim, including any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim.

1.32    Distribution means any distribution or payment pursuant to the Plan to a Holder of an Allowed Claim.

1.33    Distribution Date means the Initial Distribution Date and thereafter such date or dates as either: (i) the Reorganized Debtor and Plan Administrator reasonably determines that there are funds available to the Estates to make Distributions to holders of Allowed Claims in Class 5 as provided for in the Plan; or (ii) a Disputed Claim has become an Allowed Claim and funds are available to make a Distribution on such Allowed Claim.

1.34    Distribution Record Date means the Confirmation Date.

1.35    Effective Date means the date specified as the "Effective Date" in the notice of the occurrence of the Effective Date filed with the Bankruptcy Court in accordance with 7.2(g) of the Plan.

1.36    Entity means any Person, estate, trust, governmental unit and United States Trustee.

1.37    Equity Interest(s) means (a) an equity interest in the Debtors or (b) any Claim against any of the Debtors (i) arising from the rescission of a purchase or sale of an equity interest in the Debtors or an Affiliate of any of the Debtors, (ii) for damages arising from the purchase or sale of any such equity interest, (iii) for violations of the securities laws (unless there has been a judicial determination by Final Order that any such Claim is not subject to subordination under section 510(b) of the Bankruptcy Code) in connection with any such equity interests, (iv) any similar Claims otherwise subject to subordination under section 510(b) of the Bankruptcy Code, (v) for attorneys' fees, other charges or costs incurred on account of any of the foregoing Claims, or (vi) for reimbursement, contribution or indemnification allowed under section 502 of the Bankruptcy Code on account of any of the foregoing Claims.

1.38    Escrow Agreement means the Escrow Agreement, dated as of June 15, 2011, by and among 23 East 22nd Street (NY), LLC, the Debtors, and First American Title Insurance Company, as escrow agent.

1.39    Escrow Deposit means the $10,000,000 deposit (or, if the Plan Funder exercises its right to block the Opt-out Election by the Debtors in accordance with Section 4.6 of the Escrow Agreement and Section 7.4.2 of the Plan, the $25,000,000 deposit) held in escrow pursuant to the Escrow Agreement.

1.40    Estate(s) means the estates created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Debtors' Chapter 11 Cases.

1.41    Exculpated Parties means, collectively (i) HFZ, Turnaround Advisors LLC, John Fioretti, the Plan Funder and their respective current and former principals, members, partners, officers, managers, directors, agents, affiliates, representatives, counsel and financial advisors; (ii) the Committee (and its members solely for any acts on behalf of, and after the formation of, the Committee); (iii) all professionals retained in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court; (iv) the Debtors; and (v) solely with respect to actions taken or occurring in connection with the Chapter 11 Cases from and after the Relief Date, Slazer Enterprises, LLC, Green Bridge Capital S.A. and Special Situation, S.A., and each of their respective current and former principals, directors, partners, officers, members, managers, agents, affiliates, employees, representatives, counsel and financial advisors.

1.42    Exhibit means an exhibit annexed either to this Plan or the Disclosure Statement.

1.43    Expense Reimbursement means the amount necessary to reimburse the Plan Funder for its fees and expenses incurred in connection with the transactions contemplated in this Plan, which amounts shall be included in the approved uses of funds under the Plan Funding Commitment and shall be paid on the Effective Date.

1.44    Face Amount means (i) when used in reference to a Disputed Claim, the full stated amount claimed by the Holder of such Claim in any Proof of Claim timely Filed with the Bankruptcy Court or otherwise deemed timely Filed by any Final Order of the Bankruptcy Court, and (ii) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

1.45    File, Filed or Filing means, as to any document or pleading, properly and timely filed, filed or filing with the Bankruptcy Court, as reflected on the official docket of the Bankruptcy Court for the Chapter 11 Cases, and served on Persons, as such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or order of the Bankruptcy Court.

1.46    Final Order means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or on the docket of any other court of competent jurisdiction), which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending, or

(b) if an appeal, writ of *certiorari,* new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

1.47    FKF 3 means FKF 3, LLC.

1.48    FKF 3 Claim means any and all Claims of FKF 3, LLC against the Debtors.

1.49    FKF Madison means the above-captioned debtor and debtor in possession which was Filed as FKF Madison Park Group Owner, LLC, Case No. 11867 (KG) but which is in fact named FKF Madison Group Owner, LLC.

1.50    Gap Claim means an unsecured Claim against any Debtor arising from the Petition Date to the Relief Date pursuant to Section 502(f) and entitled to priority under Section 507(a) of the Bankruptcy Code, including, without limitation, the iStar Gap Claim.

1.51    General Unsecured Claim means a Claim against any Debtor that is not an Administrative Claim, a Priority Tax Claim, a Gap Claim, an Other Priority Claim, an Other Secured Claim, a Secured Mechanic's Lien Claim, or the iStar Secured Claim and specifically includes, without limitation, any Judgment Lien Claim, Mechanic's Lien Claim, Deed Holder Claim, McDonald's Claim and iStar Deficiency Claim.

1.52    GUC Cash Amount means the sum of six million seven hundred fifty thousand dollars ($6,750,000.00) to be funded to the Liquidating Debtors as the Plan Administrator Claims Distribution Assets on or before the Effective Date, which shall be funded as a portion of, and not in addition to, the Plan Funding Commitment by the Plan Funder in consideration for the sale and transfer of any and all unencumbered assets of the Debtors to the Reorganized Debtor as described in Section 4.1 of the Plan.

1.53    HFZ means HFZ Capital Group LLC.

1.54    HFZ DIP Funding Claim means the superpriority Administrative Claim of HFZ in respect of amounts advanced by HFZ to the Debtors as part of the DIP Financing pursuant to the DIP Financing Orders.

1.55    Holder means an Entity holding a Claim against, or Equity Interest in, any Debtor.

1.56    Impaired means "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

1.57    Involuntary Petitions means the involuntary petitions under chapter 7 of the Bankruptcy Code Filed on the Petition Date.

1.58    Initial Distribution Date means a date selected by the Reorganized Debtor that is no more than three (3) Business Days after the Effective Date.

1.59    iStar means SFI Belmont LLC, as successor in interest to iStar Tara LLC, or any successor in interest or assignee of its rights and Claims against the Debtors.

1.60    iStar Administrative Advances Claim means the Allowed Administrative Claim of iStar, in the amount of $229,661.86, for advances authorized and made pursuant to orders of the Bankruptcy Court entered in the Chapter 11 Cases on January 14, 2011, January 21, 2011, January 28, 2011 and February 18, 2011

1.61    iStar Deficiency Claim means the portion of the Claim of iStar that is an unsecured Claim, which is equal to the amount by which the iStar Existing Indebtedness exceeds the iStar Secured Claim.

1.62    iStar DIP Funding Claim means the superpriority Administrative Claim of iStar in respect of amounts advanced by iStar to the Debtors as part of the DIP Financing pursuant to the DIP Financing Orders.

1.63    iStar Existing Indebtedness means the prepetition indebtedness owed by the Debtors to iStar under the Loan Documents, whether actually incurred prepetition or deemed incurred prepetition, and specifically excludes the iStar Gap Claim, the iStar Administrative Advances Claim and the iStar DIP Funding Claim.

1.64    iStar Gap Claim means the Gap Claim of iStar, in the amount of $2,487,441.04, for advances authorized and made under the Loan Documents pursuant to orders of the Bankruptcy Court entered in the Chapter 7 Cases on June 30, 2010, July 30, 2010, September 22, 2010 and October 6, 2010.

1.65    iStar Secured Claim means the portion of the Claim of iStar that is a secured Claim.  For the avoidance of doubt, the iStar Secured Claim does not include the iStar Gap Claim, iStar Administrative Advances Claim and the iStar DIP Funding Claim.

1.66    Judgment Lien Claim means any Claim as to which the Holder thereof asserts a lien against any of the Debtors' assets, including, without limitation, the Property, by virtue of a judgment obtained by such Holder against any of the Debtors.  The term "Judgment Lien Claim" expressly includes, without limitation, the FKF 3 Claim and expressly excludes Secured Mechanics' Lien Claims.

1.67    JMJS means JMJS 23rd Street Realty Owner, LLC.

1.68    Lien means any mortgage, lien, pledge, security interest, claim of ownership, or other charge or interest or encumbrance of any kind in, upon, or affecting or purporting to affect or create any interest or adverse interest in or against any asset of the Debtors or the Estates, including as described in Section 101(37) of the Bankruptcy Code.

1.69    Liquidating Debtors means the Debtors from and after the Effective Date.

1.70    Litigation Claim means any Causes of Action that any Debtor or Estate may hold against any Entity as of the Effective Date, except any Causes of Action that (i) have been settled by the Debtors on or prior to the Effective Date or (ii) are expressly released by the Debtors pursuant to the terms of this Plan.

1.71    Loan Agreements means collectively: (i) the Senior Loan and Security Agreement between Borrowers and SFT I, Inc. (as predecessor in interest to iStar) dated as of November 16, 2007; (ii) the Building Loan and Security Agreement between Borrowers and SFT I, Inc. (as predecessor in interest to iStar) dated as of November 16, 2007; and (iii) the Project Loan and Security Agreement between Borrowers and SFT I, Inc. (as predecessor in interest to iStar) dated as of November 16, 2007; each, as modified by that certain Modification Of Loan Agreements And Other Loan Documents (the "Modification Agreement") between Borrowers and iStar as lender, dated as of June 24, 2009.

1.72    Loan Documents means, collectively (a) the Loan Agreements, (b) the Modification Agreement, (c) the Mortgages, (d) the Notes and (e) all other documents, agreements, notes, certifications, schedules and exhibits evidencing, securing or related to the iStar Existing Indebtedness.

1.73    Madison Park means Madison Park Group Owner LLC.

1.74    McDonald's means McDonald's Corporation.

1.75    McDonald's Claim means any Claim of McDonald's against the Debtors and/or their estates, including, without limitation, arising out of or in connection with (i) the Purchase and Sale Agreement, dated December 15, 2005, between McDonald's and 23rd Street, LLC, including, without limitation, rights of approval or consent to the submission, filing or amendment of the Declaration of Condominium and By-laws of the Property, the right to acquire the retail Unit associated with the Property or any obligations regarding the construction, size, development or dimensions of the retail Unit or to require the inclusion of any provisions therein, (ii) the Settlement Agreement, dated December 19, 2008, among McDonald's, 2623 Place, LLC, Slazer Owner, Madison Park, JMJS, FKF Madison, 24 East 23rd Commercial LLC and Park Madison Associates, LLC and (iii) the Memorandum of Obligations.

1.76    Mechanic's Lien Claim means a Claim held by a Holder derived from an asserted mechanic's lien on the Property under applicable non-bankruptcy law, to the extent that it is not a Secured Mechanic's Lien Claim.

1.77    Memorandum of Obligations means, collectively, (a) the Memorandum of Obligations, dated December 22, 2005, between 23rd Street, LLC and McDonald's, filed against the Property on March 15, 2006, in New York City Register File No. 2006000147908 and (b) the Memorandum of Obligations, dated December 22, 2005, between 23rd Street, LLC and McDonald's, filed against the Property on March 15, 2006, in New York City Register File No. 2006000147909.

1.78    Modification Agreement shall have the meaning set forth within the definition of "Loan Agreements."

1.79    Mortgages means collectively: (i) the Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Senior Loan) made by Borrowers in favor of SFT I, Inc. (as predecessor in interest to iStar), dated November 16, 2007; (ii) the Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Building Loan) made by Borrowers in favor of SFT I, Inc. (as predecessor in interest to iStar), dated November 16, 2007, (iii) the Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Project Loan) made by Borrowers in favor of SFT I, Inc. (as predecessor in interest to iStar), dated November 16, 2007; (iv) the Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Building Loan) made by Borrowers in favor of iStar, dated June 24, 2009, and (v) the Second Consolidated, Amended and Restated Mortgage with Security Agreement, Assignment of Leases and Rents and Fixture Filing (Project Loan) made by Borrowers in favor of iStar, dated June 24, 2009.

1.80    New iStar Secured Note means the fixed-rate senior secured note with a mortgage in substantially the forms set forth in the Plan Supplement, bearing an interest rate of the lesser of (i) 6.25% per annum or (ii) such other rate as the Bankruptcy Court may determine to be market customary and consistent with all-in yields prevailing on first-lien indebtedness of comparable loans against condominium buildings with a maturity date of seven (7) years from the Effective Date and with a present value, as of the Confirmation Hearing, equal to the value of the iStar Secured Claim in consideration for the sale and transfer of the Property and any and all encumbered assets of the Debtors to the Reorganized Debtor as described in Section 4.1 of the Plan.

1.81    Notes means collectively: (i) the Consolidated, Amended and Restated Promissory Note (Senior Loan) made by Borrowers in favor of SFT I, Inc. (as predecessor in interest to iStar), dated November 16, 2007, as modified by the Modification Agreement; (ii) the Consolidated, Amended and Restated Promissory Note (Building Loan) made by Borrowers in favor of SFT I, Inc. (as predecessor in interest to iStar), dated November 16, 2007, as modified by the Modification Agreement; (iii) the Consolidated, Amended and Restated Promissory Note (Project Loan) made by Borrowers in favor of SFT I, Inc. (as predecessor in interest to iStar), dated November 16, 2007, as modified by the Modification Agreement; (iv) the Amended and Restated Promissory Note (Building Loan) made by Borrowers in favor of iStar, dated June 24, 2009; and (v) the Second Consolidated, Amended and Restated Promissory Note (Project Loan) made by Borrowers in favor of iStar, dated June 24, 2009.

