## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
| **FKF MADISON PARK GROUP** | : | |
| **OWNER**, *et al.*,[1] | : | **Case No. 10-11867 (KG)** |
| **Debtors.** | : | |
| | : | **Jointly Administered** |
| | : | |

### NOTICE OF TRANSFER OF CLAIMS PURSUANT TO FRBP 3001(e)(2)

To:   (i)   Amalgamated Bank,      - and -    (ii)   Arnold & Porter LLP
             as Trustee of the Longview Ultra                     399 Park Avenue
             Construction Loan Investment Fund                New York, NY 10022
             275 Seventh Ave.                                Attn: John Busillo, Esq.
             New York, NY 10001                         Michael J. Canning, Esq.
             Attn: James T. Freel

Your claims as identified on <u>Exhibit A</u> hereto (collectively, the "<u>Claims</u>") have been transferred (the "<u>Transfer</u>") to the following party:

> One Madison FM, LLC
> c/o Richards, Layton & Finger, P.A.
> One Rodney Square
> 920 North King Street
> Wilmington, Delaware 19801
> Attn: Russell C. Silberglied, Esq.

A copy of the notice of transfer (each, a "<u>Notice of Transfer</u>") of each Claim, which serves to evidence the Transfer, is attached hereto as <u>Exhibit B</u>, <u>C</u>, <u>D</u> and <u>E</u>, respectively. As is set forth in each Notice of Transfer, to the fullest extent permitted by law, in connection with the Transfer, you have waived any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, title 11 of the United States Code, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware and any other applicable law. If, notwithstanding this waiver, you choose to object to the Transfer, you must do so by no later than **July 14, 2011** and you must:

     1)      **FILE A WRITTEN OBJECTION TO THE TRANSFER WITH:**

         United States Bankruptcy Court
         District of Delaware

---

[1]  The Debtors in these cases, along with the last four digits of their EIN, are: FKF Madison Group Owner, LLC (Case No. 10-11867) (3699); JMJS 23rd Street Realty Owner, LLC (Case No. 10-11868) (6551); Madison Park Group Owner, LLC (Case No. 10-11869) (3701); and Slazer Enterprises Owner, LLC (Case No. 10-11870) (4339). The Debtors' address is 230 Congers Road, New City, NY 10920.

824 Market Street, 3rd Floor
Wilmington, Delaware 19801

**2)** **SEND A COPY OF YOUR OBJECTION TO:**

One Madison FM, LLC
c/o Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attn: Russell C. Silberglied, Esq.

- and -

Haynes and Boone, LLP
30 Rockefeller Plaza
26th Floor
New York, NY 10112
Attn: Trevor R. Hoffman, Esq.

Dated: June 23, 2011
Wilmington, Delaware

*/s/ Zachary I. Shapiro*
Russell C. Silberglied, Esq. (No. 3462)
Zachary I. Shapiro, Esq. (No. 5103)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: silberglied@rlf.com
            shapiro@rlf.com

- and -

Lenard M. Parkins, Esq.
Trevor R. Hoffman, Esq.
Jonathan Hook, Esq.
HAYNES AND BOONE LLP
30 Rockefeller Plaza
26th Floor
New York, New York 10112
Telephone: (212) 659-7300
Facsimile: (212) 918-8989
Email: lenard.parkins@haynesboone.com
            trevor.hoffmann@haynesboone.com
            jonathan.hook@haynesboone.com

*Attorneys for One Madison FM, LLC*

## EXHIBIT A:

### SCHEDULE OF PROOF OF CLAIM FILED BY SFI BELMONT LLC
### IN THE CHAPTER 11 CASES

| Debtor | Case No. | Claim No. | Amount of Claim | Date of Filing |
|--------|----------|-----------|-----------------|----------------|
| FKF Madison Group Owner LLC | 10-11867 (KG) | 45 | At least $ 234,150,572.72 | April 7, 2011 |
| JMJS 23rd Street Realty Owner LLC | 10-11868 (KG) | 35 | At least $ 234,150,572.72 | April 7, 2011 |
| Madison Park Group Owner LLC | 10-11869 (KG) | 36 | At least $ 234,150,572.72 | April 7, 2011 |
| Slazer Enterprises Owner LLC | 10-11870 (KG) | 42 | At least $ 234,150,572.72 | April 7, 2011 |

# EXHIBIT B

In re FKF Madison Owner LLC                          Case No. 10-11867 (KG)

## TO: THE DEBTORS AND THE BANKRUPTCY COURT

Pursuant to the terms of that certain Assignment of Claims dated as of June ⎣7⎦ 2011, for value received, Amalgamated Bank, as Trustee of the Longview Ultra Construction Loan Investment Fund ("Assignor"), hereby unconditionally and irrevocably sells, transfers, conveys, and assigns (the "Assignment") to One Madison FM, LLC ("Assignee"), all of Assignor's right, title, interest, claims and causes of action in and to, or arising under or in connection with, that certain claim (the "Proof of Claim") filed by SFI Belmont LLC ("SFI") on April 7, 2012 (subsequently transferred and assigned by SFI to Assignor on or about June ⎣7⎦ 2011) with the United States Bankruptcy Court for the District of Delaware (the "Court") in Case No. 10-11867 (KG) (the "Chapter 11 Case"), in the amount of at least $234,150,572.74, and identified as Claim No. 45 on the claims register of the Chapter 11 Case. A true and correct copy of the Proof of Claim as filed is attached hereto as Exhibit 1 (excluding exhibits).

This Assignment includes any and all rights with respect to the Proof of Claim.

Assignor hereby waives to the fullest extent permitted by law, with regard to such transfer of the Claim, any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules and applicable law. Assignor acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Assignor transferring to Assignee the foregoing Proof of Claim and recognizing Assignee as the sole owner and holder of the Proof of Claim. Assignor further directs the Debtor, the Bankruptcy Court and all other interested parties that all further notices relating to the Proof of Claim, and all payments or distributions of money or property in respect of the Proof of Claim, shall be delivered or made to the Assignee.

The signature of the Assignor by its duly authorized representative on this document is evidence of the assignment and transfer of the Proof of Claim and all rights associated therewith. The Parties hereto declare under penalty of perjury that the information provided in this notice is true and correct to the best of their knowledge and belief.

IN WITNESS WHEREOF, this EVIDENCE OF ASSIGNMENT AND TRANSFER OF CLAIM IS EXECUTED THIS th day of June, 2011.

ASSIGNOR:     AMALGAMATED BANK, AS TRUSTEE OF THE LONGVIEW ULTRA CONSTRUCTION LOAN INVESTMENT FUND

Address:      275 Seventh Avenue
         New York, NY 10001

Telephone:     212 / 895 - 4934
Name of Representative:
Title:

Signature:
Date:



**JAMES FREEL**
SENIOR VICE PRESIDENT

IN WITNESS WHEREOF, this EVIDENCE OF ASSIGNMENT AND TRANSFER OF CLAIM IS EXECUTED THIS 17th day of June, 2011.

ASSIGNEE:          ONE MADISON FM, LLC

Address:           60 Columbus Circle

                         New York, NY 10023

Telephone:        (212) 801-3952

Name of Representative:  Richard O'Toole

Title:              Authorized Signatory

Signature:         _Richard O'Tal_

Date:

# EXHIBIT 1

B 10 (Official Form 10) *(04/10)*

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | PROOF OF CLAIM |
| --- | --- |

| Name of Debtor: FKF Madison Group Owner, LLC | Case Number: 10-11867 (KG) |
| --- | --- |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>SFI Belmont LLC | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| --- | --- |
| Name and address where notices should be sent:<br>SFI Belmont LLC<br>1114 Avenue of the Americas, 39th Floor<br>New York, New York 10036<br>Attn: Nina Matis<br>Telephone number:<br>(212) 930-9400 | Katten Muchin Rosenman LLP<br>575 Madison Avenue<br>New York, New York 10022<br>Attn: Jeff J. Friedman, Esq.<br><br>(212) 940-8800 | Court Claim Number: _____<br>*(If known)*<br><br>Filed on: _____ |
| Name and address where payment should be sent (if different from above):<br>SFI Belmont LLC<br>1114 Avenue of the Americas, 39th Floor<br>New York, New York 10036<br>Attn: Nina Matis<br>Telephone number: (212) 930-9400 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check this box if you are the debtor or trustee in this case. |

1. Amount of Claim as of Date Case Filed: $ __$234,150,572.74__

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim:     Secured Loans — See Addendum
   (See instruction #2 on reverse side)

3. Last four digits of any number by which creditor identifies debtor: _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #38 on reverse side)

4. Secured Claim (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff: ☒ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe:
   Value of Property: $165MM - $175MM (estimate)   **Annual Interest Rate** See Exhibits

   Amount of arrearage and other charges as of *time case filed* included in secured claim,

   If any: $See Addendum   Basis for perfection: See Addendum

   Amount of Secured Claim: $165MM - $175MM   **Amount Unsecured** $69,150,572.74 -
                                                                $59,150,572.74

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAYBE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after date of adjustment.*

FOR COURT USE ONLY

U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE
APR 06 2011

| Date:<br>03/31/2011 | Signature: The person filing this claim must sign it Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>*[signature]*<br><br>Nina Matis, Chief Investment Officer, SFI Belmont LLC |
| --- | --- |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or Imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

84543914v1

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>FKF MADISON GROUP OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11867 (KG) |
| IN RE:<br><br>JMJS 23RD STREET REALTY OWNER,<br>LLC<br><br>Debtor. | Chapter 11 Case No. 10-11868 (KG) |
| IN RE:<br><br>MADISON PARK GROUP OWNER,<br>LLC<br><br>Debtor. | Chapter 11 Case No. 10-11869 (KG) |
| IN RE:<br><br>SLAZER ENTERPRISES OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11870 (KG) |

## ADDENDUM TO PROOF OF CLAIM OF SFI BELMONT LLC, AS SUCCESSOR-IN-INTEREST TO iSTAR TARA LLC, AGAINST ABOVE-CAPTIONED DEBTORS

This addendum to proof of claim is filed by SFI Belmont LLC ("iStar Belmont"), as successor in interest to iStar Tara LLC ("iStar Tara"), a Delaware limited liability company registered in New York and doing business at 1114 Avenue of the Americas, New York, New York, 10036. iStar Belmont is a lender and the holder of certain mortgages (the "Mortgages" as

hereinafter defined), which secure pre-petition obligations of borrowers FKF Madison Group Owner LLC, JMJS 23rd Street Realty Owner LLC, Madison Park Group Owner LLC and Slazer Enterprises Owner LLC (collectively the "Debtors") to iStar Belmont under the Loan Agreements (as hereinafter defined), and files this proof of claim against each of the Debtors in such capacity pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rule 3003. (Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Loan Agreements).

## I.     BACKGROUND

1.      The Debtors, as tenants-in-common, own certain real property in Manhattan commonly known as the One Madison Park Condominium — a partially constructed luxury residential condominium tower that is approximately 50 stories tall and which is located at 23 East 22nd Street, New York, New York (the "Building").[1]  Construction of the Building is still underway, although a small number of units have been sold and are occupied by residents.  The Debtors currently own approximately 80% of the condominium units in the Building.

2.      iStar Belmont is the holder of the Mortgages encumbering the unsold units and their respective interests in the common elements of the Building, which are valid, enforceable, have been duly recorded, and secure pre-petition, joint and several obligations of the Debtors under the Loan Agreements in the amount of at least $234,150,572.74, as more particularly described below.  All of the Debtors' indebtedness to iStar is further secured by assignments of leases and rents, and security interests in all or substantially all of the Debtors' fixtures and personal property, including all accounts, fixtures and personalty, general intangibles, inventory

---

[1]     The address of the Building is alternatively listed as 23 East 22nd Street and 20 East 23rd Street, New York, New York in the Loan Documents because, while the main condominium tower is situated on 23rd Street, the Debtors acquired a smaller lot on 22nd Street for the purpose of creating a more desirable entrance on 22nd Street.

and other collateral constituting a part of the Building (collectively with the unsold units and their respective interests in the common elements of the Building, the "Mortgaged Property").

3.     Bankruptcy Proceedings.   On June 8, 2010, (the "Petition Date") involuntary chapter 7 petitions were filed against each of the Debtors, and on November 19, 2010, the Court entered orders for relief and orders converting each of the Debtors' chapter 7 cases to chapter 11 cases. The Debtors' cases are being jointly administered under case number 10-11867-KG.

