**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FKF MADISON GROUP OWNER LLC, *et al.*, | Case No. 10-11867 (KG) |
| Debtors. | Jointly Administered<br>**Re: D.I. 369, 529** |

### STATEMENT OF ONE MADISON FM, LLC IN RESPONSE TO DEBTORS' MOTION FOR SECOND ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c) AND FED. R. BANKR. P. 2002, 4001 AND 9014 AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

One Madison FM, LLC ("OMF"), as pre-petition secured creditor under the Loan Documents[1] and post-petition operations DIP lender pursuant to the Final DIP Order[2] files this statement in response (the "Statement")[3] to the Debtors' motion (the "Motion") for entry of an order (the "HFZ DIP Order") authorizing the Debtors to obtain post-petition financing from HFZ Capital Group, LLC through July 31, 2011 and respectfully represents as follows:

---

[1] The Loan Documents include, without limitation, the (i) *Senior Loan and Security Agreement*, (ii) *Building Loan and Security Agreement*, and (iii) *Project Loan and Security Agreement*, all dated November 16, 2007, and all collateral documents executed in connection thereto. OMF acquired the pre-petition secured claims under the Loan Documents as reflected in the Notices of Transfer of Claims Pursuant to FRBP 3001(e) filed on June 23, 2011 [D.I. 508 and 509].

[2] *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c), and Fed. R. Bankr. P. 2002, 4001 and 9014 Authorizing Debtors to Obtain Post-Petition Financing* [D.I. 369]. OMF acquired the (i) operational DIP loans claims as detailed in the Final Order, and (ii) administrative priority claims and involuntary gap claims authorized and approved by the Bankruptcy Court which were previously held by SFI Belmont LLC.

[3] Given that the Motion was filed after 11:00 p.m. (ET) and is different than what the Debtors represented it would say, OMF reserves all of its rights to object to the Motion on the grounds set forth herein, and raise any other issues at the hearing. Based on OMF's quick read of the Motion and the form of order in the short time it has had, OMF understands that the proposed DIP Loans will not in any manner prime OMF's pre-petition collateral, nor will HFZ be granted post-petition liens on any of the Debtors' post-petition property other than cash advanced by HFZ and not used. To the extent that the HFZ DIP would permit HFZ any such priming liens, OMF objects.

**Statement**

1. The Debtors' Motion seeks the Court's approval of a 30-day DIP loan. As the Debtors correctly note in their Motion, iStar's claims against the Debtors have been transferred to Amalgamated and further transferred to OMF. Accordingly, OMF now holds the entirety of the Debtors' pre-petition secured debt, totaling at least $234 million, secured by a mortgage on the Debtors' Property (the Debtors' only material asset) (the "Property").[4] OMF is most interested in making sure that the Debtors maximize value for OMF and the Debtors' other creditor constituents by encouraging an open, robust marketing process for the property.

2. Unfortunately, the Debtors' marketing process to date has been woefully inadequate. Despite the Debtors statement in their Motion that "through an auction process, [the Debtors] selected an affiliate of HFZ as the plan sponsor offering the highest and best proposal to maximize the value of the Debtors' estates," (Motion ¶ 13) it is clear that the so-called auction process was not designed to encourage bidding. Indeed, OMF understands that the Debtors did not hire a real estate broker to market the Property in the public arena and did not do a public marketing process inviting prospective purchasers to bid on the Property. Nor did the Debtors seek the Court's approval of a bid procedures mechanism to ensure a fair market test. Instead, it appears that a purchase price was contrived as a means to deal with the senior piece of the debt, bearing no relationship to the market value of the Property. This private deal would summarily wipe out approximately $90 million in junior indebtedness held by Amalgamated. As set forth in Exhibit A , in order to defend itself from being wiped out, Amalgamated exercised its contractual

---

[4] Rather than recite a detailed history of OMF's claims and the genesis of the HFZ Plan, OMF refers the Court to the *Preliminary Objection of Amalgamated Bank to the Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. 1121(d) Further Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof and Reservation Of Rights* [D.I. 495] (the "Amalgamated Objection"). A true and correct copy of the Amalgamated Objection is attached to this Statement as Exhibit A.

rights and bought iStar's senior position unifying the senior and junior debt into one holder – Amalgamated. Thereafter, the unified debt was transferred to OMF.

