# **<u>EXHIBIT A</u>**

June 30, 2011

FKF Madison Group Owner LLC and its affiliated debtors
c/o John Fioretti, Chief Restructuring Officer
Turnaround Advisors LLC
11320 Dixie Glen Dr., Suite 213
Charlotte, NC 28277-3094

## Binding Commitment for the
## Acquisition of the Debtors or the Debtors' Assets

One Madison FM, LLC ("*OMF*"), is pleased to submit this letter (this "*Commitment Letter*") and the accompanying *Indicative Terms for OMF Plan*, attached hereto as "Exhibit A" and incorporated herein by reference for all purposes (the "*Term Sheet*") to FKF Madison Group Owner LLC and its affiliated debtors (the "*Debtors*"), whose cases are being jointly administered in the bankruptcy case styled *In re FKF Madison Group Owner LLC, et al.*, Case No. 10-11867 (KG), United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Cases*"), which sets forth, among other things, our binding commitment (the "*Commitment*") to provide equity capital for the restructuring of the debt and equity of the Debtors (the "*Financial Restructuring*"). The following is an outline of the principal terms and conditions of the proposed Financial Restructuring, which will be effectuated in the form of a confirmed and consummated plan of reorganization (the "*OMF Plan*"), with OMF acting as a co-proponent with the Debtors (the "*Plan Proponents*") of the OMF Plan (after an open and fulsome marketing process, as described below).[1] Upon the OMF Plan being confirmed, the OMF Plan will supersede and replace this Commitment Letter in all respects.

Upon execution by the Debtors, this Commitment Letter shall be binding, but remain subject to definitive documentation and the conditions to confirmation and effectiveness delineated herein. The Commitment Letter and this Term Sheet are *not* all-inclusive and do *not* purport to enumerate or contain all of the terms, provisions and conditions which would be contained in definitive documentation for the proposed Financial Restructuring. This Commitment Letter is not a solicitation of acceptances or rejections with respect to any restructuring or plan of reorganization. Any such solicitation will be conducted in accordance with the Bankruptcy Code and/or applicable non-bankruptcy law.

OMF expressly reserves and preserves all, and nothing in this Commitment Letter shall affect in any way, nor be deemed a waiver of any, of the rights of OMF or its affiliated entities, including, without limitation, (a) under that certain (i) *Senior Loan and Security Agreement*, (ii) *Building Loan and Security Agreement*, (iii) *Project Loan and Security Agreement*, all dated November 16, 2007, and all collateral documents executed in connection thereto (collectively, as amended, the "*Loan Documents*"), (b) any other document, and (c) under applicable law and in equity. The treatment of the Allowed Secured Claims as described herein is only with respect to the Debtors and the Property and specifically does not apply to OMF's rights against any other party and any other property, all of which rights are expressly reserved and preserved.

Effective immediately and as a condition precedent to OMF's proceeding consensually with the Debtors under this Commitment Letter, the Debtors will, in acknowledgement of the fact that OMF has advised the Debtors that the *Debtors' Joint Consolidated Plan of Reorganization for FKF Madison*

---

[1] For the avoidance of doubt, the OMF Plan may not be amended or modified without the express written consent of OMF.

1

*Group Owner, LLC and its Affiliated Debtors* [D.I. 498] (the "*HFZ Plan*") and the disclosure statement filed in connection therewith [D.I. 499] (the "*HFZ Disclosure Statement*") are unacceptable, (i) withdraw (and agree that they shall not refile) the HFZ Plan and the HFZ Disclosure Statement no later than July 7, 2011 at 5:00 p.m. (ET) with time being of the essence, and (ii) enter into a 90-day post-petition financing arrangement with OMF, whereby OMF will provide the Debtors with amounts to fund both the Debtors' operations and its administrative costs as set forth on an agreed-upon budget submitted by the Debtors and acceptable to OMF (the "*OMF DIP*"), as embodied in a Bankruptcy Court order and attached DIP term sheet amending the Final DIP Order currently on file in the Debtors' bankruptcy cases, all of which shall be in form and substance acceptable to OMF in its sole and absolute discretion (the "*OMF DIP Order*").[2] The Debtors shall agree that they will not seek to secure, and they shall not accept, post-petition financing from any other party that provides for super-priority claims or priming liens on any of OMF's pre-petition or post-petition collateral.

