IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FKF MADISON GROUP OWNER, LLC, *et al.*,[1] | ) Case No. 10-11867 (KG) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hearing Date: October 20, 2011 at 10:00 a.m. (ET) |
| | ) |
| | ) Objections Due: October 13, 2011 at 4:00 p.m. (ET) |
| | ) |

## DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(A) AND 363(B) AND FED. R. BANKR. P. 9019 FOR AN ORDER APPROVING THE SETTLEMENT AND RELEASE BY AND AMONG THE DEBTORS, ONE MADISON FM, LLC AND HFZ CAPITAL GROUP, LLC

The above-captioned debtors and debtors in possession (the "Debtors") hereby move (the "9019 Motion"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), this Court for an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), approving the Settlement Agreement (the "Settlement Agreement") by and between the Debtors, One Madison FM, LLC ("OMF") and HFZ Capital Group, LLC ("HFZ"), attached as Exhibit 1 to the Proposed Order and granting such other and further relief as the Court deems just and proper. In support of the 9019 Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors, followed by the last four digits of their tax identification numbers, are as follows: FKF Madison Group Owner LLC (6399); JMJS 23rd Street Realty Owner LLC (6651); Madison Park Group Owner LLC (3701); and Slazer Enterprises Owner LLC (4339). The Debtors' mailing address is P.O. Box 49249, Charlotte, NC, 28277.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory basis for the relief sought herein is sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

3. On June 8, 2010, involuntary Chapter 7 petitions were filed in this Court against each of the Debtors by Stephen Kraus, Mitchell Kraus, Barbara Kraus, and Kraus Hi-Tech Automation, Inc., thereby commencing the Debtors' involuntary Chapter 7 cases (the "Chapter 7 Cases").

4. On November 19, 2010 (the "Conversion Date"), this Court entered Orders for relief in the Chapter 7 Cases and entered Orders converting the Chapter 7 Cases to cases under Chapter 11 of the Bankruptcy Code (Case No. 10-11867, D.I. 119; Case No. 10-11868, D.I. 111; Case No. 10-11869, D.I. 112; and Case No. 10-11870, D.I. 117).

5. The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. On January 20, 2011, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") (D.I. 211).

6. The Debtors are owners as tenants in common of the Property.[2] Slazer Enterprises, LLC ("Slazer"), a non-Debtor entity, is the sole member of Debtor Slazer Enterprises Owner LLC and serves as the manager for all of the Debtors. Slazer, in turn, is controlled by Green Bridge Capital S.A. (35%), Special Situation S.A. (by proxy for Marc Jacobs) (32.5%), and Ira Shapiro (32.5%).

7. On June 15, 2011, the Debtors filed their initial plan of reorganization (D.I. 498) (the "Initial Plan") and a disclosure statement (D.I. 499) (the "Initial Disclosure Statement") in support of the Initial Plan.

8. Following the filing of the Initial Plan and Initial Disclosure Statement, the Debtors' prepetition secured debt (the "OMF Prepetition Claims") was acquired by OMF.[3]

9. On or about June 28, 2011, OMF commenced negotiations with the Debtors with a commitment letter to implement a joint plan of reorganization for 100% of the equity ownership of the reorganized Debtors premised upon an open marketing, competitive bidding process as an alternative to the Initial Plan.

---

[2] The "Property" refers to the real property and real property rights owned or held by any of the Debtors or their estates, including, without limitation, the land, the improvements, the unsold units which have been or will be developed, designed, and constructed at 23 East 22nd Street, New York, New York 10010 (and sometimes also referred to as 20 East 23rd Street) consisting of a fifty (50) story high-rise tower, containing sixty nine (69) residential units together with amenities and limited common elements (the "North Tower"), as well as an adjacent lot known as 23 East 22nd, together with the land underlying and abutting the North Tower and the adjacent lot, the improvements, all easements, air rights, development rights, sewer rights, water rights, servitudes, rights of way, streets, ways, alleys and other appurtenances thereto in any way relating to the foregoing.

[3] On June 23, 2011, Notices of Transfer of Claims Pursuant to FRBP 3000(e) reflecting OMF's ownership of the OMF Prepetition Claims were filed in the Bankruptcy Cases [D.I. 508 and 509]. OMF also acquired and currently holds other claims against the Debtors, including, without limitation, (i) claims for post-petition financing monies funded to the Debtors, and (ii) administrative claims and gap claims.

10. On June 30, 2011, OMF sent the Debtors a commitment letter and accompanying term sheet for a plan of reorganization for the Debtors to be funded by OMF.

11. On July 8, 2011, OMF filed an objection (D.I. 548) (the "OMF Objection") to the Debtors' motion to further extend the exclusive periods by which the Debtors may file a chapter 11 plan and solicit acceptances thereof to September 30, 2011 and November 30, 2011, respectively (D.I. 477) (the "Extension Motion"). In the OMF Objection, OMF argued, among other things, that it should be permitted to file a competing plan of reorganization and that these cases should be set on a course to plan confirmation through an open market competing plan process that would maximize value for the Debtors' estates (the "Estates").

