# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FKF MADISON GROUP OWNER LLC, et al.,[1] | ) Case No. 10- 11867 (KG) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hearing Date: October 20, 2011 at 10:00 a.m. (ET) |
| | ) |
| | ) Objections Due: October 13, 2011 at 4:00 p.m. (ET) |

## JOINT MOTION OF THE DEBTORS AND ONE MADISON FM, LLC FOR AN ORDER APPROVING BID PROCEDURES FOR SUBMITTING COMPETING PLAN PROPOSALS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases (collectively, the "Bankruptcy Cases") and One Madison FM, LLC, the Debtors' largest secured creditor ("OMF" and together with the Debtors, the "Movants"), by and through their undersigned counsel, hereby jointly move (the "Bid Procedures Motion"),[2] pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for an Order approving bid procedures (the "Bid Procedures") for submitting plan proposals ("Competing Plan Proposals") to compete against the terms embodied in the New

---

[1] The Debtors, followed by the last four digits of their tax identification numbers, are as follows: FKF Madison Group Owner LLC (6399); JMJS 23rd Street Realty Owner LLC (6651); Madison Park Group Owner LLC (3701); and Slazer Enterprises Owner LLC (4339). The Debtors' mailing address is P.O. Box 49249, Charlotte, NC, 28277.

[2] Unless otherwise indicated, all capitalized terms not defined herein shall have the meanings ascribed to them in the New OMF Commitment (as such term is defined below).

OMF Commitment (as defined below). In support of the Bid Procedures Motion, the Movants respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over the Bid Procedures Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these Bankruptcy Cases is proper in the District of Delaware pursuant to 28 U.S.C. § 1408. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The bases for the relief requested herein are sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rule 2002 and Local Rule 2002-1(b).

## BACKGROUND[3]

3. The Debtors are party to that certain (i) *Senior Loan and Security Agreement* (the "Senior Loan Agreement"), (ii) *Building Loan and Security Agreement* (the "Building Loan Agreement"), (iii) *Project Loan and Security Agreement* (the "Project Loan Agreement"), all dated November 16, 2007, and all collateral documents executed in connection therewith (collectively with the Senior Loan Agreement, the Building Loan Agreement and the Project Loan Agreement and as amended, supplemented or otherwise modified, the "Loan Documents").

4. As of the commencement of the Bankruptcy Cases, OMF alleges that each of the Debtors was obligated under the Loan Documents in an aggregate amount of no less than $234,150,572.74 (the "OMF Prepetition Claims").

5. On June 8, 2010 (the "Petition Date"), involuntary Chapter 7 petitions were filed in this Court against each of the Debtors by Stephen Kraus, Mitchell Kraus, Barbara Kraus, and

---

[3] The Bid Procedures Motion provides only the relevant history of these Bankruptcy Cases. A more detailed discussion of the events occurring prior to and during these Bankruptcy Cases will be set forth in the OMF Disclosure Statement (as such term is defined below).

Kraus Hi-Tech Automation, Inc., thereby commencing the Debtors' involuntary Chapter 7 cases (the "Chapter 7 Cases").

6. On November 19, 2010, (the "Relief Date") the Court entered orders for relief in the Chapter 7 Cases and converted the Chapter 7 Cases to cases under Chapter 11 of the Bankruptcy Code (Case No. 10-11867, D.I. 119; Case No. 10-11868, D.I. 111; Case No. 10-11869, D.I. 112; and Case No. 10-11870, D.I. 117).

7. The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. On January 20, 2011, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") in the Bankruptcy Cases (D.I. 221).

8. The Debtors are owners as tenants in common of the Property.[4] Slazer Enterprises, LLC ("Slazer"), a non-Debtor entity, is the sole member of Debtor Slazer Enterprises Owner LLC and serves as the manager for all of the Debtors. Slazer, in turn, is controlled by Green Bridge Capital S.A. (35%), Special Situation S.A. (by proxy for Marc Jacobs) (32.5%), and Ira Shapiro (32.5%).

