# Exhibit A

New OMF Commitment

September 16, 2011

FKF Madison Group Owner LLC and its affiliated debtors
c/o John Fioretti, Chief Restructuring Officer
Turnaround Advisors LLC
11320 Dixie Glen Dr., Suite 213
Charlotte, NC 28277-3094

## Binding Commitment for OMF or its Designee to be Plan Funder
## Under the OMF Plan

One Madison FM, LLC ("*OMF*")[1] is pleased to submit this letter (this "*Commitment Letter*") and the accompanying *Indicative Terms for OMF Plan*, attached hereto as "Exhibit A" and incorporated herein by reference for all purposes (the "*Term Sheet*") to FKF Madison Group Owner LLC and its affiliated debtors (the "*Debtors*"), whose cases are being jointly administered in the bankruptcy case styled *In re FKF Madison Group Owner LLC, et al.*, Case No. 10-11867 (KG), United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Cases*"), which sets forth, among other things, OMF's binding commitment (the "*Commitment*") to fund or cause its designee to act as plan funder under a plan of reorganization (the "*OMF Plan*") with OMF acting as co-proponent with the Debtors (together, the "*Plan Proponents*"). The Term Sheet is an outline of the principal terms and conditions of a proposed financial restructuring, to be embodied in the OMF Plan, under which the plan funder will provide capital for the restructuring of the debt and equity of the Debtors (the "*Financial Restructuring*"). Upon the OMF Plan becoming effective, the OMF Plan will supersede and replace this Commitment Letter in all respects.

Upon execution by the Debtors, this Commitment Letter shall be binding, but remain subject to definitive documentation reasonably acceptable to OMF and the Debtors and the conditions to confirmation and effectiveness delineated herein. Notwithstanding anything contained herein to the contrary, at any time prior to confirmation of the OMF Plan, the Debtors' obligations hereunder are subject at all times to the fulfillment of their respective fiduciary duties in and under applicable law. In accordance therewith, the Debtors or any member, manager, or officer of the Debtors, in such person's capacity as a member, manager, or officer of the Debtors, shall be entitled to take any action, or to refrain from taking any action, including a decision to terminate the Debtors' rights and obligations under this Commitment Letter, that such person determines in good faith, after consultation with counsel, is necessary by virtue of, and consistent with, their fiduciary obligations under applicable law. For the avoidance of doubt, and by way of example without limitation, the Debtors may terminate their rights and obligations under this Commitment Letter by written notice to counsel for OMF, (i) if the Debtors determine, as set forth above, that this Commitment Letter is not in the best interest of the Debtors' estates and that continued support of the OMF Plan would be inconsistent with the Debtors' fiduciary obligations, or (ii) the Debtors receive a proposal for an alternate plan of reorganization or transaction and the Debtors determine as set forth above that continued support by the Debtors of the OMF Plan pursuant to this Commitment Letter would be inconsistent with the Debtors'

---

[1] OMF is an affiliate of a joint venture being formed among affiliates of The Related Companies ("*Related*"), HFZ Capital Group, LLC ("*HFZ*"), and Amalgamated Bank, as Trustee of Longview Ultra Construction Investment Fund ("*Amalgamated*").

fiduciary obligations. The Commitment Letter and this Term Sheet are *not* all-inclusive and do *not* purport to enumerate or contain all of the terms, provisions and conditions which would be contained in definitive documentation for the proposed Financial Restructuring. This Commitment Letter is not a solicitation of acceptances or rejections with respect to any restructuring or plan of reorganization. Any such solicitation will be conducted in accordance with the Bankruptcy Code and/or applicable non-bankruptcy law.

The treatment of the OMF Prepetition Claims (as defined below) as described herein is only with respect to the Debtors and their estates (the "*Estates*"), including the Property (as defined below) and specifically does not apply to OMF's rights against any other party and any other property, all of which rights are expressly reserved and preserved. Except as otherwise expressly set forth herein, OMF and the Debtors expressly reserve and preserve all, and nothing in this Commitment Letter shall affect in any way, nor be deemed a waiver of any, of the other rights of OMF or its affiliated entities or the Debtors and their affiliates, including, without limitation, (a) under that certain (i) *Senior Loan and Security Agreement* (the "*Senior Loan Agreement*"), (ii) *Building Loan and Security Agreement* (the "*Building Loan Agreement*"), (iii) *Project Loan and Security Agreement* (the "*Project Loan Agreement*"), all dated November 16, 2007, and all collateral documents executed in connection thereto (collectively, as amended, the "*Loan Documents*"), (b) under that certain Pledge and Security Agreement (Equity Interests) dated as of May 31, 2008 and all collateral documents executed in connection thereto (collectively, as amended, the "*Commercial Unit Loan Documents*"), (c) under any other document, and (d) under applicable law and in equity.

