# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FKF MADISON GROUP OWNER LLC, *et al.*[1] | ) Case No. 10- 11867 (KG) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hearing Date: October 20, 2011 at 10:00 a.m. (ET) |
| | ) Objections Due: October 13, 2011 at 4:00 p.m. (ET) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) FURTHER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby move (the "Motion") the Court, pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), for the entry of an order: (i) further extending the period during which the Debtors have the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") by approximately five months, through and including February 28, 2012; and (ii) extending the period during which the Debtors have the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods"), by approximately five months, through and including April 30, 2012. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors, followed by the last four digits of their tax identification numbers, are as follows: FKF Madison Group Owner LLC (6399); JMJS 23rd Street Realty Owner LLC (6651); Madison Park Group Owner LLC (3701); and Slazer Enterprises Owner LLC (4339). The Debtors' mailing address is P.O. Box 49249, Charlotte, NC, 28277.

2. The statutory basis for the relief requested herein is section 1121(d) of the Bankruptcy Code.

**BACKGROUND**

3. The Debtors are owners as tenants in common of a condominium tower located at 23 East 22nd Street in New York City (the "Property"). Slazer Enterprises, LLC ("Slazer"), a non-Debtor entity, is the sole member of Debtor Slazer Enterprises Owner LLC and serves as the manager for all of the Debtors. Slazer, in turn, is controlled by Green Bridge Capital S.A. (35%) ("GB"), Special Situation S.A. (by proxy for Marc Jacobs) (32.5%) ("SS" and together with GB, the "Controlling Members"), and Ira Shapiro (32.5%) ("Shapiro").

4. On June 8, 2010, involuntary chapter 7 petitions were filed in this Court against each of the Debtors by certain petitioning creditors, thereby commencing the Debtors' involuntary chapter 7 cases (the "Chapter 7 Cases").

5. On November 19, 2010, this Court entered Orders for relief in the Chapter 7 Cases and entered Orders converting the Chapter 7 Cases to cases under chapter 11 of the Bankruptcy Code (See D.I. 118).

6. The Debtors are operating their business as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. On January 20, 2011, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") (D.I. 211).

7. On December 15, 2010, the Controlling Members instituted Adversary Proceeding No. 10-56158 (KG) (the "Adversary Proceeding") in this Court by filing a complaint (the "Complaint"). The Complaint sought declaratory and injunctive relief providing that

Shapiro did not have corporate authority to act on Slazer's behalf, as manager or member of the Debtors.

8. On January 31, 2011, after a lengthy evidentiary hearing in the Adversary Proceeding, the Court issued an order (the "Control Order") restraining Shapiro from taking further action in violation of Slazer's and the Debtors' governing instruments (Adv. D.I. 67).

9. Following, entry of Control Order, the Controlling Members and Shapiro undertook significant negotiations regarding Slazer's prosecution of the Debtors' chapter 11 cases and quickly reached agreement as to how to move forward together in the stewardship of the Debtors in these chapter 11 cases, including, without limitation, working to develop and propose a plan of reorganization.

10. Only after entry of the Control Order was the locus of control within Slazer as it relates to the Debtors' cases established. At that time, approximately six weeks remained in the Debtors' Exclusive Filing Period pursuant to Bankruptcy Code section 1121(c). As a result and to allow the Debtors a true opportunity to benefit from the exclusive periods contemplated by the Bankruptcy Code, the Debtors filed a motion to extend the Debtors' Exclusive Filing Period through and including May 31, 2011 and the Debtors' Exclusive Solicitation Period through and including July 30, 2011 (incorporated herein by reference, the "First Extension Motion") (D.I. 374).

11. The First Extension Motion sought to provide the Debtors with Exclusive Periods of 120 days and 180 days provided for under Bankruptcy Code section 1121(c) beginning from the entry of the Control Order. The First Extension Motion was supported by the Debtors' postpetition lenders, and although the Committee submitted a response (D.I. 403), no formal objections were filed. On April 8, 2011, this Court entered an Order granting the First

Extension Motion, thereby extending the Debtors' Exclusive Periods as described above (D.I. 407).

