# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FKF MADISON GROUP OWNER, LLC, *et al.*,[1] | ) Case No. 10-11867 (KG) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hearing Date: October 6, 2011 at 11:00 a.m. |
| | ) (REQUESTED) |
| | ) |
| | ) Objection Deadline: October 6, 2011 at 11:00 a.m. |
| | ) (REQUESTED) |

## APPLICATION OF THE DEBTORS PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF JONES LANG LASALLE AMERICAS, INC. AS BROKER FOR THE DEBTORS NUNC PRO TUNC TO SEPTEMBER 30, 2011 AND (II) WAIVING CERTAIN REQUIREMENTS OF DEL. BANKR. L.R. 2016-2

The above-captioned debtors and debtors in possession (the "Debtors") hereby submit this application (the "Application"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 327(a), 328(a), 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) authorizing the Debtors to employ and retain Jones Lang LaSalle Americas, Inc. ("JLL") as broker for the Debtors in connection with the marketing of the Debtors' real property located in New York, New York (the "Property"), *nunc pro tunc* to September 30, 2011; (ii) approving the terms and conditions under which JLL will be retained and compensated; (iii) waiving certain requirements of Bankruptcy Rule 2016 and Local Rule

---

[1] The Debtors, followed by the last four digits of their tax identification numbers, are as follows: FKF Madison Group Owner LLC (6399); JMJS 23rd Street Realty Owner LLC (6651); Madison Park Group Owner LLC (3701); and Slazer Enterprises Owner LLC (4339). The Debtors' mailing address is P.O. Box 49249, Charlotte, NC, 28277.

2016-2; (iv) waiving the requirements of the Interim Compensation Order (as defined below) as to JLL; and (v) granting such other and further relief as the Court deems just and proper. In support of this Application, the Debtors rely upon the Declaration of Joshua D. Gleiber (the "Gleiber Declaration"), attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105(a), 327(a), 328(a), 330 and 331 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-2.

## BACKGROUND

3. On June 8, 2010, involuntary Chapter 7 petitions were filed in this Court against each of the Debtors by certain petitioning creditors, thereby commencing the Debtors' involuntary Chapter 7 cases (the "Chapter 7 Cases").

4. On November 19, 2010, this Court entered Orders for relief in the Chapter 7 Cases and entered Orders converting the Chapter 7 Cases to cases under Chapter 11 of the Bankruptcy Code [See D.I. 119].

5. The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. On January 20, 2011, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") [D.I. 211].

6. On March 18, 2011, this Court entered the *Administrative Order Pursuant to 11 U.S.C. § 105(a) and 331, Fed. R. Bankr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing Procedures For Interim Compensation of Fees and Reimbursement of Expenses for Professionals and Official Committee Members* (the "Interim Compensation Order") (D.I. 373). Pursuant to the procedures set forth in the Interim Compensation Order, estate professionals are required to file monthly fee applications for allowance of 80% of their fees and 100% of their expenses, followed by quarterly fee applications for interim awards of the remaining 20% of their fees for the quarter.

7. On or about September 19, 2011, the Debtors and One Madison FM, LLC ("OMF"), the Debtors' prepetition secured lender (as successor to iStar Tara LLC), entered into a commitment letter for a plan of reorganization that required the Debtors to engage a broker to market the Property. Thereafter, the Debtors and OMF agreed upon JLL as the exclusive broker for the Property and the Debtors and JLL entered into that certain engagement letter (the "Engagement Agreement") attached hereto as **Exhibit C**, subject to Court approval.

## RELIEF REQUESTED

8. By this Application, the Debtors request entry of an order, pursuant to sections 105(a), 327(a), 328(a), 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2: (i) authorizing and approving the employment and retention of JLL, *nunc pro tunc* to September 30, 2011 to market the Property; (ii) approving the terms and conditions under which JLL will be retained and compensated; (iii) waiving certain requirements of Bankruptcy Rule 2016 and Local Rule 2016-2; (iv) waiving the Interim Compensation Order as to JLL; and (v) granting such other and further relief as the court deems just and proper.