1.82    Offering Plan means the condominium offering plan in respect of the Property or any portion thereof, together with all amendments thereto, as accepted for filing by the New York State Department of Law, Investment Protection Bureau.

1.83    Opt-out Date means the third Business Day following the delivery of an Opt-out Notice by the Debtors, subject to the right of the Plan Funder to extend the Opt-out Date pursuant to Section 7.4.2 hereof.

1.84    Opt-out Election means an election by the Debtors made, in their respective sole and absolute discretion, by delivery of an Opt-out Notice any time after December 26, 2012, but

prior to the Effective Date, pursuant to the Escrow Agreement to withdraw from supporting the Plan, which election shall become effective as of the Opt-out Date.

1.85    Opt-out Notice means a written notice delivered by the Debtors, as applicable, to the Plan Funder of an Opt-out Election.

1.86    Other Priority Claim means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in payment pursuant to Section 507(a) of the Bankruptcy Code.

1.87    Other Secured Claim means any Claim secured, or purporting to be secured, by the assets of a Debtor other than a Secured Mechanic's Lien Claim, a Mechanic's Lien Claim, the McDonald's Claim, a Judgment Lien Claim, the iStar Secured Claim or a Deed Holder Claim, but solely to the extent the Lien securing or purporting to secure such Claim has priority under non-bankruptcy law over the Liens held by iStar against the Debtors' assets.

1.88    Person means any individual, corporation, partnership, association, joint stock company, joint venture, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity, or any domestic or foreign government, governmental agency, or any subdivision, department or other instrumentality thereof.

1.89    Petition Date means June 8, 2010.

1.90    Plan means the Debtors' joint chapter 11 plan of reorganization as confirmed by the Bankruptcy Court.

1.91    Plan Administrative Claims Bar Date means the date thirty (30) days after the Effective Date, unless otherwise extended by the Bankruptcy Court.

1.92    Plan Administrator means the Person designated by the Debtors to wind down the Liquidating Debtors' affairs and administer the GUC Cash Amount and distribute the Plan Administrator Claims Distribution Assets from and after the Effective Date.

1.93    Plan Administrator Agreement means the agreement in substantially the form to be Filed as part of the Plan Supplement, entered into as of the Effective Date, setting forth the rights and duties of the Plan Administrator, as may be modified from time to time.

1.94    Plan Administrator Claims Distribution Assets means the GUC Cash Amount funded by the Plan Funder to the Liquidating Debtors on the Effective Date for the benefit of Holders of Allowed Claims in Class 5, less any and all reasonable fees and expenses of the Plan Administrator (including, without limitation, fees and expenses of the Plan Administrator and its professionals) in administering and resolving Class 5 Claims, which such assets and any proceeds thereof shall be administered by the Plan Administrator pursuant to this Plan for the purpose of the administration of Claims in Class 5 and Distribution to Holders of Allowed Claims in Class 5 in accordance with this Plan, the Confirmation Order and the Plan Administrator Agreement.

1.95    Plan Administrator Wind-Down Reserve means an amount up to $250,000 to be funded by the Plan Funder to the Liquidating Debtors as and when necessary to cover the necessary expenses of the Plan Administrator and the Plan Administrator's professionals as incurred from and after the Effective Date in accordance with this Plan, the Confirmation Order and the Plan Administrator Agreement solely in connection with the wind-down and dissolution of the Debtors' estates, including without limitation, (a) payment of fees pursuant to 28 U.S.C. § 1930, (b) filing of all necessary reports with the Bankruptcy Court until such time as a final decree is entered or the Bankruptcy Court orders otherwise and (c) filing of tax returns for the Liquidating Debtors, all in accordance with a budget acceptable to the Plan Funder in its sole discretion.   For the avoidance of doubt, notwithstanding anything to the contrary contained herein, no portion of the Plan Administrator Wind-Down Reserve shall be allocated to the expenses of the administration, reconciliation, Disbursements or objections in respect of Class 5 Claims, which expenses shall be funded solely from the GUC Cash Amount.

1.96    Plan Funder means 23 East 22nd Street (NY), LLC, which, when exercising its powers to designate the Reorganized Debtor(s) under this Plan shall be acting with powers delegated by its members.

1.97    Plan Funding Commitment means the commitment made by the Plan Funder to the Reorganized Debtor as of the Effective Date to provide the Reorganized Debtor with funds sufficient to fund all payments required under the Plan, as evidenced by, and subject to the terms and conditions of, the Plan Funding Commitment Letter annexed as Exhibit A to the Plan.

1.98    Plan Supplement means a supplement to this Plan, including, among other things, such ancillary documents as are reasonably necessary or appropriate to effectuate the transactions contemplated herein, which documents shall be in form and substance reasonably acceptable to the Proponents, which the Debtors shall file with the Bankruptcy Court not later than five (5) Business days prior to the Voting Deadline.

1.99    Post Effective Date Notice List means the notice list described in and to be created pursuant to Section 10.11 of the Plan.

1.100    Priority Tax Claim means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.101    Professional means any Person retained by the Debtors or the Committee pursuant to a Final Order of the Bankruptcy Court entered pursuant to Sections 327 or 1103 of the Bankruptcy Code.

1.102    Professional Fee Bar Date means the date sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.

1.103    Professional Fee Claim means a Claim of a Professional for compensation for services and/or reimbursement of expenses pursuant to Sections 327, 330 or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Chapter 11 Cases.   For the avoidance of doubt, this does not include a Claim of any officer of

the Debtors retained or compensated pursuant to section 363 of the Bankruptcy Code; such Claims are ordinary Administrative Claims.

1.104 <u>Proof of Claim</u> means the proof of claim form that must be Filed with the Bankruptcy Court on or before the applicable Claims Bar Date by Holders of certain Claims against the Debtors.

1.105 <u>Property</u> means any real property and real property rights owned or held by any of the Debtors or their Estates, including, without limitation, the land, the improvements, the unsold Units which have been or will be developed, designed, and constructed at 23 East 22nd Street, New York, New York 10010 (and sometimes also referred to as 20 East 23rd Street) consisting of a fifty (50) story high-rise tower, containing sixty nine (69) residential Units together with amenities and limited common elements (the "<u>North Tower</u>"), as well as an adjacent lot known as 23 East 22nd, together with the land underlying and abutting the North Tower and the adjacent lot, the improvements, the unsold Units, all easements, air rights, development rights, sewer rights, water rights, servitudes, rights of way, streets, ways, alleys and other appurtenances thereto in any way relating to the foregoing.

1.106 <u>Proponents</u> means collectively the Debtors and the Plan Funder.

1.107 <u>Reinstated or Reinstatement or Reinstate</u> means treatment of a Claim as provided in section 1124(1) or (2) of the Bankruptcy Code.

1.108 <u>Relief Date</u> means November 19, 2010.

1.109 <u>Relief Order</u> means collectively the Orders for relief entered on November 19, 2010 in each of the Chapter 7 Cases by the Bankruptcy Court [D.I. 119].

1.110 <u>Reorganized Debtor</u> means such respective Entities designated by the Plan Funder (a) to which all assets of the Debtors' Estates shall be transferred (which, for the avoidance of doubt shall not include the GUC Cash Amount, which shall vest in the Liquidating Debtors on the Effective Date pursuant to this Plan), (b) to be the Disbursing Agent under the Plan (except with respect to the Class 5 Claims, in respect of which the Plan Administrator or his designee will act as Disbursing Agent), (c) to exercise any right of Reorganized Debtor under this Plan or (d) to perform any other actions deemed necessary by the Plan Funder to implement the transactions contemplated by this Plan.

1.111 <u>Schedules</u> means, with respect to each Debtor, the schedules of assets and liabilities and the statement of financial affairs Filed by such Debtor with the Bankruptcy Court pursuant to Sections 521(a)(1) and 1106(a)(2) of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements have been or may be amended or supplemented by such Debtor at any point.

1.112 <u>Secured Mechanic's Lien Claim</u> means a Claim held by a Holder derived from an asserted mechanic's lien on the Property under applicable non-bankruptcy law that (i) was properly and timely asserted, (ii) was validly perfected, and (iii) constitutes a lien having priority over the iStar Secured Claim under applicable non-bankruptcy law. The term "Secured Mechanic's Lien Claim" expressly excludes Judgment Lien Claims.

{00113754.DOC; 2}

1.113  Slazer Owner means Slazer Enterprises Owner, LLC.

1.114  Unimpaired means with respect to a Claim or Equity Interest, a Claim or Equity Interest that is not Impaired as a result of being either (a) Reinstated or (b) paid in full in cash under this Plan.

1.115  Unit means the condominium units, together with any limited common elements appurtenant thereto and their respective percentage interests in the common elements, that currently are, or will in the future be, subject to a condominium regime affecting the Property pursuant to that certain Amended and Restated Declaration of Condominium (including the by-laws and all exhibits thereto) dated July 22, 2009, as the same may be amended, modified and supplemented from time to time.

1.116  Unit Sales means the sale of one or more condominium Units, including, without limitation, any ancillary storage, wine cellar and similar portions of the Property, that comprise the Property which also may include limited common elements.

1.117  U.S. Trustee means the Office of the United States Trustee for Region 3.

1.118  Voting Deadline means the date by which Holders of Claims who are entitled to vote on the Plan must submit their Ballots in accordance with the terms of the Voting Procedures Order.

1.119  Voting Procedures Order means an order to be entered by the Bankruptcy Court (i) approving the Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code, (ii) setting forth the deadlines, procedures and instructions for submitting votes to accept or reject the Plan and (iii) establishing procedures for the assumption and rejection of executory contracts and unexpired leases.

B.      Rules of Interpretation.

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document, schedule or Exhibit filed or to be filed means such document, schedule or Exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; (e) all references in this Plan to Sections, Articles and Schedules are references to Sections, Articles and Schedules of or to this Plan, as the same may be amended, waived or modified from time to time; (f) the words "any" or "all" mean any and all and shall be given the broadest definition possible under the relevant context; (g) the words "related," "concerning," "arising from," "arising under," or "in connection with" shall all have as their definition the broadest definition possible under the relevant context; (h) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to

-14-

any particular section, subsection or clause contained in this Plan; (i) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (j) subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (k) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply; and (l) in computing any period of time prescribed or allowed by this Plan, Bankruptcy Rule 9006(a) will apply.

C.    <u>Exhibits.</u>

All Exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein. Parties in interest may obtain a copy of the filed Exhibits upon written request to the Debtors' counsel at the address set forth in Section 10.12 hereof. Upon their filing, the Exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours or at the electronic docket maintained by the Bankruptcy Court at https://ecf.deb.uscourts.gov/. The documents contained or referenced in the Exhibits shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

## ARTICLE II
## SUBSTANTIVE CONSOLIDATION; CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

To the extent necessary, the Plan serves as a motion by the Debtors seeking entry of an order granting substantive consolidation, upon the Effective Date, of the Estates and all the Debts of all of the Debtors for all purposes, including for Distributions to be made under the Plan. Pursuant to such order (which may be the Confirmation Order): (i) all assets and liabilities of the Debtors shall be deemed merged; (ii) all guarantees by one Debtor of the obligations of another Debtor shall be deemed eliminated so that any claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint and several liability of the Debtors shall be deemed to be one obligation of the consolidated Debtors; (iii) each and every Claim Filed or to be Filed in the Chapter 11 Case of any of the Debtors shall be deemed Filed against the consolidated Debtors and shall be deemed one claim against and a single obligation of the consolidated Debtors; and (iv) Claims by one Debtor against another Debtor shall be Disallowed.

Unless an objection to such consolidation is made in writing by any creditor or claimant affected by the Plan, Filed with the Bankruptcy Court and served on the parties listed in Section 10.12 on or before the Voting Deadline, or such other date as may be fixed by the Bankruptcy Court, the consolidation order (which may be the Confirmation Order) may be entered by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto shall occur at the Confirmation Hearing.

All Claims and Equity Interests, except Administrative Claims, Gap Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Gap Claims and Priority Tax Claims, as described

below, have not been classified and therefore are excluded from the Classes of Claims and Equity Interests set forth in this Plan. The treatment of Administrative Claims, Gap Claims and Priority Tax Claims in the Chapter 11 Cases is set forth below.

Pursuant to Sections 1122 and 1123 of the Bankruptcy Code, Claims against and Equity Interests in the Debtors are classified for all purposes, including, without express or implied limitation, voting, confirmation and Distributions pursuant to the Plan, as set forth herein. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. With respect to Class 2 (and, to the extent it becomes necessary, Class 3), each Holder of a Claim in Class 2 (and, to the extent it becomes necessary, Class 3) shall be deemed to be a separate sub-Class for purposes of classification and voting on the Plan (based upon the identity and value of such Holder's collateral). A Claim or Equity Interest shall be in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. If there are no Claims or Equity Interests in a particular Class, then such Class of Claims or Equity Interests shall not exist for any purposes under the Plan.