4.     Supporting Documents.   On or about November 16, 2007, iStar Belmont's predecessor in interest, SFT I, Inc. ("SFT"), agreed to advance certain loans (the "SFT Loans") to the Debtors in the maximum aggregate principal amount of up to $238,500,000.00, consisting of: (i) a loan in the aggregate principal amount of up to $70,943,079.00 (the "Senior Loan"), the proceeds of which were to be used primarily to satisfy existing indebtedness encumbering the real estate upon which the Building is situated; (ii) a loan in the aggregate principal amount of up to $35,025,505.00 (the "Project Loan"), the proceeds of which were to be used to pay certain costs pertaining to the Mortgaged Property other than costs of improvement, and (iii) a loan in the aggregate principal amount of up to $132,531,416.00 (the "Building Loan"), the proceeds of which were to be used to pay or reimburse the Debtors for costs of improvement incurred in connection with the construction of the Building (i.e., "hard costs").

5.     The SFT Loans were evidenced by notes (the SFT Senior Note, SFT Project Note and SFT Building Note, collectively, the "SFT Notes"), which were secured by mortgages (respectively, the SFT Senior Mortgage, SFT Project Mortgage and SFT Building Mortgage, and collectively, the "SFT Mortgages"). The SFT Mortgages were duly recorded on December 20, 2007, and thereafter the SFT Mortgages (together with the SFT Notes and all related loan documents) were assigned to iStar Tara on March 1, 2009 (and such assignments were duly

recorded on March 27, 2009). True copies of the SFT Senior Note, the SFT Senior Mortgage, the SFT Project Note, the SFT Project Mortgage, the SFT Building Note, and the SFT Building Mortgage, respectively, are attached hereto as Exhibits A through F. True copies of the recorded assignment and assumption agreements between SFT as assignor and iStar Tara as assignee relating to the SFT Senior Mortgage, the SFT Project Mortgage and the SFT Building Mortgage, respectively, are attached hereto as Exhibits G, H and I.

6. The SFT Loans were made pursuant to a Building Loan and Security Agreement ("Building Loan Agreement"), a Senior Loan and Security Agreement ("Senior Loan Agreement") and a Project Loan and Security Agreement ("Project Loan Agreement"), each dated as of November 16, 2007, between SFT and the Debtors (collectively, and, as amended, the "Loan Agreements"). On or about March 1, 2009, SFT assigned the Loan Agreements to iStar Tara. True copies of the Senior Loan Agreement, the Project Loan Agreement and the Building Loan Agreement, respectively, are attached hereto as Exhibits J, K and L.

7. By Modification of Loan Agreements and other Documents dated as of June 24, 2009 (the "Modification Agreement"), a true copy of which is attached hereto as Exhibit M, the Debtors and iStar Tara modified the Loan Agreements in certain respects. Pursuant to the Modification Agreement, iStar Tara agreed to advance an additional amount of up to $12,134,080.00 under the Project Loan Agreement (thereby increasing the maximum principal amount of the Project Loan from $35,025,505.00 to $47,159,585.00), and the Debtors executed and delivered the Second Gap Project Note and the Second Gap Project Mortgage in the amount of the increase ($12,134,080.00), together with the Second Consolidated, Amended and Restated Project Note and the Second Consolidated, Amended and Restated Project Mortgage, each in the aggregate maximum principal amount of up to $47,159,585.00. Also pursuant to the

Modification Agreement, the maximum principal amount of the Building Loan was reduced from $132,531,416.00 to $127,633,643.00, and the Debtors executed and delivered the Amended and Restated Building Note and the Amended and Restated Building Mortgage, each in the latter amount.[2] The Modification Agreement thus increased the aggregate maximum principal amount of the Loans from $238,500,000.00 to $245,736,307.00. The SFT Senior Note and the SFT Senior Mortgage were not amended in any respect by the Modification Agreement or otherwise.

8. The Amended Mortgages were recorded in the Office of the City Register of the City of New York (the "New York City Register") on March 10, 2010 and all mortgage recording taxes due thereon have been paid. True copies of the Second Gap Project Note, the Second Gap Project Mortgage, the Second Consolidated, Amended and Restated Project Note, the Second Consolidated, Amended and Restated Project Mortgage, the Amended and Restated Building Note and the Amended and Restated Building Mortgage, respectively, are attached hereto Exhibits N through S.

9. In addition, SFT perfected its security interests in all of the Debtors' personal property and fixtures by duly filing UCC-1 financing statements with the Delaware Department of State, with respect to personal property, and the New York City Register with respect to fixtures in the Building, for each of the Senior Loan, Project Loan and Building Loan. Following the assignment of the SFT Loans and SFT Mortgages to iStar Tara on March 1, 2009, iStar Tara duly filed UCC-3 amendments with the Delaware Department of State, the New York City Register and the New York Department of State evidencing such assignments. True copies of all such UCC financing statements and amendments are attached hereto as Exhibit T.

---

[2]    The Second Gap Project Mortgage, the Second Consolidated, Amended and Restated Project Mortgage and the Amended and Restated Building Mortgage are referred to herein collectively as the "Amended Mortgages," and together with the SFT Mortgages, as the "Mortgages."

10.     On or about March 16, 2011, iStar Tara assigned all of the Loan Documents, including each of the Mortgages, to iStar Belmont. True copies of the assignment and assumption agreements between iStar Tara as assignor and iStar Belmont as assignee consisting of (i) the Assignment and Assumption of Notes, Mortgages, and Other Loan Documents, (ii) the Assignment and Assumption of Amended and Restated Mortgage with Security Agreement relating to the Building Loan, (iii) the Assignment and Assumption of Consolidated, Amended and Restated Mortgage with Security Agreement relating to the Senior Loan, and (iv) the Assignment and Assumption of Second Consolidated, Amended and Restated Mortgage with Security Agreement relating to the Project Loan, respectively, are attached hereto as Exhibits U through X.

11.     In addition, immediately following the assignments of the Loan Documents, iStar Belmont duly filed UCC-3 amendments with the Delaware Department of State, the New York City Register and the New York Department of State evidencing such assignments. At the time of the filing of this proof of claim, file-stamped copies of these UCC-3 amendments were not available, however, true and correct copies of the unstamped UCC filings are attached hereto as Exhibit Y.

12.     <u>Pre-Bankruptcy Defaults and Receivership</u>.     The Debtors have committed numerous pre-bankruptcy breaches of their obligations under the Loan Agreements, which breaches amount to Events of Default under the Mortgages and other Loan Documents.   In consequence of such Events of Default, by notice of acceleration dated February 18, 2010, iStar Tara declared immediately due and payable all of the Debtors' Obligations.  On the same date, iStar Tara also commenced a foreclosure action (the "Foreclosure Action") in the New York state

court seeking to foreclose the Mortgaged Property and requesting related relief, which action is stayed as a result of the automatic stay in these bankruptcy cases.

13.     After commencing the Foreclosure Action, iStar Tara discovered that the Debtors and their principals engaged in gross misconduct, including a scheme whereby numerous purchase agreements for condominium units in the Building were entered into between the Debtors and their affiliates and/or other third parties without iStar Tara's knowledge or approval and in violation of the Loan Documents. Based on these extreme circumstances, iStar Tara promptly sought appointment of a receiver with expanded powers to take control of the Mortgaged Property. By order entered April 15, 2010, the New York Supreme Court appointed Jonathan H. Newman as Receiver of the Mortgaged Property and, after discovery of additional misconduct by the Debtors' principals, by order entered May 5, 2010 (the "Receiver Order"), the court granted the Receiver expanded powers to preserve and control the Mortgaged Property. A true copy of the Receiver Order is attached hereto as Exhibit Z.

14.     _Protective Advances._ Under the Building Loan Agreement, if the Debtors fail to make any payment or perform any covenant under the Loan Documents or if any Event of Default exists, the Lender is authorized to make such payment or expend funds to perform such covenant or to cure any Event of Default. Such "protective advances" constitute secured indebtedness under the Loan Documents. Specifically, section 11.14 of the Building Loan Agreement provides:

> Any amounts expended by Lender in connection with such action shall constitute additional advances hereunder, the payment of which is additional Indebtedness, secured by the Loan Documents and shall become due and payable upon demand by Lender, with interest at the Default Rate from the date of disbursement thereof until fully paid.

15.     Section 3.7 of the Building Loan Agreement also authorizes the Lender, upon the occurrence of an Event of Default, to take any steps necessary to complete construction of the project and "through an advance of Loan proceeds, make payments due for the cost of development, design and Construction directly to any Contractor, any Subcontractor ... or any other party owed by [the Debtors]." Section 3.7 further provides that "[a]ll such action shall be at [the Debtors'] sole cost and expense, such sums being secured by the Building Loan Mortgage and the other Loan Documents."

16.     As a result of the Events of Default under the Loan Documents and the acceleration of the Loans, the Debtors have had no source of funding to maintain the Mortgaged Property or to continue construction. Consequently, and consistent with the Lender's rights to make protective advances under the Building Loan Agreement, the Receiver Order provides that the Lender shall make protective advances to the Receiver in order to (i) "safeguard the Mortgaged Property and ensure staffing at the Mortgaged Property remains at levels adequate to provide all Building residents all necessary services as may be required by the Offering Plan and governing law," (ii) compensate the managing agent of the Mortgaged Property, (iii) compensate construction and architectural consultants, (iv) compensate legal counsel, (v) complete and/or develop the Mortgaged Property and, (vi) compensate the Receiver. (Receiver Order, at 4-8.) Pursuant to its rights under the Loan Documents and the Receiver Order, prior to the Petition Date, iStar Tara made protective advances on behalf of the Debtors to the managing agent of the Mortgaged Property and to the Receiver for payment of essential construction and maintenance projects and ongoing operating expenses, insurance and taxes.

## 11.    CLAIMS

14.    Claim for Principal, Interest & Fees.  Based on the foregoing, iStar Belmont asserts a secured claim against each of the Debtors, jointly and severally, for principal, interest and fees owed under the Loan Documents.  As detailed in the chart attached hereto as Exhibit AA, as of the Petition Date, there was due and owing to iStar Belmont $233,963,121.96 from the Debtors under the Loan Documents, consisting of (i) outstanding principal in the approximate amount of $207,831,701.76 (including pre-petition protective advances in the amount of $2,961,084.53), and (ii) interest, late charges and certain fees in the approximate amount of $26,131,420.20.

15.    Claim for Fees, Expenses & Indemnities.  iStar Belmont hereby asserts an additional unliquidated claim for other and additional fees, expenses and indemnities arising under the Loan Documents.  The Debtors are obligated pursuant to certain covenants and indemnities contained within the Loan Documents, including without limitation, the covenants and indemnities set forth in Sections 11.1 and 11.3 of the Building Loan Agreement, and related covenants and indemnities set forth in other Loan Documents, to indemnify the Lender and to pay certain fees and expenses as more particularly set forth therein.  Specifically, but without limitation, section 11.1 of the Building Loan Agreement provides:

> Borrower agrees to promptly pay all fees, costs and expenses (including reasonable attorney's fees, court costs, cost of appeal and the reasonable fees, costs and expenses of other professionals retained by Lender) incurred by Lender in connection with the following . . . (E) enforcement of this Agreement or the other Loan Documents.

Additionally, section 11.3 sets forth:

> Borrower agrees to indemnify, pay, defend and hold Lender, its officers, directors, members, partners, shareholders, participants, beneficiaries, trustees, employees, agents, successors and assigns, any subsequent holder of the Senior Loan Note, the Building Loan

Note and the Project Loan Note, any trustee, fiscal agent, Servicer, underwriter and placement agent, (collectively, the "Indemnitees") harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, causes of action, suits, claims, tax liabilities, broker's or finders fees, costs, expenses and disbursements of any kind or nature whatsoever (including the fees and disbursements of counsel for such Indemnities in connection with any investigative, administrative or judicial proceeding commenced or threatened, whether or not such Indemnitee shall be designated a party thereto) and may be imposed on, incurred by, or asserted against Indemnitee, based upon any third party claims against such Indemnitees in any manner related to or arising out of (A) any breach by Borrower or Carveout Guarantor of any representation, warranty, covenant, or other agreement contained in any of the Loan Documents.

16.     As a direct result of the Debtors' various breaches of their obligations under the Loan Documents, the resulting Foreclosure Action and these bankruptcy cases, among other things, iStar Belmont and its predecessors in interest incurred, and continue to incur, substantial legal and other professional fees and expenses. Accordingly, iStar Belmont hereby asserts a secured claim for reimbursement of the fees and expenses of its professionals, including, without limitation, for amounts paid to Katten Muchin Rosenman LLP and Connolly Bove Lodge & Hutz LLP, in an unliquidated amount.

17.     Claim for Receiver Fees.  In addition to the pre-petition protective advances discussed above, on November 19, 2010, iStar Tara paid the Receiver for his fees and expenses for services rendered from April 15, 2010 to May 5, 2010 in the amount of $187,950.78. Accordingly, iStar Belmont hereby asserts an additional secured claim in an amount not less than $187,950.78 for such protective advances made in payment of the Receiver's fees and expenses.[3]

---

[3]     Following the Petition Date, during the involuntary gap period, iStar Tara made additional protective advances on behalf of the Debtors, pursuant to certain orders of this Court, which iStar Belmont asserts are entitled to priority treatment under Section 502(f) of the Bankruptcy Code. However, pursuant to the Court's final order approving DIP financing for the Debtors, entered on March 18, 2011, iStar Belmont is not required to file a proof of claim with respect to any such post-petition claims and, consequently, such claims are not otherwise addressed herein.