3. The Debtors filed the HFZ plan (the "HFZ Plan") which is premised on the same scheme and artificial value, and would wipe out approximately $90 million in claims now held by OMF that are secured by the Property. Under that plan, the $162 million has somehow morphed into the "value of the property" for the cramdown note offered to OMF in the HFZ Plan, even though the two concepts have nothing to do with one another. This maneuver will fail and is wholly unacceptable. For these bankruptcy cases to have any legitimacy, the HFZ Plan, which is keyed off the results of the flawed private auction, must be abandoned in favor of an open market process as suggested by OMF.

4. OMF has informed the Debtors that the HFZ Plan is unacceptable and that the Debtors should abandon that plan and open up the marketing process or allow for competing plans to be filed. The $162 million bid embodied in the HFZ Plan vastly undervalues the Property. Indeed, OMF has recently approached the Debtors with an offer in hand – a binding commitment, subject to higher or better offers, to sponsor a plan of reorganization which would result in an initial bid that would provide at least $58 million in additional value to secured creditors (*i.e.*, a starting bid for the Property at $220 million versus HFZ's $162 million), and which would also provide increased recoveries to unsecured creditors compared with the HFZ Plan.

5. Critically, and in direct contrast with the HFZ Plan, the OMF commitment is premised upon – and in fact insists upon – the Debtors running a robust, open marketing process to market test value. Moreover, the OMF commitment (i) provides for enhanced recoveries to both secured and unsecured creditors, and (ii) would not need to resort to the kinds of desperate

efforts contained in the HFZ Plan (including attempting to characterize the secured portion of OMF's claim as unimpaired despite giving OMF a cramdown note; and attempting to treat OMF's deficiency claim differently (*i.e.*, zero recovery) from other general unsecured claims). The OMF sponsored plan can be confirmed, whereas the HFZ Plan cannot. A further reason that the HFZ Plan will not be confirmed is that it contains an express condition precedent that the Property is valued not in excess of $162 million; but OMF's first bid for the Property at $220 million already renders the HFZ Plan a nullity.

6. The Motion represents to the Court that the Debtors "have engaged in discussions with OMF with respect to a number of issues, including OMF's willingness to sponsor a plan that OMF asserts is better than the Plan. The Debtors intend to continue those discussions during the July 2011 Period." Motion ¶ 14.

7. While OMF is hopeful that the Debtors will be true to their word, OMF has concerns as to the Debtors' intentions. Notably, despite several requests by OMF, the Debtors have refused to adjourn their disclosure statement hearing on the HFZ Plan. The disclosure statement hearing is currently set for July 28, 2011 with a July 21, 2011 objection deadline. If the Debtors truly intend to have good faith discussions as to the OMF proposal (which expires on July 7), they should pull the HFZ Plan – or at the very least adjourn their disclosure statement hearing. The HFZ Plan is dead on arrival, and the impending July 21 objection deadline will serve as a needless distraction.

RLF1 4190799v. 1

Dated: July 1, 2011
      Wilmington, Delaware

    */s/*   Zachary I. Shapiro
    Russell C. Silberglied (No. 3462)
    Zachary I. Shapiro (No. 5103)
    **RICHARDS, LAYTON & FINGER, PA**
    One Rodney Square
    920 North King Street
    Wilmington, Delaware 19801
    Telephone: (302) 651-7700
    Facsimile: (302) 651-7701

    **- AND -**

    **HAYNES AND BOONE, LLP**
    30 Rockefeller Plaza, 26th Floor
    New York, New York 10020
    Telephone: (212) 659-7300
    Facsimile: (212) 884-8211
    Lawrence A. Mittman (admitted *pro hac vice*)
    Lenard M. Parkins (admitted *pro hac vice*)
    Trevor Hoffmann (admitted *pro hac vice*)

    **ATTORNEYS FOR ONE MADISON FM, LLC**

5

RLF1 4190799v. 1