Immediately after the HFZ Plan and the HFZ Disclosure Statement are withdrawn and the OMF DIP Order is entered approving the OMF DIP (as described in the preceding paragraph), OMF will work with the Debtors to finalize the OMF Plan along with an explanatory disclosure statement (the "*OMF Disclosure Statement*"), both to be filed no later than July 21, 2011 at 5:00 p.m. (ET) (time being of the essence), providing for, among other things, OMF's acquisition of 100% of the Debtors' assets (the "*Property*") that secures the senior secured claims arising under the Loan Documents, other than the 12 residential units listed on "Exhibit B" (the "*OMF Secured Claims*") for an acquisition price that is at least $58 million greater than the acquisition price embodied in the HFZ Plan.[3] The OMF Initial Acquisition Price (defined below) includes a Property Component (defined below) at $220 million, and treatment of the OMF Secured Claims and the other claims against the Debtors, as more specifically provided in the OMF Plan. Upon the OMF Plan being confirmed, the OMF Plan will supersede and replace this Commitment Letter in all respects.

Pursuant to a pleading filed by the Debtors no later than July 7, 2011, the Debtors will move the Bankruptcy Court to enter, no later than July 31, 2011, a separate order (the "*Commitment Letter Order*") acceptable to OMF, providing that the Debtors' exclusive periods to file and solicit acceptances for a plan of reorganization (the "*Exclusive Periods*") will terminate immediately and automatically without any necessary predicate action by any party or further Order of the Bankruptcy Court, and the Debtors are deemed to have waived any right under section 105 of the Bankruptcy Code or otherwise to enjoin or otherwise seek to prevent such termination of the Exclusivity Periods, if (i) the Debtors withdraw the OMF Plan, or (ii) the Debtors file a plan other than the OMF Plan (a "*Competing Plan*"), (iii) the Debtors fail to prosecute the OMF Plan as contemplated herein, or (iv) a Termination Event (defined below) occurs.

The Bankruptcy Court will determine the adequacy of the OMF Disclosure Statement at a date, subject to the Bankruptcy Court's docket, no later than August 31, 2011.

In the event the OMF Plan is confirmed by the Bankruptcy Court, in connection with the Financial Restructuring, on the effective date of the Confirmed Plan (the "*Effective Date*"), OMF or its designee or assignee (the "*New Property Owner*") will own the Property free and clear of all liens, claims, rights, interests, security interests and encumbrances of any kind (except those that are

---

[2] *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c), and Fed. R. Bankr. P. 2002, 4001 and 9014 Authorizing Debtors to Obtain Post-Petition Financing* [Docket No. 369].

[3] The HFZ Plan proposed treatment of the Secured Claims was a $162 million cram-down note, bearing an interest rate of 6.75% interest rate for a 7-year term. OMF does not concede that such cram-down note is in fact worth $162 million.

specifically acceptable to OMF in its sole and absolute discretion), pursuant to an OMF-approved transfer mechanism and ownership structure (acceptable in form and substance to OMF, in its sole and absolute discretion) (the "*OMF Ownership Structure*").[4] The OMF Ownership Structure shall not affect or change the treatment of all other claims and interests under the OMF Plan as summarized herein.

### A. *The OMF Plan*

The OMF Plan will provide treatment to creditors and interest holders, implemented on the Effective Date, as set forth in the Term Sheet. All pleadings, notices and other filings in connection with the OMF Plan shall be in form and substance acceptable to OMF in its reasonable discretion.

OMF is qualified to consummate the Financial Restructuring. An affiliate of the Related Companies, one of New York's largest real estate developers, is the managing member of One Madison R/A Holdings, LLC, OMF's sole member. That fact along with OMF's status as the holder of the Secured Claims and the Debtors' debtor in possession lender in the Debtors' bankruptcy cases puts OMF in a unique position to expeditiously accomplish the Financial Restructuring of these real estate bankruptcy cases. OMF will make itself familiar with the Debtors' assets and operating performance, obtained from its review of public filings and its own due diligence.