12. At the hearing held on July 14, 2011 to consider the Extension Motion (the "July 14 Hearing"), the Debtors advised the Court that there had been negotiations with OMF regarding a competing plan proposal and while they welcomed the potential opportunity to increase value for the Estates, including through a possible transaction with OMF, more time was needed for the plan negotiation process to mature. Also at the July 14 Hearing, Committee counsel advised the Court that the Committee supported the Second Exclusivity Extension Motion and believed that, under the circumstances, another extension of the Exclusive Periods would be the appropriate way to ensure a level playing field for potential competing plan proponents to negotiate towards a resolution that would maximize recovery for of the Estates' constituents, including the Debtors' unsecured creditors.

13. Before the Court ruled, the parties at the July 14 Hearing agreed on a 45-day litigation tolling period to allow continued negotiations toward a consensual plan, which tolling period has been extended, from time to time, by the agreement of the parties.

14. Since the July 14 Hearing, the Debtors, OMF, and HFZ have engaged in dialogue in a good faith effort to resolve their disputes to avoid protracted litigation that has burdened the Bankruptcy Cases.

15. On September 19, 2011, the Debtors and OMF executed a commitment letter with an accompanying term sheet (the "New OMF Commitment")[4] embodying the terms of a comprehensive restructuring of the Debtors and a settlement of all outstanding issues between the Debtors, OMF and HFZ. The negotiations between the Debtors, OMF and HFZ concerning the New OMF Commitment took place over a number of weeks, and were the result of good faith and arm's length negotiations between the Debtors, OMF and HFZ.

16. In connection with, and as contemplated by, the New OMF Commitment, the Debtors will be filing an amended plan of reorganization (the "OMF Plan") and an amended disclosure statement (the "OMF Disclosure Statement") in support of the OMF Plan, in the form of amendments to the Initial Plan and the Initial Disclosure Statement, respectively, no later than October 31, 2011. Additionally, the New OMF Commitment also contemplated that a settlement agreement between the parties would be negotiated and submitted to this Court for approval.

17. After the execution of the New OMF Commitment, the parties worked diligently to embody the terms of the settlement set forth in the New OMF Commitment into the Settlement Agreement attached to the Proposed Order.

---

[4] The New OMF Commitment is dated as of September 16, 2011 and is attached to the Settlement Agreement as Exhibit A.

## THE SETTLEMENT AGREEMENT

18. The Settlement Agreement provides for the global settlement of all disputes between the Debtors, OMF and HFZ in exchange for, among other things, the funding of a chapter 11 plan by an OMF affiliate that provides for a distribution of up to $6.75 million to the holders of allowed unsecured claims against the Debtors (upon the occurrence or non-occurrence of certain events) and in any event a distribution of no less than $3.4 million to the holders of allowed unsecured claims against the Debtors (regardless of the occurrence or non-occurrence of certain events). More specifically, the Settlement Agreement provides:

(i) that the rights of the Debtors and their Estates to commence or file a challenge in law or in equity to the OMF Prepetition Claims in any respect (a "Challenge") and/or prosecute any claims or causes of action in law or in equity against OMF (an "OMF Lawsuit") shall be fully compromised, released and settled in exchange for $3.4 million for the treatment of allowed general unsecured claims under the OMF Plan; *provided, however*, that to the extent (a) the Committee does not object to (1) confirmation of the OMF Plan, (2) the relief set forth in the Debtors' bid procedures motion or the 9019 Motion, or the entry of orders approving such motions, (3) the allowance, validity and priority of the OMF Prepetition Claims and the OMF Prepetition Liens (as defined in the Settlement Agreement) and OMF's unfettered right to credit bid the OMF Prepetition Claims for all purposes in the Bankruptcy Cases, (b) the Committee does not take any action that would interfere with or hinder the implementation the OMF Plan, (c) the class of General Unsecured Creditors votes to accept the OMF Plan, and (d) the Committee does not commence a Challenge or file and/or seek to prosecute an OMF Lawsuit in connection thereto, the aforementioned cash amount will be increased to $6.75 million;

(ii) for the allowance and validity of the OMF Prepetition Claims and the OMF Prepetition Liens that evidence and secure such claims in full and in all respects, and

(iii) for a global settlement, good faith compromise, and release of all claims, interests and controversies by and among the Debtors (on behalf of themselves and their Estates), OMF, HFZ, and their respective members, officers, directors and affiliated entities, including, without limitation, claims arising under or relating to the contractual, legal, equitable and other rights of such parties in

respect of the Debtors and/or their estates, except for the obligations and payments set forth in the New OMF Commitment, the DIP Orders and the OMF Plan or any agreements executed by and between them incident related thereto or in contemplation thereof. As set forth in the 9019 Motion and the Settlement Agreement, OMF is not waiving or releasing and nothing contained herein or therein is or shall be deemed a waiver or release of any rights, claims or remedies of OMF against (i) certain Estate Released Parties (as defined in the Settlement Agreement) for acts or omissions prior to the Relief Date, (ii) any previous holder of any portion of the OMF Prepetition Claims, or (iii) any other person or entity or any of their affiliated entities on any matter or issues whatsoever.