9. On December 15, 2010, Green Bridge Capital S.A. ("Green Bridge") and Special Situation S.A. ("Special Situation") instituted Adversary Proceeding No. 10-56158 (KG) (the

---

[4] The "Property" refers to the real property and real property rights owned or held by any of the Debtors or their estates, including, without limitation, the land, the improvements, the unsold units which have been or will be developed, designed, and constructed at 23 East 22nd Street, New York, New York 10010 (and sometimes also referred to as 20 East 23rd Street) consisting of a fifty (50) story high-rise tower, containing sixty nine (69) residential units together with amenities and limited common elements (the "North Tower"), as well as an adjacent lot known as 23 East 22nd, together with the land underlying and abutting the North Tower and the adjacent lot, the improvements, all easements, air rights, development rights, sewer rights, water rights, servitudes, rights of way, streets, ways, alleys and other appurtenances thereto in any way relating to the foregoing.

"Adversary Proceeding") in this Court by filing a complaint (the "Complaint"). The Complaint sought declaratory and injunctive relief and alleged that Ira Shapiro ("Shapiro") did not have corporate authority to act on the Debtors' behalf.

10. On January 31, 2011, after a lengthy evidentiary hearing in the Adversary Proceeding, the Court issued an Order restraining Shapiro from taking further action in violation of Slazer's and the Debtors' governing instruments (the "Control Order") (Adv. D.I. 67).

11. On March 18, 2011, less than two months after entry of the Control Order, the Debtors filed a motion to extend the exclusive periods in which the Debtors may file a plan of reorganization and solicit acceptances thereof (the "Exclusive Periods") to May 31, 2011 and July 30, 2011, respectively (D.I. 374) (the "First Exclusivity Extension Motion"). On April 8, 2011, the Court entered an order (D.I. 407) granting the relief sought in the First Exclusivity Extension Motion.

12. On May 31, 2011, the Debtors filed a motion to further extend the Exclusive Periods to September 30, 2011 and November 30, 2011, respectively (D.I. 477) (the "Second Exclusivity Extension Motion").

13. On June 15, 2011, the Debtors filed their initial plan of reorganization (D.I. 498) (the "Initial Plan") and a disclosure statement (D.I. 499) (the "Initial Disclosure Statement") in support of the Initial Plan.

14. Following the filing of the Initial Plan and Initial Disclosure Statement, the OMF Prepetition Claims were acquired by OMF.[5]

---

[5] On June 23, 2011, Notices of Transfer of Claims Pursuant to FRBP 3000(e) reflecting OMF's ownership of the OMF Prepetition Claims were filed in the Bankruptcy Cases [D.I. 508 and 509]. OMF also acquired and currently holds other claims against the Debtors, including, without limitation, (i) claims for post-petition financing monies funded to the Debtors, and (ii) administrative claims and gap claims.

15. On or about June 28, 2011, OMF commenced negotiations with the Debtors on a commitment letter to implement a joint plan of reorganization for 100% of the equity ownership of the Reorganized Debtors premised upon an open marketing, competitive bidding process as an alternative to the Initial Plan.

16. On June 30, 2011, OMF sent the Debtors a commitment letter and accompanying term sheet for a plan of reorganization for the Debtors to be funded by OMF.

17. On July 8, 2011, OMF filed an objection (D.I. 548) to the Second Exclusivity Extension Motion arguing, among other things, that OMF should be permitted to file a competing plan of reorganization and that the Bankruptcy Cases should be set on a course to plan confirmation through an open market competing plan process that would maximize value for the Debtors' estates (the "Estates").

18. On July 11, 2011, the Debtors filed the *Motion for the Entry of an Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Chapter 11 Plan of Reorganization, (III) Establishing Voting Record Date, (IV) Scheduling a Hearing on Confirmation of Chapter 11 Plan of Reorganization, (V) Approving the Form of Ballots and Solicitation Materials, (VI) Approving Related Notice Procedures, (VII) Authorizing the Debtors to act as their own Balloting Agent, (VIII) Approving Cure Procedures and (IX) Granting Related Relief* (D.I. 566) seeking to approve the Initial Disclosure Statement and to approve certain procedures for solicitation and tabulation of votes with respect to the Initial Plan.