OMF and the Debtors will work together to finalize the OMF Plan along with an explanatory disclosure statement (the "*OMF Disclosure Statement*"), both to be filed no later than October 31, 2011, providing for, among other things, (i) OMF's election under Bankruptcy Code section 1111(b) to have its claims arising under the Loan Documents (the "*OMF Prepetition Claims*")[2] treated as fully secured, (ii) the vesting in the Reorganized Debtors of 100% of the Debtors' interests in the property of the Estates, including, without limitation, the Debtors' interests in the units set forth on "Exhibit C" (the "*Disputed Units*"),[3] but not including the 12 residential units listed on "Exhibit B" (in the aggregate, the "*Property*") subject to the liens, mortgages and security interests of OMF arising under or related to the Loan Documents (collectively, the "*OMF Prepetition Liens*") and (iii) the ownership of 100% of the equity in the Reorganized Debtors (the "*New Equity*") by a newly-created affiliate of OMF ("*OMSub*") upon the effective date of the OMF Plan (the "*Effective Date*"). From and after the Effective Date, the OMF Prepetition Claims will (a) survive and continue to be secured by the OMF Prepetition Liens, and (b) not be discharged, affected, released or otherwise satisfied or impaired by the OMF Plan or the order confirming the OMF Plan (the "*Confirmation Order*"). As a result, on the Effective Date, OMSub will own 100% of the New Equity and OMF will continue to own and hold the OMF Prepetition Claims secured by the OMF Prepetition Liens.[4]

---

[2] All of the OMF Prepetition Claims, in an aggregate amount of no less than $234,150,572.74 as of the commencement of the Bankruptcy Cases, are evidenced and secured by the OMF Prepetition Liens (as defined below).

[3] Neither the Debtors nor OMF nor their affiliates make any representations or warranties as to the accuracy or completeness of Exhibit C.

[4] Under the OMF Plan, OMF may assign, hypothecate, refinance or otherwise syndicate all or a portion of its interests in the OMF Prepetition Claims and the OMF Prepetition Liens and any such transactions shall be deemed arising under the OMF Plan.

The Bankruptcy Court will determine the adequacy of, and enter an order approving, the OMF Disclosure Statement at a date no later than December 20, 2011, subject to the Bankruptcy Court's docket.

OMF has obtained and reviewed a current title commitment for the Property, and has forwarded a copy of the title commitment to the Debtors. In the event the OMF Plan is confirmed by the Bankruptcy Court, on the Effective Date, the Reorganized Debtors will own the Property free and clear of all liens, claims, rights, interests, security interests and encumbrances of any kind other than (i) the continuing OMF Prepetition Liens, (ii) those liens that are acceptable to OMF based on its review of the title commitment and (iii) any interests relating to the Disputed Units asserted by parties in the Bankruptcy Cases prior to the applicable bar date established in the Bankruptcy Cases (the "*Disputed Unit Claims*") pending final adjudication of such Disputed Unit Claims by a court of competent jurisdiction.

### A.     *The OMF Plan*

The OMF Plan will provide treatment to creditors and interest holders, implemented on the Effective Date, as set forth in the Term Sheet or as otherwise agreed between OMF and the Debtors. All pleadings, notices and other filings in connection with the OMF Plan shall be in form and substance reasonably acceptable to OMF and the Debtors.

### B.     *OMF Plan Funding*

OMSub shall fund the cash consideration necessary to effectuate the OMF Plan pursuant to this Commitment Letter (the "*Plan Funding Commitment*"). OMF shall also accept treatment of the OMF Prepetition Claims as set forth in the Term Sheet.

OMF hereby confirms that, as of the date hereof and continuing through the Effective Date, OMSub will have available the cash commitments necessary to fund the Plan Funding Commitment, subject to the terms and conditions set forth herein and in the Term Sheet. There shall be no financing contingency.