12. On May 31, 2011, the Debtors filed a second motion to extend the Debtors' Exclusive Filing Period through and including September 30, 2011 and the Debtors' Exclusive Solicitation Period through and including November 30, 2011 (incorporated herein by reference, the "Second Extension Motion") (D.I. 477).

13. Following the filing of the Second Extension Motion, the Debtors filed a plan of reorganization (the "Initial Plan") (D.I. 498) to be sponsored by an affiliate of HFZ Capital Group LLC ("HFZ") and a related disclosure statement (D.I. 499). Pursuant to the terms of the Initial Plan, all of the Debtors' assets were to be transferred to HFZ on the effective date of the Initial Plan.

14. The deadline to object to the Second Extension Motion was June 14, 2011. On such date, Amalgamated Bank, as Trustee of Longview Ultra Construction Loan Fund ("Amalgamated") filed a preliminary objection to the Second Extension Motion (the "Amalgamated Objection") (D.I. 495).

15. Following the filing of the Amalgamated Objection, the Debtors' pre-petition secured lender assigned, among other things, its rights and obligations under the Debtors' pre-petition loan documents to Amalgamated (See D.I. 508). Amalgamated then assigned such rights and obligations to One Madison FM, LLC ("OMF") (See D.I. 509).

16. On July 7, 2011, OMF filed an objection to the Second Extension Motion (the "OMF Objection" and together with the Amalgamated Objection, the "Objections") (D.I. 548). No other party filed an objection to the Second Extension Motion. HFZ filed a response in

support of the Second Extension Motion (D.I. 565) and the Debtors filed a reply to the Objections (D.I. 569).

17. At the July 14, 2011 hearing to consider the Second Extension Motion (the "July 14 Hearing"), the Debtors advised the Court that there had been negotiations with OMF regarding a competing plan proposal and while they welcomed the potential opportunity to increase value for the Debtors' estates, including through a possible transaction with OMF, more time was needed for the plan negotiation process to mature. Also at the July 14 Hearing, Committee counsel advised the Court that the Committee supported the Second Extension Motion and believed that, under the circumstances, another extension of the Exclusive Periods would be the appropriate way to ensure a level playing field for potential competing plan proponents to negotiate towards a resolution that would maximize recovery for of the Debtors' estates' constituents, including the Debtors' unsecured creditors.

18. Before the Court ruled on the Second Extension Motion, the parties at the July 14 Hearing agreed on a 45-day litigation tolling period to allow continued negotiations toward a consensual plan, which tolling period has been extended from time to time by the agreement of the parties.

19. Since the July 14 Hearing, the Debtors, OMF, and HFZ have engaged in dialogue in a good faith effort to resolve their disputes to avoid protracted litigation that has burdened these cases.

20. On September 19, 2011, the Debtors and OMF executed a commitment letter with an accompanying term sheet (the "New OMF Commitment")[2] embodying the terms of a comprehensive restructuring of the Debtors and a settlement of all outstanding issues between the Debtors, OMF, and HFZ. In connection with the New OMF Commitment, the Debtors will

---

[2] The New OMF Commitment was filed with this Court on September 29, 2011 (See D.I. 686).

be filing an amended plan of reorganization (the "OMF Plan") and an amended disclosure statement (the "OMF Disclosure Statement") in support of the OMF Plan, in the form of amendments to the Initial Plan and the Initial Disclosure Statement, respectively, no later than October 31, 2011.

21. In addition, during the litigation tolling period, the Debtors and OMF (as successor to Amalgamated and for itself) successfully negotiated the issues raised in the Objections to the Second Extension Motion. On September 22, 2011, the Debtors filed a form of order approving the Second Extension Motion under certification of counsel (D.I. 676).

22. On September 23, 2011, the Court entered an order approving the Second Extension Motion (the "Second Extension Order") (D.I. 677). Pursuant to the terms of the Second Extension Order, the Debtors' current Exclusive Filing Period and Exclusive Solicitation Period are September 30, 2011 and November 30, 2011, respectively.