## BASIS FOR RELIEF REQUESTED

9. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

10. Under sections 327 and 328 of the Bankruptcy Code, a debtor may employ one or more professionals, that do not hold or represent an interest adverse to its estate and that are disinterested persons, to assist the debtor in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327. Specifically, section 328(a) of the Bankruptcy Code provides that

> The [debtor in possession],...with the court's approval, may employ or authorize the employment of a professional person under section 327...of this title...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a).

11. Bankruptcy Rule 2014 requires that an application for retention of a professional include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a). Local Rule 2014-1 supplements this rule by requiring that the entity seeking retention file a supporting affidavit or verified statement. Del. Bankr. L. R. 2014-1(a).

12. In addition, Bankruptcy Rule 2016(a) provides, in part, that:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

Fed. R. Bankr. P. 2016(a). Local Rule 2016-2 further requires motions or requests for payment to contain certain information requirements; however, Local Rule 2016-2(g) permits waiver of these informational requirements. Del. Bankr. L. R. 2016-2.

13. By this Application, the Debtors request that the Court approve the employment and retention of JLL and the compensation arrangement described in the Engagement Agreement. The proposed retention of JLL is beneficial to the Debtors' estates and the professional compensation arrangements provide certainty and proper inducement for JLL to act expeditiously and prudently with respect to the matters for which it will be employed.

14. The Debtors also request approval of the employment of JLL *nunc pro tunc* to September 30, 2011. Such relief is warranted by the extraordinary circumstances presented by these cases. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. See In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal dismissed, 909 F.2d 1476 (3d Cir. 1990). In this instance, it is important to further market the Property immediately in order to maximize the benefit to the Debtors' estates. The nature of the property and the professional arrangement therefore necessitate the immediate attention of JLL in order to maximize the opportunity for the highest return on the Property.

15. The Debtors further request a waiver of the requirements of Bankruptcy Rule 2016 and the informational requirements of Local Rule 2016-2. As set forth below, JLL has been engaged to provide limited services to the Debtors over a limited time period. In exchange

for its services, JLL will receive the compensation set forth in the Engagement Agreement, which consists largely of a predetermined transaction fee, with the potential for a success fee. The detailed filing requirements of Bankruptcy Rule 2016 and the informational requirements of Local Rule 2016-2 would require the expenditure of unnecessary time and fees in compiling time records and preparing fee applications. Bankruptcy Code section 105 allows this Court to issue any order that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. See 11 U.S.C. § 105(a). In addition, Bankruptcy Code section 328 allows this Court to approve the employment of professionals retained pursuant to Bankruptcy Code section 327 on any reasonable terms and conditions. See 11 U.S.C. § 328(a). Given the limited scope and duration of JLL's employment and the largely predetermined fee structure, the Debtors believe that a waiver of the detailed filing requirements of Bankruptcy Rule 2016 and the informational requirements of Local Rule 2016-2 is necessary and appropriate.

16. Finally, the Debtors request that JLL be relieved of the requirements of the Interim Compensation Order. In light of JLL's largely flat-fee compensation structure, the procedures detailed in the Interim Compensation Order will burden—without providing any benefit to—the Debtors' estates. If the Debtors and JLL are required to prepare, file and serve monthly and quarterly fee statements, substantial administrative costs and professional time may be incurred, without any benefit provided to the estate because JLL's fee is largely a flat fee. Therefore, the Debtors request that JLL be relieved of the requirement to file monthly or quarterly interim fee applications, and, instead, that JLL be compensated as set forth below.

### Selection of JLL and Scope of Services

17. In order to facilitate an expeditious and profitable sale of the Property, the Debtors need to retain the services of a real estate broker who can properly market the property

and attract qualified buyers. For such reasons, the Debtors seek retention of JLL pursuant to this Application.

18. JLL is a leading commercial real estate services firm with offices in, among other places, New York, New York, and is well-suited to provide the type of real estate services required by the Debtors. The Debtors seek to retain JLL as their broker because of, among other reasons, JLL's experience and knowledge in complex real estate transactions. JLL has an excellent reputation for its use of innovative and successful marketing strategies and is well-suited to represent the Debtors in marketing the Property.