2.1    Summary.

(a)    Unclassified Claims. The following Claims against the Debtors are unclassified by the Plan:

(i)    Administrative Claims;

(ii)    Gap Claims; and

(ii)    Priority Tax Claims.

(b)    Classes of Claims and Equity Interests. The following Claims against the Debtors are classified by the Plan:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | iStar Secured Claim | Unimpaired | No (deemed to accept) |
| 2 | Secured Mechanic's Lien Claims | Impaired | Yes |
| 3 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | No (deemed to reject) |

2.2     Treatment of Unclassified Claims.

(a)     Administrative Claims. Subject to the provisions of Sections 328, 330, 331 and 503(b) of the Bankruptcy Code and Section 10.2 hereof, each Holder of an Allowed Administrative Claim against a Debtor shall receive, on or as soon as practicable after the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Administrative Claim, either cash equal to the full unpaid amount of such Allowed Administrative Claim, or such other treatment as the Reorganized Debtor and the Holder of such Allowed Administrative Claim shall have agreed.

(b)     Gap Claims. Except to the extent that the Reorganized Debtor and the Holder of an Allowed Gap Claim agree to a less favorable treatment of such Claim (in which event such agreement shall govern) or as otherwise provided in this Plan, each Holder of an Allowed Gap Claim against a Debtor shall receive, on or as soon as practicable after the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Gap Claim, either cash equal to the full unpaid amount of such Allowed Gap Claim, or such other treatment as the Reorganized Debtor and the Holder of such Allowed Gap Claim shall have agreed.

(c)     Priority Tax Claims. Except to the extent that the applicable Debtor and the Holder of an Allowed Priority Tax Claim agree to a less favorable treatment of such Claim (in which event such agreement shall govern), each Holder of an Allowed Priority Tax Claim that is due and payable on or before the Effective Date shall receive, on or as soon as practicable after the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, in the Debtors' sole discretion, either (i) cash equal to the amount of such Allowed Priority Tax Claim or (ii) pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code, deferred cash payments made on the first Business Day following each anniversary of the Effective Date over a period not exceeding five (5) years after the Relief Date, with a total value as of the Effective Date equal to the amount of such Allowed Priority Tax Claim. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business by the Reorganized Debtor in accordance with the applicable non-bankruptcy law governing such Claims.

2.3     Treatment of Classified Claims and Equity Interests.

(a)     iStar Secured Claim (Class 1). On the Effective Date or as soon as reasonably practicable thereafter (but in no event later than the Initial Distribution Date), the Holder of an Allowed iStar Secured Claim against the Debtors shall, on account of and in full and complete settlement, release and discharge of, and in exchange for, the Allowed iStar Secured Claim, receive the New iStar Secured Note.

(b)     Secured Mechanic's Lien Claims (Class 2). On the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Secured Mechanic's Lien Claim against a Debtor shall, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Secured Mechanic's Lien Claim, receive a cash payment equal to one hundred percent (100%) of the Allowed principal amount of each such Holder's Allowed Secured Mechanic's Lien Claim, without interest. On the Effective Date, the

{00113754.DOC; 2}

Lien asserted by the Holder of an Allowed Secured Mechanic's Lien Claim shall be null and void, the Holder of the Allowed Secured Mechanic's Lien Claim shall execute all documents requested by the Reorganized Debtor to effectuate the cancellation of its Lien, including the release and/or termination of any recording of the Lien, and the Holder of the Allowed Secured Mechanic's Lien Claim shall be enjoined from taking any action against the Reorganized Debtor or the Property to enforce, perfect, or record its Mechanic's Lien.

(c)     Other Secured Claims (Class 3). On the Effective Date or as soon as reasonably practicable thereafter, at the election of the Reorganized Debtor, Holders of Allowed Other Secured Claims shall, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Other Secured Claims, have their Claims satisfied by either (i) payment in full in cash, (ii) reinstatement pursuant to Section 1124 of the Bankruptcy Code, or (iii) such other recovery necessary to satisfy Section 1129 of the Bankruptcy Code. The Debtors' failure to object to any Other Secured Claim in the Chapter 11 Cases shall be without prejudice to the rights of the Reorganized Debtor to contest or otherwise defend against such Claim in the appropriate forum (including, without limitation, the Bankruptcy Court pursuant to or in furtherance of this Plan) including when and if such Claim is sought to be enforced by the Holder of such Claim. Nothing in the Plan or elsewhere shall preclude the Reorganized Debtor from challenging the validity of any alleged Lien on any asset of any Debtor or the Reorganized Debtor or the value of any such collateral (including, without limitation, in the Bankruptcy Court pursuant to or in furtherance of this Plan).

(d)     Other Priority Claims (Class 4). Each Holder of an Allowed Other Priority Claim against the Debtors shall receive, on or as soon as practicable after the Effective Date, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Other Priority Claim, either cash equal to the full unpaid amount of such Allowed Other Priority Claim, or such other treatment as the Reorganized Debtor and the Holder of such Allowed Other Priority Claim shall have agreed.

(e)     General Unsecured Claims (Class 5). On the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed General Unsecured Claim against the Debtors, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed General Unsecured Claim, shall receive its pro rata portion of the Plan Administrator Claims Distribution Assets. In the event (i) the Committee does not object to confirmation of the Plan and (ii) Class 5 (without taking into account any vote cast by the Holder of the iStar Deficiency Claim) votes to accept the Plan, iStar shall be deemed to waive any right to receive Distributions from the GUC Cash Amount on account of the iStar Deficiency Claim, in which event iStar shall not be entitled to receive, and shall not receive, any Distribution from the Debtors on account of the iStar Deficiency Claim from the GUC Cash Amount; *provided, however,* that iStar shall be entitled to Distributions on account of the iStar Deficiency Claim to the extent the Plan Administrator Claims Distribution Assets ever exceed the GUC Cash Amount, but solely to the extent of its pro rata portion of such excess amounts.

(f)     Equity Interests (Class 6). As of the Effective Date, all Equity Interests in each Debtor, including any outstanding warrants, options, or other rights to acquire outstanding Equity Interests, shall be terminated and cancelled and the Holders thereof shall neither retain nor receive any property under the Plan.

2.4    Special Provision Regarding Claims.

Except as otherwise explicitly provided in this Plan, nothing herein shall affect the Debtors', Reorganized Debtor's, Liquidating Debtors' or Plan Administrator's rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, the legal and equitable defenses of setoff or recoupment with respect to the Claims.

## ARTICLE III
## ACCEPTANCE OR REJECTION OF THE PLAN

3.1    Acceptance by an Impaired Class.

In accordance with Section 1126(c) of the Bankruptcy Code and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject this Plan.

3.2    Presumed Acceptances by Unimpaired Classes.

Classes 1, 3 and 4 are Unimpaired by this Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, the Holders of Claims in such Classes are conclusively presumed to have accepted this Plan and therefore shall not be entitled to vote to accept or reject the Plan.

3.3    Presumed Rejection by Certain Impaired Classes.

Holders of Equity Interests in Class 6 will not receive or retain any property under this Plan on account of such Equity Interests. Pursuant to Section 1126(g) of the Bankruptcy Code, Holders of such Equity Interests are conclusively presumed to have rejected this Plan and therefore shall not be entitled to vote to accept or reject the Plan.

3.4    Impaired Classes of Claims Entitled to Vote on the Plan.

Holders of Claims in Classes 2 and 5 are Impaired and shall be entitled to vote to accept or reject this Plan.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

4.1    Transfer of Assets.

Pursuant to Section 1123(a)(5)(D) of the Bankruptcy Code and except as expressly provided in the Plan or the Confirmation Order and subject to the assignment of the Mortgages and Notes pursuant to Section 4.6(b) hereof, all assets of the Debtors (including, without limitation, the Property but excluding, for the avoidance of doubt, the GUC Cash Amount and the Plan Administrator Wind-Down Reserve) and their Estates, together with any property of each Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Plan, shall be sold to, transferred to and vested in the Reorganized Debtor on the

Effective Date, free and clear of all Liens, Claims and Equity Interests, including, without limitation, the Liens and Claims of Holders of any Mechanic's Lien Claim, Deed Holder Claim, Judgment Lien Claim, McDonald's Claim, Other Secured Claim and iStar Secured Claim, any Claim of successor liability, any Claim of any owner of a Unit, any Claim based on the actions or inactions of the Debtors or their agents, representatives, employees or contractors with respect to the development, construction or sale of the Property or any Unit, or any patent or latent construction defects (provided, however, solely in respect of the sale and transfer of the Property, such sale and transfer will be subject to the New iStar Secured Note). Furthermore, the GUC Cash Amount shall be funded by the Plan Funder to the Liquidating Debtors on the Effective Date, free and clear of all Liens, Claims and Equity Interests, including, without limitation, the Liens and Claims of Holders of any Mechanic's Lien Claim, Deed Holder Claim, Judgment Lien Claim, McDonald's Claim, Other Secured Claim and iStar Secured Claim, any Claim of successor liability, any Claim of any owner of a Unit, any Claim based on the actions or inactions of the Debtors or their agents, representatives, employees or contractors with respect to the development, construction or sale of the Property or any Unit, or any patent or latent construction defects.

On and after the Effective Date, the Plan Funder, the Plan Administrator, the Liquidating Debtors and the Reorganized Debtor are authorized to, and shall, take all action necessary, and to execute all documents required, to effectuate the transfer of the assets of the Debtors' Estates to the Reorganized Debtor and, with respect to the GUC Cash Amount and Plan Administrator Wind-Down Reserve, the Liquidating Debtors or the Plan Administrator, as applicable. The Reorganized Debtors and the Disbursing Agent shall cooperate and furnish information reasonably necessary for the Plan Administrator to fulfill its duties under the Plan, the Plan Administrator Agreement and the Confirmation Order.

From and after the Effective Date, the Reorganized Debtor and the Plan Administrator on behalf of the Liquidating Debtors may operate their properties and business, and may use, acquire and dispose of property, free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules. In addition, the Reorganized Debtor and the Plan Administrator on behalf of the Liquidating Debtors may, without the need for any application to, or approval by, the Bankruptcy Court, each pay their respective fees incurred after the Effective Date for professional services and expenses, including, without limitation, in respect of the Debtors, their Estates and any asset transferred to the Reorganized Debtor and the Liquidating Debtors, respectively, pursuant to the Plan.

4.2     Provision for Plan Payments.

4.2.1     As set forth in, and pursuant and subject to the terms and conditions of, the Plan Funding Commitment Letter, the Plan Funder has committed all necessary financing and/or capital for the Reorganized Debtor and the Plan Administrator on behalf of the Liquidating Debtors to make all payments required under the Plan. Such funding may be provided in the form of equity or financing from the Plan Funder or its designee and may include the release of the Escrow Deposit in accordance with the terms of the Escrow Agreement. As of the Effective Date, the Plan Funder shall be the holder of 100% of the membership interests in the Reorganized Debtor.

-20-

4.2.2   The funds committed and funded by the Plan Funder to the Reorganized Debtor and the Plan Administrator on behalf of the Liquidating Debtors pursuant to the terms and conditions of the Plan Funding Commitment Letter will be used by the Reorganized Debtor and the Plan Administrator on behalf of the Liquidating Debtors to fund all necessary Plan payments in accordance with the Plan, including, without limitation, the following:

(i)      payment of the iStar DIP Funding Claim and the HFZ DIP Funding Claim;

(ii)     payments to be made on account of Claims that are unclassified under the Plan;

(iii)    payments under the New iStar Secured Note;

(iv)    payments to Holders of Allowed Claims in Classes 2, 3, 4 and 5;

(v)     payments of Cure Amounts under the executory contracts and unexpired leases to be assumed and assigned under the Plan; and

(vi)    the Expense Reimbursement.

4.3     Post-Effective Date, Ownership, Development and Sale of the Property.

From and after the Effective Date, the Reorganized Debtor may operate and/or complete development, and sell the Property consistent with the Offering Plan and applicable non-bankruptcy laws and regulations.

4.4     Plan Administrator and Liquidating Debtors.

(i)      Appointment.  On or after the Effective Date, the Plan Administrator shall be appointed in accordance with the Plan Administrator Agreement to wind down the affairs of the Liquidating Debtors, administer the GUC Cash Amount, and make distributions of the Plan Administrator Claims Distribution Assets under the Plan.  In the absence of such an appointment, the Liquidating Debtors shall be vested with the authority of the Plan Administrator.

(ii)     The Plan Administrator.  From and after the Effective Date, the Plan Administrator shall be a Person appointed pursuant to the Plan Administrator Agreement, Plan, and Confirmation Order, until death, resignation, or discharge and the appointment of a successor Plan Administrator in accordance with the terms of the Plan Administrator Agreement. The Plan Administrator shall be the exclusive agent and fiduciary of the Liquidating Debtors and the GUC Cash Amount and Plan Administrator Claims Distribution Assets and shall be deemed a trustee under Title 11 for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3).