18. iStar further reserves all of its rights to supplement this proof of claim with additional information regarding any such claims. iStar is entitled to post-petition interest, attorneys' fees and expenses to the extent provided by law.

19. <u>Setoff, Counterclaim</u>. The claims set forth in this proof of claim are not subject to any valid setoff or counterclaim in favor of the Debtors.

20. <u>No Judgment</u>. No judgment has been rendered on the claims set forth in this proof of claim.

21. <u>Right to Amend</u>. iStar Belmont reserves the right to (i) amend and/or supplement this proof of claim from time to time hereafter as it may deem necessary and proper, including, but not limited to, for purposes of fixing, increasing or amending in any respect the amounts referred to herein, and adding or amending documents and other information and further describing this proof of claim; (ii) file additional proofs of claim for additional claims which may be based upon the same or additional documents, and/or (iii) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507 with respect to claims covered by this proof of claim or any other claims.

22. <u>Notices</u>. All notices in respect of this proof of claim should be sent to:

SFI Belmont LLC
1114 Avenue of the Americas, 39th Floor
New York, NY 10036
Tel: (212) 930-9400
Facsimile: (212) 930-9492
Attn: Nina Matis

-- and --

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022-2585
Tel: (212) 940-7035
Facsimile: (212) 940-7109
Attn: Jeff J. Friedman, Esq.

23.     Bar Date, Reservation of Rights.  This proof of claim is filed under compulsion of

the bar date applicable in these cases and pursuant to Bankruptcy Rule 3003, and is filed to

protect iStar Belmont from forfeiture of claims by reason of said bar date.  Filing of this proof of

claim is not and should not be construed to be, inter alia: (i) a consent by iStar Belmont to the

jurisdiction of this Court with respect to the subject matter of the claims set forth in this proof of

claim, any objection or other proceeding commenced with respect thereto or any other

proceeding commenced in these cases against or otherwise involving iStar Belmont; (ii) a waiver

of the right of iStar Belmont to trial by jury in any proceedings so triable in these cases or any

controversy or proceedings related to these cases; (iii) a waiver or release of any of iStar

Belmont's rights against any of the Debtors, their non-debtor parents and affiliates, or any other

entity or person liable for all or part of any claim described herein; (iv) a waiver of the right to

seek to have the reference withdrawn with respect to the subject matter of these claims, any

objection or other proceedings commenced with respect thereto, or any other proceedings

commenced in this case against or otherwise involving iStar Belmont; (v) a waiver of any right

of subordination in favor of iStar Belmont of indebtedness or liens held by creditors of the

Debtors; (vi) an election of remedies; (vii) a waiver of any rights iStar Belmont may have

pursuant to section 506(b) of the Bankruptcy Code; (viii) a waiver or limitation on the right of

iStar Belmont to vote on any plan or plans of reorganization proposed in any of the above-

captioned cases; or (ix) a waiver of any additional claims or other rights iStar Belmont may have

against the Debtors.

# EXHIBIT C

In re JMJS 23rd Street Realty Owner,  Case No. 10-11868 (KG)

**TO: THE DEBTORS AND THE BANKRUPTCY COURT**

Pursuant to the terms of that certain Assignment of Claims dated as of June ⌊ ⌋, 2011, for value received, Amalgamated Bank, as Trustee of the Longview Ultra Construction Loan Investment Fund ("Assignor"), hereby unconditionally and irrevocably sells, transfers, conveys, and assigns (the "Assignment") to One Madison FM, LLC ("Assignee"), all of Assignor's right, title, interest, claims and causes of action in and to, or arising under or in connection with, that certain claim (the "Proof of Claim") filed by SFI Belmont LLC ("SFI") on April 7, 2012 (subsequently transferred and assigned by SFI to Assignor on or about June ⌊ ⌋, 2011) with the United States Bankruptcy Court for the District of Delaware (the "Court") in Case No. 10-11868 (KG) (the "Chapter 11 Case"), in the amount of at least $234,150,572.74, and identified as Claim No. 35 on the claims register of the Chapter 11 Case. A true and correct copy of the Proof of Claim as filed is attached hereto as Exhibit 1 (excluding exhibits).

This Assignment includes any and all rights with respect to the Proof of Claim.

Assignor hereby waives to the fullest extent permitted by law, with regard to such transfer of the Claim, any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules and applicable law. Assignor acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Assignor transferring to Assignee the foregoing Proof of Claim and recognizing Assignee as the sole owner and holder of the Proof of Claim. Assignor further directs the Debtor, the Bankruptcy Court and all other interested parties that all further notices relating to the Proof of Claim, and all payments or distributions of money or property in respect of the Proof of Claim, shall be delivered or made to the Assignee.

The signature of the Assignor by its duly authorized representative on this document is evidence of the assignment and transfer of the Proof of Claim and all rights associated therewith. The Parties hereto declare under penalty of perjury that the information provided in this notice is true and correct to the best of their knowledge and belief.

IN WITNESS WHEREOF, this EVIDENCE OF ASSIGNMENT AND TRANSFER OF CLAIM IS EXECUTED THIS ⌐⁷ᵗʰ day of June, 2011.

ASSIGNOR:              AMALGAMATED BANK, AS TRUSTEE OF THE LONGVIEW ULTRA CONSTRUCTION LOAN INVESTMENT FUND

Address:              275 Seventh Avenue
                                     New York, NY 10001

Telephone:           212 / 895 - 4934
Name of Representative:
Title:

Signature:
Date:



**JAMES FREEL**
SENIOR VICE PRESIDENT

IN WITNESS WHEREOF, this EVIDENCE OF ASSIGNMENT AND TRANSFER OF CLAIM IS EXECUTED THIS 17ᵗʰ day of June, 2011.

ASSIGNEE:                          ONE MADISON FM, LLC

Address:                           60 COLUMBUS CIRCLE
                                   NEW YORK, NY   10023
Telephone:                         (212) 801-3952
Name of Representative:            RICHARD O'TOOLE
Title:                             AUTHORIZED SIGNATORY

Signature:                         _____
Date:

# EXHIBIT 1

B 10 (Official Form 10) *(04/10)*

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | PROOF OF CLAIM |
|---|---|

| Name of Debtor:     JMJS 23rd Street Realty Owner, LLC | Case Number: 10-11868 (KG) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
SFI Belmont LLC

Name and address where notices should be sent:
SFI Belmont LLC
1114 Avenue of the Americas, 39th Floor
New York, New York 10036
Attn: Nina Matis
Telephone number:
(212) 930-9400

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022
Attn: Jeff J. Friedman, Esq.

(212) 940-8800

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(if known)*

Filed on: _____

Name and address where payment should be sent (if different from above):
SFI Belmont LLC
1114 Avenue of the Americas, 39th Floor
New York, New York 10036
Attn: Nina Matis

Telephone number  (212) 930-9400

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $    $234,150,572.74

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim:     Secured Loans -- See Addendum
(See instruction #2 on reverse side)

3. Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:
Value of Property: $165MM - $175MM (estimate)   Annual Interest Rate See Exhibits
Amount of arrearage and other charges as of time case filed included in secured claim,
if any: $See Addendum   Basis for perfection: See Addendum
Amount of Secured Claim: $165MM - $175MM   Amount Unsecured: $69,150,572.74 - $59,150,572.74

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Amount entitled to priority; You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction #7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAYBE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:
$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| Date:
03/31/2011 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

*[signature]*
Nina Matis, Chief Investment Officer, SFI Belmont LLC | FOR COURT USE ONLY |
|---|---|---|

RECEIVED - FILED
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE
2011 MAY 06 AM 10:27

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or Imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>FKF MADISON GROUP OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11867 (KG) |
| IN RE:<br><br>JMJS 23RD STREET REALTY OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11868 (KG) |
| IN RE:<br><br>MADISON PARK GROUP OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11869 (KG) |
| IN RE:<br><br>SLAZER ENTERPRISES OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11870 (KG) |

## ADDENDUM TO PROOF OF CLAIM OF SFI BELMONT LLC, AS SUCCESSOR-IN-INTEREST TO iSTAR TARA LLC, AGAINST ABOVE-CAPTIONED DEBTORS

This addendum to proof of claim is filed by SFI Belmont LLC ("iStar Belmont"), as successor in interest to iStar Tara LLC ("iStar Tara"), a Delaware limited liability company registered in New York and doing business at 1114 Avenue of the Americas, New York, New York, 10036. iStar Belmont is a lender and the holder of certain mortgages (the "Mortgages" as

hereinafter defined) which secure pre-petition obligations of borrowers FKF Madison Group Owner LLC, JMJS 23rd Street Realty Owner LLC, Madison Park Group Owner LLC and Slazer Enterprises Owner LLC (collectively the "Debtors") to iStar Belmont under the Loan Agreements (as hereinafter defined), and files this proof of claim against each of the Debtors in such capacity pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rule 3003. (Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Loan Agreements).

I. BACKGROUND

1. The Debtors, as tenants-in-common, own certain real property in Manhattan commonly known as the One Madison Park Condominium – a partially constructed luxury residential condominium tower that is approximately 50 stories tall and which is located at 23 East 22nd Street, New York, New York (the "Building").[1] Construction of the Building is still underway, although a small number of units have been sold and are occupied by residents. The Debtors currently own approximately 80% of the condominium units in the Building.

2. iStar Belmont is the holder of the Mortgages encumbering the unsold units and their respective interests in the common elements of the Building, which are valid, enforceable, have been duly recorded, and secure pre-petition, joint and several obligations of the Debtors under the Loan Agreements in the amount of at least $234,150,572.74, as more particularly described below. All of the Debtors' indebtedness to iStar is further secured by assignments of leases and rents, and security interests in all or substantially all of the Debtors' fixtures and personal property, including all accounts, fixtures and personalty, general intangibles, inventory

---

[1] The address of the Building is alternatively listed as 23 East 22nd Street and 20 East 23rd Street, New York, New York in the Loan Documents because, while the main condominium tower is situated on 23rd Street, the Debtors acquired a smaller lot on 22nd Street for the purpose of creating a more desirable entrance on 22nd Street.

and other collateral constituting a part of the Building (collectively with the unsold units and their respective interests in the common elements of the Building, the "Mortgaged Property").

3.　　Bankruptcy Proceedings.　On June 8, 2010, (the "Petition Date") involuntary chapter 7 petitions were filed against each of the Debtors, and on November 19, 2010, the Court entered orders for relief and orders converting each of the Debtors' chapter 7 cases to chapter 11 cases. The Debtors' cases are being jointly administered under case number 10-11867-KG.

4.　　Supporting Documents.　On or about November 16, 2007, iStar Belmont's predecessor in interest, SFT I, Inc. ("SFT"), agreed to advance certain loans (the "SFT Loans") to the Debtors in the maximum aggregate principal amount of up to $238,500,000.00, consisting of: (i) a loan in the aggregate principal amount of up to $70,943,079.00 (the "Senior Loan"), the proceeds of which were to be used primarily to satisfy existing indebtedness encumbering the real estate upon which the Building is situated; (ii) a loan in the aggregate principal amount of up to $35,025,505.00 (the "Project Loan"), the proceeds of which were to be used to pay certain costs pertaining to the Mortgaged Property other than costs of improvement, and (iii) a loan in the aggregate principal amount of up to $132,531,416.00 (the "Building Loan"), the proceeds of which were to be used to pay or reimburse the Debtors for costs of improvement incurred in connection with the construction of the Building (i.e., "hard costs").

5.　　The SFT Loans were evidenced by notes (the SFT Senior Note, SFT Project Note and SFT Building Note, collectively, the "SFT Notes"), which were secured by mortgages (respectively, the SFT Senior Mortgage, SFT Project Mortgage and SFT Building Mortgage, and collectively, the "SFT Mortgages"). The SFT Mortgages were duly recorded on December 20, 2007, and thereafter the SFT Mortgages (together with the SFT Notes and all related loan documents) were assigned to iStar Tara on March 1, 2009 (and such assignments were duly

recorded on March 27, 2009). True copies of the SFT Senior Note, the SFT Senior Mortgage, the SFT Project Note, the SFT Project Mortgage, the SFT Building Note, and the SFT Building Mortgage, respectively, are attached hereto as Exhibits A through F. True copies of the recorded assignment and assumption agreements between SFT as assignor and iStar Tara as assignee relating to the SFT Senior Mortgage, the SFT Project Mortgage and the SFT Building Mortgage, respectively, are attached hereto as Exhibits G, H and I.