### B. *OMF Initial Acquisition Price*

OMF's initial acquisition price for the Property will be (i) a bid in an amount allocable to the Property ("*Property Component*") of $220 million, which is at least $58 million greater than the Property Component embodied in the HFZ Plan, plus (ii) all cash necessary to effectuate the OMF Plan pursuant to this Commitment ("*Plan Component*") for the total initial acquisition price of approximately $248 million (the "*OMF Initial Acquisition Price*"). An acquisition price submitted by a party other than OMF must likewise include a Property Component and a Plan Component (an "*Acquisition Price*").

### C. *Capital Commitments*

Subject to the conditions set forth herein and in the Term Sheet, OMF hereby submits this binding offer to provide cash to fund the Plan Component of the OMF Plan, to be effectuated on the Effective Date, subject to the terms and conditions of this Commitment Letter and the Term Sheet.[5]

In connection with the foregoing, OMF hereby confirms that, as of July 21, 2011, it will have available the cash commitments necessary to fund the Plan Component of the OMF Initial Acquisition Price. There shall be no financing contingency or "out."

### D. *OMF Plan Subject to Higher and Better Offers*

OMF acknowledges, in fact it has insisted, that the OMF Plan will be subject to higher and better offers for creditor treatment by virtue of the Debtors marketing the Property and inviting Acquisition Price bidding. For the avoidance of doubt, OMF shall have an unfettered and absolute

---

[4] The OMF Ownership Structure shall be filed in a supplement to the OMF Plan seven (7) business days prior to the deadline established by the Bankruptcy Court for voting on the OMF Plan.

[5] For the avoidance of doubt, OMF hereby reserves and preserves its right to credit bid any of its claims with respect to any disposition of the Property, including at any time in the Debtors' bankruptcy cases.

right to file the OMF Plan and increase the OMF Initial Acquisition Price to compete with a Competing Plan, if any. The Debtors agree that the value of the Property shall be fixed at the amount embodied in the plan filed with the Bankruptcy Court that provides the highest Property Component.

### E. *Cash Proceeds & Uses*

The Commitment contemplates that OMF's cash investment will be used for the treatment of claims as set forth in the Term Sheet, summarized as follows:

- Repayment of the Debtors' debtor in possession loans;
- Payment or other treatment of administrative and priority claims;
- Payment or other treatment of Senior Secured Mechanic's Lien Claims;
- Payment or other treatment of other secured claims;
- Distribution to general unsecured claims of $6.9 million, assuming the (i) general unsecured claims class votes in favor of the OMF Plan and (ii) committee of unsecured creditors does not commence a Challenge or file and/or seek to prosecute a Lender Liability Lawsuit (both as defined below).

### F) *Termination of Commitment*

This Commitment Letter shall terminate and be of no further force or effect, the OMF Plan shall not proceed and shall be withdrawn, and OMF shall no longer be obligated with respect to the Commitment, upon the earliest to occur of the following (each, a "*Termination Event*"):

- The Debtors fail to provide OMF and its agents with reasonable but unfettered access to the Property, the Debtors' books and records and management;

- The (a) Debtors' failure by July 7, 2011 to withdraw the HFZ Plan and the HFZ Disclosure Statement, (b) Debtors refiling such pleadings after they have been withdrawn, or (c) Debtors filing a plan and/or disclosure statement not acceptable to OMF in its sole and absolute discretion;

- The Debtors seeking to limit, preclude or prevent OMF from credit bidding any of its claims with respect to any proposed disposition of the Property (via plan, auction process or otherwise) at any time in the Debtors' bankruptcy cases;

- The Debtors (a) not agreeing in writing to the OMF DIP by July 7, 2011, (b) not securing the entry of the OMF DIP Order by July 14, 2011, and/or (c) filing any pleading to secure post-petition financing from any party other than OMF that provides for super-priority claims or priming liens on any of OMF's pre-petition or post-petition collateral without OMF's consent in writing in its sole and absolute discretion;

- An event of termination under the OMF DIP Order;

- In the event there is a (a) challenge by any party-in-interest in the Debtors' bankruptcy cases to the allowance, validity and/or extent of the OMF Secured Claims or to the priority or perfection of the liens and/or security interests that secure such claims (a "*Challenge*"), or (b) filing of any claims or causes of action including a "Lender Liability" cause of action against OMF (*e.g.*, equitable subordination, designation of claims, etc.) (a "*Lender Liability Lawsuit*");

- OMF's inability to negotiate and execute all related documents (including customary provisions for transactions similar to the Financial Restructuring) necessary to confirm and

effectuate the OMF Plan, in each case in form and substance satisfactory to OMF in its sole and absolute discretion;

- All pleadings, notices and other filings in connection with the OMF Plan are not in form and substance acceptable to OMF in its reasonable discretion.