19. The Debtors believe, in accordance with their fiduciary duties and the reasoned exercise of their sound business judgment, that entering into the Settlement Agreement is in the best interests of the Debtors, their Estates and their creditors because: (a) the Settlement Agreement is fair and equitable; (b) falls well within the range of reasonableness; (c) represents an exchange of reasonably equivalent value; (d) avoids the expense and delay of complex litigation surrounding the OMF Prepetition Claims and OMF Petition Liens; and (e) represents the best opportunity for general unsecured creditors to receive a distribution under a chapter 11 plan in these cases.

## RELIEF REQUESTED

20. By this Motion, the Debtors seek the entry of the Proposed Order, in substantially the form attached hereto as Exhibit A, (i) approving the Settlement Agreement attached to the Proposed Order as Exhibit 1, and (ii) granting related relief.

## BASIS FOR RELIEF REQUESTED

21. The relief requested herein is authorized by sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order…that is necessary or appropriate to carry out the provisions

of this title." 11 U.S.C. § 105. Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease the property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363. Section 363 applies when an agreement involves the disposition of the estate's assets in such a way that it ventures beyond an ordinary course transaction. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 394-95 (3d Cir. 1996).

22. Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Under this authority, the Third Circuit has emphasized that "[t]o minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *Martin*, 91 F.3d at 393 (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"); *In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) (observing that "compromises are favored in bankruptcy and . . . much of litigation in bankruptcy estates results in settlements"). In addition, the District of Delaware has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

23. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *Louise's*, 211 B.R. at 801). Generally, a bankruptcy court should defer to the debtor's judgment so long as there is a legitimate business justification for entering into the settlement. *Martin*, 91 at 395; *see also Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S.

414, 424-25 (1968) (basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation"). Under *TMT Trailer Ferry*, the Court is not required to hold a full evidentiary hearing before a compromise can be approved; rather, the Court's obligation is "to canvass the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" 10 *Collier on Bankruptcy* ¶ 9019.02, 9019-4 to 9019-5 (15th ed.) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991)) (quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983)).

24. In making its determination, a court should consider: (1) the probability of success in the litigation; (2) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant thereto; (3) the difficulties, if any, to be encountered in the matter of collection; and (4) the paramount interest of the creditors and a proper deference to their reasonable opinions ("*Martin* Factors"). *See, e.g., TMT Trailer Ferry*, 390 U.S. at 424; *Martin*, 91 at 393. It is not necessary for the Bankruptcy Court to conduct a "mini trial" of the facts or the merits of the underlying dispute. *In re Grant Broad. of Philadelphia, Inc.*, 71 B.R. 390, 396 (Bankr. E.D. Pa. 1987). Rather, the Court need only consider those facts which are necessary to enable it to evaluate the settlement and to make an informed and independent judgment about the settlement. *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979) (citation omitted); *In re Energy Co-op., Inc.*, 886 F.2d 921, 924-25 (7th Cir. 1989).

25. Applying the *Martin* Factors to this matter supports approval of the Settlement Agreement. The Debtors believe that the Settlement Agreement is fair and equitable, as it (a) enables the parties to avoid the cost and uncertainty related to the prosecution of any

Challenge or the OMF Litigation, the outcome of which is uncertain because of the fact-intensive nature of the dispute; (b) represents a reasonable compromise between the parties with respect to the OMF Prepetition Claims and OMF Prepetition Liens and the likely outcome of any Challenge or OMF Litigation, including allowing the Debtors to move forward with a confirmable chapter 11 plan within the next few months; and (c) is in the best interest of the Debtors and their stakeholders, especially the Debtors' general unsecured creditors, who are being guaranteed millions of dollars for distribution on account of their allowed claims under the OMF Plan.

26. Additionally, the terms of the proposed Settlement Agreement are the result of good faith and arm's length negotiations between the Debtors, OMF and HFZ. Further, the Debtors believe that the proposed Settlement Agreement is fair and equitable, falls well within the range of reasonableness, and is the result of the exercise of sound business judgment.

27. Accordingly, the Debtors submit that approval of the Settlement Agreement should be approved by the Court. Thus, the Debtors submit that entry of the Proposed Order is appropriate.

## NOTICE

28. Notice of the 9019 Motion has been given to (a) the U.S. Trustee; (b) counsel for the Committee; (c) counsel for the Debtors' post-petition lenders; and (d) those parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

29. No prior request for the relief sought in the Motion has been made to this Court or any other court.

WHEREFORE, based upon the foregoing, the Debtors respectfully request that this Court enter an order, substantially in the form of the Proposed Order attached to this Motion as <u>Exhibit A</u>, (i) approving the Settlement Agreement, and (ii) granting related relief.

September 24, 2011  
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____  
Derek C. Abbott (No. 3376)  
Daniel B. Butz (No. 4227)  
Erin R. Fay (No. 5268)  
1201 N. Market Street  
P.O. Box 1347  
Wilmington, DE 19899-1347  
Telephone: (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors and Debtors-in-Possession*

4499272.1