19. At the hearing held on July 14, 2011 to consider the Second Exclusivity Extension Motion (the "July 14 Hearing"), the Debtors advised the Court that there had been negotiations with OMF regarding a competing plan proposal and while they welcomed the potential

opportunity to increase value for the Estates, including through a possible transaction with OMF, more time was needed for the plan negotiation process to mature. Also at the July 14 Hearing, Committee counsel advised the Court that the Committee supported the Second Exclusivity Extension Motion and believed that, under the circumstances, another extension of the Exclusive Periods would be the appropriate way to ensure a level playing field for potential competing plan proponents to negotiate towards a resolution that would maximize recovery for of the Estates' constituents, including the Debtors' unsecured creditors.

20. Before the Court ruled on the Second Exclusivity Extension Motion, the parties at the July 14 Hearing agreed on a 45-day litigation tolling period to allow continued negotiations toward a consensual plan, which tolling period has been extended, from time to time, by the agreement of the parties.

21. Since the July 14 Hearing, the Debtors, OMF, and HFZ have engaged in dialogue in a good faith effort to resolve their disputes to avoid protracted litigation that has burdened the Bankruptcy Cases.

22. To facilitate a resolution among the parties, the Court has conducted several status conferences during which the parties have apprised the Court of the progress of the plan negotiations (collectively, the "Status Conferences"). At the Status Conferences, the Debtors, OMF and HFZ informed the Court that they were making significant progress toward a resolution of all disputes among the parties. At the September 15, 2011 Status Conference, the Debtors and OMF notified the Court that the execution of a commitment letter setting forth the terms of a plan of reorganization was imminent.

23. On September 19, 2011, the Movants executed a commitment letter dated September 16, 2011 with an accompanying term sheet (the "New OMF Commitment")[6] embodying the terms of a comprehensive restructuring of the Debtors and a settlement of all outstanding issues between the Movants and HFZ. In connection with the New OMF Commitment, the Movants will be filing an amended plan of reorganization (the "OMF Plan") and an amended disclosure statement (the "OMF Disclosure Statement") in support of the OMF Plan, in the form of amendments to the Initial Plan and the Initial Disclosure Statement, respectively, no later than October 31, 2011.

24. On September 23, 2011, the Court entered an order granting the Second Exclusivity Motion, extending the Exclusive Periods to September 30, 2011 and November 30, 2011, respectively (D.I. 677).

25. In exercising their business judgment to proceed with the New OMF Commitment and the contemplated OMF Plan, the Debtors believe that the New OMF Commitment embodies the highest and best offer currently presented to the Debtors for a plan of reorganization and represents the highest and best offer to maximize recoveries to the Debtors' creditors. In addition, the New OMF Commitment is subject to higher and better Competing Plan Proposals.

26. To that end, the New OMF Commitment requires (1) that the plan terms embodied in the New OMF Commitment for the acquisition of the equity of the Reorganized Debtors be marketed in an effort to ensure the maximum recovery to the Estates and their creditors, and (2) a resolution of the potentially protracted litigations among the Debtors, OMF, and HFZ that had threatened the Debtors' timely and successful conclusion of these Bankruptcy

---

[6] The New OMF Commitment is attached hereto as "**Exhibit A**."

Cases.[7] The New OMF Commitment is not subject to financing contingencies but is subject to the termination events delineated in the New OMF Commitment.

27. The Movants believe that it is in the best interests of the Estates to subject the transactions contemplated in the New OMF Commitment to an open market bidding process to ascertain if higher and better Competing Plan Proposals exist. An integral component of exercising such business judgment is that OMF has insisted on market-testing the terms embodied in the New OMF Commitment without the market, "stalking-horse" protections typically required under these circumstances.

28. To that end, the Debtors are filing, substantially contemporaneously herewith, a motion for an order (the "Broker Order") authorizing the retention of a real estate broker (the "Broker"). As set forth in the proposed Broker Order: (a) the Broker's duties shall be to (i) solicit Competing Plan Proposals in a manner reasonably acceptable to OMF and the