### D.     *Retention of Broker and Marketing Process*

OMF acknowledges, in fact it has insisted, that the OMF Plan will be subject to higher and better offers for creditor treatment. In an effort to attract competing proposals to the OMF Plan (a "*Competing Plan Proposal*"), OMF shall make or otherwise arrange for DIP financing available to fund the fees and expenses of a real estate broker or real estate oriented investment banker (the "*Broker*") to be retained by the Debtors with the approval of the Bankruptcy Court on terms reasonably acceptable to the Debtors and OMF. The Broker shall be mutually agreed to by OMF and the Debtors. Once the Broker has been selected, OMF and the Debtors will work with such Broker to develop and implement a mutually agreeable marketing process (the "*Marketing Process*").

On or before September 30, 2011, the Debtors will file a motion for an order (the "*Broker Order*") authorizing the retention of the Broker, which order shall be reasonably acceptable in form and substance to OMF and the Debtors. The Broker's duties shall be to (i) solicit Competing Plan Proposals in a manner reasonably acceptable to OMF and the Debtors and otherwise in accordance with the Bid Procedures Order (as defined below), and (ii) distribute this Commitment Letter, upon which any Competing Plan Proposal shall be based, to any such potential bidder, such that competing bidders, if any, will have the information and time necessary to submit a Competing Plan Proposal.

### E. *Competing Plan Proposals*

On or before September 29, 2011, the Debtors shall file a motion seeking approval of a process to solicit plan proposals to compete against this Commitment Letter and the Term Sheet (the "**Bid Procedures Order**"). The Bid Procedures Order shall establish the mechanism for filing a Competing Plan Proposal. To the extent a person or entity desires to propose a Competing Plan Proposal, such Competing Plan Proposal shall be embodied in a binding commitment letter and accompanying term sheet which shall be actually received by the Debtors and OMF no later than the deadline established in the Bid Procedures Order. Any Competing Plan Proposal shall (i) provide for payments on account of the OMF Prepetition Claim in cash only, in full on the Effective Date, or as otherwise agreed by OMF; (ii) include a binding commitment letter and accompanying plan term sheet in the form of a mark-up of this Commitment Letter and attached Term Sheet that (a) is not subject to any due diligence or other "outs" (other than as described in the Term Sheet), and (b) betters by at least $250,000 the overall treatment of the Debtors' creditors contained in the Term Sheet. Any increases in payments to creditors as a result of a Competing Plan Proposal shall be paid first on account of the OMF Prepetition Claims until the OMF Prepetition Claims have been paid in full and in cash (which may include accrued interest and default interest, fees and costs and other sums that OMF may be entitled to under the Loan Documents). OMF shall be permitted to submit further and additional bids to compete with any Competing Plan Proposal.

To the extent the Debtors receive a timely and properly submitted Competing Plan Proposal that they believe is superior to the Term Sheet and this Commitment Letter, the Debtors shall conduct an auction pursuant to the Bid Procedures Order (the "**Plan Auction**"). Only OMF and a person or entity that timely and properly submitted a Competing Plan Proposal may bid at the Plan Auction. Thereafter, the Debtors shall present to the Court the Plan of the Plan Funder determined to have submitted the highest and best bid at the Plan Auction.

### F. *The Rule 9019 Settlement*

No later than September 29, 2011, the Debtors shall file a motion (the "**9019 Motion**") seeking an order from the Bankruptcy Court approving, among other things, a settlement pursuant to Bankruptcy Rule 9019 pursuant to which (i) the rights of the Debtors and their Estates to commence or file a challenge in law or in equity to the OMF Prepetition Claims in any respect (a "**Challenge**") and/or prosecute any claims or causes of action in law or in equity against OMF (an "**OMF Lawsuit**") shall be fully compromised, released and settled in exchange for $6.75 million to be funded for the treatment of general unsecured claims, subject to, and as set forth in the Term Sheet; (ii) the allowance and validity of the OMF Prepetition Claims in full and the Liens that evidence and secure such claims in all respects, and (iii) a global settlement, good faith compromise, and release of all claims, interests and controversies by and among the Debtors (on behalf of themselves and their Estates), OMF, HFZ, and their respective members, officers, directors and affiliated entities, including, without limitation, claims arising under or relating to the contractual, legal, equitable and other rights of such parties in respect of the Debtors and/or their estates, except for the obligations and payments set forth in the OMF Plan (items (i), (ii), and (iii) collectively, the "**9019 Settlement**"). Notwithstanding anything to the contrary contained herein, the 9019 Settlement shall not be deemed to constitute a waiver or release of any claims held by OMF against its predecessors-in-interest other than Amalgamated.