23. Since the filing of the Second Extension Motion, the Debtors have continued to pursue their primary objective in these cases of maximizing the value of their estates for the benefit of their creditors and other stakeholders. To that end, the Debtors' professionals together with the Controlling Members and Shapiro have worked to:

> (i) maintain the Debtors compliance with the reporting requirements of the Bankruptcy Code and the Office the United States Trustee;
>
> (ii) negotiate with the Debtors' creditors and key service providers, including the Property's construction manager and condominium association management company, on numerous issues related to these cases and the Property;
>
> (iii) update the Debtors' books and records in anticipation of preparing financial statements and federal taxes for 2008, 2009, and 2010;
>
> (iv) obtain renewal of various permits related to the Property to remain in compliance with local building codes and regulations;

(v) review the status of the Debtors' application for New York City real property tax abatement benefits;

(vi) continue reviewing claims filed against the Debtors;

(vii) continue to analyze the validity and perfection of the liens and claims of the Debtors' secured lender and share the results of such analysis with counsel to the Committee;

(viii) prepare and provide monthly financial reporting to the Debtors' postpetition lenders in compliance with this Court's Orders;

(ix) negotiate amendments to the escrow agreement for the Initial Plan funder's deposit related to the Initial Plan;

(x) negotiate the New OMF Commitment and the principal terms of a plan of reorganization that could be supported by OMF and HFZ (subject to Court approval);

(xi) negotiate the terms of a settlement of issues related to OMF's prepetiton liens and claims in exchange for OMF's agreement to provide certain recoveries to general unsecured creditors in the Debtors' cases (subject to Court approval);

(xii) engage a broker (subject to Court approval) to market the Property and solicit bids;

(xiii) negotiate bid procedures (subject to Court approval) for a competitive marketing and auction process to fully vet bids for the Property;

(xiv) negotiate extensions to the Debtors' post-petition financing and file related notices, as required by Order of this Court;

(xv) retain IJS Management LLC as a consultant to the Debtors to provide its employee Ira Shapiro for consulting services;

(xvi) review and respond to motions for relief from the automatic stay and negotiate with the movants thereto; and

(xvii) review and analyze complaints filed in adversary proceedings initiated against the Debtors and begin negotiations with the plaintiffs in such adversary proceedings.

24. As demonstrated above, the Debtors have used the Exclusive Periods granted by the Second Extension Order to address a number of key issues. Perhaps most

importantly, the Debtors used the extended Exclusive Periods to fully negotiate the Initial Plan, which provided the highest and best offer for the Debtors' assets at the time of its filing and to then negotiate the terms of the New OMF Commitment which provides additional value to the Debtors' estates. As set forth in the New OMF Commitment, which has been filed with the Court, the Debtors intend to use the additional time with respect to this requested exclusivity extension to, *inter alia*, (a) file the OMF Plan and OMF Disclosure Statement; (b) conduct an open-market process to determine if higher bids for the Debtors' Property can be obtained; (c) seek approval of the disclosure statement for the plan embodied in the highest and best bid for the Debtors' assets; (d) solicit votes on the best plan available; and (e) confirm such a plan.

## **RELIEF REQUESTED**

25. The current Exclusive Periods will terminate on September 30, 2011 and November 30, 2011, respectively. By this Motion, the Debtors seek the entry of an order pursuant to section 1121(d) of the Bankruptcy Code extending (a) the Exclusive Filing Period through and including February 28, 2012, and (b) the Exclusive Solicitation Period through and including April 30, 2012, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.

## **BASIS FOR RELIEF REQUESTED**

26. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a plan. Section 1121(c)(3) of the Bankruptcy Code provides that if the debtor proposes and files a plan within the initial 120-day exclusive period, the debtor then has until 180 days after the commencement of the chapter 11 case to solicit and obtain acceptances of such plan. Pursuant to section 1121(d)(1) of the Bankruptcy Code, "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and

after notice and hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1). Such extensions are capped, however, by section 1121(d)(2) of the Bankruptcy Code, which limits any extension of the exclusive filing period to eighteen (18) months after the order for relief and any extension of the solicitation period to twenty (20) months after the order for relief.