19. The Debtors believe that the retention of experienced professionals specializing in the sale of real estate fulfills a critical need that complements the services provided by the Debtors' other restructuring professionals in these cases. The Debtors require the services of a capable and experienced broker because, among other reasons, such retention will allow the Debtors to efficiently market and sell the Property in order to maximize creditor recovery.

20. JLL will act as the Debtors' exclusive broker in connection with marketing of the Property, and agrees to use all reasonable efforts to canvass the market for potential buyers for the Property. Pursuant to the Engagement Agreement, JLL will assist and advise the Debtors with, among other things, the following:[2]

    a. Prepare a "teaser," "book" or other similar marketing materials ("Information Material") in connection with seeking higher and better offers as alternatives to the OMF Plan;

    b. Identify and compile a list of (i) the most likely prospective bidders to have an interest in making a Competing Plan Proposal, and (ii) any prospective bidders that the Debtors may direct JLL to include and any prospective bidder (or bidder group as the case

---

[2] Undefined capitalized terms used in this paragraph shall have the meaning ascribed to them in the Engagement Agreement. The description of the Engagement Agreement contained above is intended solely for summary purposes. The terms of the Engagement Agreement control in the event that any inconsistency exists.

may be) which contacts JLL (collectively, the "Prospective Purchasers");

c. Distribute (which may be in electronic form if JLL and the Debtors, should jointly determine) the Information Material to the Prospective Purchasers as directed by the Debtors and provide certification by JLL that such distribution has been made;

d. Prepare and maintain a due-diligence data site (the "Data-Site") in connection with the OMF Plan Auction (together with information regarding the residential development Property) and coordinate access thereto to all Prospective Purchasers who execute (electronically or otherwise) a confidentiality agreement substantially in the form approved by the Debtors. The Data-Site shall be maintained by a third-party provider mutually selected between the Debtors and JLL. The Debtors shall retain such third-party provider directly, and JLL shall manage the population of the Data-Site. The contents of the Data-Site shall be approved by the Debtors;

e. Provide to the Debtors, no less often than weekly, written and oral reports, as reasonably requested by the Debtors, on the status of the marketing efforts or such other information reasonably requested in writing by the Debtors relating to the Services (the "Status Reports"). The Status Reports shall be prepared for the Debtors, but not for filing with the Bankruptcy Court, and shall provide: (i) the firm and contact names for all Prospective Purchasers contacted by JLL or who have contacted JLL as part of its marketing efforts; (ii) a list of all parties that have signed confidentiality agreements; (iii) a list of all parties that have qualified to bid in accordance with the Bid Procedures Order; (iv) a list of all parties that visit the Data-Site; (v) a list of all parties that tour the Property; and (vi) the certification referenced in section I(iii) of the Engagement Agreement;

f. Communicate with Prospective Purchasers regarding due diligence and submission of Competing Plan Proposals and participation in the OMF Plan Auction and attend the OMF Plan Auction, if and when it occurs;

g. Coordinate, facilitate and host tours of the Property for Prospective Purchasers; and

h. Perform such other services as may be reasonably requested by the Debtors, provided, however, if a material amount of time and/or effort shall be required of JLL to perform such additional services,

8

they shall be subject to an additional fee to be agreed upon by the parties in advance.

21. It is necessary that the Debtors employ JLL to render the foregoing professional services. The Debtors believe that the services will not duplicate the services that other professionals will be providing the Debtors in these cases. Specifically, JLL will carry out unique functions and will use reasonable efforts to coordinate with the other professionals retained in these cases to avoid the unnecessary duplication of services.

## JLL's Disinterestedness

22. To the best of the Debtors' knowledge and except as disclosed in the Gleiber Declaration, JLL has not represented, and does not have any connection, with the Debtors, their creditors, their insiders, their shareholders, their respective attorneys or accountants, or any other parties in interest in any matters relating to the Property.

23. As disclosed in the Gleiber Declaration, JLL currently represents the entities listed in the Gleiber Declaration. JLL has informed the Debtors of its ongoing representation of such entities, and the Debtors have consented to JLL's continued representation of these entities in matters wholly unrelated to the Property. The Debtors believe that JLL's current and future representation of these entities will not in any way adversely affect JLL's representation of the Debtors.