(iii)    Responsibilities of the Plan Administrator.  The responsibilities of the Plan Administrator under the Plan Administrator Agreement and this Plan shall include those set forth in the Plan Administrator Agreement in respect of the activities set forth in Section 1.93 hereof, including, without limitation, the following:  (a) the establishment and maintenance of such operating, reserve and trust account(s) as are necessary and appropriate to wind down the affairs

-21-

of the Debtors; (b) the investment of the GUC Cash Amount; (c) the pursuit of objections to, estimations of and settlements of Class 5 Claims, regardless of whether such Claim is listed in the Debtors' Schedules; (d) the calculation and distribution of all Distributions to Holders of Allowed Class 5 Claims be made under this Plan; (e) the filing of all required tax returns and operating reports and paying of taxes and all other obligations on behalf of Liquidating Debtors, if any; (f) the payment of fees pursuant to 28 U.S.C. § 1930 incurred after the Effective Date until the closing of the Chapter 11 Case; (g) such other responsibilities as may be vested in the Plan Administrator pursuant to this Plan, the Plan Administrator Agreement, the Confirmation Order, other Bankruptcy Court orders, or as otherwise may be consistent with and necessary and proper to carry out the duties of the Plan Administrator under this Plan; and (h) if as and when appropriate to seek a final decree.

(iv)    <u>Powers of the Plan Administrator</u>.  The powers of the Plan Administrator, or the Liquidating Debtors if no Plan Administrator is appointed, but solely in respect of the responsibilities set forth in Section 4.4(iii) of the Plan, shall include, without limitation and without further Bankruptcy Court approval, each of the following in respect of the activities set forth in Section 1.93 hereof:

a.    To exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by any general or limited partner, officer, director or shareholder of the Debtors with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholders, including, without limitation, amendment of the certificates of incorporation and by-laws of the Debtors;

b.    To maintain accounts, to make distributions to holders of Allowed Class 5 Claims provided for or contemplated by the Plan; and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, including the Plan Administrator Wind-Down Reserve, in the name of the Plan Administrator;

c.    To object to any Claims in Class 5 (whether Disputed Claims or otherwise), to compromise or settle any Claims in Class 5 prior to objection without supervision or approval of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court, and the guidelines and requirements of the United States Trustee, other than those restrictions expressly imposed by the Plan, the Confirmation Order or the Plan Administrator Agreement;

d.    To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets of the Liquidating Debtors, if the Plan Administrator concludes that they are of no benefit to the Liquidating Debtors;

e.    To make decisions regarding the retention or engagement of professionals, employees and consultants, and to pay (in respect of the duties described in Section 1.95 hereof) from the Plan Administrator Wind-Down Reserve, and in respect of the administration of Claims in Class 5, from the Plan Administrator Claims Distribution Assets, the

fees and charges incurred by the Plan Administrator on or after the Effective Date for fees and expenses of professionals (including those retained by the Plan Administrator), disbursements, expenses or related support services without application to, or approval of, the Bankruptcy Court;

f. To (a) seek a determination of tax liability under Section 505 of the Bankruptcy Code, (b) pay taxes, if any, related to the Liquidating Debtors or the sale of non-Cash assets of the Liquidating Debtors, (v) file, if necessary, any and all tax and information returns, (d) make tax elections by and on behalf of the Plan Administrator and (e) pay taxes, if any, payable by the Liquidating Debtors;

g. To take all other actions not inconsistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable with respect to the administration of Claims in Class 5 and the wind-down of the Debtors' estates;

h. To invest Cash as deemed appropriate by the Plan Administrator, as further set forth in the Plan Administrator Agreement;

i. To maintain any books and records, including financial books and records, as is necessary and/or appropriate in the Plan Administrator's discretion;

j. To implement and/or enforce all provisions of this Plan, including entering into any agreement or executing any document required by or consistent with the Plan, the Confirmation Order and the Plan Administrator Agreement and perform all of the Liquidating Debtors' obligations thereunder;

k. To investigate, prosecute and/or settle any Claims in Class 5 without approval of the Bankruptcy Court and, in respect thereof, exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding and pursue to settlement or judgment such actions;

l. To purchase or create and carry all insurance policies and pay all insurance premiums and costs the Plan Administrator deems necessary or advisable;

m. To administer the GUC Cash Amount and distribute all Plan Administrator Claims Distribution Assets pursuant to the Plan, the Confirmation Order and the Plan Administrator Agreement and administer the winding down of the affairs of the Liquidating Debtors;

n. To hold legal title to any and all GUC Cash Amount, Plan Administrator Claims Distribution Assets and the Plan Administrator Wind-Down Reserve;

o. To pay any and all fees incurred pursuant to 28 U.S.C. § 1930 and to file all necessary reports with the Bankruptcy Court until such time as a final decree is entered or the Bankruptcy Court orders otherwise;

p. Retain any and all insurance policies of the Debtors providing coverage with respect to Claims; and

q. Exercise such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan, the Plan Administrator Agreement, the Confirmation Order, other orders of the Bankruptcy Court, or as may be desirable, necessary and/or proper to carry out the provision of the Plan and to wind down the affairs of the Liquidating Debtors.

r. The Plan Administrator and the Liquidating Debtors shall stand in the same position as the Debtors with respect to any claim the Debtors may have to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Plan Administrator and the Liquidating Debtors shall succeed to all of the Debtors' rights to preserve, assert or waive any such privilege.

(v) <u>Compensation of Plan Administrator</u>. The Plan Administrator shall be compensated as set forth in the Plan Administrator Agreement from the Plan Administrator Wind-Down Reserve and the GUC Cash Amount.

(vi) <u>Termination of the Plan Administrator's Appointment</u>. The Plan Administrator's appointment shall terminate upon the Distribution of all property in accordance with the terms of the Plan Administrator Agreement and the Plan and the entry of a final decree by the Bankruptcy Court closing all of the Chapter 11 Cases.

4.5 <u>Standing of Reorganized Debtor</u>.

On and after the Effective Date, the Reorganized Debtor shall automatically be conferred authority and standing, and shall be the sole authorized Entity with standing, to take any and all actions on behalf of the Debtors or their estates, including, without limitation, the prosecution or settlement of any Claim Objection, Litigation Claim transferred to the Reorganized Debtor and/or challenge to Lien (except with respect to Claims in Class 5, as to which Claims the Plan Administrator shall be the sole authorized Entity with standing, to take any and all actions on behalf of the Debtors or their estates, including, without limitation, the prosecution or settlement of any Claim Objection). Other than in respect of matters involving solely Class 5 Claims, the Reorganized Debtor, shall stand in the same position as the Debtors with respect to any claim the Debtors may have to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Reorganized Debtor shall succeed to all of the Debtors' rights to preserve, assert or waive any such privilege.

4.6 <u>Cancellation of Notes, Instruments, Debentures and Equity Interests; Assignment of Mortgages</u>.

(a) On the Effective Date, except as otherwise provided herein, all credit documents, notes, bonds, operating agreements, member agreements, registration rights agreements, and/or all documents plans, or agreements evidencing or creating any indebtedness or obligations of a Debtor that relate to Claims or Equity Interests that are Impaired under this Plan (the "Cancelled Documents"), shall be cancelled, void and of no further force and effect as against the Debtors or their Estates (other than as evidence of a Claim subject to the treatment set

-24-

forth in this Plan) and the obligations of the Debtors, the Liquidating Debtors and the Reorganized Debtor under any such Cancelled Documents shall be discharged. From and after the Effective Date, except as otherwise provided herein, the Cancelled Documents shall solely evidence Claims against the Debtors, the allowance of which would qualify the Holders of such Allowed Claims to receive the treatment for such Allowed Claims provided for herein.

(b)     Upon the issuance of the New iStar Secured Note, iStar shall assign the Notes and Mortgages to any entity designated by the Plan Funder and shall execute all documents requested by the Plan Funder or its designee, in their respective sole discretion, to effectuate the assignment of the Notes and Mortgages, whereupon the Holder of the iStar Secured Claim shall be enjoined from taking any action against the Reorganized Debtor, the Liquidating Debtors or the Plan Administrator on account of the Notes or Mortgages, but shall still be entitled to receive Distributions under this Plan on account of the New iStar Secured Note and the iStar Deficiency Claim (but solely to the extent such Claim has not been waived pursuant to this Plan) notwithstanding such assignment.

4.7     Cancellation of Liens.

Except as otherwise provided in this Plan or in connection with the issuance of the New iStar Secured Note, on the Effective Date, in consideration for the Distributions to be made under the Plan, (i) all Liens, charges, encumbrances, ownership interests related to any Deed in respect of a Deed Holder Claim, and rights relating to any Claim or Equity Interest shall be terminated, null and void and of no effect, and (ii) all Holders of Secured Claims (other than Holders of an Other Secured Claim that is Reinstated pursuant to the Plan), including without limitation, any Holders of Claims classified in Classes 1 and 2, shall be authorized and directed to release any and all Liens on collateral or property of any Debtor securing such Secured Claims held by such Holders and to take such actions as may be requested by the Reorganized Debtor, the Liquidating Debtors or the Plan Administrator to evidence the release of such Liens, including the execution, delivery and filing or recording of such release documents as may be requested by the Reorganized Debtor, the Liquidating Debtors or the Plan Administrator.

On the Effective Date, any Lien held or asserted by the Holder of (i) a Mechanic's Lien Claim (that is not a Secured Mechanic's Lien Claim), (ii) a Deed Holder Claim, (iii) the McDonald's Claim, (iv) a Judgment Lien Claim, (v) an iStar Deficiency Claim (except to the extent assigned pursuant to Section 4.6(b) of the Plan), or (vi) a Class 5 Claim in respect of such Class 5 Claim shall be null and void, the Holder of such a Claim shall execute all documents requested by the Reorganized Debtor, the Liquidating Debtors or the Plan Administrator to effectuate the cancellation of its Lien, including the release and/or termination of any recording of the Lien, including, without limitation, all Deeds conveying any Units to any Deed Holder, any judgments held by a Holder of a Judgment Lien Claim and the Memorandum of Obligations, and the Holder of such Claim shall be enjoined from taking any action against the Reorganized Debtor, the Liquidating Debtors or the Plan Administrator or the Property to enforce, perfect, or record its Lien. The Reorganized Debtor, the Liquidating Debtors or the Plan Administrator or any agent or representative thereof, is hereby authorized to serve upon all filing and recording officers a notice in connection with the execution, filing and recording of any document (whether recorded or unrecorded) in accordance with the Plan, to effectuate the release and/or termination of Liens in accordance with this Section 4.7, and the Reorganized Debtor, the Liquidating

Debtors or the Plan Administrator shall be deemed to have "attorney-in-fact" power on behalf of the Holder of any such Claim in respect thereof.

In the Confirmation Order, the appropriate state or local government filing and recording officers shall be authorized and directed to accept for filing or recording any and all documents to be executed, filed and recorded in accordance with the Plan and the exhibits thereto, without payment of any filing or recording fee of any kind or any need for the consent or joinder of any Holder of a Mechanic's Lien Claim, a Deed Holder Claim, the McDonald's Claim, the iStar Deficiency Claim or a Judgment Lien Claim to such execution or recordation, and without the presentation of any affidavits, instruments, or returns otherwise required for recording, other than the Confirmation Order.

4.8    Cram-Down.

If any Impaired Class fails to accept the Plan by the requisite statutory majorities, the Proponents reserve the right (i) to seek confirmation of the Plan by a "cram-down" of such non-accepting Class pursuant to section 1129(b) of the Bankruptcy Code and (ii) to propose any modifications to the Plan and to confirm the Plan as modified, without re-solicitation, to the extent permitted by the Bankruptcy Code.

4.9    Dissolution of the Committee.

On the Effective Date, the Committee shall dissolve automatically and their members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code; provided that such parties shall continue to be bound by any obligations arising under confidentiality agreements or joint defense/common interest agreements (whether formal or informal) entered during the Chapter 11 Cases, which shall remain in full force and effect according to their terms, and provided further that the Committee's Professionals shall continue to have a right to be heard with respect to their respective applications for Professional Fee Claims.

4.10    Exercise of Foreclosure Rights.

Notwithstanding anything to the contrary contained in this Plan, in the event that it is necessary or desirable for any assignee pursuant to Section 4.6(b) to exercise its rights and powers under the Notes and Mortgage to effectuate a state-court foreclosure (or similar action) with respect to a portion of the Property (including, without limitation, any Unit(s) and the common elements of the Property allocable to such Unit(s)) in order to effectuate the transactions contemplated by the Plan, such exercise shall be deemed to be an action taken under and in furtherance of this Plan, and any such portion of the Property thereby recovered by such assignee may be transferred to (the Debtor for transfer to) the Reorganized Debtor for the purpose of completing the sale and transfer contemplated under Section 4.1 of this Plan.

{00113754.DOC; 2}

# ARTICLE V
## PROVISIONS GOVERNING DISTRIBUTIONS

5.1     Distributions by Disbursing Agent.

Unless the Holder of an Allowed Claim and the Proponents (prior to the Effective Date) or the Reorganized Debtor (after the Effective Date), agree to a different Distribution Date, and notwithstanding anything to the contrary contained herein, Distributions required under the Plan to be made on the Effective Date on account of Claims (a) that are Allowed as of the Effective Date shall be made by the Disbursing Agent on the Initial Distribution Date or as soon as practicable thereafter and (b) that are Disputed Claims as of the Effective Date shall be made by the Disbursing Agent on such later date as the Disputed Claim otherwise entitled to Distribution on the Effective Date becomes an Allowed Claim. Any payment or Distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day. All Distributions under this Plan shall be funded from (a) any unencumbered cash of the Debtors or their Estates, (b) the amounts funded by the Plan Funder pursuant to Section 4.2.2 of the Plan or (c) any reserve established pursuant to this Plan.