6. The SFT Loans were made pursuant to a Building Loan and Security Agreement ("Building Loan Agreement"), a Senior Loan and Security Agreement ("Senior Loan Agreement") and a Project Loan and Security Agreement ("Project Loan Agreement"), each dated as of November 16, 2007, between SFT and the Debtors (collectively, and, as amended, the "Loan Agreements"). On or about March 1, 2009, SFT assigned the Loan Agreements to iStar Tara. True copies of the Senior Loan Agreement, the Project Loan Agreement and the Building Loan Agreement, respectively, are attached hereto as Exhibits J, K and L.

7. By Modification of Loan Agreements and other Documents dated as of June 24, 2009 (the "Modification Agreement"), a true copy of which is attached hereto as Exhibit M, the Debtors and iStar Tara modified the Loan Agreements in certain respects. Pursuant to the Modification Agreement, iStar Tara agreed to advance an additional amount of up to $12,134,080.00 under the Project Loan Agreement (thereby increasing the maximum principal amount of the Project Loan from $35,025,505.00 to $47,159,585.00), and the Debtors executed and delivered the Second Gap Project Note and the Second Gap Project Mortgage in the amount of the increase ($12,134,080.00), together with the Second Consolidated, Amended and Restated Project Note and the Second Consolidated, Amended and Restated Project Mortgage, each in the aggregate maximum principal amount of up to $47,159,585.00. Also pursuant to the

Modification Agreement, the maximum principal amount of the Building Loan was reduced from $132,531,416.00 to $127,633,643.00, and the Debtors executed and delivered the Amended and Restated Building Note and the Amended and Restated Building Mortgage, each in the latter amount.[2] The Modification Agreement thus increased the aggregate maximum principal amount of the Loans from $238,500,000.00 to $245,736,307.00. The SFT Senior Note and the SFT Senior Mortgage were not amended in any respect by the Modification Agreement or otherwise.

8. The Amended Mortgages were recorded in the Office of the City Register of the City of New York (the "New York City Register") on March 10, 2010 and all mortgage recording taxes due thereon have been paid. True copies of the Second Gap Project Note, the Second Gap Project Mortgage, the Second Consolidated, Amended and Restated Project Note, the Second Consolidated, Amended and Restated Project Mortgage, the Amended and Restated Building Note and the Amended and Restated Building Mortgage, respectively, are attached hereto Exhibits N through S.

9. In addition, SFT perfected its security interests in all of the Debtors' personal property and fixtures by duly filing UCC-1 financing statements with the Delaware Department of State, with respect to personal property, and the New York City Register with respect to fixtures in the Building, for each of the Senior Loan, Project Loan and Building Loan. Following the assignment of the SFT Loans and SFT Mortgages to iStar Tara on March 1, 2009, iStar Tara duly filed UCC-3 amendments with the Delaware Department of State, the New York City Register and the New York Department of State evidencing such assignments. True copies of all such UCC financing statements and amendments are attached hereto as Exhibit T.

---

[2]     The Second Gap Project Mortgage, the Second Consolidated, Amended and Restated Project Mortgage and the Amended and Restated Building Mortgage are referred to herein collectively as the "Amended Mortgages," and together with the SFT Mortgages, as the "Mortgages."

10.     On or about March 16, 2011, iStar Tara assigned all of the Loan Documents, including each of the Mortgages, to iStar Belmont. True copies of the assignment and assumption agreements between iStar Tara as assignor and iStar Belmont as assignee consisting of (i) the Assignment and Assumption of Notes, Mortgages, and Other Loan Documents, (ii) the Assignment and Assumption of Amended and Restated Mortgage with Security Agreement relating to the Building Loan, (iii) the Assignment and Assumption of Consolidated, Amended and Restated Mortgage with Security Agreement relating to the Senior Loan, and (iv) the Assignment and Assumption of Second Consolidated, Amended and Restated Mortgage with Security Agreement relating to the Project Loan, respectively, are attached hereto as Exhibits U through X.

11.     In addition, immediately following the assignments of the Loan Documents, iStar Belmont duly filed UCC-3 amendments with the Delaware Department of State, the New York City Register and the New York Department of State evidencing such assignments. At the time of the filing of this proof of claim, file-stamped copies of these UCC-3 amendments were not available, however, true and correct copies of the unstamped UCC filings are attached hereto as Exhibit Y.

12.     <u>Pre-Bankruptcy Defaults and Receivership</u>.    The Debtors have committed numerous pre-bankruptcy breaches of their obligations under the Loan Agreements, which breaches amount to Events of Default under the Mortgages and other Loan Documents. In consequence of such Events of Default, by notice of acceleration dated February 18, 2010, iStar Tara declared immediately due and payable all of the Debtors' Obligations. On the same date, iStar Tara also commenced a foreclosure action (the "Foreclosure Action") in the New York state

court seeking to foreclose the Mortgaged Property and requesting related relief, which action is stayed as a result of the automatic stay in these bankruptcy cases.

13.     After commencing the Foreclosure Action, iStar Tara discovered that the Debtors and their principals engaged in gross misconduct, including a scheme whereby numerous purchase agreements for condominium units in the Building were entered into between the Debtors and their affiliates and/or other third parties without iStar Tara's knowledge or approval and in violation of the Loan Documents. Based on these extreme circumstances, iStar Tara promptly sought appointment of a receiver with expanded powers to take control of the Mortgaged Property. By order entered April 15, 2010, the New York Supreme Court appointed Jonathan H. Newman as Receiver of the Mortgaged Property and, after discovery of additional misconduct by the Debtors' principals, by order entered May 5, 2010 (the "Receiver Order"), the court granted the Receiver expanded powers to preserve and control the Mortgaged Property. A true copy of the Receiver Order is attached hereto as Exhibit Z.

14.     <u>Protective Advances</u>. Under the Building Loan Agreement, if the Debtors fail to make any payment or perform any covenant under the Loan Documents or if any Event of Default exists, the Lender is authorized to make such payment or expend funds to perform such covenant or to cure any Event of Default. Such "protective advances" constitute secured indebtedness under the Loan Documents. Specifically, section 11.14 of the Building Loan Agreement provides:

> Any amounts expended by Lender in connection with such action shall constitute additional advances hereunder, the payment of which is additional Indebtedness, secured by the Loan Documents and shall become due and payable upon demand by Lender, with interest at the Default Rate from the date of disbursement thereof until fully paid.

15.     Section 3.7 of the Building Loan Agreement also authorizes the Lender, upon the occurrence of an Event of Default, to take any steps necessary to complete construction of the project and "through an advance of Loan proceeds, make payments due for the cost of development, design and Construction directly to any Contractor, any Subcontractor ... or any other party owed by [the Debtors]." Section 3.7 further provides that "[a]ll such action shall be at [the Debtors'] sole cost and expense, such sums being secured by the Building Loan Mortgage and the other Loan Documents."

16.     As a result of the Events of Default under the Loan Documents and the acceleration of the Loans, the Debtors have had no source of funding to maintain the Mortgaged Property or to continue construction. Consequently, and consistent with the Lender's rights to make protective advances under the Building Loan Agreement, the Receiver Order provides that the Lender shall make protective advances to the Receiver in order to (i) "safeguard the Mortgaged Property and ensure staffing at the Mortgaged Property remains at levels adequate to provide all Building residents all necessary services as may be required by the Offering Plan and governing law," (ii) compensate the managing agent of the Mortgaged Property, (iii) compensate construction and architectural consultants, (iv) compensate legal counsel, (v) complete and/or develop the Mortgaged Property and, (vi) compensate the Receiver. (Receiver Order, at 4-8.) Pursuant to its rights under the Loan Documents and the Receiver Order, prior to the Petition Date, iStar Tara made protective advances on behalf of the Debtors to the managing agent of the Mortgaged Property and to the Receiver for payment of essential construction and maintenance projects and ongoing operating expenses, insurance and taxes.

## II.  CLAIMS

14.  <u>Claim for Principal, Interest & Fees</u>.  Based on the foregoing, iStar Belmont asserts a secured claim against each of the Debtors, jointly and severally, for principal, interest and fees owed under the Loan Documents.  As detailed in the chart attached hereto as Exhibit AA, as of the Petition Date, there was due and owing to iStar Belmont $233,963,121.96 from the Debtors under the Loan Documents, consisting of (i) outstanding principal in the approximate amount of $207,831,701.76 (including pre-petition protective advances in the amount of $2,961,084.53), and (ii) interest, late charges and certain fees in the approximate amount of $26,131,420.20.

15.  <u>Claim for Fees, Expenses & Indemnities</u>.  iStar Belmont hereby asserts an additional unliquidated claim for other and additional fees, expenses and indemnities arising under the Loan Documents.  The Debtors are obligated pursuant to certain covenants and indemnities contained within the Loan Documents, including without limitation, the covenants and indemnities set forth in Sections 11.1 and 11.3 of the Building Loan Agreement, and related covenants and indemnities set forth in other Loan Documents, to indemnify the Lender and to pay certain fees and expenses as more particularly set forth therein.  Specifically, but without limitation, section 11.1 of the Building Loan Agreement provides:

> Borrower agrees to promptly pay all fees, costs and expenses (including reasonable attorney's fees, court costs, cost of appeal and the reasonable fees, costs and expenses of other professionals retained by Lender) incurred by Lender in connection with the following . . . (E) enforcement of this Agreement or the other Loan Documents.

Additionally, section 11.3 sets forth:

> Borrower agrees to indemnify, pay, defend and hold Lender, its officers, directors, members, partners, shareholders, participants, beneficiaries, trustees, employees, agents, successors and assigns, any subsequent holder of the Senior Loan Note, the Building Loan

Note and the Project Loan Note, any trustee, fiscal agent, Servicer, underwriter and placement agent, (collectively, the "Indemnitees") harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, causes of action, suits, claims, tax liabilities, broker's or finders fees, costs, expenses and disbursements of any kind or nature whatsoever (including the fees and disbursements of counsel for such Indemnities in connection with any investigative, administrative or judicial proceeding commenced or threatened, whether or not such Indemnitee shall be designated a party thereto) and may be imposed on, incurred by, or asserted against Indemnitee, based upon any third party claims against such Indemnitees in any manner related to or arising out of (A) any breach by Borrower or Carveout Guarantor of any representation, warranty, covenant, or other agreement contained in any of the Loan Documents.

16.    As a direct result of the Debtors' various breaches of their obligations under the Loan Documents, the resulting Foreclosure Action and these bankruptcy cases, among other things, iStar Belmont and its predecessors in interest incurred, and continue to incur, substantial legal and other professional fees and expenses. Accordingly, iStar Belmont hereby asserts a secured claim for reimbursement of the fees and expenses of its professionals, including, without limitation, for amounts paid to Katten Muchin Rosenman LLP and Connolly Bove Lodge & Hutz LLP, in an unliquidated amount.

17.    <u>Claim for Receiver Fees</u>. In addition to the pre-petition protective advances discussed above, on November 19, 2010, iStar Tara paid the Receiver for his fees and expenses for services rendered from April 15, 2010 to May 5, 2010 in the amount of $187,950.78. Accordingly, iStar Belmont hereby asserts an additional secured claim in an amount not less than $187,950.78 for such protective advances made in payment of the Receiver's fees and expenses.[3]

---

[3]    Following the Petition Date, during the involuntary gap period, iStar Tara made additional protective advances on behalf of the Debtors, pursuant to certain orders of this Court, which iStar Belmont asserts are entitled to priority treatment under Section 502(f) of the Bankruptcy Code. However, pursuant to the Court's final order approving DIP financing for the Debtors, entered on March 18, 2011, iStar Belmont is not required to file a proof of claim with respect to any such post-petition claims and, consequently, such claims are not otherwise addressed herein.

18. iStar further reserves all of its rights to supplement this proof of claim with additional information regarding any such claims. iStar is entitled to post-petition interest, attorneys' fees and expenses to the extent provided by law.

19. Setoff, Counterclaim. The claims set forth in this proof of claim are not subject to any valid setoff or counterclaim in favor of the Debtors.

20. No Judgment. No judgment has been rendered on the claims set forth in this proof of claim.

21. Right to Amend. iStar Belmont reserves the right to (i) amend and/or supplement this proof of claim from time to time hereafter as it may deem necessary and proper, including, but not limited to, for purposes of fixing, increasing or amending in any respect the amounts referred to herein, and adding or amending documents and other information and further describing this proof of claim; (ii) file additional proofs of claim for additional claims which may be based upon the same or additional documents, and/or (iii) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507 with respect to claims covered by this proof of claim or any other claims.

22. Notices. All notices in respect of this proof of claim should be sent to:

SFI Belmont LLC
1114 Avenue of the Americas, 39th Floor
New York, NY 10036
Tel: (212) 930-9400
Facsimile: (212) 930-9492
Attn: Nina Matis

– and –

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022-2585
Tel: (212) 940-7035
Facsimile: (212) 940-7109
Attn: Jeff J. Friedman, Esq.