- The Debtors' failure to file the OMF Plan and the OMF Disclosure Statement by July 21, 2011;

- The Debtors' failure to (a) obtain the Bankruptcy Court's entry of the Commitment Letter Order, and (b) market the Property and determine whether any other party would be willing to offer to bid for the Property for an Acquisition Price that embodies a Property Component greater than one embodied in the OMF Initial Acquisition Price, which must be acceptable to OMF in form and substance in its sole and absolute discretion;

- The failure to obtain final orders from the Bankruptcy Court, acceptable in form and substance to OMF in its sole and absolute discretion, (a) approving the OMF Disclosure Statement on or before August 31, 2011 (or such later date to which OMF shall agree in writing), or (b) confirming the OMF Plan by October 31, 2011 (or such later date to which OMF shall agree in writing), subject only to the Bankruptcy Court's docket;

- The claim amounts in the Priority Tax Claims and Other Priority Claims classes are more in the aggregate than 50% than the high-end of the range specified in the Term Sheet as to such class;

- The Bankruptcy Court's confirmation of a Competing Plan;

- The New Property Owner not owning the Property on the Effective Date, free and clear of all liens, claims, rights, interests and encumbrances of any kind, except those that are specifically acceptable to OMF in its sole and absolute discretion, pursuant to the OMF Ownership Structure;

- The Debtors' bankruptcy cases are converted to Chapter 7 cases;

- Mutual agreement of the Debtors and OMF;

- The Effective Date has not occurred by November 30, 2011.

Time is of the essence with respect to all of the dates specified by the Termination Events.

## G) *Miscellaneous*

All notices, requests, claims, demands and other communications hereunder shall be given to OMF (and shall be deemed to have been duly received if given) by hand delivery, in writing or by facsimile transmission with confirmation of receipt, as follows:

> One Madison FM, LLC
> c/o The Related Companies
> 60 Columbus Circle
> New York, New York 10023
>
> Attention: Richard O'Toole
> Jennifer McCool
>
> Email: rotoole@related.com
> jmccool@related.com
>
> Facsimile: (212) 801-1036

5

With a copy to:

Haynes and Boone, LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112

| | |
|---|---|
| Attention: | Lawrence Mittman, Esq. |
| | Lenard M. Parkins, Esq. |
| | Trevor R. Hoffmann, Esq. |
| | Jonathan Hook, Esq. |
| Email: | lawrence.mittman@haynesboone.com |
| | lenard.parkins@haynesboone.com |
| | trevor.hoffmann@haynesboone.com |
| | jonathan.hook@haynesboone.com |
| Facsimile: | (212) 884-8211 |

This Commitment Letter and the rights of the parties, and all actions arising in whole or part under or in connection herewith will be governed by and construed in accordance with the laws of the State of New York.

This Commitment Letter constitutes the entire commitment of parties hereto and supersedes any and all prior discussions, negotiations, proposals, undertakings, understandings and agreements, whether written or oral. No modification or waiver of any provision hereof shall be enforceable unless approved by OMF in writing.

The parties executing this Commitment Letter have all the requisite power and authority to enter into this Commitment Letter and perform all of their respective undertakings contained herein.

The Commitment Letter shall expire and have no further force or effect if not executed by the Debtors and delivered to OMF by July 7, 2011 at 5:00 p.m. (ET).

Should you have any questions regarding this Commitment Letter, please do not hesitate to contact Richard O'Toole (rotoole@related.com) at (212) 801-3952 or Jennifer A. McCool (jmccool@related.com) at (212) 801-3478.