---

[7] Substantially contemporaneously herewith, the Debtors are filing a motion (the "9019 Motion"), seeking the entry of a Court order under Bankruptcy Rule 9019, approving a 9019 settlement agreement (the "9019 Agreement") pursuant to which (i) the rights of the Debtors and their Estates to commence or file a challenge in law or in equity to the OMF Prepetition Claims in any respect (a "Challenge") and/or prosecute any claims or causes of action in law or in equity against OMF (an "OMF Lawsuit") shall be fully compromised, released and settled in exchange for up to $6.75 million to be funded for the treatment of general unsecured claims, subject to, and as set forth in the New OMF Commitment; (ii) the allowance and validity of the OMF Prepetition Claims and the OMF Prepetition Liens that evidence and secure such claims in full and in all respects, and (iii) a global settlement, good faith compromise, and release of all claims, interests and controversies by and among the Debtors (on behalf of themselves and their Estates), OMF, HFZ, and their respective members, officers, directors and affiliated entities, including, without limitation, claims arising under or relating to the contractual, legal, equitable and other rights of such parties in respect of the Debtors and/or their estates, except for the obligations and payments set forth in the New OMF Commitment, the OMF Plan and the Debtors' post-petition financing. As set forth in the 9019 Motion and the 9019 Agreement, OMF is not waiving or releasing and nothing contained herein or therein is or shall be deemed a waiver or release of any rights, claims or remedies of OMF against (i) certain Estate Released Parties (as defined in the 9019 Agreement) for acts or omissions prior to the Relief Date, (ii) any previous holder of any portion of the OMF Prepetition Claims, or (iii) any other person or entity or any of their affiliated entities on any matter or issues whatsoever.

Debtors and otherwise in accordance with the Bid Procedures Order, and (ii) distribute the New OMF Commitment, upon which any Competing Plan Proposal shall be based, to such potential Bidders, such that the Bidders, if any, will have the information and time necessary to submit a bid embodying a Competing Plan Proposal; and (b) OMF shall make DIP financing available to fund the fees and expenses of the Broker.

29. The New OMF Commitment, upon which any Competing Plan Proposal shall be based, contains and the contemplated OMF Plan shall contain, among other things, the following salient terms:[8]

  a. All of the assets of the Debtors, including, without limitation, the Property and all Estate Claims (but excluding the Plan Administrator Claims Distribution Assets and the Plan Administrator Wind-Down Reserve) will be retained by, and will vest in, the Reorganized Debtors free and clear of all liens, claims, rights, interests and encumbrances of any kind subject to (i) those liens that are acceptable to the Plan Funder based on its review of the title commitment and (ii) in the event OMSub is the Plan Funder, the OMF Prepetition Claims and the OMF Prepetition Liens;

  b. Pursuant to Bankruptcy Code section 1111(b), OMF will elect to have the entirety of the OMF Prepetition Claims treated as fully secured;

  c. If OMSub is the Plan Funder, then (i) prior to the Confirmation Date, OMSub will satisfy the Plan Funding Commitment (*i.e.*, all cash necessary to fund the Plan) and in exchange, will receive 100% of the New Equity, and (ii) OMF will retain and be the owner and holder of the OMF Prepetition Claims, which will (a) continue to be evidenced and secured by all of the OMF Prepetition Liens, and (b) not be discharged, affected, released or otherwise satisfied or impaired by the Plan or the Confirmation Order. As a result, on the Effective Date, OMSub will own the New Equity and OMF will continue to own and hold the OMF Prepetition Claims. If OMSub is not the Plan Funder, then (y) OMF's Plan treatment will be the payment in full, in cash, of the OMF Prepetition Claims on the Effective Date, and (z) the New Equity will be issued to the Plan Funder;

  d. It is contemplated that, if OMF is the Plan Funder and as a result OMSub receives 100% of the New Equity on the Effective Date, on or after the

---

[8] The descriptions of the New OMF Commitment, the contemplated OMF Plan and OMF Disclosure Statement are intended as a summary thereof only and are and shall be qualified in their entirety by the actual terms of the respective documents.