### G) *Termination of Commitment*

This Commitment Letter shall terminate and be of no further force or effect, the OMF Plan shall not proceed and shall be withdrawn, and OMF shall no longer be obligated with respect to the Commitment, upon the earliest to occur of the following, unless waived in writing by OMF (each, a "*Termination Event*"):

- The Debtors failure to provide OMF and its agents with continuing reasonable and complete access to the Property, the Debtors' sole officer and the Debtors' books and records;

- The Debtors' failure to file the Bidding Procedures Motion on or before September 30, 2011;

- The Debtors' failure to file the 9019 Motion on or before September 29, 2011;

- The Debtors' failure to file the OMF Plan and OMF Disclosure Statement, which shall amend, restate and supersede any previously filed plan and disclosure statement, respectively, in all respects on or before October 31, 2011;

- The Debtors' failure to obtain a final order, reasonably acceptable the Plan Proponents, approving the OMF Disclosure Statement on or before December 20, 2011;

- The Debtors' failure to obtain a final order, reasonably acceptable the Plan Proponents, confirming the OMF Plan on or before February 15, 2012;

- The entry of an order limiting, precluding or preventing OMF from credit bidding any or all of the OMF Prepetition Claims with respect to any proposed disposition of the Property (in connection with a plan, auction process, selection of a plan sponsor/funder or otherwise) at any time in the Debtors' bankruptcy cases;

- The entry of an order limiting, precluding or preventing OMF from electing to have the OMF Prepetition Claims treated as fully secured under Bankruptcy Code section 1111(b) at any time in the Debtors' bankruptcy cases;

- The Bankruptcy Cases are converted to Chapter 7 cases;

- Mutual agreement of the Debtors and OMF;

- The Effective Date has not occurred by March 15, 2012.

## H) *Miscellaneous*

All notices, requests, claims, demands and other communications hereunder shall be given to OMF (and shall be deemed to have been duly received if given) by hand delivery, in writing or by facsimile transmission with confirmation of receipt, as follows:

> One Madison FM, LLC
> c/o The Related Companies
> 60 Columbus Circle
> New York, New York 10023
>
> Attention: Richard O'Toole
> Jennifer McCool
> Email: rotoole@related.com

jmccool@related.com

Facsimile: (212) 801-1036

With a copy to:

Haynes and Boone, LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112

Attention: Lawrence Mittman, Esq.
Lenard M. Parkins, Esq.
Trevor R. Hoffmann, Esq.
Jonathan Hook, Esq.

Email: lawrence.mittman@haynesboone.com
lenard.parkins@haynesboone.com
trevor.hoffmann@haynesboone.com
jonathan.hook@haynesboone.com

Facsimile: (212) 884-8211

The Debtors:

FKF Madison Group Owner, LLC
JMJS 23rd Street Realty Owner, LLC
Madison Park Group Owner, LLC
Slazer Enterprises Owner, LLC
11320 Dixie Glen Drive, Suite 213
Charlotte, NC 28277

Attention: John Fioretti

Email: Jfio@turnaroundadvisorsllc.com

Facsimile: (704) 341-0554

With a copy to:

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, 18th Floor
Wilmington, DE 19899-1347

Attention: Derek C. Abbott, Esq.
Erin R. Fay, Esq.

Email: dabbott@mnat.com
efay@mnat.com

Facsimile: (302) 658-3989

This Commitment Letter and the rights of the parties, and all actions arising in whole or part under or in connection herewith will be governed by and construed in accordance with the laws of the State of New York.

This Commitment Letter constitutes the entire agreement of parties hereto and supersedes any and all prior discussions, negotiations, proposals, undertakings, understandings and agreements, whether written or oral. No modification or waiver of any provision hereof shall be enforceable unless approved by the parties hereto in writing.

The parties executing this Commitment Letter have all the requisite power and authority to enter into this Commitment Letter and perform all of their respective undertakings contained herein.

Time is of the essence with respect to the Effective Date occurring on or before March 15, 2012.

Sincerely yours,

One Madison FM, LLC,

By:

Related Recovery Fund One Madison, LLC,
for itself and as Managing Member of One
Madison R/A Holdings, LLC, its sole member

By: *[signature]*
Richard O'Toole, Executive Vice
President

AGREED AND CONSENTED TO:

**FKF MADISON PARK GROUP OWNER, LLC**
By: Slazer Enterprises LLC
Its: Manager

By: Green Bridge Capital S.A., 35% Member

Name: Cevdet Caner
Its: Director

By: Special Situation, S.A., as holder of irrevocable
voting proxy from Marc Jacobs 32.5% Member

Name: Cevdet Caner

This Commitment Letter and the rights of the parties, and all actions arising in whole or part under or in connection herewith will be governed by and construed in accordance with the laws of the State of New York.