27. Although the term "cause" is not defined by the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. No. 595, 95th Cong., 1st Sess. 232 (1977); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987); *In re Public Serv. Co. of N.H.*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent . . . [is] to promote maximum flexibility."). To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and non-financial information concerning the ramifications of any proposed plan for disclosure to creditors. *See, e.g., McLean*, 87 B.R. at 833-34; *In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

28. The decision to extend a debtor's exclusive periods is committed to the bankruptcy court's sound discretion, guided by the facts and circumstances of each case. *See, e.g., First Am. Bank of N.Y. v. S.W. Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986). Courts consider a variety of factors in determining whether "cause" exists to warrant an extension of the exclusive periods, including: (a) the size and complexity of the case, (b) the debtor's progress in resolving issues facing the estate and (c) whether an extension of time will harm the debtor's creditors. *See, e.g., In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409-10 (E.D.N.Y. 1989 (listing above-referenced factors); *see also In re Dow Corning Corp.*,

208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (citing *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996)).

29. The existence of good faith progress and the need for additional time to continue such progress is a particularly significant factor in establishing cause for extending the exclusive periods under section 1121(d) of the Bankruptcy Code. *See Express One Int'l, Inc.*, 194 B.R. at 101; *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986). For the reasons set forth below, "cause" exists to extend the Exclusive Periods in these chapter 11 cases.

30. From the Conversion Date in November of 2010 until the entry of the Control Order on January 31, 2011, there was significant disagreement and uncertainty as to whether Shapiro or the Controlling Members had authority to direct Slazer as manager or member of the Debtors. In the period between the Conversion Date and the entry of the Control Order, the focus of these cases was on resolving the control issue. Only after the Court's resolution of this issue were the Controlling Members able to direct Slazer's administration of the Debtors' bankruptcy cases toward the successful negotiation and prosecution of a chapter 11 plan.

31. Since the entry of the Control Order, the Debtors and their professionals have focused on, *inter alia*, the numerous vital issues detailed above. Significantly, the Debtors have concentrated on canvassing the pool of interested plan sponsors and determining which entity's proposal provides the highest and best value for the Debtors' creditors. As a result of such efforts, the Debtors filed the Initial Plan. Following such filing, the Debtors remained (and still remain) open to opportunities to obtain higher and better offers for their assets. The Debtors believe that the New OMF Commitment embodies the best currently available offer and intend to move forward with filing the OMF Plan and OMF Disclosure Statement in the near term, while

subjecting the Property to an open-market process. If the marketing process produces higher and better offers, the Debtors intend to hold an auction to determine which plan proponents' offer is superior and thereafter seek confirmation of the superior plan. The continuation of the Debtors' Exclusive Periods is critical to allowing this value maximizing process to occur. As such, the Debtors submit that creditors will not be prejudiced by an extension of the Exclusive Periods. In light of this substantial progress, the Debtors submit that their request for an extension of the Exclusive Periods is justified.

32. The extension of the Exclusive Periods will also give the Debtors additional time to collect and review information regarding the claims filed against them, which information will be critical in confirming a plan. The Debtors intend to use the extended Exclusive Periods to continue a claims administration process and resolve or litigate adversary proceedings and contested matters in these cases.

33. Moreover, the Debtors' requested extension of the Exclusive Periods does not exceed the eighteen (18) month limitation for the exclusive period to file a plan or the twenty (20) month limitation for the exclusive period to solicit acceptances of a plan. Rather, the Debtors' requested extension is substantially less than these limitations. Based upon the foregoing, the Debtors submit that cause exists to extend the Exclusive Filing Period through and including February 28, 2012, and the Exclusive Solicitation Period through and including April 30, 2012.

## **NOTICE**

34. Notice of this Motion has been provided to (a) the U.S. Trustee; (b) counsel for the Committee; (c) counsel for the Debtors' post-petition lenders; and (d) those parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002. In light of

the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

35. No previous motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request the entry of an Order, in substantially the form attached hereto as **Exhibit A**, authorizing the extension of the Exclusive Periods and granting such other and further relief as the Court deems just and proper.

Dated: September 30, 2011
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Erin R. Fay*
Derek C. Abbott (Bar No. 3376)
Erin R. Fay (Bar No. 5268)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel to Debtors and Debtors in Possession*

4510861.1