24. As further disclosed in the Gleiber Declaration, JLL formerly represented the entities listed in the Gleiber Declaration in matters wholly unrelated to these proceedings. JLL has informed the Debtors of its past representation of such entities. The Debtors believe that JLL's past representation of these entities will not in any way adversely affect their representation of the Debtors.

25. As set forth in the Gleiber Declaration, to the best of the declarant's knowledge:

    a. JLL does not hold or represent an interest adverse to the Debtors' estates.

    b. JLL is not and has not been a creditor, an equity security holder or an insider of the Debtors.

    c. JLL is not and has not been, within two years before the Petition Date, a director, officer, or employee of the Debtors.

    d. None of JLL's employees, officers, or directors is related to the Hon. Kevin Gross or has a connection to the United States Trustee for the District of Delaware or to any known employee in the office thereof.

26. To the best of the Debtors' knowledge and as disclosed in the Gleiber Declaration, JLL does not hold or represent any interest adverse to the Debtors or their estates, JLL is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, and JLL's employment and retention by the Debtors is necessary and in the best interests of the Debtors and their estates.

27. JLL will periodically review its files during the pendency of this retention to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, JLL will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration if needed, as required by Bankruptcy Rule 2014(a).

## Professional Compensation

28. In lieu of compliance with the Interim Compensation Order, the Debtors propose that JLL be required to provide a fee statement to the Notice Parties (as defined in the Interim

Compensation Order) when each installment payment or a final success payment (if applicable) is due under the Engagement Agreement. JLL shall not be required to maintain time records.

29. JLL and the Debtors have negotiated the terms of the Engagement Agreement at arms-length, which terms reflect commercially reasonable compensation and employment terms. Thus, the Debtors request approval of the Engagement Agreement pursuant to section 328(a) of the Bankruptcy Code.

30. As set forth with greater specificity in the Engagement Agreement, the Debtors and JLL agreed to the following terms of compensation:

> a. <u>Transaction Fee</u>. The Debtors are obligated to pay a total transaction fee (the "<u>Transaction Fee</u>") to JLL in three non-refundable installments, as follows:
>
>> (i) The first $200,000 installment shall be paid upon approval of the Engagement Agreement by the Bankruptcy Court;
>>
>> (ii) Next, a $100,000 installment shall be paid upon completion by JLL and approval by the Debtors of the Information Material, including population of the Data Site and the commencement of solicitation of Competing Plan Proposals; and
>>
>> (iii) The final $100,000 installment and the second $100,000 installment if it has not already been paid, shall be paid upon the completion of the OMF Plan Auction (or determination for any reason that the OMF Plan Auction will not take place) and in no event later than April 30, 2012.
>
> The Transaction Fee is deemed fully earned by JLL upon approval by this Court of the Engagement Agreement ("<u>Broker Court Approval</u>").
>
> If Debtors obtain Broker Court Approval, but a Bid Procedures Order (as defined in the Term Sheet) is not approved before November 30, 2011, the entire Transaction Fee shall be immediately due and payable to JLL, provided, however, that the Engagement Agreement shall remain in full force and effect, and JLL shall be obligated to satisfy all obligations under the Engagement Agreement from and after such date. In the event that

the failure of Debtors to obtain the Bid Procedures Order by November 30, 2011 requires JLL to have to materially update the Information Material (or otherwise duplicate efforts it has already completed), the Debtors agree to compensate JLL for such additional or duplicate work at rates to be agreed upon by the parties in advance of the beginning of such additional work. In the event that the Bid Procedures Order is not approved prior to July 31, 2012, JLL would no longer be required to perform the services under the Engagement Agreement.