5.2     Interest on Claims.

Except as otherwise specifically provided for in this Plan, the Confirmation Order or other order of the Bankruptcy Court, no penalty or post-petition interest shall accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to penalties or interest accruing on or after the Relief Date, including, without limitation, on or after the Effective Date, on any Claim.

5.3     Delivery of Distributions and Undeliverable or Unclaimed Distributions.

The following terms shall govern the delivery of Distributions and undeliverable or unclaimed Distributions with respect to Claims:

(a)     Delivery of Distributions in General. Distributions to Holders of Allowed Claims shall be made at the addresses set forth in the Debtors' records unless such addresses are superseded by Proofs of Claim or notices of transfer timely Filed prior to the Distribution Record Date pursuant to Bankruptcy Rule 3001.

(b)     Undeliverable and Unclaimed Distributions.

(i)     Holding and Investment of Undeliverable and Unclaimed Distributions. If the Distribution to any Holder of an Allowed Claim is returned to the Reorganized Debtor, the Liquidating Debtors, the Plan Administrator or the Disbursing Agent(s) as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder, and such Holder shall be deemed to have forfeited any rights to further distributions, unless the appropriate Disbursing Agent is notified in writing by the Holder of such Holder's then current address within ninety (90) days of such returned or unclaimed Distribution.   A Distribution will be deemed unclaimed for purposes of this paragraph if a check

-27-

or instrument for such Distribution is not cashed by such Holder within ninety (90) days.

(ii)     Forfeiture of Distributions. Any Holder of an Allowed Claim that does not provide any information required by Section 5.7 hereof within one hundred eighty (180) days after the Effective Date shall be deemed to have forfeited its Claim and shall be forever barred and enjoined from seeking any further Distributions on such claim or asserting such Claim against the Debtors or their Estates, the Liquidating Debtors, the Plan Administrator or the Reorganized Debtor or its property.

(iii)     Redistribution to Other Holders. Any Distributions forfeited pursuant to subparagraphs (i) and (ii) immediately above, shall be redistributed to other claimants pro rata (in the case of Class 5 Claims) subject to Section 5.10 of this Plan or become the property of the Reorganized Debtor free of any restrictions thereon (in the case of Unclassified Claims and Claims in Classes 1 though 4) and notwithstanding any federal or state escheat laws to the contrary. Nothing contained in this Plan shall require any Disbursing Agent, including, but not limited to, the Reorganized Debtor, the Plan Administrator or the Liquidating Debtors, to attempt to locate any Holder of an Allowed Claim.

5.4     Record Date for Distributions.

(a)     The Reorganized Debtor, the Plan Administrator, the Liquidating Debtors and the Disbursing Agent(s) will have no obligation to, but may, in their sole and absolute discretion, recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims that are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date. The Reorganized Debtor, the Plan Administrator, the Liquidating Debtors and the Disbursing Agent(s) shall be entitled to recognize and deal for all purposes under this Plan with only those record Holders stated on the official claims register as of the close of business on the Distribution Record Date.

5.5     Allocation of Plan Distributions Between Principal and Interest.

Except as otherwise expressly provided in this Plan, to the extent that any Allowed Claim entitled to a Distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

{00113754.DOC; 2}

5.6     Means of Cash Payment.

Payments of cash made pursuant to this Plan shall be in U. S. dollars and shall be made, at the option and in the sole discretion of the Disbursing Agent, by (i) checks drawn on or (ii) wire transfer from an account at a bank selected by the Disbursing Agent.

5.7     Withholding and Reporting Requirements.

In connection with this Plan and all instruments issued in connection herewith and Distributions under this Plan, the Disbursing Agent, the Plan Administrator, the Liquidating Debtors and the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements, and the Disbursing Agent(s) shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements; *provided, however,* that, notwithstanding anything to the contrary contained in this Plan, (a) any party entitled to receive any Distribution under this Plan shall be required to deliver to the Reorganized Debtor, the Plan Administrator, the Liquidating Debtors or the Disbursing Agent (as the case may be) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8 to avoid the incurrence of certain federal income withholding tax obligations on its respective Distribution and (b) each Holder of an Allowed Claim that is to receive a Distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including, without limitation, income, withholding and other tax obligations, on account of such Distribution. No Distribution shall be made to or on behalf of any Holder of an Allowed Claim unless and until such Holder has made arrangements satisfactory to the appropriate Disbursing Agent for the payment and satisfaction of any such tax obligations. The Reorganized Debtor, the Plan Administrator, the Liquidating Debtors or Disbursing Agent (as appropriate) shall cause a notice of this requirement to be sent to all Holders of Allowed Claims, which notice may be contained in the Confirmation Order or Notice of Effective Date.

5.8     Setoffs and Recoupment.

The Reorganized Debtor, the Plan Administrator, the Liquidating Debtors and the Disbursing Agent, as the case may be, may, pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy laws, but shall not be required to, set off or recoup against any Claim, the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, or claims of any nature whatsoever that the Debtors, the Plan Administrator, the Liquidating Debtors or the Reorganized Debtor may have against the Holder of such Claim, including, without limitation, for any Causes of Action; provided, however, that neither the failure to assert such rights of setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor, the Plan Administrator or the Liquidating Debtors of any Claim that the Debtors, the Plan Administrator, the Liquidating Debtors or the Reorganized Debtor may assert against any Holder of an Allowed Claim.

{00113754.DOC; 2}

5.9     Compromises and Settlements.

On and after the Effective Date, the Reorganized Debtor (in the case of Unclassified Claims and Claims in Classes 1 through 4) and the Plan Administrator on behalf of the Liquidating Debtors (in the case of Claims in Class 5) shall have the sole right to compromise and settle Claims and the Reorganized Debtor (in the case of Unclassified Claims and Claims in Classes 1 through 4) and the Plan Administrator on behalf of the Liquidating Debtors (in the case of Claims in Class 5) shall thereafter be authorized to compromise and settle any Disputed Claim and execute all necessary documents, including a stipulation of settlement or release, in its sole discretion, without notice to any party, and without the need for further approval of the Bankruptcy Court and without following Bankruptcy Rule 9019(a).

5.10    *De Minimis* Distributions.

No payment of fractional cents shall be made under the Plan and any such Distribution shall be rounded to the nearest whole cent. All Distributions (other than the final Distribution) less than one hundred dollars ($100) will be held by the Disbursing Agent for the benefit of the Holder of the Allowed Claim entitled to such Distribution. When the aggregate amount held by the appropriate Disbursing Agent for the Holder of an Allowed Claim equals or exceeds $100, the Disbursing Agent shall make a Distribution to such Holder. If at the time the Disbursing Agent is to make the final Distribution to Holders of Allowed Claims and the Disbursing Agent is holding a Distribution for a Holder of an Allowed Claim of less than twenty-five dollars ($25), inclusive of any final Distribution, the Disbursing Agent shall not be required to make such final Distribution and the amount of such final Distribution for such Holder shall instead be submitted as an undeliverable Distribution to a charity in the form of the Combined Campaign for Justice.

5.11    Claims Administration Responsibility.

(a)     Responsibility of the Reorganized Debtor and the Plan Administrator on behalf of the Liquidating Debtors. From and after the Effective Date, the Reorganized Debtor, in the case of Unclassified Claims and Claims in Classes 1 through 4, and the Plan Administrator on behalf of the Liquidating Debtors, in the case of Claims in Class 5, shall have the respective sole responsibility and authority for disputing, objecting to, compromising and settling, or otherwise resolving and making Distributions (if any) with respect to such Claims.

(b)     Objections to Claims. Unless otherwise extended by the Bankruptcy Court, any objections to Claims shall be served and Filed on or before the Claim Objection Deadline. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder thereof if service of such objection is effected upon such Holder in any of the following manners: (a) (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable in the Chapter 11 Cases by Bankruptcy Rule 7004 but, in respect of mailings, to the Holder's last known address; (ii) to the extent counsel for a Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory to the applicable Proof of Claim or other representative identified in the proof of claim or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared

on the Holder's behalf in the Chapter 11 Cases and whose appearance has not been revoked or withdrawn, or (b) otherwise in accordance with the Bankruptcy Rules.

5.12    Determination of Allowed Claims.

On and after the Effective Date, except as otherwise set forth in this Plan or as agreed to in writing by the Reorganized Debtor (in the case of Unclassified Claims and Claims in Classes 1 though 4) or the Plan Administrator on behalf of the Liquidating Debtors (in the case of Claims in Class 5), the Allowed amount of any Claim as to which a Proof of Claim was timely Filed in the Chapter 11 Cases, and which Claim is subject to an objection Filed by the Debtors, the Plan Administrator on behalf of the Liquidating Debtors or the Reorganized Debtor before the Claim Objection Deadline, will be determined and liquidated pursuant to a Final Order of the Bankruptcy Court. Upon such determination, the Claim shall become an Allowed Claim to the extent set forth in the applicable Final Order and will be satisfied in accordance with this Plan. Any Claim that has been or is hereafter listed in the Schedules in an undisputed, fixed, liquidated amount and is not disputed, contingent or unliquidated and with respect to which no contrary or superseding Proof of Claim or Claim Objection has been timely Filed on or before the Claims Objection Deadline, shall be deemed Allowed in the fixed amount so listed in the Schedules for purposes of this Plan unless otherwise ordered by the Bankruptcy Court.

5.13    No Distributions Pending Allowance.

Except as otherwise set forth herein, no Distributions shall be made with respect to a Disputed Claim unless and until such Disputed Claim has become an Allowed Claim. Promptly after a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor, the Plan Administrator on behalf of the Liquidating Debtors or the Disbursing Agent, as applicable, will distribute on the next succeeding Distribution Date to the Holder of such Allowed Claim any cash or other property that would have been distributed to the Holder of such Allowed Claim to the extent of such Allowed Claim on the dates Distributions were previously made to Holders of other Allowed Claims in the same Class to the extent such Claim (or portion thereof) had been an Allowed Claim on such dates. Notwithstanding the foregoing, the Reorganized Debtor (in the case of Unclassified Claims and Claims in Classes 1 through 4) and the Plan Administrator (in the case of Claims in Class 5) shall make Distributions on the Initial Distribution Date on account of such Claims (or portions thereof) as the Reorganized Debtor or the Plan Administrator, as applicable, reasonably believes to be valid and whereupon such Claims (or portions of such Claims, if applicable) shall, notwithstanding anything to the contrary contained herein, automatically constitute, and be deemed for all purposes hereunder Allowed Claims.

5.14    Reserves.

As of and after the Effective Date with respect to Distributions to be made under the Plan, to the extent that a Claim is a Disputed Claim but if the Claim was an Allowed Claim the Holder of such Claim would be entitled to a Distribution, the appropriate Disbursing Agent(s) shall establish a reserve for the payment of any such Disputed Claim at such time that a Distribution would otherwise be made under the Plan on account of such Claim if it was an Allowed Claim, funded from amounts made available by the Plan Funder pursuant to Section 4.2.2 of the Plan upon such reserve's establishment as follows: the amount reserved for each

-31-

Disputed Claim shall be the amount that the Holder of such Disputed Claim would have been entitled to receive under the Plan it if was an Allowed Claim based upon the Claim being the lower of: (i) the amount set forth in a Proof of Claim Filed by the Holder of such Claim, or if no Proof of Claim has been Filed, the Scheduled amount set forth for such Claim if it is shown on the Schedules as being non-contingent, liquidated, and undisputed and (ii) the estimated amount of such Claim for Distribution purposes, as determined by the Bankruptcy Court. As soon as practicable after (and to the extent) that a Disputed Claim becomes an Allowed Claim, the appropriate Disbursing Agent(s) shall make a payment on such Allowed Claim from the reserve established for such Disputed Claim that becomes an Allowed Claim. Any amount reserved on account of a Disputed Claim that becomes a Disallowed Claim shall be released from the reserve and either: (i) held by the appropriate Disbursing Agent(s) for Distribution to all Holders of Allowed Claims in the Class in which such Disputed Claim was Classified in accordance with the Plan; or (ii) if there are no such other Holders of Allowed Claims in the Class in which such Disputed Claim was classified or the remaining amount to be distributed does not have to be distributed by reason of the last sentence of Section 5.10 of this Plan, the remaining amount reserved on account of such Disputed Claim shall be disbursed by the appropriate Disbursing Agent(s) to the Plan Funder. The appropriate Disbursing Agent shall establish appropriate reserves for the payment of Professional Fee Claims and Administrative Claims funded from amounts made available by the Plan Funder pursuant to Section 4.2.2 of the Plan upon such reserves' establishment.

5.15    Reports.

From and after the Effective Date until a Final Decree is entered, the Plan Administrator on behalf of the Liquidating Debtors shall submit any quarterly reports required by any applicable U.S. Trustee guidelines. The Reorganized Debtors and the Disbursing Agent shall cooperate and furnish information reasonably necessary to complete such reporting.