23. _Bar Date, Reservation of Rights_. This proof of claim is filed under compulsion of the bar date applicable in these cases and pursuant to Bankruptcy Rule 3003, and is filed to protect iStar Belmont from forfeiture of claims by reason of said bar date. Filing of this proof of claim is not and should not be construed to be, _inter alia_: (i) a consent by iStar Belmont to the jurisdiction of this Court with respect to the subject matter of the claims set forth in this proof of claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in these cases against or otherwise involving iStar Belmont; (ii) a waiver of the right of iStar Belmont to trial by jury in any proceedings so triable in these cases or any controversy or proceedings related to these cases; (iii) a waiver or release of any of iStar Belmont's rights against any of the Debtors, their non-debtor parents and affiliates, or any other entity or person liable for all or part of any claim described herein; (iv) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of these claims, any objection or other proceedings commenced with respect thereto, or any other proceedings commenced in this case against or otherwise involving iStar Belmont; (v) a waiver of any right of subordination in favor of iStar Belmont of indebtedness or liens held by creditors of the Debtors; (vi) an election of remedies; (vii) a waiver of any rights iStar Belmont may have pursuant to section 506(b) of the Bankruptcy Code; (viii) a waiver or limitation on the right of iStar Belmont to vote on any plan or plans of reorganization proposed in any of the above-captioned cases; or (ix) a waiver of any additional claims or other rights iStar Belmont may have against the Debtors.

# EXHIBIT D

## UNITED STATES BANKRUPTCY COURT
### District of Delaware

In re Madison Park Group Owner LLC,          Case No. 10-11869 (KG)

## TO: THE DEBTORS AND THE BANKRUPTCY COURT

Pursuant to the terms of that certain Assignment of Claims dated as of June ⌂, 2011, for value received, Amalgamated Bank, as Trustee of the Longview Ultra Construction Loan Investment Fund ("Assignor"), hereby unconditionally and irrevocably sells, transfers, conveys, and assigns (the "Assignment") to One Madison FM, LLC ("Assignee"), all of Assignor's right, title, interest, claims and causes of action in and to, or arising under or in connection with, that certain claim (the "Proof of Claim") filed by SFI Belmont LLC ("SFI") on April 7, 2012 (subsequently transferred and assigned by SFI to Assignor on or about June ⌂, 2011) with the United States Bankruptcy Court for the District of Delaware (the "Court") in Case No. 10-11869 (KG) (the "Chapter 11 Case"), in the amount of at least $234,150,572.74, and identified as Claim No. 36 on the claims register of the Chapter 11 Case. A true and correct copy of the Proof of Claim as filed is attached hereto as Exhibit 1 (excluding exhibits).

This Assignment includes any and all rights with respect to the Proof of Claim.

Assignor hereby waives to the fullest extent permitted by law, with regard to such transfer of the Claim, any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules and applicable law. Assignor acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Assignor transferring to Assignee the foregoing Proof of Claim and recognizing Assignee as the sole owner and holder of the Proof of Claim. Assignor further directs the Debtor, the Bankruptcy Court and all other interested parties that all further notices relating to the Proof of Claim, and all payments or distributions of money or property in respect of the Proof of Claim, shall be delivered or made to the Assignee.

The signature of the Assignor by its duly authorized representative on this document is evidence of the assignment and transfer of the Proof of Claim and all rights associated therewith. The Parties hereto declare under penalty of perjury that the information provided in this notice is true and correct to the best of their knowledge and belief.

IN WITNESS WHEREOF, this EVIDENCE OF ASSIGNMENT AND TRANSFER OF CLAIM IS EXECUTED THIS 1ᵗʰ day of June, 2011.

ASSIGNOR:

AMALGAMATED BANK, AS TRUSTEE OF THE LONGVIEW ULTRA CONSTRUCTION LOAN INVESTMENT FUND

Address: 275 Seventh Avenue, New York, NY 10001

Telephone: 212 / 895 - 4934
Name of Representative:
Title:

Signature:
Date:


JAMES FREEL
SENIOR VICE PRESIDENT

IN WITNESS WHEREOF, this EVIDENCE OF ASSIGNMENT AND TRANSFER OF CLAIM IS EXECUTED THIS 17ᵗʰ day of June, 2011.

ASSIGNEE:                       ONE MADISON FM, LLC

Address:                        60 COLUMBUS CIRCLE
                                NEW YORK, NY    10023
Telephone:                      (212) 801-3152
Name of Representative:         RICHARD O'TOOLE
Title:                          AUTHORIZED SIGNATORY

Signature:                      _____
Date:

# EXHIBIT 1

# ORIGINAL

/5

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Madison Park Group Owner, LLC | Case Number: 10-11869 (KG) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>SFI Belmont LLC | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>SFI Belmont LLC<br>1114 Avenue of the Americas, 39th Floor<br>New York, New York 10036<br>Attn: Nina Matis<br>Telephone number:<br>(212) 930-9400     Katten Muchin Rosenman LLP<br>575 Madison Avenue<br>New York, New York 10022<br>Attn: Jeff J. Friedman, Esq.<br>(212) 940-8800 | Court Claim Number: _____<br>*(If known)*<br><br>Filed on: _____ |
| Name and address where payment should be sent (if different from above):<br>SFI Belmont LLC<br>1114 Avenue of the Americas, 39th Floor<br>New York, New York 10036<br>Attn: Nina Matis<br>Telephone number: (212) 930-9400 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1.   Amount of Claim as of Date Case Filed: $ _____ 234,150,572.74 _____<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.<br><br>2.   **Basis for Claim:** _____ Secured Loans -- See Addendum _____<br>(See instruction #2 on reverse side)<br><br>3.   Last four digits of any number by which creditor identifies debtor: _____<br>    3a. Debtor may have scheduled account as: _____<br>      (See instruction #3a on reverse side)<br><br>4.   **Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☒ Real Estate   ☐ Motor Vehicle   ☐ Other<br>Describe:<br>**Value of Property:** $165MM - $175MM (estimate)   **Annual Interest Rate** See Exhibits<br><br>**Amount of arrearage and other charges as of time case filed included in secured claim,**<br><br>**If any:** $See Addendum   **Basis for perfection:** See Addendum<br><br>**Amount of Secured Claim:** $165MM - $175MM   **Amount Unsecured:** $69,150,572.74 -<br>                                                          $59,150,572.74<br><br>6.   **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br><br>7.   **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Amount entitled to priority: You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAYBE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).<br><br>☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).<br><br>☐ Contributions to an employee benefit plan – 11 U.S.C §507 (a)(5).<br><br>☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).<br><br>**Amount entitled to priority:**<br><br>$ _____<br><br>*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

RECEIVED / FILED<br>APR 06 2011<br>U.S. BANKRUPTCY COURT<br>DISTRICT OF DELAWARE

| | |
|---|---|
| **Date:**<br>03/31/2011 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>_/s/ Nina Matis_<br>Nina Matis, Chief Investment Officer, SFI Belmont LLC | **FOR COURT USE ONLY**<br><br>U.S. BANKRUPTCY COURT<br>DISTRICT OF DELAWARE<br>'11 APR 06 AM 10:28 |

*Penalty for presenting fraudulent claim.* Fine of up to $500,000 or Imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

84513914v1

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>FKF MADISON GROUP OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11867 (KG) |
| IN RE:<br><br>JMJS 23RD STREET REALTY OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11868 (KG) |
| IN RE:<br><br>MADISON PARK GROUP OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11869 (KG) |
| IN RE:<br><br>SLAZER ENTERPRISES OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11870 (KG) |

## ADDENDUM TO PROOF OF CLAIM OF SFI BELMONT LLC, AS SUCCESSOR-IN-INTEREST TO iSTAR TARA LLC, AGAINST ABOVE-CAPTIONED DEBTORS

This addendum to proof of claim is filed by SFI Belmont LLC ("iStar Belmont"), as successor in interest to iStar Tara LLC ("iStar Tara"), a Delaware limited liability company registered in New York and doing business at 1114 Avenue of the Americas, New York, New York, 10036. iStar Belmont is a lender and the holder of certain mortgages (the "Mortgages" as

hereinafter defined) which secure pre-petition obligations of borrowers FKF Madison Group Owner LLC, JMJS 23rd Street Realty Owner LLC, Madison Park Group Owner LLC and Slazer Enterprises Owner LLC (collectively the "Debtors") to iStar Belmont under the Loan Agreements (as hereinafter defined), and files this proof of claim against each of the Debtors in such capacity pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rule 3003. (Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Loan Agreements).

## I.  BACKGROUND

1.    The Debtors, as tenants-in-common, own certain real property in Manhattan commonly known as the One Madison Park Condominium – a partially constructed luxury residential condominium tower that is approximately 50 stories tall and which is located at 23 East 22nd Street, New York, New York (the "Building").[1]  Construction of the Building is still underway, although a small number of units have been sold and are occupied by residents.  The Debtors currently own approximately 80% of the condominium units in the Building.

2.    iStar Belmont is the holder of the Mortgages encumbering the unsold units and their respective interests in the common elements of the Building, which are valid, enforceable, have been duly recorded, and secure pre-petition, joint and several obligations of the Debtors under the Loan Agreements in the amount of at least $234,150,572.74, as more particularly described below.  All of the Debtors' indebtedness to iStar is further secured by assignments of leases and rents, and security interests in all or substantially all of the Debtors' fixtures and personal property, including all accounts, fixtures and personalty, general intangibles, inventory

---

[1]    The address of the Building is alternatively listed as 23 East 22nd Street and 20 East 23rd Street, New York, New York in the Loan Documents because, while the main condominium tower is situated on 23rd Street, the Debtors acquired a smaller lot on 22nd Street for the purpose of creating a more desirable entrance on 22nd Street.

and other collateral constituting a part of the Building (collectively with the unsold units and their respective interests in the common elements of the Building, the "Mortgaged Property").

3. <u>Bankruptcy Proceedings</u>. On June 8, 2010, (the "Petition Date") involuntary chapter 7 petitions were filed against each of the Debtors, and on November 19, 2010, the Court entered orders for relief and orders converting each of the Debtors' chapter 7 cases to chapter 11 cases. The Debtors' cases are being jointly administered under case number 10-11867-KG.

4. <u>Supporting Documents</u>. On or about November 16, 2007, iStar Belmont's predecessor in interest, SFT I, Inc. ("SFT"), agreed to advance certain loans (the "SFT Loans") to the Debtors in the maximum aggregate principal amount of up to $238,500,000.00, consisting of: (i) a loan in the aggregate principal amount of up to $70,943,079.00 (the "Senior Loan"), the proceeds of which were to be used primarily to satisfy existing indebtedness encumbering the real estate upon which the Building is situated; (ii) a loan in the aggregate principal amount of up to $35,025,505.00 (the "Project Loan"), the proceeds of which were to be used to pay certain costs pertaining to the Mortgaged Property other than costs of improvement, and (iii) a loan in the aggregate principal amount of up to $132,531,416.00 (the "Building Loan"), the proceeds of which were to be used to pay or reimburse the Debtors for costs of improvement incurred in connection with the construction of the Building (i.e., "hard costs").

5. The SFT Loans were evidenced by notes (the SFT Senior Note, SFT Project Note and SFT Building Note, collectively, the "SFT Notes"), which were secured by mortgages (respectively, the SFT Senior Mortgage, SFT Project Mortgage and SFT Building Mortgage, and collectively, the "SFT Mortgages"). The SFT Mortgages were duly recorded on December 20, 2007, and thereafter the SFT Mortgages (together with the SFT Notes and all related loan documents) were assigned to iStar Tara on March 1, 2009 (and such assignments were duly

recorded on March 27, 2009). True copies of the SFT Senior Note, the SFT Senior Mortgage, the SFT Project Note, the SFT Project Mortgage, the SFT Building Note, and the SFT Building Mortgage, respectively, are attached hereto as Exhibits A through F. True copies of the recorded assignment and assumption agreements between SFT as assignor and iStar Tara as assignee relating to the SFT Senior Mortgage, the SFT Project Mortgage and the SFT Building Mortgage, respectively, are attached hereto as Exhibits G, H and I.

6.    The SFT Loans were made pursuant to a Building Loan and Security Agreement ("Building Loan Agreement"), a Senior Loan and Security Agreement ("Senior Loan Agreement") and a Project Loan and Security Agreement ("Project Loan Agreement"), each dated as of November 16, 2007, between SFT and the Debtors (collectively, and, as amended, the "Loan Agreements"). On or about March 1, 2009, SFT assigned the Loan Agreements to iStar Tara. True copies of the Senior Loan Agreement, the Project Loan Agreement and the Building Loan Agreement, respectively, are attached hereto as Exhibits J, K and L.