Sincerely yours,

One Madison FM, LLC,

By:

Related Recovery Fund One Madison, LLC,
for itself and as Managing Member of One
Madison R/A Holdings, LLC,

By: *[signature]*
Richard O'Toole, Executive Vice President

AGREED AND CONSENTED TO:

FKF Madison Group Owner, LLC

By: _____


JMJS 23rd Street Realty Owner LLC

By: _____


Slazer Enterprises Owner, LLC

By: _____


Madison Park Group Owner, LLC

By: _____

## Exhibit A

## INDICATIVE TERMS FOR OMF PLAN

### I. OMF Plan Treatment of Allowed Claims[6]

| Designation | Estimated Amount of Allowed Claim | Treatment of Claim or Interest Under the OMF Plan |
|---|---|---|
| **Administrative and Priority Claims (Unclassified)** | Range: $8 million-$10 million<br>Includes:<br>➢ HFZ DIP Advances that were approved by the Bankruptcy Court and actually advanced<br>➢ OMF DIP Advances<br>➢ OMF GAP Claims<br>➢ Non-DIP OMF Administrative Advances<br>➢ Other Administrative or GAP Claims, inclusive of lease/executory contract cure claims | Payment in full in cash on the Effective Date or as otherwise provided in the Bankruptcy Code, except to the extent that a holder of such claims agrees to different treatment. |
| **Priority Tax Claims (if any) (Unclassified)** | Range: $0-$50,000 | At OMF's option, either payment in full (a) in cash on the Effective Date, (b) over a period through the fifth anniversary of the Petition Date, plus interest. All allowed Priority Tax Claims which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. |
| **Senior Secured Mechanics' Lien Claims (with priority over OMF Secured Claims)** | Range: $11 million-$12.5 million | All Allowed Senior Secured Mechanics Lien Claims will be resolved by agreement between OMF and/or the reorganized Debtor, if applicable, and the holder of such claims.<br>This class will be impaired. |
| **Prepetition** | Not less than $234,150,572.72. | The Allowed OMF Secured Claims shall be |

---

[6] The range of claim amounts in a class and the designation of the priority of claims against the Debtors as embodied herein were taken from the filings in the bankruptcy cases, including without limitation, the Debtors' Schedules of Assets and Liabilities, the HFZ Disclosure Statement and proofs of claim. OMF has not performed an independent analysis of, and makes no representation with respect to, the legitimacy or accuracy of the claims. OMF reserves and preserves all of its rights to modify and amend the Commitment Letter and/or Term Sheet if the information provided or filed by the Debtors or claimants was not accurate to reflect the correct amount or priority etc. of such claims. The ranges specified herein shall not be deemed to be an admission or waiver by OMF or any other party as to the amount, validity, priority, or extent of any claims.

| | | |
|---|---|---|
| **Secured Claims of OMF** | The Property Component of the OMF Initial Acquisition Price shall be $220 million. If any of the purported owners of the residential units listed on "Exhibit C" are not determined prior to Plan Confirmation to be unsecured creditors, the Property Component of the OMF Initial Acquisition Price shall be reduced, to reflect the reduction of collateral comprised in the Property, by the fair market value of any such units, but not in the aggregate of more than $35 million. Any such reduction shall not affect the distributions to any of the Debtors' other creditor constituencies as embodied herein. | fixed in the amount of the highest Property Component bid as part of an Acquisition Price. On the Effective Date, assuming the OMF Plan is the confirmed by the Bankruptcy Court, OMF shall own the Property pursuant to the OMF Ownership Structure free and clear of all liens, claims, rights, interests and encumbrances of any kind (other than those specifically identified as acceptable to OMF in its sole and absolute discretion). |
| **Other Secured Claims (with priority over OMF Secured Claims)** | <u>Other Secured Claims Range</u>: $0-$50,000 | At OMF's option, each Allowed Other Secured or Priority Claim will be paid in full and treated as follows under the OMF Plan: (a) reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code; (b) the holder of an allowed other secured claim shall receive the collateral securing such claim and any interest required to be paid pursuant to section 506(b) of the Bankruptcy Code; or (c) receive such other treatment as OMF and the applicable holder of an allowed other secured claim may agree. Prepetition liens with respect to Allowed Other Secured Claims that are rendered unimpaired shall survive the Effective Date and shall continue in accordance with contractual or statutory terms until such claims have been paid in full. |
| **Other Priority Claims** | <u>Other Priority Claims Range</u>: $13,000-$50,000 | At OMF's option, each Allowed Other Priority Claim will be treated as follows under the OMF Plan: (a) paid in full in cash on the Effective Date; or (b) receive such other treatment as OMF and the applicable holder of such claims may agree. |