Effective Date, the Reorganized Debtors will merge into OMSub and OMSub shall be the successor of such merger;

e. On the Effective Date, all Old Equity Interests shall be terminated and cancelled and the Holders thereof shall retain nothing and receive no property under the Plan;

f. The OMF DIP Funding Claim and the HFZ DIP Funding Claim shall be paid in full by the Reorganized Debtors on the Effective Date;

g. The Reorganized Debtors shall pay the Cure Amount under each executory contract and unexpired lease to be assumed on the Effective Date;

h. Holders of Allowed Administrative Claims (Unclassified), Allowed Gap Claims (Unclassified), and Other Priority Claims (Class 4) shall be satisfied by the Reorganized Debtors in full in cash or by such other treatment as the Reorganized Debtors and the Holder shall have agreed;

i. Holders of Allowed Priority Tax Claims (Unclassified) that are due and payable on or prior to the Effective Date shall be satisfied by the Reorganized Debtors in full in cash or, pursuant to Bankruptcy Code section 1129(a)(9)(C), shall receive deferred cash payments over a period not exceeding five (5) years after the Relief Date, with a total value equal to the amount of the Holder's Allowed Priority Tax Claim as of the Effective Date;

j. Holders of Allowed Secured Mechanic's Lien Claims (Class 2) shall be satisfied by the Reorganized Debtors by such treatment as the Reorganized Debtors and the Holder shall have agreed;

k. Holders of Allowed Other Secured Claims (Class 3) shall receive from the Reorganized Debtors, and at the Reorganized Debtors' election, either (i) a cash payment equal to the full amount of the Holder's Allowed Other Secured Claim, (ii) reinstatement of such Holder's Allowed Other Secured Claim, or (iii) such other recovery necessary to satisfy section 1124 of the Bankruptcy Code;

l. Holders of Allowed General Unsecured Claims will receive their pro rata share of $3.4 million (*i.e.*, the GUC Cash Amount). To the extent the (a) Committee does not object to (i) confirmation of the Plan, (ii) the relief set forth in the Bid Procedures Motion, the 9019 Motion, the Disclosure Statement Approval Motion, or the entry of Court orders approving such motions, (iii) the allowance, validity and priority of the OMF Prepetition Claims and the OMF Prepetition Liens and OMF's unfettered right to credit bid the OMF Prepetition Claims in the Debtors' bankruptcy cases, (b) the Committee does not take any action that would interfere with any actions or relief in connection with implementation of the OMF Plan, (c) the General Unsecured Creditors' class votes to accept the Plan, and (d) the Committee does not commence and/or seek standing to commence a

Challenge or file and/or seek standing to file or prosecute an OMF Lawsuit, the GUC Cash Amount will be increased to $6.75 million; and

m. The New OMF Commitment shall be subject to higher and better Competing Plan Proposals pursuant to the Bid Procedures.

## RELIEF REQUESTED

30. The Movants submit this Bid Procedures Motion seeking entry of an order, substantially in the form attached hereto as "**Exhibit B**" (the "Bid Procedures Order"), establishing the Bid Procedures for submitting Competing Plan Proposals. The Debtors have determined that it is in the best interests of their Estates to confirm a plan with either OMF, or another party that is willing to submit a Competing Plan Proposal that is a higher and better than the terms set forth in the New OMF Commitment, as the Plan Funder.

31. Confirmation of such a plan of reorganization is highly advantageous to the Estates, as it will provide a market-based valuation of the Debtors, maximize recoveries to all creditor constituencies, provide the capital necessary to fund a plan and obviate potentially protracted litigation. The Bid Procedures have been developed consistent with the objective of promoting active bidding that should result in the highest and best plan proposal the marketplace can sustain. The proposed Bid Procedures reflect the Movants' goal of conducting the bidding process in a controlled, fair and open manner that promotes and encourages interest in the submission of Competing Plan Proposals by financially-capable and motivated bidders (collectively, the "Bidders") who are capable of funding a plan of reorganization with terms are superior to those embodied in the New OMF Commitment.

32. OMF's initial bid as set forth in the New OMF Commitment consists of the following plan consideration, in the approximate amount of $265-270 million (the "OMF Initial Bid"): (i) treatment of the OMF Prepetition Claims in the amount of $234,150,572.74 or

such other treatment as to which OMF, in its sole and absolute discretion, may agree, and (ii) a Plan Funding Commitment (*i.e.*, cash necessary to fund all amounts under the OMF Plan, which includes up to $6.75 million for distribution to holders of allowed general unsecured claims), currently estimated to be between approximately $30-35 million.[9] To the extent a Competing Plan Proposal is submitted (an "Overbid") -- which bid must exceed the OMF Initial Bid as set forth in the term sheet attached to the New OMF Commitment by at least $250,000 (the "Overbid Amount") -- OMF will be entitled to additional amounts under the Loan Documents (*e.g.*, interest and other charges) in accordance with the Bankruptcy Code and applicable non-bankruptcy law).