This Commitment Letter constitutes the entire agreement of parties hereto and supersedes any and all prior discussions, negotiations, proposals, undertakings, understandings and agreements, whether written or oral. No modification or waiver of any provision hereof shall be enforceable unless approved by the parties hereto in writing.

The parties executing this Commitment Letter have all the requisite power and authority to enter into this Commitment Letter and perform all of their respective undertakings contained herein.

Time is of the essence with respect to the Effective Date occurring on or before March 15, 2012.

Sincerely yours,

One Madison FM, LLC,

By:

Related Recovery Fund One Madison, LLC,
for itself and as Managing Member of One
Madison R/A Holdings, LLC, its sole member

By:

---
Richard O'Toole, Executive Vice
President

AGREED AND CONSENTED TO:

**FKF MADISON PARK GROUP OWNER, LLC**
   By: Slazer Enterprises LLC
   Its: Manager

   By: Green Bridge Capital S.A., 35% Member

   ---
   Name: Cevdet Caner
   Its: Director

   By: Special Situation, S.A., as holder of irrevocable
   voting proxy from Marc Jacobs 32.5% Member

   ---
   Name: Cevdet Caner

7

Its: Director

By: Ira Shapiro, 32.5% Member

_____

**JMJS 23RD STREET REALTY OWNER, LLC**
By: Slazer Enterprises LLC
Its: Manager

By: Green Bridge Capital S.A., 35% Member

_____
Name: Cevdet Caner
Its: Director

By: Special Situation, S.A., as holder of irrevocable voting proxy from Marc Jacobs 32.5% Member

_____
Name: Cevdet Caner
Its: Director

By: Ira Shapiro, 32.5% Member

_____

**MADISON PARK GROUP OWNER LLC**
By: Slazer Enterprises LLC
Its: Manager

By: Green Bridge Capital S.A., 35% Member

_____
Name: Cevdet Caner
Its: Director

_____
By: Special Situation, S.A., as holder of irrevocable

8

voting proxy from Marc Jacobs 32.5% Member

_____
Name: Cevdet Caner
Its: Director

By: Ira Shapiro, 32.5% Member

_____

**SLAZER ENTERPRISES OWNER, LLC**
By: Slazer Enterprises LLC
Its: Member

By: Green Bridge Capital S.A., 35% Member

_____
Name: Cevdet Caner
Its: Director

By: Special Situation, S.A., as holder of irrevocable voting proxy from Marc Jacobs 32.5% Member

_____
Name: Cevdet Caner
Its: Director

By: Ira Shapiro, 32.5% Member

_____

# Exhibit A[1]

## INDICATIVE TERMS FOR OMF PLAN

### I. OMF Plan Treatment of Allowed Claim[2]

| Class of Claim or Interest | Description and Estimated Allowed Amount of Claims and Interests | Treatment of Claim or Interest Under the OMF Plan |
|---|---|---|
| **Administrative and Priority Claims (Unclassified)** | Estimated Range: $10 million-$12 million. Includes, without limitation:<br>➢ HFZ DIP Advances that were approved by the Bankruptcy Court and actually advanced<br>➢ OMF DIP Advances<br>➢ OMF GAP Claims<br>➢ Non-DIP OMF Administrative Advances<br>➢ Other Administrative or GAP Claims, inclusive of lease/executory contract cure claims<br>➢ Professional Fee Claims (to the extent approved by the Bankruptcy Court) | Payment in full in cash on the Effective Date or as otherwise provided in the Bankruptcy Code, except to the extent that a holder of such claims agrees to different treatment. |
| **Priority Tax Claims (if any) (Unclassified)** | Estimated Range: $0-$50,000 | At OMF's option, either payment in full (a) in cash on the Effective Date, (b) over a period through the fifth anniversary of the Petition Date, plus interest. All allowed Priority Tax Claims which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. |

---

[1] Undefined capitalized terms used herein shall have the meanings ascribed to them in the Commitment Letter to which this exhibit is attached.