b. <u>Success Fee</u>. If a Competing Plan Proposal is received by a qualified bidder (and otherwise in accordance with the Bid Procedures) for cash in amount of $240 million or greater, an additional success fee (the "<u>Success Fee</u>") shall be paid to JLL, which shall be equal to 50 basis points (one half of one percent) times (i) the total cash consideration of such Competing Plan Proposal (including any increases offered during the OMF Plan Auction) provided such Competing Plan Proposal is at least $240 million or greater, or (ii) the total amount of any further proposals submitted by OMF that exceed such Competing Plan Proposal, provided such Competing Plan Proposal (including increases offered during the OMF Plan Auction) or further OMF proposal is otherwise accepted by the Debtora and approved by this Court.

c. <u>Hearing Attendance Fees</u>. In the event JLL is required to attend any hearing in these cases, the Debtors are obligated to pay JLL for time spent preparing and attending at the hourly rates set forth in the form attached to the Engagement Agreement as <u>Schedule A</u>.

d. <u>Other Fees</u>. Any services provided by JLL at the request of the Debtors shall be paid for at a rate to be agreed upon by the Debtors and JLL.

e. <u>Expenses</u>. In addition to the foregoing fees, the Debtors shall reimburse JLL for all reasonable direct out-of-pocket costs and expenses incurred by JLL within the scope of its engagement pursuant to the Engagement Agreement, including without limitation travel, lodging and meal expenses, attorneys' fees, mail and courier services, printing and production charges without Debtors' prior written approval. All advertising, to be approved by Debtors, will be paid for directly by Debtors. If JLL pays for advertising, the Debtors will fully reimburse JLL. In addition, JLL shall be reimbursed by Debtors for any payments made by JLL to third party consultants and professionals provided such third party consultants and professionals have been approved in writing in advance by the Debtors. The expenses to be paid by the Debtors include up to $15,000.00 for attorneys' fees incurred by JLL in the

negotiation of the Engagement Agreement and attorney's fees relating to the filing of any affidavits, review of court orders or other court documents relating to the Engagement Agreement.

31. Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, Orders of this Court or any guidelines regarding submission and approval of fee applications, in light of services to be provided by JLL and the structure of JLL's compensation pursuant to the Engagement Agreement, the Debtors request that JLL be excused from submitting fee applications as set forth in Bankruptcy Rule 2016 and maintaining time records as set forth in Local Rule 2016 in connection with the services to be rendered pursuant to the Engagement Agreement. Instead, JLL shall provide the Notice Parties (as defined in the Interim Compensation Order) with a fee statement, in summary format, as described above.

32. Given the numerous issues which JLL may be required to address in the performance of its services hereunder, JLL's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market price for JLL's services for engagements of this nature, the Debtors believe that the fee structure described above is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

### Indemnification

33. As set forth in Section VIII of the Engagement Agreement, the Debtors have agreed to indemnify JLL, each person or entity deemed to control or to be controlled by JLL, and their respective partners, shareholders, directors, officers, and employees, against and from all losses, liabilities and damages arising in connection with any third party action, claim, proceeding, or investigation relating to the engagement except as may be imposed or incurred by reason of the gross negligence, willful misconduct, or fraud of JLL in the performance of JLL's services and responsibilities and provided that JLL has acted within the scope of its authority. The indemnification provision was negotiated between the Debtors and JLL and the Debtors

respectfully submit that the terms are reasonable and in the best interests of the Debtors, their estates and their creditors.

## NOTICE

34. Notice of this Application has been given to (a) the U.S. Trustee; (b) counsel for the Committee; (c) counsel for the Debtors' post-petition lenders; and (d) those parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

35. No prior request for the relief sought herein has been made to this or any other court.

**WHEREFORE**, based upon the foregoing, the Debtors respectfully request that the Court enter an order substantially in the form annexed as **Exhibit A** hereto (a) granting this Application; (b) authorizing the Debtors to retain and employ JLL in this proceeding as broker for the Debtors *nunc pro tunc* to September 30, 2011; (c) waiving certain requirements of Bankruptcy Rule 2016 and Local Rule 2016-2; (d) waiving the Interim Compensation Order as to JLL; and (e) granting such other and further relief as may be deemed just and proper.

Dated: September 30, 2011
      Wilmington, Delaware    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Erin R. Fay*
Derek C. Abbott (No. 3376)
Erin R. Fay (No. 5268)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors and Debtors-in-Possession*

4497109.2