5.16    Late Filed Claims

Any Claims Filed after the Claims Bar Date, shall be deemed disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtors, Liquidating Debtors, Reorganized Debtor or Plan Administrator.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASE

6.1    Assumption Generally.

Except as otherwise provided in the Plan, or in any Final Order, on the Effective Date, pursuant to Bankruptcy Code Section 365, each of the executory contracts and unexpired leases designated for assumption and listed on **Schedule 6.1** to the Plan, which will be Filed with the Plan Supplement and may be amended through the date that is ten (10) days prior to the Confirmation Hearing, by notice Filed by the Debtors and served on the parties affected by such amendment, shall be assumed by the Debtors.

6.1.1    Each executory contract and unexpired lease identified for assumption on **Schedule 6.1** shall be assumed only to the extent, if any, that it constitutes an executory contract or unexpired lease on the Effective Date, and the listing of such contract or lease on **Schedule 6.1** shall not constitute an admission by the Debtors or the Estates that such contract or lease is an executory contract or unexpired lease or that the Debtors, or the Estates have any liability thereunder. Any executory contract or unexpired lease that is not listed on **Schedule 6.1**, or that has not been assumed by the Debtors pursuant to an order of the Bankruptcy Court, or is not the subject of a pending assumption motion by the Debtors, shall be deemed rejected as of the Effective Date.

6.1.2    All executory contracts and unexpired leases assumed by the Debtors will be deemed assigned to the Reorganized Debtor. Any executory contract or unexpired lease that the Debtors assume and assign to the Reorganized Debtor shall be deemed to be a permitted assignment notwithstanding a provision in such contract or lease requiring consent of the nondebtor party to such contract or lease. All executory contracts or unexpired leases assumed by the Debtors shall continue in full force and effect from and after the Effective Date.

6.1.3    The execution and recording of any memorandum of lease relating to any unexpired lease listed on **Schedule 6.1** is hereby exempt from any law or requirement requiring lessor consent or joinder, whether express or otherwise, to such execution or recordation. The Reorganized Debtor, or any agent or representative thereof, is hereby authorized to serve upon all filing and recording officers a notice in connection with the execution, filing and recording of any memoranda of lease (whether recorded or unrecorded) in accordance with the Plan, to evidence and implement this paragraph, and the Reorganized Debtor shall be deemed to have "attorney-in-fact" power on behalf of any lessor in respect thereof. The Confirmation Order shall authorize and direct the appropriate state or local government filing and recording officers to accept for filing or recording any and all memoranda of lease to be executed, filed and recorded in accordance with the Plan and the exhibits thereto, without need for lessor consent or joinder to such execution or recordation, and without the presentation of any affidavits, instruments, or returns otherwise required for recording, other than the Confirmation Order. The Bankruptcy Court retains jurisdiction to enforce the foregoing direction, by contempt proceedings or otherwise.

6.2    Approval of Assumption.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving assumption and assignment of the executory contracts and unexpired leases set forth in **Schedule 6.1**, as amended from time to time prior to the date that is ten (10) days prior to the Confirmation Hearing, pursuant to Bankruptcy Code Section 365, as of the Effective Date.

6.3    Objections to Assumption.

In accordance with the Voting Procedures Order, any party in interest wishing to object to the assumption or assignment of an executory contract or unexpired lease, was required to File and serve on counsel for the Proponents, counsel for the Committee and the U.S. Trustee any objection to such assumption by the same deadline and in the same manner established for filing objections to Confirmation, unless the assumption of such executory contract or unexpired

lease is the subject of an amendment to **Schedule 6.1,** in which case the deadline is the date that is the later of: (a) seven (7) days after the date of such amendment; or (b) the day that is ten (10) days before the initial Confirmation Hearing. Failure to File and serve any such objection by the applicable deadline shall constitute consent to the assumption and assignment, an acknowledgment that, except as set forth in **Schedule 6.1,** there are no defaults or cure amount claims due under the executory contract or unexpired lease identified for assumption, and that adequate assurance of future performance in connection with the proposed assumption and assignment has been provided.

6.3.1   If an objection to assumption or assignment of an executory contract or unexpired lease has been or hereafter is timely Filed and: (a) a Final Order is entered determining that the executory contract or unexpired lease cannot be assumed or assigned; or (b) the Debtors give notice to the other party to such executory contract or unexpired lease stating that it no longer seeks assumption and assignment of such contract or lease, then the contract or lease shall automatically thereupon be deemed to have been included on **Schedule 6.5**, and rejected pursuant to Section 6.5.

6.3.2   If the Debtors' rejection of an executory contract or unexpired lease pursuant to Section 6.5 gives rise to an Allowed Claim, such Claim shall be classified in Class 5; provided, however, that: (a) any Claim arising from such rejection which has not been barred by a prior order of the Bankruptcy Court shall be forever barred and shall not be enforceable unless a proof of Claim is Filed within thirty (30) days after the mailing of notice referred to in Section 6.5, and (b) nothing herein shall otherwise constitute a waiver of the Claims Bar Date, if applicable.

6.3.3   Nothing herein shall constitute a waiver of any other applicable bar date.

6.4   Payments Related to Assumption.

Any defaults under each executory contract and unexpired lease to be assumed and assigned under the Plan, shall be cured, pursuant to Bankruptcy Code Section 365(b)(1), by payment of the amount (the "Cure Amount"), if any, as set forth in **Schedule 6.1** (or as otherwise agreed by the Reorganized Debtor and the parties to such executory contract or unexpired lease, or as determined by the Bankruptcy Court as provided in a Final Order, if a timely objection is Filed to the assumption), and shall be paid on or as soon as practicable after the Effective Date by the Reorganized Debtor. In the case of a dispute with respect to such Cure Amount set forth in a timely Filed objection to the assumption or assignment, the Reorganized Debtor shall pay such Cure Amount in Cash on or as soon as practicable after entry of a Final Order resolving the dispute, and approving the assumption and assignment.

6.5   Rejection Generally.

6.5.1   As of the Effective Date, the following executory contracts and unexpired leases shall be rejected, inclusive of any remaining obligations of the Debtors thereunder or under any executory contract or unexpired lease assigned by the Debtors prior to the commencement of the Chapter 11 Cases, respectively: (a) each executory contract or unexpired lease of the Debtors that: (i) has not been previously assumed, assumed and assigned, or rejected

by Final Order; (ii) is not the subject of a motion pending on the Effective Date to assume or to assume and assign or (iii) is not being assumed pursuant to Section 6.1 above; (b) each contract or lease of the Debtors that has expired by its own terms before the Confirmation Date; (c) any purchase orders executed or issued by the Debtors before the commencement of the Chapter 11 Cases, which have not been previously performed, assumed and assigned, or terminated; (d) any contract providing for support, guaranty, contribution, indemnity, and similar obligations unless specifically assumed; and (e) the executory contracts and unexpired leases listed on **Schedule 6.5,** which will be Filed with the Plan Supplement and may be amended through the date that is ten (10) days prior to the Confirmation Hearing, on notice Filed by the Debtors and served on the parties affected by such amendments. The listing of a contract or lease by category above, or on **Schedule 6.5,** shall not constitute an admission by any party that such contract or lease is an executory contract or unexpired lease, or that the Debtors or the Estates have any liability thereunder, nor shall such listing, the absence of an objection thereto, or Confirmation constitute a finding or determination that any such contract or lease is an executory contract or unexpired lease.

6.5.2   The execution and recording of any document necessary to evidence the rejection of any unexpired lease or executory contract listed on **Schedule 6.5** is hereby exempt from any law or requirement requiring lessor consent or joinder, whether express or otherwise, to such execution or recordation. The Reorganized Debtor or any agent or representative thereof, shall be authorized in the Confirmation Order to serve upon all filing and recording officers a notice in connection with the execution, filing and recording of any document (whether recorded or unrecorded) in accordance with the Plan, to evidence and implement this paragraph, and the Reorganized Debtor shall be deemed to have "attorney-in-fact" power on behalf of any lessor or contract counterparty in respect thereof. The appropriate state or local government filing and recording officers are shall be authorized and directed in the Confirmation Order to accept for filing or recording any and all documents to be executed, filed and recorded in accordance with the Plan and the exhibits thereto, without need for lessor or contract counterparty consent or joinder to such execution or recordation, and without the presentation of any affidavits, instruments, or returns otherwise required for recording, other than the Confirmation Order. The Bankruptcy Court retains jurisdiction to enforce the foregoing direction, by contempt proceedings or otherwise.

6.6     Approval of Rejection.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection of the executory contracts and unexpired leases as provided for under the Plan pursuant to Bankruptcy Code Sections 365 and 1123(b)(2).

6.7     Objections to Rejection.

In accordance with the Voting Procedures Order, any party in interest wishing to object to the rejection of an executory contract or unexpired lease identified for rejection, as provided under the Plan, was required to File and serve on counsel for the Proponents, counsel for the Committee, and the U.S. Trustee any objection by the same deadline and in the same manner established for filing objections to Confirmation, unless the rejection is the subject of an amendment to **Schedule 6.5,** in which case the deadline is the date that is the earlier of: (a)

twenty (20) days after the date of such amendment; or (b) the day that is five (5) days before the initial Confirmation Hearing. Failure to File and serve any such objection by the applicable deadline shall constitute consent to the rejection.

6.8    Bar Date for Bankruptcy Code § 365(n) Election.

If the rejection of an executory contract pursuant to the Plan gives rise to the right by the other party or parties to such contract to make an election under Section 365(n) of the Bankruptcy Code to either treat such contract as terminated or to retain its rights under such contract, such other party to such contract will be deemed to elect to treat such contract as terminated unless such other party Files and serves a notice of its alternative election on the Reorganized Debtors, the Plan Administrator on behalf of the Liquidating Debtors, the Disbursing Agent and the Committee, and their respective counsel, within thirty (30) days after the Effective Date.

# ARTICLE VII
## CONFIRMATION AND CONSUMMATION OF THE PLAN

7.1    Conditions to Confirmation.

The Plan shall not be confirmed unless and until the following conditions shall have been satisfied or waived in accordance with Section 7.3 of this Plan:

(a)    The Bankruptcy Court shall have entered a Final Order, in a form reasonably acceptable to the Proponents, approving the adequacy of the Disclosure Statement.

(b)    The Confirmation Order shall be in form and substance reasonably satisfactory to the Proponents.

(c)    The final version of all of the schedules, documents, and Exhibits to the Plan, including the Plan Supplement, shall have been Filed in form and substance reasonably acceptable to the Proponents.

(d)    The iStar Secured Claim shall be determined by the Bankruptcy Court to be not more than $162 million.

7.2    Conditions to Effective Date.

The Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or waived in accordance with Section 7.3 of this Plan, it being understood that certain of such conditions shall be satisfied at the time the Plan becomes effective:

(a)    All conditions to confirmation in Section 7.1 of the Plan shall have been either satisfied or waived in accordance with Section 7.3 of the Plan.

{00113754.DOC; 2}

(b)     The Confirmation Order confirming this Plan shall have been entered by the Bankruptcy Court and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

(c)     The Debtors shall have obtained Final Orders or judgments of the Bankruptcy Court or another court of competent jurisdiction, or obtained such other settlement or resolution acceptable to the Proponents, in their respective sole and absolute discretion, determining or resolving that any Lien or other interest in the Property or any other assets of the Debtors or their Estates asserted by the Holder of (i) the iStar Deficiency Claim, (ii) a Deed Holder Claim (iii) the McDonald's Claim and (iv) a Judgment Lien Claim is (a) null and void or avoided in its entirety, or (b) subordinate in all respects, including, without limitation, priority, to the Liens securing an Allowed iStar Secured Claim and any Allowed Secured Mechanics' Lien Claims against the Property and therefore to be treated under the Plan as a General Unsecured Claim.

(d)     All documents and agreements necessary to implement this Plan on the Effective Date shall have been duly and validly executed and delivered by all parties thereto.

(e)     All authorizations, consents, certifications, approvals, rulings, no-action letters, opinions or other documents or actions required by any law, regulation or order to be received or to occur in order to implement Article IV of the Plan as of the Effective Date shall have been obtained or shall have occurred unless failure to do so will not have a material adverse effect on the Reorganized Debtor. For the avoidance of doubt, approval or acceptance of the Offering Plan by the New York State Department of Law or any other governmental entity shall not be a condition to the occurrence of the Effective Date.

(f)     The Proponents shall jointly file with the Bankruptcy Court a notice of the occurrence of the Effective Date stating that the conditions in this Section 7.2 of the Plan have been satisfied or waived pursuant to Section 7.3 of the Plan, which filing shall be made no later than thirty (30) days after such conditions have been satisfied or waived.

7.3     Waiver of Conditions.

Each of the conditions set forth in Sections 7.1 and 7.2 of this Plan may be waived in whole or in part by the Proponents.

7.4     Effect of Non-Occurrence of Effective Date.

7.4.1     If each of the conditions specified in Section 7.2 have not been satisfied or waived in the manner provided in Section 7.3 on or before December 31, 2012, then on the Opt-out Date, as such date may be extended by the Plan Funder in accordance with Section 7.4.2 below, but in any event no later than June 30, 2013: (i) the Confirmation Order shall be vacated and of no further force or effect; (ii) no Distributions under the Plan shall be made; (iii) the Debtors and all Holders of Claims and Equity Interests in the Debtors shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unaffected by the Plan and nothing contained herein

shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors and the Plan shall be deemed withdrawn. Upon such occurrence, the Debtors shall File a written notification with the Bankruptcy Court and serve it upon such parties as the Bankruptcy Court may direct.