7.    By Modification of Loan Agreements and other Documents dated as of June 24, 2009 (the "Modification Agreement"), a true copy of which is attached hereto as Exhibit M, the Debtors and iStar Tara modified the Loan Agreements in certain respects. Pursuant to the Modification Agreement, iStar Tara agreed to advance an additional amount of up to $12,134,080.00 under the Project Loan Agreement (thereby increasing the maximum principal amount of the Project Loan from $35,025,505.00 to $47,159,585.00), and the Debtors executed and delivered the Second Gap Project Note and the Second Gap Project Mortgage in the amount of the increase ($12,134,080.00), together with the Second Consolidated, Amended and Restated Project Note and the Second Consolidated, Amended and Restated Project Mortgage, each in the aggregate maximum principal amount of up to $47,159,585.00. Also pursuant to the

Modification Agreement, the maximum principal amount of the Building Loan was reduced from $132,531,416.00 to $127,633,643.00, and the Debtors executed and delivered the Amended and Restated Building Note and the Amended and Restated Building Mortgage, each in the latter amount.[2] The Modification Agreement thus increased the aggregate maximum principal amount of the Loans from $238,500,000.00 to $245,736,307.00. The SFT Senior Note and the SFT Senior Mortgage were not amended in any respect by the Modification Agreement or otherwise.

8.    The Amended Mortgages were recorded in the Office of the City Register of the City of New York (the "New York City Register") on March 10, 2010 and all mortgage recording taxes due thereon have been paid. True copies of the Second Gap Project Note, the Second Gap Project Mortgage, the Second Consolidated, Amended and Restated Project Note, the Second Consolidated, Amended and Restated Project Mortgage, the Amended and Restated Building Note and the Amended and Restated Building Mortgage, respectively, are attached hereto Exhibits N through S.

9.    In addition, SFT perfected its security interests in all of the Debtors' personal property and fixtures by duly filing UCC-1 financing statements with the Delaware Department of State, with respect to personal property, and the New York City Register with respect to fixtures in the Building, for each of the Senior Loan, Project Loan and Building Loan. Following the assignment of the SFT Loans and SFT Mortgages to iStar Tara on March 1, 2009, iStar Tara duly filed UCC-3 amendments with the Delaware Department of State, the New York City Register and the New York Department of State evidencing such assignments. True copies of all such UCC financing statements and amendments are attached hereto as Exhibit T.

---

[2]    The Second Gap Project Mortgage, the Second Consolidated, Amended and Restated Project Mortgage and the Amended and Restated Building Mortgage are referred to herein collectively as the "Amended Mortgages," and together with the SFT Mortgages, as the "Mortgages."

10. On or about March 16, 2011, iStar Tara assigned all of the Loan Documents, including each of the Mortgages, to iStar Belmont. True copies of the assignment and assumption agreements between iStar Tara as assignor and iStar Belmont as assignee consisting of (i) the Assignment and Assumption of Notes, Mortgages, and Other Loan Documents, (ii) the Assignment and Assumption of Amended and Restated Mortgage with Security Agreement relating to the Building Loan, (iii) the Assignment and Assumption of Consolidated, Amended and Restated Mortgage with Security Agreement relating to the Senior Loan, and (iv) the Assignment and Assumption of Second Consolidated, Amended and Restated Mortgage with Security Agreement relating to the Project Loan, respectively, are attached hereto as Exhibits U through X.

11. In addition, immediately following the assignments of the Loan Documents, iStar Belmont duly filed UCC-3 amendments with the Delaware Department of State, the New York City Register and the New York Department of State evidencing such assignments. At the time of the filing of this proof of claim, file-stamped copies of these UCC-3 amendments were not available, however, true and correct copies of the unstamped UCC filings are attached hereto as Exhibit Y.

12. <u>Pre-Bankruptcy Defaults and Receivership.</u> The Debtors have committed numerous pre-bankruptcy breaches of their obligations under the Loan Agreements, which breaches amount to Events of Default under the Mortgages and other Loan Documents. In consequence of such Events of Default, by notice of acceleration dated February 18, 2010, iStar Tara declared immediately due and payable all of the Debtors' Obligations. On the same date, iStar Tara also commenced a foreclosure action (the "Foreclosure Action") in the New York state

court seeking to foreclose the Mortgaged Property and requesting related relief, which action is stayed as a result of the automatic stay in these bankruptcy cases.

13.    After commencing the Foreclosure Action, iStar Tara discovered that the Debtors and their principals engaged in gross misconduct, including a scheme whereby numerous purchase agreements for condominium units in the Building were entered into between the Debtors and their affiliates and/or other third parties without iStar Tara's knowledge or approval and in violation of the Loan Documents. Based on these extreme circumstances, iStar Tara promptly sought appointment of a receiver with expanded powers to take control of the Mortgaged Property. By order entered April 15, 2010, the New York Supreme Court appointed Jonathan H. Newman as Receiver of the Mortgaged Property and, after discovery of additional misconduct by the Debtors' principals, by order entered May 5, 2010 (the "Receiver Order"), the court granted the Receiver expanded powers to preserve and control the Mortgaged Property. A true copy of the Receiver Order is attached hereto as Exhibit Z.

14.    <u>Protective Advances</u>. Under the Building Loan Agreement, if the Debtors fail to make any payment or perform any covenant under the Loan Documents or if any Event of Default exists, the Lender is authorized to make such payment or expend funds to perform such covenant or to cure any Event of Default. Such "protective advances" constitute secured indebtedness under the Loan Documents. Specifically, section 11.14 of the Building Loan Agreement provides:

> Any amounts expended by Lender in connection with such action shall constitute additional advances hereunder, the payment of which is additional Indebtedness, secured by the Loan Documents and shall become due and payable upon demand by Lender, with interest at the Default Rate from the date of disbursement thereof until fully paid.

15.    Section 3.7 of the Building Loan Agreement also authorizes the Lender, upon the occurrence of an Event of Default, to take any steps necessary to complete construction of the project and "through an advance of Loan proceeds, make payments due for the cost of development, design and Construction directly to any Contractor, any Subcontractor ... or any other party owed by [the Debtors]." Section 3.7 further provides that "[a]ll such action shall be at [the Debtors'] sole cost and expense, such sums being secured by the Building Loan Mortgage and the other Loan Documents."

16.    As a result of the Events of Default under the Loan Documents and the acceleration of the Loans, the Debtors have had no source of funding to maintain the Mortgaged Property or to continue construction. Consequently, and consistent with the Lender's rights to make protective advances under the Building Loan Agreement, the Receiver Order provides that the Lender shall make protective advances to the Receiver in order to (i) "safeguard the Mortgaged Property and ensure staffing at the Mortgaged Property remains at levels adequate to provide all Building residents all necessary services as may be required by the Offering Plan and governing law," (ii) compensate the managing agent of the Mortgaged Property, (iii) compensate construction and architectural consultants, (iv) compensate legal counsel, (v) complete and/or develop the Mortgaged Property and, (vi) compensate the Receiver.  (Receiver Order, at 4-8.) Pursuant to its rights under the Loan Documents and the Receiver Order, prior to the Petition Date, iStar Tara made protective advances on behalf of the Debtors to the managing agent of the Mortgaged Property and to the Receiver for payment of essential construction and maintenance projects and ongoing operating expenses, insurance and taxes.

## II.    CLAIMS

14.    Claim for Principal, Interest & Fees. Based on the foregoing, iStar Belmont asserts a secured claim against each of the Debtors, jointly and severally, for principal, interest and fees owed under the Loan Documents. As detailed in the chart attached hereto as Exhibit AA, as of the Petition Date, there was due and owing to iStar Belmont $233,963,121.96 from the Debtors under the Loan Documents, consisting of (i) outstanding principal in the approximate amount of $207,831,701.76 (including pre-petition protective advances in the amount of $2,961,084.53), and (ii) interest, late charges and certain fees in the approximate amount of $26,131,420.20.

15.    Claim for Fees, Expenses & Indemnities. iStar Belmont hereby asserts an additional unliquidated claim for other and additional fees, expenses and indemnities arising under the Loan Documents. The Debtors are obligated pursuant to certain covenants and indemnities contained within the Loan Documents, including without limitation, the covenants and indemnities set forth in Sections 11.1 and 11.3 of the Building Loan Agreement, and related covenants and indemnities set forth in other Loan Documents, to indemnify the Lender and to pay certain fees and expenses as more particularly set forth therein. Specifically, but without limitation, section 11.1 of the Building Loan Agreement provides:

> Borrower agrees to promptly pay all fees, costs and expenses (including reasonable attorney's fees, court costs, cost of appeal and the reasonable fees, costs and expenses of other professionals retained by Lender) incurred by Lender in connection with the following . . . (E) enforcement of this Agreement or the other Loan Documents.

Additionally, section 11.3 sets forth:

> Borrower agrees to indemnify, pay, defend and hold Lender, its officers, directors, members, partners, shareholders, participants, beneficiaries, trustees, employees, agents, successors and assigns, any subsequent holder of the Senior Loan Note, the Building Loan

Note and the Project Loan Note, any trustee, fiscal agent, Servicer, underwriter and placement agent, (collectively, the "Indemnitees") harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, causes of action, suits, claims, tax liabilities, broker's or finders fees, costs, expenses and disbursements of any kind or nature whatsoever (including the fees and disbursements of counsel for such Indemnities in connection with any investigative, administrative or judicial proceeding commenced or threatened, whether or not such Indemnitee shall be designated a party thereto) and may be imposed on, incurred by, or asserted against Indemnitee, based upon any third party claims against such Indemnitees in any manner related to or arising out of (A) any breach by Borrower or Carveout Guarantor of any representation, warranty, covenant, or other agreement contained in any of the Loan Documents.

16. As a direct result of the Debtors' various breaches of their obligations under the Loan Documents, the resulting Foreclosure Action and these bankruptcy cases, among other things, iStar Belmont and its predecessors in interest incurred, and continue to incur, substantial legal and other professional fees and expenses. Accordingly, iStar Belmont hereby asserts a secured claim for reimbursement of the fees and expenses of its professionals, including, without limitation, for amounts paid to Katten Muchin Rosenman LLP and Connolly Bove Lodge & Hutz LLP, in an unliquidated amount.

17. <u>Claim for Receiver Fees</u>. In addition to the pre-petition protective advances discussed above, on November 19, 2010, iStar Tara paid the Receiver for his fees and expenses for services rendered from April 15, 2010 to May 5, 2010 in the amount of $187,950.78. Accordingly, iStar Belmont hereby asserts an additional secured claim in an amount not less than $187,950.78 for such protective advances made in payment of the Receiver's fees and expenses.[3]

---

[3] Following the Petition Date, during the involuntary gap period, iStar Tara made additional protective advances on behalf of the Debtors, pursuant to certain orders of this Court, which iStar Belmont asserts are entitled to priority treatment under Section 502(f) of the Bankruptcy Code. However, pursuant to the Court's final order approving DIP financing for the Debtors, entered on March 18, 2011, iStar Belmont is not required to file a proof of claim with respect to any such post-petition claims and, consequently, such claims are not otherwise addressed herein.

18.  iStar further reserves all of its rights to supplement this proof of claim with additional information regarding any such claims.  iStar is entitled to post-petition interest, attorneys' fees and expenses to the extent provided by law.

19.  <u>Setoff, Counterclaim</u>. The claims set forth in this proof of claim are not subject to any valid setoff or counterclaim in favor of the Debtors.

20.  <u>No Judgment</u>. No judgment has been rendered on the claims set forth in this proof of claim.

21.  <u>Right to Amend</u>. iStar Belmont reserves the right to (i) amend and/or supplement this proof of claim from time to time hereafter as it may deem necessary and proper, including, but not limited to, for purposes of fixing, increasing or amending in any respect the amounts referred to herein, and adding or amending documents and other information and further describing this proof of claim; (ii) file additional proofs of claim for additional claims which may be based upon the same or additional documents, and/or (iii) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507 with respect to claims covered by this proof of claim or any other claims.

22.  <u>Notices</u>. All notices in respect of this proof of claim should be sent to:

SFI Belmont LLC
1114 Avenue of the Americas, 39th Floor
New York, NY 10036
Tel: (212) 930-9400
Facsimile: (212) 930-9492
Attn: Nina Matis

– and –

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022-2585
Tel: (212) 940-7035
Facsimile: (212) 940-7109
Attn: Jeff J. Friedman, Esq.

23.   Bar Date, Reservation of Rights. This proof of claim is filed under compulsion of the bar date applicable in these cases and pursuant to Bankruptcy Rule 3003, and is filed to protect iStar Belmont from forfeiture of claims by reason of said bar date. Filing of this proof of claim is not and should not be construed to be, inter alia: (i) a consent by iStar Belmont to the jurisdiction of this Court with respect to the subject matter of the claims set forth in this proof of claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in these cases against or otherwise involving iStar Belmont; (ii) a waiver of the right of iStar Belmont to trial by jury in any proceedings so triable in these cases or any controversy or proceedings related to these cases; (iii) a waiver or release of any of iStar Belmont's rights against any of the Debtors, their non-debtor parents and affiliates, or any other entity or person liable for all or part of any claim described herein; (iv) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of these claims, any objection or other proceedings commenced with respect thereto, or any other proceedings commenced in this case against or otherwise involving iStar Belmont; (v) a waiver of any right of subordination in favor of iStar Belmont of indebtedness or liens held by creditors of the Debtors; (vi) an election of remedies; (vii) a waiver of any rights iStar Belmont may have pursuant to section 506(b) of the Bankruptcy Code; (viii) a waiver or limitation on the right of iStar Belmont to vote on any plan or plans of reorganization proposed in any of the above-captioned cases; or (ix) a waiver of any additional claims or other rights iStar Belmont may have against the Debtors.