| | | |
|---|---|---|
| General Unsecured Claims | Range: $160 million-$180 million<br><br>Includes the OMF Deficiency Claim | To the extent the (a) class of Holders of General Unsecured Claims votes in favor of the OMF Plan, and (b) committee of unsecured creditors does not commence a Challenge or file and/or seek to prosecute a Lender Liability Lawsuit, Holders of General Unsecured Claims will receive their pro rata share of $6.9 million. The OMF Deficiency Claim shall be treated as a General Unsecured Claim; provided however, that in the event the class of General Unsecured Claims votes to accept the OMF Plan, OMF shall waive the OMF Deficiency Claim and not participate in any distributions allocated to holders of General Unsecured Claims. |
| Treatment of Existing Equity Interests | N/A | Any prepetition equity interests of Debtors arising from any form of equity securities, as defined in 11 U.S.C. § 101(16), including, without limitation, any prepetition common and preferred stock or member interests issued and outstanding and all options, warrants and other rights relating thereto, shall be retired, cancelled, extinguished and/or discharged on the Effective Date in accordance with the terms of the OMF Plan. |

## II. Miscellaneous Terms and Conditions

| | |
|---|---|
| Means for OMF Plan Implementation | On the Effective Date, the New Property Owner will own the Property pursuant to the OMF Ownership Structure free and clear of all liens, claims, rights, interests, security interests and encumbrances of any kind (other than those specifically identified as acceptable to OMF in its sole and absolute discretion). A title policy reflecting the New Property Owner's ownership of the Property (as described in the previous sentence), satisfactory in form and substance to OMF, shall be issued on or prior to the Effective Date. Regardless of the OMF Ownership Structure, the OMF Plan will provide for the treatment of the Debtors' other creditors and interest holders as summarized herein. |
| | The OMF Plan shall provide that all claims and causes of action of the Debtors and their estates under Chapter 5 of the Bankruptcy Code and/or applicable non-bankruptcy law shall inure to OMF in all respects. |
| | The Debtors shall not compromise or settle any action or controversy without the express written consent of OMF. |
| | Prior to the Effective Date, OMF shall be granted the authority to commence adversary proceedings with respect to, and any party's purported interest in and |

| | |
|---|---|
| | claims against or that may affect, the Property. |
| | The treatment of the Allowed Secured Claims as described herein is only with respect to the Debtors and the Property and specifically does not apply to OMF's rights against any other party and any other property, all of which rights will be expressly reserved and preserved. |
| | OMF and its owners or affiliates shall provide OMF or a designated affiliate with funds sufficient to pay the Plan Component. |
| | The OMF Plan will provide for the protections afforded by Bankruptcy Code sections 1145 and 1146 to the fullest extent permitted, as applicable. |
| | The OMF Plan will provide for complete releases and exculpation for OMF and its affiliated entities, including its sole member and its members, and their respective attorneys, advisors, officers and other agents and professionals. |
| | The Debtors' insiders, members and other affiliated or related entities agree that any and all of their claims asserted in the bankruptcy cases, directly or indirectly, against the Debtors, their affiliated entities, members, attorneys, advisors, officers and other agents and professionals, if Allowed, shall be deemed to be general unsecured claims and shall not be entitled to any higher priority. |
| | The OMF Plan and the order confirming the OMF Plan (the "*Confirmation Order*") shall provide that the Bankruptcy Court shall retain jurisdiction following confirmation of the OMF Plan including, without limitation, to: (a) hear and determine any objections or motions with respect to the allowance or classification of claims and interests; (b) hear and determine any and all applications for the rejection or assumption and assignment of executory contracts or unexpired leases which the Debtors are a party to or with respect to which they may be liable, and to hear and determine, and if need be to liquidate, any and all claims arising there from; (c) hear and determine any and all applications, motions, adversary proceedings, and contested or litigated matters filed and/or commenced prior to the Effective Date or otherwise properly before the Bankruptcy Court; (d) hear and determine all controversies, suits and disputes as may arise in connection with the interpretation or enforcement of the OMF Plan, or any agreements, documents, or instruments issued under or relating to the OMF Plan, including any documentation evidencing the terms of the OMF Plan; (e) adjudicate all claims relating to the determination of property of the estates, a security or ownership interest in any of the Debtors' assets, or in any proceeds thereof; (f) determine issues and disputes concerning entitlement to distributions to be made under and pursuant to the OMF Plan; and (g) modify the OMF Plan pursuant to section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code. |
| **Post-Effective Date Management** | On or prior to the date of the hearing on the confirmation of the OMF Plan, OMF shall identify the new manager/management company of the New Property Owner, or the reorganized Debtor, if applicable. |
| **Conditions to** | 1. The Bankruptcy Court shall have entered a Final Order, in a form and |