33. The following Bid Procedures shall govern and control the bidding process:

    a. As soon as reasonably practicable after the entry of the Bid Procedures Order, the Debtors will send (i) a copy of the Bid Procedures Order by overnight delivery, to all potential Bidders identified by the Broker as likely to have an interest in submitting a Competing Plan Proposal, so that such Bidders will have more than adequate time to perform any necessary due diligence and participate in the bidding process, and (ii) notice, substantially in the form attached hereto, of the entry of the Bid Procedures Order by first class mail, to (a) all persons or entities that have filed proofs of claim and/or requests for payment of administrative claims in the Bankruptcy Cases, (b) all persons or entities listed in the Debtors' Schedules of Assets and Liabilities, (c) any other known holders of claims against or interests in the Debtors, (d) parties to adversary proceedings associated with the Bankruptcy Cases, and (e) known parties which have asserted purported interests in the units set forth in Exhibits B and C[10] to the New OMF Commitment;

---

[9] As set forth in the New OMF Commitment, the Plan Funding Commitment includes, without limitation, amounts necessary to satisfy unclassified claims (*e.g.*, post-petition financing claims, professional fee claims and other administrative and priority claims) and secured mechanic lien claims.

[10] Exhibits B and C remain subject to change and the inclusion or failure to include any Unit on such Exhibits will have no preclusive effect. The Debtors and OMF reserve all rights to amend, supplement or otherwise modify the list of Units contained in such Exhibits B and C.

b. A potential Bidder interested in submitting a Competing Plan Proposal may be granted access (to the extent access has not already been granted) to confidential financial and operational materials, provided that such Bidder (i) executes a confidentiality agreement in a form acceptable to the Debtors and (ii) provides sufficient information to the Debtors demonstrating its wherewithal to consummate a Competing Plan Proposal;

c. To the extent a Bidder submits a Competing Plan Proposal, such Competing Plan Proposal shall be actually received by the Debtors, OMF, the Committee and the Broker no later than **December 8, 2011 at 5:00 p.m. (ET)** (the "Bid Deadline") at the following addresses:

   (i) The Debtors: One Madison Park Condominium, P.O. Box 49249, Charlotte, NC, 28277 (Attn: John Fioretti);

   (ii) Counsel to the Debtors: Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899-1347 (Attn: Derek C. Abbott, Esq.);

   (iii) Counsel to OMF: Haynes and Boone, LLP, 30 Rockefeller Plaza, 26th Floor, New York, New York, 10112 (Attn: Lenard Parkins, Esq. and Lawrence Mittman, Esq.);

   (iv) Counsel to the Committee: Perkins Coie LLP, 30 Rockefeller Plaza, 25th Floor, New York, New York, 10112 (Attn: Schuyler G. Carroll, Esq.); and

   (v) The Broker: Jones Lang LaSalle, 601 Lexington Avenue, 33rd Floor, New York, NY 10022 (Attn: Joshua D. Gleiber).

d. Any Competing Plan Proposal shall (i) be a binding and irrevocable offer evidenced by a commitment letter and accompanying plan term sheet in the form of a mark-up of New OMF Commitment and the accompanying term sheet that (a) is not subject to any due diligence or other "outs" (other than as described in the New OMF Commitment or the accompanying term sheet), and (b) betters the OMF Initial Bid by at least the Overbid Amount, and (ii) provides for payments on account of the OMF Prepetition Claims, in cash only and in full on the Effective Date, or such other treatment as to which OMF, in its sole and absolute discretion, may agree;

e. In addition, a Competing Plan Proposal shall (i) include evidence satisfactory to the Debtors of the Bidder's financial ability to fund a plan of reorganization embodying the terms of such Competing Plan Proposal and (ii) be accompanied by a good-faith deposit in an amount equal to $10 million (the "Good-Faith Deposit") which will be held in escrow during the pendency of the bidding process;