[2] The ranges specified herein shall not be deemed to be an admission or waiver by the Debtors, OMF or any other party as to the amount, validity, priority, or extent of any claims.

| Class of Claim or Interest | Description and Estimated Allowed Amount of Claims and Interests | Treatment of Claim or Interest Under the OMF Plan |
|---|---|---|
| **Senior Secured Mechanics' Lien Claims (with priority over any portion of the OMF Prepetition Claims)** | Estimated Range: $11 million-$12.5 million | All allowed Senior Secured Mechanics Lien Claims will be resolved by agreement between OMF and/or the Reorganized Debtors, if applicable, and the holder of such claims. To the extent the parties cannot so agree, all allowed Senior Secured Mechanics' Lien Claims will be paid in the full face amount of their claims, excluding interest, to the maximum extent provided by law.<br><br>This class will be impaired. |
| **OMF Prepetition Claims** | Not less than $234,150,572.72. | Pursuant to Bankruptcy Code section 1111(b), the OMF Prepetition Claims shall be allowed as fully secured claims in the amount of $234,150,572.72 (which amount may be increased to include accrued interest and default interest, fees and costs and other sums that OMF may be entitled to under the Loan Documents and applicable law).<br><br>On the Effective Date, OMF shall retain the OMF Prepetition Claims secured by the OMF Prepetition Liens, which shall not be discharged, released, affected or otherwise satisfied or impaired by the OMF Plan or the Confirmation Order. |
| **Other Secured Claims (with priority over OMF Prepetition Claims)** | Estimated Range: $0-$50,000 | At OMF's option, each allowed Other Secured Claim will be paid in full and treated as follows under the OMF Plan: (a) reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code; (b) the holder of an allowed Other Secured Claim shall receive the collateral securing such claim and any interest required to be paid pursuant to section 506(b) of the Bankruptcy Code; or (c) receive such other treatment as OMF and the applicable holder of an allowed other secured claim may agree. Prepetition liens with respect to allowed Other |

| Class of Claim or Interest | Description and Estimated Allowed Amount of Claims and Interests | Treatment of Claim or Interest Under the OMF Plan |
|---|---|---|
| | | Secured Claims that are rendered unimpaired shall survive the Effective Date and shall continue in accordance with contractual or statutory terms until such claims have been paid in full. |
| **Other Priority Claims** | <u>Estimated Range</u>: $13,000-$50,000 | At OMF's option, each allowed Other Priority Claim will be treated as follows under the OMF Plan: (a) paid in full in cash on the Effective Date; or (b) receive such other treatment as OMF and the applicable holder of such claims may agree. |
| **General Unsecured Claims** | <u>Range</u>: $160 million-$180 million | Holders of Allowed General Unsecured Claims will receive their pro rata share of $3.4 million (the "***GUC Cash Amount***"). To the extent the (a) Committee does not object to (i) confirmation of the OMF Plan, (ii) the relief set forth in the Bid Procedures Motion or the 9019 Motion, (iii) the allowance, validity and priority of the OMF Prepetition Claims and the OMF Prepetition Liens and OMF's unfettered right to credit bid the OMF Prepetition Claims in the Debtors' bankruptcy cases, (b) the Committee does not take any action that would interfere with or hinder any of the rights or courses of action contemplated by the OMF Plan, (c) Class 5 votes to accept the OMF Plan, and (d) the Committee does not commence a Challenge or file and/or seek to prosecute an OMF Lawsuit, the GUC Cash Amount will be increased to $6.75 million. |
| **Treatment of Old Equity Interests / Issuance of New Equity Interests** | N/A | Any prepetition equity interests of Debtors arising from any form of equity securities, as defined in 11 U.S.C. § 101(16), including, without limitation, any prepetition common and preferred stock or member interests issued and outstanding and all options, |

| Class of Claim or Interest | Description and Estimated Allowed Amount of Claims and Interests | Treatment of Claim or Interest Under the OMF Plan |
|---|---|---|
| | | warrants and other rights relating thereto, shall be retired, cancelled, extinguished and/or discharged on the Effective Date in accordance with the terms of the OMF Plan.<br><br>On the Effective Date, on account of OMSub funding the Plan Funding Commitment, OMSub shall receive 100% of the New Equity. |