7.4.2    Within three (3) Business Days following the Debtors' delivery of an Opt-out Notice, the Plan Funder may block the Debtors' exercise of an Opt-out Election and thereby the occurrence of the Opt-out Date through the earlier to occur of the Initial Distribution Date and June 30, 2013 by, increasing the amount of the Escrow Deposit subject to the Escrow Agreement to $25 million and continuing to provide continuing post-petition financing to the Debtors during such extended period.

## ARTICLE VIII
## EFFECT OF PLAN CONFIRMATION

8.1    Binding Effect.

Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any and all Holders of Claim against, or Equity Interests in, the Debtors and all such Holders' respective successors and assigns, whether or not the Claims or Equity Interests of such Holders are Impaired under the Plan and whether or not such Holders have accepted the Plan.

8.2    Exculpation, Releases and Discharge

(a)    **Exculpation. From and after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to, or be subject to any right of action by, any and all Holders of Claims or Equity Interests, or any other parties in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 7 Cases or Chapter 11 Cases, formulating, negotiating or implementing this Plan, the Disclosure Statement, or any of the transactions contemplated under this Plan, the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the confirmation of this Plan, the consummation of this Plan, the Chapter 7 Cases or administration of this Plan, the property to be distributed under this Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 7 Cases or Chapter 11 Cases; provided, however, that this section shall not apply to (i) obligations under, and the contracts, instruments, releases, agreements, and documents delivered, Reinstated or assumed under this Plan, and (ii) any claims or causes of action arising out of willful misconduct or gross negligence as determined by a Final Order. Any of the Exculpated Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under the Plan. For the avoidance of doubt, Slazer Enterprises, LLC, Green Bridge Capital S.A. and Special Situation, S.A., and each of their respective current and former principals, directors, partners, officers, members, managers, agents, affiliates, employees,**

{00113754.DOC; 2}

representatives, counsel and financial advisors are not Exculpated Parties with respect to actions taken or occurring before the Relief Date.

(b)     Releases by the Debtors. Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors, the Liquidating Debtors and the Reorganized Debtor on its own behalf and as a representative of its respective Estate, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Exculpated Parties of and from any and all Claims and Causes of Action (including, without limitation, Avoidance Actions), any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever, and any and all Equity Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are or may be based in whole or part on any act or omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Relief Date) in connection with or related to any of the Debtors, the Liquidating Debtors, the Reorganized Debtor, their respective assets, property and/or Estates, the Chapter 7 Cases or the Chapter 11 Cases or the Plan, the Disclosure Statement, or any transactions contemplated under this Plan that may be asserted by or on behalf of any of the Debtors, the Debtors' Estates, the Liquidating Debtors, or the Reorganized Debtor against any of the Exculpated Parties; provided, however, that nothing in this section shall be construed to release any Exculpated Party from willful misconduct or gross negligence as determined by a Final Order. For the avoidance of doubt, Slazer Enterprises, LLC, Green Bridge Capital S.A. and Special Situation, S.A., and each of their respective current and former principals, directors, partners, officers, members, managers, agents, affiliates, employees, representatives, counsel and financial advisors are not Exculpated Parties with respect to actions taken or occurring before the Relief Date.

(c)     Discharge of Claims and Termination of Equity Interests. Except as otherwise provided herein or in the Confirmation Order; all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Equity Interests (other than Unimpaired Claims that are Allowed) of any nature whatsoever against the Debtors or any of their Estates, assets, properties or interest in property, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Equity Interests.

As of the Effective Date, except for their treatment under the Plan and as otherwise expressly provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting against the Debtors, the Plan Funder, the Liquidating Debtors, the Plan Administrator or the Reorganized Debtor and their respective assets, property and/or Estates, any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and all Equity Interests or other rights of a Holder of an Equity Interest, relating to any of

-39-

the Debtors, the Plan Funder, the Liquidating Debtors, the Plan Administrator or Reorganized Debtor or any of their respective assets, property and/or Estates, based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and any Equity Interest or other rights of a Holder of an Equity Interest and termination of all rights of any Holder of an Equity Interest in any of the Debtors pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors, the Liquidating Debtors, the Plan Administrator or the Reorganized Debtor, or any of their respective assets, property and/or Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability or terminated Equity Interest in any of the Debtors.

8.3     Preservation of Litigation Claims.

Except as otherwise provided in this Plan, the Confirmation Order, or in any document, instrument, release or other agreement entered into in connection with this Plan, in accordance with Section 1123(b) of the Bankruptcy Code, as of the Effective Date, the Reorganized Debtor shall retain each and every Litigation Claim possessed by the Debtors and their Estates immediately prior to the Effective Date whether or not litigation related thereto is pending on the Effective Date, and whether or not any such Litigation Claim has been listed or referred to in the Plan or the Disclosure Statement, or any other document Filed with the Bankruptcy Court, and the Debtors, the Debtors' Estates and the Reorganized Debtor shall not be deemed to waive, release, relinquish, forfeit, or abandon (nor shall they be estopped or otherwise precluded or impaired from asserting) any Litigation Claim that constitutes property of the Debtors or their Estates: (a) whether or not such Litigation Claim has been listed or referred to in the Plan, the Disclosure Statement, or any other document Filed with the Bankruptcy Court, (b) whether or not such Litigation Claim is currently known to the Proponents, and (c) whether or not a defendant in any litigation relating to such Litigation Claim Filed a Proof of Claim in the Chapter 11 Cases, Filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan. The Reorganized Debtor, as successor in interest to the Debtors and the Debtors' Estates solely with respect to each Litigation Claim, and as the duly appointed representative of the Estates pursuant to Section 1123(b) of the Bankruptcy Code, shall have the authority to, and may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any Litigation Claim. The Debtors and/or the Reorganized Debtor expressly reserve all rights to prosecute any Litigation Claim against any Entity, except as otherwise expressly provided in the Plan, and no preclusion doctrine, including the doctrines of *res judicata*, issue preclusion, estoppel (judicial, collateral, equitable or otherwise), or laches, shall apply to any such Litigation Claim, or operate to waive, eliminate, modify, or release the Litigation Claim, upon, after, or as a consequence of the entry of the Confirmation Order or the occurrence of the Effective Date. Notwithstanding the foregoing, the Debtors and the Reorganized Debtor shall not file, commence or pursue any Litigation Claim under Section 547 of the Bankruptcy Code against a holder of a General Unsecured Claim on account of a cash payment made to such general unsecured creditor, or seek to disallow any Claim to the extent the Holder thereof may have received a cash payment

otherwise avoidable under section 547 of the Bankruptcy Code. For the avoidance of doubt, the Debtors and the Reorganized Debtor are not waiving, releasing or relinquishing any Litigation Claim against any general unsecured creditor arising under Section 547 of the Bankruptcy Code to avoid any transfer that is not a cash payment.

8.4    Injunction.

**Except as otherwise provided in this Plan or the Confirmation Order, from and after the Effective Date all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtors, are permanently enjoined from taking any of the following actions against the Estate(s), any of the Debtors, the Liquidating Debtors, the Plan Administrator, the Reorganized Debtor or their respective property, or the Exculpated Parties (solely to the extent of the exculpation set forth in Section 8.2(a) of the Plan), on account of such Claims or Equity Interests: (A) commencing or continuing, in any manner or in any place, any action, or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting any right of setoff or subrogation of any kind, including, without limitation, as a defense to any Litigation Claim and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such Persons from enforcing their rights set forth in this Plan, the Plan Supplement or the Confirmation Order**

8.5    Term of Bankruptcy Injunction or Stays.

All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

8.6    Termination of Subordination Rights and Settlement of Related Claims.

The classification and manner of satisfying all Claims and Equity Interests and the respective Distributions and treatments hereunder take into account and/or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with the contractual, legal and equitable subordination rights relating thereto, whether arising under contract, general principles of equitable subordination, Section 510(b) of the Bankruptcy Code or otherwise. Subject to the proviso set forth in the last sentence of this Section 8.6, all subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Distribution to be made under the Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be enjoined permanently. Accordingly, Distributions under the Plan to Holders of Allowed Claims shall not be subject to payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

-41-

# ARTICLE IX
## RETENTION OF JURISDICTION

9.1     <u>Retention of Jurisdiction.</u>

Pursuant to Sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim, Gap Claim, or Priority Tax Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

(b)     resolve any matters related to the assumption or assumption and assignment of any executory contract or unexpired lease to which any Debtor is a party or with respect to which any Debtor, the Liquidating Debtors, the Plan Administrator or the Reorganized Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(c)     resolve any matters related to Distributions to Holders of Allowed Claims pursuant to the provisions of this Plan;

(d)     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(e)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(f)     resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

(g)     approve any modification of this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code or approve any modification of the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure

Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(h)     hear and determine all applications for compensation and reimbursement of Professional Fee Claims under this Plan or under Sections 330, 331, 363, 503(b), 1103 and 1129(c)(9) of the Bankruptcy Code, which shall be payable by the Debtors only upon allowance thereof pursuant to the order of the Bankruptcy Court; provided, however, that the fees and expenses of Professionals retained by the Reorganized Debtor that are incurred after the Effective Date may be paid by the Reorganized Debtor in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(i)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(j)     hear and determine causes of action by or on behalf of the Debtors, the Liquidating Debtors, the Plan Administrator or the Reorganized Debtor;

(k)     hear and determine matters concerning state, local and federal taxes in accordance with, Sections 346, 505 and 1146 of the Bankruptcy Code;

(l)     enter and implement, such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated, or if Distributions pursuant to this Plan are enjoined or stayed;

(m)     determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement, or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(n)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(o)     hear and determine all matters related to (i) the property of the Estates from and after the Confirmation Date; (ii) the activities of the Reorganized Debtor and (ii) the activities of the Liquidating Debtors and the Plan Administrator.

(p)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(q)     enter a final decree closing the Chapter 11 Cases.

# ARTICLE X
## MISCELLANEOUS PROVISIONS

10.1    Post-Confirmation Date Retention of Professionals.

On the Effective Date, any requirement that professionals employed by the Reorganized Debtor comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtor, the Liquidating Debtors and the Plan Administrator will be authorized to employ and compensate professionals and without the need for Bankruptcy Court approval.

10.2    Bar Date for Certain Administrative Claims.

Except as otherwise provided pursuant to the previously ordered Claims Bar Date, all applications for final allowance of compensation or reimbursement of the expenses incurred by any Professional, and all other requests for the payment of Administrative Claims accruing on and after March 3, 2011 (expressly including (a) all requests for the allowance of any Administrative Claim pursuant to Section 503(b)(3)(D) of the Bankruptcy Code for substantial contributions made in these Chapter 11 Cases accruing on and after March 3, 2011 and (b) all requests for the payment of unpaid obligations incurred by the Debtors in the ordinary course of their business operations but excluding (c) all Claims of any officer of the Debtors retained or compensated pursuant to section 363 of the Bankruptcy Code, which Claims of such officers shall be paid in the ordinary course of business without the need to file requests for allowance), must be filed with the Bankruptcy Court and served on the Reorganized Debtor and its counsel at the addresses set forth in this Plan, by the Plan Administrative Claims Bar Date for Administrative Claims (other than Professional Fee Claims) accruing on and after March 3, 2011, and by the Professional Fee Bar Date for Professional Fee Claims accruing at any time. Holders of the HFZ DIP Funding Claim shall not be required to file any request pursuant to this Section 10.2 for payment of such Claims. Unless expressly exempted from filing pursuant to this Section 10.2, any request for the payment of an Administrative Claim accruing on and after March 3, 2011 or a Professional Fee Claim accruing at any time that is not timely filed and served by the Plan Administrative Claims Bar Date or the Professional Fee Bar Date, as applicable, shall be discharged and forever barred and the Holder or such Administrative Claim shall be enjoined from commencing or continuing any action, process, or act to collect, offset or recover such claim. From and after the Effective Date, the Reorganized Debtor shall have sole standing and responsibility for filing objections to and resolving all requests for the allowance of Administrative Claims. The objection deadline for filing any objections to Administrative Claims or Professional Fee Claims shall be the date that is thirty (30) days from the Plan Administrative Claims Bar Date or the Professional Fee Bar Date, respectively. Nothing in this section is intended to allow, or actually allows, any Person to timely File an Administrative Claims that accrued on or prior to March 3, 2011 except in conformity with the previously ordered Claims Bar Date.

10.3    Effectuating Documents and Further Transactions.

Each of the Debtors, the Plan Administrator, the Liquidating Debtors and the Reorganized Debtor is authorized to execute, deliver, file or record such contracts, instruments,

-44-

certificates, notes, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan, including, without limitation, execution and delivery of any mortgages or liens against the Property in connection with the financing or funding of any Distributions under this Plan.