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
District of Delaware

<u>In re Slazer Enterprises Owner LLC,</u>                    Case No. 10-11870 (KG)

## TO: THE DEBTORS AND THE BANKRUPTCY COURT

Pursuant to the terms of that certain Assignment of Claims dated as of June ㇐ᵗ² 2011, for value received, Amalgamated Bank, as Trustee of the Longview Ultra Construction Loan Investment Fund ("Assignor"), hereby unconditionally and irrevocably sells, transfers, conveys, and assigns (the "Assignment") to One Madison FM, LLC ("Assignee"), all of Assignor's right, title, interest, claims and causes of action in and to, or arising under or in connection with, that certain claim (the "Proof of Claim") filed by SFI Belmont LLC ("SFI") on April 7, 2012 (subsequently transferred and assigned by SFI to Assignor on or about June ㇐ᵗ² 2011) with the United States Bankruptcy Court for the District of Delaware (the "Court") in Case No. 10-11870 (KG) (the "Chapter 11 Case"), in the amount of at least $234,150,572.74, and identified as Claim No. 42 on the claims register of the Chapter 11 Case. A true and correct copy of the Proof of Claim as filed is attached hereto as Exhibit 1 (excluding exhibits).

This Assignment includes any and all rights with respect to the Proof of Claim.

Assignor hereby waives to the fullest extent permitted by law, with regard to such transfer of the Claim, any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules and applicable law. Assignor acknowledges and understands, and hereby stipulates, that an order of the Bankruptcy Court may be entered without further notice to Assignor transferring to Assignee the foregoing Proof of Claim and recognizing Assignee as the sole owner and holder of the Proof of Claim. Assignor further directs the Debtor, the Bankruptcy Court and all other interested parties that all further notices relating to the Proof of Claim, and all payments or distributions of money or property in respect of the Proof of Claim, shall be delivered or made to the Assignee.

The signature of the Assignor by its duly authorized representative on this document is evidence of the assignment and transfer of the Proof of Claim and all rights associated therewith. The Parties hereto declare under penalty of perjury that the information provided in this notice is true and correct to the best of their knowledge and belief.

IN WITNESS WHEREOF, this EVIDENCE OF ASSIGNMENT AND TRANSFER OF
CLAIM IS EXECUTED THIS ⌐7ᵗʰ day of June, 2011.

ASSIGNOR:  AMALGAMATED BANK, AS TRUSTEE OF THE LONGVIEW
ULTRA CONSTRUCTION LOAN INVESTMENT FUND

Address: _275 Seventh avenue_
_New York, NY 10001_

Telephone: _212/895-4934_
Name of Representative: _____
Title: _____

Signature: _____
Date: _____



JAMES FREEL
SENIOR VICE PRESIDENT

IN WITNESS WHEREOF, this EVIDENCE OF ASSIGNMENT AND TRANSFER OF CLAIM IS EXECUTED THIS 17th day of June, 2011.

ASSIGNEE:           ONE MADISON FM, LLC

Address:             60 Columbus Circle
                            New York, NY  10023

Telephone:         (212) 801-3752
Name of Representative:  Richard O'Toole
Title:               Authorized Signatory

Signature:         Richard O'Toole
Date:

# EXHIBIT 1

# ORIGINAL

16

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | PROOF OF CLAIM |
|---|---|

| Name of Debtor:  Slazer Enterprises Owner, LLC | Case Number: 10-11870 (KG) |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>SFI Belmont LLC | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>Court Claim Number: _____<br>*(If known)*<br><br>Filed on: _____ |
| Name and address where notices should be sent:<br>SFI Belmont LLC               Katten Muchin Rosenman LLP<br>1114 Avenue of the Americas, 39th Floor    575 Madison Avenue<br>New York, New York 10036          New York, New York 10022<br>Attn: Nina Matis                Attn: Jeff J. Friedman, Esq.<br>Telephone number:<br>(212) 930-9100               (212) 940-8800 | |
| Name and address where payment should be sent (if different from above):<br>SFI Belmont LLC<br>1114 Avenue of the Americas, 39th Floor<br>New York, New York 10036<br>Attn: Nina Matis<br><br>Telephone number:  (212) 930-9400 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1.  Amount or Claim as of Date Case Filed: $ ____234,150,572.74____<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | 5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).<br><br>☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).<br><br>☐ Contributions to an employee benefit plan – 11 U.S.C §507 (a)(5).<br><br>☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C §507 (a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C §507 (a)(___).<br><br>**Amount entitled to priority:**<br><br>$ _____<br><br>*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| 2.  **Basis for Claim:** ____Secured Loans -- See Addendum____<br>(See instruction #2 on reverse side) | |
| 3.  Last four digits of any number by which creditor identifies debtor: _____<br>3a. Debtor may have scheduled account as: _____<br>(See instruction #38 on reverse side) | |
| 4.  **Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff: ☒ Real Estate  ☐ Motor Vehicle  ☐ Other<br>Describe:<br>Value of Property: $165MM - $175MM (estimate)  Annual Interest Rate See Exhibits<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br>if any: See Addendum   Basis for perfection: See Addendum<br><br>Amount of Secured Claim: $165MM - $175MM  **Amount Unsecured:** $69,150,572.74 – $59,150,572.74 | |
| 6.  **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | |

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAYBE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date:<br><br>03/31/2011 | Signature: The person filing this claim must sign it Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>*[signature]*<br>Nina Matis, Chief Investment Officer, SFI Belmont, LLC | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

84513914v1

RECEIVED / FILED

APR 06 2011

U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

2011 APR -6 PM 10: 27

| | |
|---|---|
| IN RE:<br><br>FKF MADISON GROUP OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11867 (KG) |
| IN RE:<br><br>JMJS 23RD STREET REALTY OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11868 (KG) |
| IN RE:<br><br>MADISON PARK GROUP OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11869 (KG) |
| IN RE:<br><br>SLAZER ENTERPRISES OWNER, LLC<br><br>Debtor. | Chapter 11 Case No. 10-11870 (KG) |

**ADDENDUM TO PROOF OF CLAIM OF SFI BELMONT LLC, AS SUCCESSOR-IN-INTEREST TO iSTAR TARA LLC, AGAINST ABOVE-CAPTIONED DEBTORS**

This addendum to proof of claim is filed by SFI Belmont LLC ("iStar Belmont"), as successor in interest to iStar Tara LLC ("iStar Tara"), a Delaware limited liability company registered in New York and doing business at 1114 Avenue of the Americas, New York, New York, 10036. iStar Belmont is a lender and the holder of certain mortgages (the "Mortgages" as

hereinafter defined) which secure pre-petition obligations of borrowers FKF Madison Group Owner LLC, JMJS 23rd Street Realty Owner LLC, Madison Park Group Owner LLC and Slazer Enterprises Owner LLC (collectively the "Debtors") to iStar Belmont under the Loan Agreements (as hereinafter defined), and files this proof of claim against each of the Debtors in such capacity pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rule 3003. (Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Loan Agreements).

## I.    BACKGROUND

1.    The Debtors, as tenants-in-common, own certain real property in Manhattan commonly known as the One Madison Park Condominium – a partially constructed luxury residential condominium tower that is approximately 50 stories tall and which is located at 23 East 22nd Street, New York, New York (the "Building").[1]  Construction of the Building is still underway, although a small number of units have been sold and are occupied by residents. The Debtors currently own approximately 80% of the condominium units in the Building.

2.    iStar Belmont is the holder of the Mortgages encumbering the unsold units and their respective interests in the common elements of the Building, which are valid, enforceable, have been duly recorded, and secure pre-petition, joint and several obligations of the Debtors under the Loan Agreements in the amount of at least $234,150,572.74, as more particularly described below.  All of the Debtors' indebtedness to iStar is further secured by assignments of leases and rents, and security interests in all or substantially all of the Debtors' fixtures and personal property, including all accounts, fixtures and personality, general intangibles, inventory

---

[1]    The address of the Building is alternatively listed as 23 East 22nd Street and 20 East 23rd Street, New York, New York in the Loan Documents because, while the main condominium tower is situated on 23rd Street, the Debtors acquired a smaller lot on 22nd Street for the purpose of creating a more desirable entrance on 22nd Street.

and other collateral constituting a part of the Building (collectively with the unsold units and their respective interests in the common elements of the Building, the "Mortgaged Property").

3.    Bankruptcy Proceedings.    On June 8, 2010, (the "Petition Date") involuntary chapter 7 petitions were filed against each of the Debtors, and on November 19, 2010, the Court entered orders for relief and orders converting each of the Debtors' chapter 7 cases to chapter 11 cases. The Debtors' cases are being jointly administered under case number 10-11867-KG.

4.    Supporting Documents.    On or about November 16, 2007, iStar Belmont's predecessor in interest, SFT I, Inc. ("SFT"), agreed to advance certain loans (the "SFT Loans") to the Debtors in the maximum aggregate principal amount of up to $238,500,000.00, consisting of: (i) a loan in the aggregate principal amount of up to $70,943,079.00 (the "Senior Loan"), the proceeds of which were to be used primarily to satisfy existing indebtedness encumbering the real estate upon which the Building is situated; (ii) a loan in the aggregate principal amount of up to $35,025,505.00 (the "Project Loan"), the proceeds of which were to be used to pay certain costs pertaining to the Mortgaged Property other than costs of improvement, and (iii) a loan in the aggregate principal amount of up to $132,531,416.00 (the "Building Loan"), the proceeds of which were to be used to pay or reimburse the Debtors for costs of improvement incurred in connection with the construction of the Building (i.e., "hard costs").

5.    The SFT Loans were evidenced by notes (the SFT Senior Note, SFT Project Note and SFT Building Note, collectively, the "SFT Notes"), which were secured by mortgages (respectively, the SFT Senior Mortgage, SFT Project Mortgage and SFT Building Mortgage, and collectively, the "SFT Mortgages"). The SFT Mortgages were duly recorded on December 20, 2007, and thereafter the SFT Mortgages (together with the SFT Notes and all related loan documents) were assigned to iStar Tara on March 1, 2009 (and such assignments were duly

recorded on March 27, 2009). True copies of the SFT Senior Note, the SFT Senior Mortgage, the SFT Project Note, the SFT Project Mortgage, the SFT Building Note, and the SFT Building Mortgage, respectively, are attached hereto as Exhibits A through F. True copies of the recorded assignment and assumption agreements between SFT as assignor and iStar Tara as assignee relating to the SFT Senior Mortgage, the SFT Project Mortgage and the SFT Building Mortgage, respectively, are attached hereto as Exhibits G, H and I.

6.     The SFT Loans were made pursuant to a Building Loan and Security Agreement ("Building Loan Agreement"), a Senior Loan and Security Agreement ("Senior Loan Agreement") and a Project Loan and Security Agreement ("Project Loan Agreement"), each dated as of November 16, 2007, between SFT and the Debtors (collectively, and, as amended, the "Loan Agreements"). On or about March 1, 2009, SFT assigned the Loan Agreements to iStar Tara. True copies of the Senior Loan Agreement, the Project Loan Agreement and the Building Loan Agreement, respectively, are attached hereto as Exhibits J, K and L.

7.     By Modification of Loan Agreements and other Documents dated as of June 24, 2009 (the "Modification Agreement"), a true copy of which is attached hereto as Exhibit M, the Debtors and iStar Tara modified the Loan Agreements in certain respects. Pursuant to the Modification Agreement, iStar Tara agreed to advance an additional amount of up to $12,134,080.00 under the Project Loan Agreement (thereby increasing the maximum principal amount of the Project Loan from $35,025,505.00 to $47,159,585.00), and the Debtors executed and delivered the Second Gap Project Note and the Second Gap Project Mortgage in the amount of the increase ($12,134,080.00), together with the Second Consolidated, Amended and Restated Project Note and the Second Consolidated, Amended and Restated Project Mortgage, each in the aggregate maximum principal amount of up to $47,159,585.00. Also pursuant to the

Modification Agreement, the maximum principal amount of the Building Loan was reduced from $132,531,416.00 to $127,633,643.00, and the Debtors executed and delivered the Amended and Restated Building Note and the Amended and Restated Building Mortgage, each in the latter amount.[2] The Modification Agreement thus increased the aggregate maximum principal amount of the Loans from $238,500,000.00 to $245,736,307.00. The SFT Senior Note and the SFT Senior Mortgage were not amended in any respect by the Modification Agreement or otherwise.