| | |
|---|---|
| **OMF Plan Confirmation** | substance acceptable to the Plan Proponents in their sole and absolute discretion, approving the OMF Disclosure Statement by August 31, 2011. |
| | 2. Either (a) the amount, priority or extent of the administrative, priority or secured claims other that the Secured Claims are satisfactory to OMF in its sole and absolute discretion, or (b) OMF or a designated affiliate shall retain the right to dispute any such claims by filing claim objections within 180 days after of the Effective Date. |
| | 3. The Confirmation Order shall be in a form and substance acceptable to the Plan Proponents in its sole and absolute discretion. |
| | 4. The Property is transferred to the New Property Owner pursuant to the OMF Ownership Structure free and clear of all liens, claims, rights, interests and encumbrances of any kind (other than those specifically identified as acceptable to OMF in its sole and absolute discretion). |
| | 5. All claims and causes of action of the Debtors and their estates under Chapter 5 of the Bankruptcy Code and/or applicable non-bankruptcy law shall inure to and be owned by the New Property Owner in all respects. |
| | 6. The final version of all of the schedules, documents, and OMF Plan exhibits, including a plan supplement, shall have been filed in form and substance acceptable to the Plan Proponents in their sole and absolute discretion. |
| | 7. Final Orders or judgments of the Bankruptcy Court or another court of competent jurisdiction shall have been filed or a settlement or resolution acceptable to the Plan Proponents, in their sole and absolute discretion, have been obtained, determining or resolving that any lien or other interest in the Property asserted by the holder of (a) the McDonald's Claim and (b) Judgment Lien Claims, including the FKF Claim (all as defined in the HFZ Plan), shall be null and void or properly classified as General Unsecured Claims. |
| **Conditions to Effective Date** | 1. The conditions to confirmation delineated in the OMF Plan (which will apply to any Confirmed Plan) have either been satisfied or waived in accordance with the OMF Plan. |
| | 2. The Confirmation Order shall have been entered by the Bankruptcy Court and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto. |
| | 3. On the Effective Date, the Property is transferred to the New Property Owner pursuant to the OMF Ownership Structure free and clear of all liens, claims, rights, interests and encumbrances of any kind (other than those specifically identified as acceptable to OMF in its sole and absolute discretion). |
| | 4. All claims and causes of action of the Debtors and their estates under Chapter 5 of the Bankruptcy Code and/or applicable non-bankruptcy law shall inure to and be owned by the New Property Owner in all respects. |
| | 5. A title policy reflecting the free and clear transfer of the assets to the New Property Owner (as described herein), satisfactory in form and substance |

|  |  | to OMF in its sole and absolute discretion, shall be issued in favor of OMF, and all documents and agreements necessary to implement the OMF Plan on the Effective Date shall have been duly and validly executed and delivered by all parties thereto, all such documents and agreements must be acceptable to OMF in its sole and absolute discretion. |
|---|---|---|
|  |  | 6. All authorizations, consents, certifications, approvals, rulings, no-action letters, opinions or other documents or actions required by OMF or by any law, regulation or order to be received or to occur in order to implement the Confirmed Plan on the Effective Date shall have been obtained or shall have occurred unless this provision is waived by OMF in its sole and absolute discretion. |
|  |  | 7. The Plan Proponents shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date stating that the conditions in the OMF Plan have been satisfied or waived. |

*Highly Confidential-Review and Distribution*
*Limited to the Debtors and their Professionals*

**<u>Exhibit B</u>**

**<u>(Sold Units)</u>**

10A
11A
16A
18A
18B
20A
20B
32B
33A
33B
35A
42A

*Highly Confidential-Review and Distribution Limited to the Debtors and their Professionals*

## Exhibit C
## (Disputed Units-Deed Purportedly Transferred)

23B
28A
28B
37A
49B
52A