f. Any Overbids set forth in a Competing Plan Proposal shall be first paid on account of the OMF Prepetition Claims until the OMF Prepetition Claims have been paid in full and in cash (which will include accrued interest and default interest, fees and costs and other amounts that OMF may be

entitled to under the Loan Documents) or such other treatment as to which OMF, in its sole and absolute discretion, may agree;

g. By **5:00 p.m. (ET)** at least two (2) business days prior to the Plan Auction (as defined below), the Debtors shall notify (i) Bidders that submitted Competing Plan Proposals that, in the Debtors' business judgment, (A) satisfy the requirements of the Bid Procedures and (B) are superior to the New OMF Commitment that such Bidders have been designated as "Qualified Bidders" authorized to bid in the Plan Auction and (ii) all other Bidders that they have not been designated as Qualified Bidders and are not eligible to bid at the Plan Auction;

h. OMF shall be a Qualified Bidder and be permitted to submit further and additional bids to compete with any Competing Plan Proposal, which subsequent bids may include credit bid and cash bid components;

i. To the extent there is at least one Qualified Bidder other than OMF, the Debtors shall conduct an auction to determine the identity of the Qualified Bidder with the highest and best plan proposal on December 13, 2011 at the office of Debtors' counsel (Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, DE 19899-1347) (the "Plan Auction");

j. If applicable, the Plan Auction will begin with the Debtors' presentation of the then existing highest and best Competing Plan Proposal, as determined by the Debtors in their business judgment (the "Baseline Bid"). All other Qualified Bidders, including OMF, shall then be entitled to submit further Overbids in the increments of at least the Overbid Amount against the Baseline Bid, and to the extent there is more than one round of bidding, the bids at each succeeding round of bidding must be greater than the highest bid of the previous round by at least the Overbid Amount;

k. In connection with bidding at the Plan Auction, OMF may credit bid up to the full amount of the OMF Prepetition Claims (which will include accrued interest and default interest, fees and costs and other amounts that OMF may be entitled to under the Loan Documents);

l. At the Plan Auction, the Debtors shall determine and declare, in their business judgment, which Competing Plan Proposal constitutes the highest and best offer (the "Winning Bid" and the Bidder with the Winning Bid, the "Winning Bidder"). Thereafter, the Debtors shall seek to confirm the OMF Plan with the Winning Bidder as the Plan Funder;

m. If no Qualified Bidder has submitted a Competing Plan Proposal by the Bid Deadline, the Debtors will not conduct the Plan Auction and will proceed with the OMF Plan with OMSub as the Plan Funder;

n. If a Bidder is not determined to be the Winning Bidder, such Bidder's Good Faith Deposit shall be refunded within five business (5) days of the conclusion of the Plan Auction;

o. The Winning Bidder's Good Faith Deposit shall be credited against the cash consideration set forth in the Winning Proposal;

p. If Debtors are unable to confirm a plan of reorganization embodying the Winning Bid no later than March 15, 2012 and cause such plan to go effective no later than April 15, 2012 (each a "Non-Consummation Event"), the Debtors shall immediately move to confirm the OMF Plan embodying the Initial OMF Bid. In the event of a Non-Consummation Event, if such event occurs (a) through no fault of the Debtors, the Good Faith Deposit shall be forfeited, (b) through the fault of the Debtors, the Winning Bidder shall receive the Good Faith Deposit within three (3) business days of the Non-Consummation Event and the Winning Bidder shall have no liability to any party as a result of the Non-Consummation Event; and

q. The Debtors reserve their rights to: (i) impose, at or prior to the Plan Auction, additional terms and conditions on any Competing Plan Proposals; (ii) extend any deadlines set forth in the Bid Procedures other than the deadlines pertaining to a Non-Consummation Event; and/or (iii) adjourn the Plan Auction without further notice.

## **BASIS FOR RELIEF**

34. Section 105(a) of the Bankruptcy Code provides, in relevant part, as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105(a).

35. Section 363(b) of the Bankruptcy Code provides, in relevant part, as follows:

> The trustee [or debtors-in-possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate....