## II. Miscellaneous Terms and Conditions

| | |
|---|---|
| **Means for OMF Plan Implementation** | On the Effective Date, all of the Debtors' Assets, including, without limitation, the Property, will vest in the Reorganized Debtors free and clear of all liens, claims, rights, interests, security interests and encumbrances of any kind (except those that are acceptable to OMF based on its review of the title commitment and further any Disputed Unit Claims pending final adjudication of such interests by a court of competent jurisdiction). A title policy reflecting the Reorganized Debtors' ownership of the Property (as described in the previous sentence), no less favorable to the Reorganized Debtors than the ownership reflected in the title commitment referred to in the Commitment Letter shall be issued on or prior to the Effective Date. |
| | The OMF Plan shall provide that (i) all claims and causes of action of the Debtors and their Estates under chapter 5 of the Bankruptcy Code and/or applicable non-bankruptcy law and (ii) the Debtors' interests in all claims, causes of action and litigation incident to the Bankruptcy Court's retained jurisdiction following the Effective Date, whether pending or asserted in the future (items (i) and (ii) collectively, the "*Estate Claims*") shall vest in and be owned by the Reorganized Debtors in all respects. |
| | The Debtors shall not compromise or settle any action or controversy related to the Disputed Units or any Estate Claims or any other action or controversy without the written consent of OMF, which consent shall not be unreasonably withheld. |
| | Prior to the Effective Date, and after the filing of the OMF Plan, the Debtors shall not contest OMF's standing to participate or right to intervene in contested matters and adversary proceedings with respect to, and any party's purported interest in and claims against or that may affect, the Property, or a determination of what constitutes property of the Debtors' Estates, including any contested matter or adversary proceeding which may affect the Debtors' ownership of such property. |
| | Except as otherwise expressly set forth herein, the treatment of the allowed OMF Prepetition Claims as described herein is only with respect to the |

Debtors, the Property and the OMF Plan and specifically does not apply to OMF's rights against any other party, any other property and any other Plan Funder or any other plan sponsored by OMF, all of which rights will be expressly reserved and preserved.

OMF and its owners or affiliates shall provide OMSub with funds sufficient to pay the Plan Funding Commitment.

The OMF Plan will provide for the protections afforded by Bankruptcy Code sections 1145 and 1146, as applicable, to the fullest extent permitted by applicable law.

The OMF Plan will provide for exculpation in connection with the Bankruptcy Cases and the OMF Plan for the Debtors, OMF, HFZ, and their affiliated entities, including their direct or indirect members, managers, and their respective attorneys, advisors, officers, managers and other agents and professionals (the "*Exculpated Parties*").

Except as to the payments and obligations set forth in the OMF Plan, the OMF Plan will provide for mutual releases with respect to the Debtors and/or their Estates between and among, (a) the Debtors, HFZ, [Related], and OMF and their Affiliates, members (and member's members), managers and their respective managers, attorneys, advisors, officers, directors and other agents and professionals, *except that* OMF is not releasing (i) any of the Estate Claims other than those assertable against the Exculpated Parties, (ii) any claims based on fraud and/or willful misconduct, or (iii) its pledge rights and claims against any party in connection with the commercial unit modification transaction described in the Commercial Unit Loan Documents, all of which rights are expressly reserved and preserved. Notwithstanding anything to the contrary contained herein, the foregoing releases shall not be deemed to constitute a waiver or release of any claims held by claims held by OMF against its predecessors-in-interest other than Amalgamated.

The OMF Plan and the Confirmation Order shall provide that the Bankruptcy Court shall retain exclusive jurisdiction to the maximum extent provided by law following the Effective Date of the OMF Plan including, without limitation, to: (a) hear and determine any objections or motions with respect to the allowance or classification of claims and interests; (b) hear and determine any and all applications for the rejection or assumption and assignment of executory contracts or unexpired leases which the Debtors are a party to or with respect to which they may be liable, and to hear and determine, and if need be to liquidate, any and all claims arising there from; (c) hear and determine any and all applications, motions, adversary proceedings, and contested or litigated matters filed and/or commenced prior to the Effective Date or otherwise properly before the Bankruptcy Court; (d) hear and determine all controversies, suits and disputes as may arise in connection with the interpretation or enforcement of the OMF Plan, or any agreements, documents, or instruments issued under or relating to the OMF Plan, including any documentation evidencing