10.4    Action by Debtors Authorized.

Notwithstanding anything to the contrary in the Debtors' organizational documents or the Offering Plan, or such other documents as may be relevant, prior to the Effective Date, John Fioretti, as the Debtors' officer, shall be authorized to execute and deliver any and all documents, and take any and all actions on behalf of the Debtors as are required of the Debtors hereunder or are otherwise necessary to consummate the transactions required under this Plan without the necessity for any approval of the members or managers of any of the Debtors. Notwithstanding anything to the contrary in the Debtors' organizational documents or the Offering Plan, or such other documents as may be relevant, after the Effective Date, the Plan Administrator, acting on behalf of the Liquidating Debtors with respect to Class 5 Claims, shall be authorized to execute and deliver any and all documents, and take any and all actions on behalf of the Liquidating Debtors as are required of the Liquidating Debtors hereunder or are otherwise necessary to consummate the transactions required under this Plan without the necessity for any approval of the members or mangers of any of the Debtors.

10.5    Exemption from Transfer Taxes.

Pursuant to Section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of notes or equity securities under this Plan; (b) the creation, assignment, recordation or perfection of any mortgage, deed of trust, lien, pledge or other security interest, including, without limitation, the Mortgage or any other mortgage on the Property executed and delivered by the Reorganized Debtor, the Plan Administrator on behalf of the Liquidating Debtors or any of their designees related to or in connection with the funding or financing of any Distributions under this Plan; (c) the making or assignment of any lease or sublease; (d) the creation, execution and delivery of any agreements or other documents creating or evidencing the formation of the Reorganized Debtor or the issuance or ownership of any interest in the Reorganized Debtor or the Liquidating Debtors, or (e) the making or delivery of any deed or other instrument of transfer under this Plan in connection with the transfer of the Property to the Reorganized Debtor (or pursuant to Section 4.11 of this Plan, to the Debtors for transfer to the Reorganized Debtor), the Plan Administrator or the Liquidating Debtors pursuant to this Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, including any transfer, conveyance or sale of the Property and Unit Sales, will not be subject to any stamp tax, filing or recording or other similar tax.

10.6    Payment of Statutory Fees.

All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.

10.7    Amendment or Modification of this Plan.

Subject to Section 1127 of the Bankruptcy Code, the Proponents may alter, amend or modify this Plan or the Exhibits at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan. Any Holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder.

10.8    Severability of Plan Provisions.

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, Impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

10.9    Successors and Assigns.

This Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including, without limitation, the Reorganized Debtor, the Plan Administrator and the Liquidating Debtors. The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

10.10    Revocation, Withdrawal or Non-Consummation.

The Proponents reserve the right to revoke or withdraw this Plan as to any or all of the Debtors prior to the Confirmation Date and to File subsequent plans of reorganization. If the Proponents revoke or withdraw this Plan as to any or all of the Debtors or if confirmation or consummation of this Plan as to any or all of the Debtors does not occur, then, with respect to all Debtors, (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of executory contracts or leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person or constitute an admission of any sort by the Debtors or any other Person.

-46-

10.11   Post Effective Date Notice.

As of the Effective Date there shall be a Post Effective Date Notice List. From and after the Effective Date, the Reorganized Debtor, the Plan Administrator and the Liquidating Debtors shall only be required to give notice to Entities with respect to matters arising under, related to, connected with, or pertaining to the Chapter 11 Cases, the Plan, the Confirmation Order, Claims or Equity Interests, executory contracts and/or unexpired leases who are either: (i) Persons who are the subject of, or are directly affected by, a motion, application, complaint, or other request for relief Filed with the Bankruptcy Court; or (ii) Persons who have after the Effective Date specifically requested to be on the Post Effective Date Notice List. Any Person desiring to be included in the Post Effective Date Notice List must: (1) file a request to be included on the Post Effective Date Notice List and included therein its name, contact person, address, telephone number and facsimile number, within thirty (30) days after the Effective Date, and (2) concurrently serve a copy of its request to be included on the Post Effective Date Notice List on the Reorganized Debtor, the Plan Administrator and the Liquidating Debtors. On or before sixty (60) days after the Effective Date, the Plan Administrator shall compile a list of all Persons on the Post Effective Date Notice List and File such list with the Bankruptcy Court. The Reorganized Debtor and its counsel, the Plan Administrator on behalf of the Liquidating Debtors and its counsel, the Plan Funder and its counsel and the U.S. Trustee shall be automatically included on the Post Effective Date Notice List and need not File a request to be included thereon. The Plan Administrator may remove any Person or Entity from the Post-Effective Date Notice List if such Person or Entity is no longer the Holder of a Claim or a representative of a Holder of a Claim scheduled to receive a Distribution pursuant to the Plan.

10.12   Notice.

All notices, requests and demands to or upon the Debtors or the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

FKF Madison Group Owner, LLC
JMJS 23rd Street Realty Owner, LLC
Madison Park Group Owner, LLC
Slazer Enterprises Owner, LLC
Attn: John Fioretti
P.O. Box 49249
Charlotte, NC 28277
Facsimile: (704) 341-0554

With a copy (which shall not constitute notice) to:

Morris, Nichols, Arsht & Tunnell LLP
Attn: Derek C. Abbott
       Erin Fay
1201 North Market Street, 18th Floor
Wilmington, DE 19899-1347
Facsimile: (302) 658-3989

If to the Plan Funder:

23 East 23rd Street (NY), LLC
c/o HFZ Capital Group, LLC
Attn: Nir Meir
600 Madison Avenue, 17th Floor
New York NY 10022
Facsimile: (212) 300-8001

With a copy (which shall not constitute notice) to:

Cohen Tauber Spievack & Wagner P.C.
420 Lexington Avenue – Suite 2400
New York, NY 10170
Attn: Joseph M. Vann, Esq.
       Robert A. Boghosian, Esq.
       Andrew L. Buck
Facsimile:  (212) 585-5095

and

Fragner Seifert Pace & Winograd, LLP
Attn: Matthew C. Fragner, Esq.
601 S. Figueroa St., Suite 2320
Los Angeles, CA 90017
Facsimile: (310) 496-2887

and

Sullivan Hazeltine Allinson LLC
Attn: Elihu E. Allinson, III, Esq.
901 North Market Street, Suite 1300
Wilmington, DE 19801
Facsimile: (302) 428-8195

If to the Reorganized Debtor:

Reorganized OMP I, LLC
c/o HFZ Capital Group, LLC
Attn: Nir Meir
600 Madison Avenue, 17th Floor
New York NY 10022
Facsimile: (212) 300-8001

With a copy (which shall not constitute notice) to:

Cohen Tauber Spievack & Wagner P.C.
420 Lexington Avenue – Suite 2400
New York, NY 10170
Attn: Joseph M. Vann, Esq.
      Robert A. Boghosian, Esq.
      Andrew L. Buck
Facsimile: (212)585-5095

If to the Liquidating Debtors/Plan Administrator:

[NAME AND ADDRESS]

With a copy (which shall not constitute notice) to:

[NAME AND ADDRESS]


10.13   Governing Law.

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an Exhibit or schedule to this Plan or any document prepared or executed pursuant to, in connection with or in furtherance of the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with the laws of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

10.14   Tax Reporting and Compliance.

The Debtors are hereby authorized to request an expedited determination under Section 505 of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Relief Date through, and including, the Effective Date.

10.15   Exhibits.

All Exhibits to this Plan are incorporated and are a part of this Plan as if set forth in full herein.

{00113754.DOC; 2}

10.16   Filing of Additional Documents.

On or before substantial consummation of this Plan, the Reorganized Debtor, the Liquidating Debtors, the Plan Administrator and the Debtors shall File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

10.17   No Waiver.

Except as set forth herein, neither the failure to list a Claim in the Schedules Filed by the Debtors, the failure of any Person to object to any Claim for purposes of voting, the failure of any Person to object to a Claim prior to Confirmation or the Effective Date, the failure of any Person to assert a Cause of Action prior to Confirmation or the Effective Date, the absence of a proof of Claim having been Filed with respect to a Claim, nor any action or inaction of any Person with respect to a Claim, or Cause of Action other than a legally effective express waiver or release shall be deemed a waiver or release of the right of the Estates or their successors or representatives, before or after solicitation of votes on this Plan or before or after Confirmation or the Effective Date to (a) object to or examine such Claim, in whole or in part or (b) retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any Causes of Action.

10.18   Limitations on Effect of Confirmation.

Nothing contained in this Plan shall limit the effect of Confirmation as described in Section 1141 of the Bankruptcy Code.

10.19   Securities Exemption.

Any rights issued under, pursuant to or in effecting this Plan and the offering and issuance thereof by any party, including without limitation the Proponents and Estates, shall be exempt from section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for Distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation Section 1145 of the Bankruptcy Code.

10.20   Controlling Documents.

In the event and to the extent that any provision of this Plan is inconsistent with any provision of the Disclosure Statement, the provisions of this Plan shall control and take precedence. In the event and to the extent that any provision of this Plan is inconsistent with any provision of the Confirmation Order, the provisions of the Confirmation Order shall control and take precedence.

10.21   No Admissions.

Notwithstanding anything contained in this Plan to the contrary, nothing contained in this Plan shall be deemed an admission by the Proponents with respect to any matter

herein, including, without limitation, liability on any Claim or the propriety of a Claim's classification.

### 10.22   Reservation of Rights.

Except as expressly set forth herein, this Plan shall have no force and effect unless Bankruptcy Court has entered the Confirmation Order. The Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Proponents with respect to this Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims and Equity Interests.

[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

{00113754.DOC; 2}

Dated: Wilmington, Delaware          Respectfully submitted,
    June 15    , 2011

**FKF MADISON GROUP OWNER, LLC**

By: Slazer Enterprises LLC, its Manager
   By: Green Bridge Capital S.A., 35% Member
      By: _____
      Name: _CEVDET CANER_____
      Its: _Managing Director_____

   By: Special Situation, S.A., as holder of
      irrevocable voting proxy from Marc Jacobs
      32.5% Member
      By: _____
      Name: _CEVDET CANER_____
      Its: _Managing Director_____

   By: _____
    Name: Ira Shapiro, 32.5% Member

**SLAZER ENTERPRISES OWNER, LLC**

By: Slazer Enterprises LLC, its Sole Member
   By: Green Bridge Capital S.A., 35% Member
      By: _____
      Name: _CEVDET CANER_____
      Its: _Managing Director_____

   By: Special Situation, S.A., as holder of
      irrevocable voting proxy from Marc Jacobs
      32.5% Member
      By: _____
      Name: _CEVDET CANER_____
      Its: _Managing Director_____

   By: _____
    Name: Ira Shapiro, 32.5% Member

**JMJS 23RD STREET REALTY OWNER LLC**

By: Slazer Enterprises LLC, its Manager
   By: Green Bridge Capital S.A., 35% Member
      By: _____
      Name: _CEVDET CANER_____
      Its: _Managing Director_____

   By: Special Situation, S.A., as holder of
      irrevocable voting proxy from Marc Jacobs
      32.5% Member
      By: _____
      Name: _CEVDET CANER_____
      Its: _Managing Director_____

   By: _____
    Name: Ira Shapiro, 32.5% Member

**MADISON PARK GROUP OWNER, LLC**

By: Slazer Enterprises LLC, its Manager
   By: Green Bridge Capital S.A., 35% Member
      By: _____
      Name: _CEVDET CANER_____
      Its: _Managing Director_____

   By: Special Situation, S.A., as holder of
      irrevocable voting proxy from Marc Jacobs
      32.5% Member
      By: _____
      Name: _CEVDET CANER_____
      Its: _Managing Director_____

   By: _____
    Name: Ira Shapiro, 32.5% Member

Dated: Wilmington, Delaware      Respectfully submitted,
_____, 2011

**FKF MADISON GROUP OWNER, LLC**

By: Slazer Enterprises LLC, its Manager
     By: Green Bridge Capital S.A., 35% Member
         By: _____
         Name: _____
         Its: _____

     By: Special Situation, S.A., as holder of
         irrevocable voting proxy from Marc Jacobs
         32.5% Member
         By: _____
         Name: _____
         Its: _____

By: _____
     Name: Ira Shapiro, 32.5% Member

**SLAZER ENTERPRISES OWNER, LLC**

By: Slazer Enterprises LLC, its Sole Member
     By: Green Bridge Capital S.A., 35% Member
         By: _____
         Name: _____
         Its: _____

     By: Special Situation, S.A., as holder of
         irrevocable voting proxy from Marc Jacobs
         32.5% Member
         By: _____
         Name: _____
         Its: _____

By: _____
     Name: Ira Shapiro, 32.5% Member

**JMJS 23RD STREET REALTY OWNER LLC**

By: Slazer Enterprises LLC, its Manager
     By: Green Bridge Capital S.A., 35% Member
         By: _____
         Name: _____
         Its: _____

     By: Special Situation, S.A., as holder of
         irrevocable voting proxy from Marc Jacobs
         32.5% Member
         By: _____
         Name: _____
         Its: _____

By: _____
     Name: Ira Shapiro, 32.5% Member

**MADISON PARK GROUP OWNER, LLC**

By: Slazer Enterprises LLC, its Manager
     By: Green Bridge Capital S.A., 35% Member
         By: _____
         Name: _____
         Its: _____

     By: Special Situation, S.A., as holder of
         irrevocable voting proxy from Marc Jacobs
         32.5% Member
         By: _____
         Name: _____
         Its: _____

By: _____
     Name: Ira Shapiro, 32.5% Member