8.     The Amended Mortgages were recorded in the Office of the City Register of the City of New York (the "New York City Register") on March 10, 2010 and all mortgage recording taxes due thereon have been paid. True copies of the Second Gap Project Note, the Second Gap Project Mortgage, the Second Consolidated, Amended and Restated Project Note, the Second Consolidated, Amended and Restated Project Mortgage, the Amended and Restated Building Note and the Amended and Restated Building Mortgage, respectively, are attached hereto Exhibits N through S.

9.     In addition, SFT perfected its security interests in all of the Debtors' personal property and fixtures by duly filing UCC-1 financing statements with the Delaware Department of State, with respect to personal property, and the New York City Register with respect to fixtures in the Building, for each of the Senior Loan, Project Loan and Building Loan. Following the assignment of the SFT Loans and SFT Mortgages to iStar Tara on March 1, 2009, iStar Tara duly filed UCC-3 amendments with the Delaware Department of State, the New York City Register and the New York Department of State evidencing such assignments. True copies of all such UCC financing statements and amendments are attached hereto as Exhibit T.

---

[2]     The Second Gap Project Mortgage, the Second Consolidated, Amended and Restated Project Mortgage and the Amended and Restated Building Mortgage are referred to herein collectively as the "Amended Mortgages," and together with the SFT Mortgages, as the "Mortgages."

10. On or about March 16, 2011, iStar Tara assigned all of the Loan Documents, including each of the Mortgages, to iStar Belmont. True copies of the assignment and assumption agreements between iStar Tara as assignor and iStar Belmont as assignee consisting of (i) the Assignment and Assumption of Notes, Mortgages, and Other Loan Documents, (ii) the Assignment and Assumption of Amended and Restated Mortgage with Security Agreement relating to the Building Loan, (iii) the Assignment and Assumption of Consolidated, Amended and Restated Mortgage with Security Agreement relating to the Senior Loan, and (iv) the Assignment and Assumption of Second Consolidated, Amended and Restated Mortgage with Security Agreement relating to the Project Loan, respectively, are attached hereto as Exhibits U through X.

11. In addition, immediately following the assignments of the Loan Documents, iStar Belmont duly filed UCC-3 amendments with the Delaware Department of State, the New York City Register and the New York Department of State evidencing such assignments. At the time of the filing of this proof of claim, file-stamped copies of these UCC-3 amendments were not available, however, true and correct copies of the unstamped UCC filings are attached hereto as Exhibit Y.

12. <u>Pre-Bankruptcy Defaults and Receivership.</u> The Debtors have committed numerous pre-bankruptcy breaches of their obligations under the Loan Agreements, which breaches amount to Events of Default under the Mortgages and other Loan Documents. In consequence of such Events of Default, by notice of acceleration dated February 18, 2010, iStar Tara declared immediately due and payable all of the Debtors' Obligations. On the same date, iStar Tara also commenced a foreclosure action (the "Foreclosure Action") in the New York state

court seeking to foreclose the Mortgaged Property and requesting related relief, which action is stayed as a result of the automatic stay in these bankruptcy cases.

13.     After commencing the Foreclosure Action, iStar Tara discovered that the Debtors and their principals engaged in gross misconduct, including a scheme whereby numerous purchase agreements for condominium units in the Building were entered into between the Debtors and their affiliates and/or other third parties without iStar Tara's knowledge or approval and in violation of the Loan Documents. Based on these extreme circumstances, iStar Tara promptly sought appointment of a receiver with expanded powers to take control of the Mortgaged Property. By order entered April 15, 2010, the New York Supreme Court appointed Jonathan H. Newman as Receiver of the Mortgaged Property and, after discovery of additional misconduct by the Debtors' principals, by order entered May 5, 2010 (the "Receiver Order"), the court granted the Receiver expanded powers to preserve and control the Mortgaged Property. A true copy of the Receiver Order is attached hereto as Exhibit Z.

14.     <u>Protective Advances</u>. Under the Building Loan Agreement, if the Debtors fail to make any payment or perform any covenant under the Loan Documents or if any Event of Default exists, the Lender is authorized to make such payment or expend funds to perform such covenant or to cure any Event of Default. Such "protective advances" constitute secured indebtedness under the Loan Documents. Specifically, section 11.14 of the Building Loan Agreement provides:

> Any amounts expended by Lender in connection with such action shall constitute additional advances hereunder, the payment of which is additional Indebtedness, secured by the Loan Documents and shall become due and payable upon demand by Lender, with interest at the Default Rate from the date of disbursement thereof until fully paid.

15.. Section 3.7 of the Building Loan Agreement also authorizes the Lender, upon the occurrence of an Event of Default, to take any steps necessary to complete construction of the project and "through an advance of Loan proceeds, make payments due for the cost of development, design and Construction directly to any Contractor, any Subcontractor ... or any other party owed by [the Debtors]." Section 3.7 further provides that "[a]ll such action shall be at [the Debtors'] sole cost and expense, such sums being secured by the Building Loan Mortgage and the other Loan Documents."

16. As a result of the Events of Default under the Loan Documents and the acceleration of the Loans, the Debtors have had no source of funding to maintain the Mortgaged Property or to continue construction. Consequently, and consistent with the Lender's rights to make protective advances under the Building Loan Agreement, the Receiver Order provides that the Lender shall make protective advances to the Receiver in order to (i) "safeguard the Mortgaged Property and ensure staffing at the Mortgaged Property remains at levels adequate to provide all Building residents all necessary services as may be required by the Offering Plan and governing law," (ii) compensate the managing agent of the Mortgaged Property, (iii) compensate construction and architectural consultants, (iv) compensate legal counsel, (v) complete and/or develop the Mortgaged Property and, (vi) compensate the Receiver. (Receiver Order, at 4-8.) Pursuant to its rights under the Loan Documents and the Receiver Order, prior to the Petition Date, iStar Tara made protective advances on behalf of the Debtors to the managing agent of the Mortgaged Property and to the Receiver for payment of essential construction and maintenance projects and ongoing operating expenses, insurance and taxes.

## II.  CLAIMS

14.  <u>Claim for Principal, Interest & Fees</u>.  Based on the foregoing, iStar Belmont asserts a secured claim against each of the Debtors, jointly and severally, for principal, interest and fees owed under the Loan Documents.  As detailed in the chart attached hereto as Exhibit AA, as of the Petition Date, there was due and owing to iStar Belmont $233,963,121.96 from the Debtors under the Loan Documents, consisting of (i) outstanding principal in the approximate amount of $207,831,701.76 (including pre-petition protective advances in the amount of $2,961,084.53), and (ii) interest, late charges and certain fees in the approximate amount of $26,131,420.20.

15.  <u>Claim for Fees, Expenses & Indemnities</u>.  iStar Belmont hereby asserts an additional unliquidated claim for other and additional fees, expenses and indemnities arising under the Loan Documents.  The Debtors are obligated pursuant to certain covenants and indemnities contained within the Loan Documents, including without limitation, the covenants and indemnities set forth in Sections 11.1 and 11.3 of the Building Loan Agreement, and related covenants and indemnities set forth in other Loan Documents, to indemnify the Lender and to pay certain fees and expenses as more particularly set forth therein.  Specifically, but without limitation, section 11.1 of the Building Loan Agreement provides:

> Borrower agrees to promptly pay all fees, costs and expenses (including reasonable attorney's fees, court costs, cost of appeal and the reasonable fees, costs and expenses of other professionals retained by Lender) incurred by Lender in connection with the following . . . (E) enforcement of this Agreement or the other Loan Documents.

Additionally, section 11.3 sets forth:

> Borrower agrees to indemnify, pay, defend and hold Lender, its officers, directors, members, partners, shareholders, participants, beneficiaries, trustees, employees, agents, successors and assigns, any subsequent holder of the Senior Loan Note, the Building Loan

Note and the Project Loan Note, any trustee, fiscal agent, Servicer, underwriter and placement agent, (collectively, the "Indemnitees") harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, causes of action, suits, claims, tax liabilities, broker's or finders fees, costs, expenses and disbursements of any kind or nature whatsoever (including the fees and disbursements of counsel for such Indemnities in connection with any investigative, administrative or judicial proceeding commenced or threatened, whether or not such Indemnitee shall be designated a party thereto) and may be imposed on, incurred by, or asserted against Indemnitee, based upon any third party claims against such Indemnitees in any manner related to or arising out of (A) any breach by Borrower or Carveout Guarantor of any representation, warranty, covenant, or other agreement contained in any of the Loan Documents.

16. As a direct result of the Debtors' various breaches of their obligations under the Loan Documents, the resulting Foreclosure Action and these bankruptcy cases, among other things, iStar Belmont and its predecessors in interest incurred, and continue to incur, substantial legal and other professional fees and expenses. Accordingly, iStar Belmont hereby asserts a secured claim for reimbursement of the fees and expenses of its professionals, including, without limitation, for amounts paid to Katten Muchin Rosenman LLP and Connolly Bove Lodge & Hutz LLP, in an unliquidated amount.

17. <u>Claim for Receiver Fees</u>. In addition to the pre-petition protective advances discussed above, on November 19, 2010, iStar Tara paid the Receiver for his fees and expenses for services rendered from April 15, 2010 to May 5, 2010 in the amount of $187,950.78. Accordingly, iStar Belmont hereby asserts an additional secured claim in an amount not less than $187,950.78 for such protective advances made in payment of the Receiver's fees and expenses.[3]

---

[3] Following the Petition Date, during the involuntary gap period, iStar Tara made additional protective advances on behalf of the Debtors, pursuant to certain orders of this Court, which iStar Belmont asserts are entitled to priority treatment under Section 502(f) of the Bankruptcy Code. However, pursuant to the Court's final order approving DIP financing for the Debtors, entered on March 18, 2011, iStar Belmont is not required to file a proof of claim with respect to any such post-petition claims and, consequently, such claims are not otherwise addressed herein.

18.     iStar further reserves all of its rights to supplement this proof of claim with additional information regarding any such claims. iStar is entitled to post-petition interest, attorneys' fees and expenses to the extent provided by law.

19.     _Setoff, Counterclaim._  The claims set forth in this proof of claim are not subject to any valid setoff or counterclaim in favor of the Debtors.

20.     _No Judgment._  No judgment has been rendered on the claims set forth in this proof of claim.

21.     _Right to Amend._  iStar Belmont reserves the right to (i) amend and/or supplement this proof of claim from time to time hereafter as it may deem necessary and proper, including, but not limited to, for purposes of fixing, increasing or amending in any respect the amounts referred to herein, and adding or amending documents and other information and further describing this proof of claim; (ii) file additional proofs of claim for additional claims which may be based upon the same or additional documents, and/or (iii) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507 with respect to claims covered by this proof of claim or any other claims.

22.     _Notices._  All notices in respect of this proof of claim should be sent to:

SFI Belmont LLC
1114 Avenue of the Americas, 39th Floor
New York, NY 10036
Tel: (212) 930-9400
Facsimile: (212) 930-9492
Attn: Nina Matis

– and –

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022-2585
Tel: (212) 940-7035
Facsimile: (212) 940-7109
Attn: Jeff J. Friedman, Esq.

23.     Bar Date, Reservation of Rights.  This proof of claim is filed under compulsion of

the bar date applicable in these cases and pursuant to Bankruptcy Rule 3003, and is filed to

protect iStar Belmont from forfeiture of claims by reason of said bar date.  Filing of this proof of

claim is not and should not be construed to be, inter alia: (i) a consent by iStar Belmont to the

jurisdiction of this Court with respect to the subject matter of the claims set forth in this proof of

claim, any objection or other proceeding commenced with respect thereto or any other

proceeding commenced in these cases against or otherwise involving iStar Belmont; (ii) a waiver

of the right of iStar Belmont to trial by jury in any proceedings so triable in these cases or any

controversy or proceedings related to these cases; (iii) a waiver or release of any of iStar

Belmont's rights against any of the Debtors, their non-debtor parents and affiliates, or any other

entity or person liable for all or part of any claim described herein; (iv) a waiver of the right to

seek to have the reference withdrawn with respect to the subject matter of these claims, any

objection or other proceedings commenced with respect thereto, or any other proceedings

commenced in this case against or otherwise involving iStar Belmont; (v) a waiver of any right

of subordination in favor of iStar Belmont of indebtedness or liens held by creditors of the

Debtors; (vi) an election of remedies; (vii) a waiver of any rights iStar Belmont may have

pursuant to section 506(b) of the Bankruptcy Code; (viii) a waiver or limitation on the right of

iStar Belmont to vote on any plan or plans of reorganization proposed in any of the above-

captioned cases; or (ix) a waiver of any additional claims or other rights iStar Belmont may have

against the Debtors.