11 U.S.C. § 363(b).

36. Courts have granted substantial deference to a debtor's business judgment, especially in the context of bidding and auction procedures. See Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1017 (2d Cir. 1983); In re Del. & Hudson Ry. Co., 124 B.R. 169, 175-76

(D. Del. 1991); In re Trans World Airlines Inc., No. 01-0056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

37. The paramount goal of a chapter 11 process is to maximize the proceeds received by the estate. See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 564-65 (8th Cir. 1997) ("[A] primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand."); In re Abbotts Dairies of Pennsylvania, Inc., 788 F. 2d 143, 149 (3d Cir. 1986) (noting the fairness and reasonableness of prices); Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . debtor's duty . . . is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.), 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)); Del. & Hudson Ry., 124 B.R. at 176 (same); In re Summit Global Logistics, Inc., No. 08-11566, 2008 WL 819934, at *14 (Bankr. D.N.J. March 26, 2008) (describing a proposed transaction as one that "maximize[d] value and return to interested parties.").

38. To that end, courts have recognized that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate of a debtor and therefore are appropriate. See Integrated Res., Inc., 147 B.R. at 659 (such procedures "encourage bidding and maximize the value of the debtor's assets"); In re Fin. News Network Inc., 126 B.R. 152, 156 (S.D.N.Y. 1991) ("[C]ourt-imposed rules for the disposition of assets [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estate.").

39. In exercising their fiduciary duties, the Debtors have determined that the Bid Procedures are the most appropriate method to enable and facilitate potential Bidders to submit

Competing Plan Proposals that increase recoveries to creditor constituents. The Movants believe that the proposed Bid Procedures will lead to an open and fair bidding environment. The OMF Commitment also sets a bidding floor which ensures that the contemplated OMF Plan will provide an acceptable minimum recovery for the Estates and will progress to confirmation even in the absence of market interest in submitting Competing Plan Proposals.

40.  The Movants submit that the proposed Bid Procedures will establish the parameters under which the value to be contributed to a plan of reorganization may be maximized. The Bidding Procedures are reasonable under the facts and circumstances of these Bankruptcy Cases. Approval of the Bidding Procedures is therefore in the best interests of the Debtors, their Estates and their creditors.

## NO PRIOR REQUEST

41.  No prior request for the relief sought in this Bid Procedures Motion has been made to this or any other court.

## NOTICE

42.  The Movants have served copies of this Motion and a notice thereof upon the following parties: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the Debtors' postpetition lenders; (iv) all parties which have filed requests for notice in these Bankruptcy Cases pursuant to applicable provisions of the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware; (v) the Internal Revenue Service; and (g) the United States Attorney for the District of Delaware. The Movants have also served a notice of this motion on (a) all persons or entities that have filed proofs of claim and/or requests for payment of administrative claims in these Bankruptcy Cases, (b) all persons or entities listed in

the Debtors' Schedules of Assets and Liabilities, (c) any other known holders of claims against or interests in the Debtors, (d) parties to adversary proceedings associated with the Bankruptcy Cases, and (e) known parties which have asserted purported interests in the units set forth in Exhibits B and C to the New OMF Commitment.

## CONCLUSION

WHEREFORE, the Movants respectfully request that the Court (i) enter the Bid Procedures Order attached hereto as **Exhibit B** approving the Bid Procedures for submitting Competing Plan Proposals against the New OMF Commitment, and (ii) grant the Movants such other and further relief as is just and necessary.

Dated: September 29, 2011
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

/s/ Daniel B. Butz
Derek C. Abbott (No. 3583)
Daniel B. Butz (No. 4227)
Erin R. Fay (No. 5268)
1201 N. Market Street
18th Floor
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-9400
*Counsel to FKF Madison Group Owner, LLC, JMJS 23rd Street Realty Owner, LLC, Madison Park Group Owner, LLC and Slazer Enterprises Owner, LLC*

**RICHARDS, LAYTON & FINGER, PA**

/s/ Zachary I. Shapiro
Russell C. Silberglied (No. 3462)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

**HAYNES AND BOONE, LLP**
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Telephone: (212) 659-7300
Facsimile: (212) 918-8989
Lenard Parkins (admitted *pro hac vice*)
Lawrence Mittman (admitted *pro hac vice*)
Trevor Hoffmann (admitted *pro hac vice*)
Jonathan Hook (*admitted pro hac vice*)

*Co- Counsel to One Madison FM, LLC, as Plan Proponent*