| | |
|---|---|
| | the terms of the OMF Plan; (e) adjudicate and determine all claims relating to the determination of property of the estates (including the Disputed Units identified in Exhibit C to the Commitment Letter), a security or ownership interest in any of the Debtors' assets, or in any proceeds thereof; (f) adjudicate and determine all pending or future litigation regarding ownership, treatment and/or disposition of all right, title and interest in the Disputed Units identified in Exhibit C to the Commitment Letter; (g) determine issues and disputes concerning entitlement to distributions to be made under and pursuant to the OMF Plan; and (h) modify the OMF Plan pursuant to section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code. |
| **Post-Effective Date Management** | Related Management Company will be the new manager/management company of the Reorganized Debtors. |
| **Conditions to OMF Plan Confirmation** | 1. Either (a) the amount, priority or extent of the Administrative, Priority or Secured claims other than the OMF Prepetition Claims are reasonably satisfactory to OMF, or (b) the Reorganized Debtors, OMF or a designated affiliate shall retain the right to dispute any such claims by filing claim objections within 180 days after of the Effective Date.<br><br>2. The Debtors shall (i) obtain the Confirmation Order in form and substance reasonably acceptable to the Plan Proponents, including findings that the OMF Prepetition Liens are first in priority as to the Property and the proceeds thereof, except with respect to the Secured Mechanics' Lien Claims and the Other Secured Claims as set forth herein, and (ii) use their best efforts to obtain findings in the Confirmation Order that the OMF Prepetition Liens are first in priority as to the Disputed Units and the proceeds thereof in all respects.<br><br>3. The final version of all of the schedules, documents, and OMF Plan exhibits, including a plan supplement, shall have been filed in form and substance reasonably acceptable to the Plan Proponents. |
| **Conditions to Effective Date** | 1. The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Plan Proponents, which order shall be final and non-appealable, and the title company insuring title to the Property for the benefit of the Reorganized Debtor shall have issued the title policy no later than February 15, 2012 or such later date as the Plan Proponents may agree.<br><br>2. The conditions to confirmation delineated in the OMF Plan have either been satisfied or waived in accordance with the OMF Plan.<br><br>3. The title company insuring title to the Property shall have issued a (i) title policy in favor of the Reorganized Debtors not less favorable than the title commitment referenced in the Commitment Letter, and (ii) a lender's policy reflecting that the OMF Prepetition Liens (and |

      all related documents, including, without limitation, the Loan Documents) have not been discharged, affected, released or otherwise satisfied or impaired by the Plan or the Confirmation Order.

4. All conditions to the effectiveness of the OMF Plan, as set forth in the OMF Plan, shall have occurred unless waived by OMF in its sole and absolute discretion.

5. All documents and agreements necessary to implement the Plan on the Effective Date shall have been duly and validly executed and delivered by all parties thereto, all such documents and agreements must be reasonably acceptable to the Plan Proponents.

6. The Debtors shall have obtained Final Orders or judgments of the Bankruptcy Court or another court of competent jurisdiction, or obtained such other settlement or resolution acceptable to the Proponents, in their respective sole and absolute discretion, determining or resolving that any Lien or other interest in the Property or any other Assets of the Debtors or their Estates asserted by the Holder of (i) the McDonald's Claim and (ii) a Judgment Lien Claim (including the FKF3 Claim) is (a) null and void or avoided in its entirety, (b) subordinate in all respects, including, without limitation, priority, to the OMF Prepetition Liens and any Allowed Secured Mechanics' Lien Claims against the Property and therefore to be treated under the OMF Plan as a general unsecured claim, or (c) not enforceable against the Debtors, Reorganized Debtors or their assets.

7. All authorizations, consents, certifications, approvals, rulings, no-action letters, opinions or other documents or actions required by any law, regulation or order to be received or to occur in order to implement Article IV of the Plan as of the Effective Date shall have been obtained or shall have occurred unless failure to do so will not have a material adverse effect on the Reorganized Debtors. For the avoidance of doubt, approval or acceptance of the Offering Plan by the New York State Department of Law or any other governmental entity shall not be a condition to the occurrence of the Effective Date.

8. The Proponents shall jointly file with the Bankruptcy Court a notice of the Effective Date stating that the conditions in the Plan have been satisfied or waived pursuant to Section 7.3 of the Plan, which filing shall be made no later than thirty (30) days after such conditions have been satisfied or waived.

## Exhibit B
## (Sold Units)

10A
11A
16A
18A
18B
20A
20B
32B
33A
33B
35A
42A

# Exhibit C
## (Disputed Units-Units Owned by Debtors-Deed Purportedly Transferred-Subject to Ongoing Review)

**UNITS**
7A
8A
10B
12A
12B
15A
15B
23B
27A
27B
28A
28B
37A
49B
52A
57