IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FKF MADISON GROUP OWNER, LLC, *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 10-11867 (KG)<br>)<br>) Jointly Administered<br>)<br>) **Re: 685** |

## ORDER APPROVING THE RELEASE AND SETTLEMENT BY AND AMONG THE DEBTORS, ONE MADISON FM, LLC AND HFZ CAPITAL GROUP, LLC

Upon consideration of the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Fed. R. Bankr. P. 9019 for an Order Approving the Release and Settlement By and Among FKF Madison Group Owner, LLC, One Madison FM, LLC and HFZ Capital Group, LLC* (the "9019 Motion"),[2] the evidence presented in support thereof and all pleadings related thereto, and the arguments and the statements made at the hearing on the 9019 Motion; and it appearing that each of the signatories to the Settlement Agreement is authorized to sign on behalf of and to bind the party on whose behalf (s)he signed; and the Court having determined that good and sufficient cause exists to grant all the relief requested in 9019 Motion based upon the evidence presented and the applicable legal standards;

THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

---

[1] The Debtors, followed by the last four digits of their tax identification numbers, are as follows: FKF Madison Group Owner LLC (6399); JMJS 23rd Street Realty Owner LLC (6651); Madison Park Group Owner LLC (3701); and Slazer Enterprises Owner LLC (4339). The Debtors' mailing address is P.O. Box 49249, Charlotte, NC, 28277

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 9019 Motion.

B. This is a core proceeding pursuant to 28 U.S. C. § 157(b)(2).

C. The manner in which notice of the 9019 Motion was provided to all parties entitled to such notice is adequate, appropriate, reasonable and sufficient for all purposes.

D. The relief requested in the 9019 Motion is in the best interest of the Debtors' Estates and their creditors and other parties in interest.

E. The proposed settlement was negotiated at arm's length and constitutes an exchange of reasonably equivalent value.

F. Pursuant to Section 2.1 of the Settlement Agreement, upon the execution of the Settlement Agreement by all of the Parties and the entry of this Order, the Debtors, on behalf of themselves and their estates, hereby recognize and acknowledge the validity and enforceability of the OMF Prepetition Liens securing the OMF Prepetition Claims and agree and consent that the OMF Prepetition Claims in the amount of $234,150,572.71 shall be allowed against the Debtors in full for all purposes in the Bankruptcy Cases.

G. The Court conducted an intensive evidentiary hearing in December, 2010. As a result, the Court is fully familiar with the issues surrounding claims and ownership questions of purported owners of condominium units (the "Purported Owners") in the Property (see the 9019 Motion where, at page 3, f.n.2, the Property is described). The units at issue, i.e., the Disputed Units, are: 7A, 8A, 10B, 12A, 12B, 15A, 15B, 23B, 27A, 27B, 28A, 28B, 37A, 49B, 52A, 57.

The Court has carefully read and considered the objections to the 9019 Motion of several of the Purported Owners and has weighed their arguments in the written submissions and at oral argument. The Purported Owners' objections are primarily directed against the provisions of the 9019 Motion which seek the Court's finding that the OMF Prepetition Liens securing the OMF Prepetition Claims are valid and enforceable. The Purported Owners argue that the Court should

not approve the 9019 Motion and with it the finding that OMF's liens are valid until the Purported Owners' claims to the Disputed Units are resolved.

The Court entered a Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c) and Fed.R.Bankr. P. 2002, 4001 and 9014 Authorizing Debtors to Obtain Post-Petition Financing (the "DIP Order") (D.I. 369). The DIP Order provides that the prepetition claims of iStar Tara, LLC ("iStar"), as defined in the DIP Order at ¶ B, in the sum of not less than $234,150,572.74, are "valid, enforceable and perfected . . . ." DIP Order, ¶ 8(b). OMF is the successor-in-interest to iStar and, as such, is entitled to a finding that its claims based on the prepetition claims are valid and enforceable. The claims and defense regarding ownership and priority of liens are reserved. See ¶ 5, below.

H.  The OMF Prepetition Liens securing the OMF Prepetition Claims are valid and enforceable against the Debtors and the Property they encumber in all respects.

I.  The compromises and settlement set forth in the Settlement Agreement are fair and reasonable to, and are in the best interest, and represent a proper exercise of the business judgment, of the Debtors, and, in entering into the Settlement Agreement, the Debtors have exercised their rights and powers, and used the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1.  The 9019 Motion is GRANTED in all respects.

2.  The Settlement Agreement, attached hereto as <u>Exhibit 1</u>, is approved in all respects pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Bankruptcy Rule 9019, and the terms thereof are incorporated herein.

3. This Order and the Settlement Agreement are binding on the Debtors, their Estates and creditors, and each of their predecessors, successors or representatives, including, without limitation, the Committee, acting or purporting to act on behalf of the Debtors' Estates.

4. The settlement and compromises set forth in the Settlement Agreement and the execution and delivery of the Settlement Agreement by the parties thereto are approved in all respects.

5. Upon the execution of the Settlement Agreement by all of the Parties and the entry of this Order, the OMF Prepetition Liens are valid and enforceable against the Debtors and the Property the OMF Prepetition Liens encumber in all respects, and the OMF Prepetition Claims are allowed in the amount of $234,150,572.71 against the Debtors for all purposes in the Bankruptcy Cases. Without affecting the validity, allowance and enforceability of the foregoing liens and claims, which shall be binding as to all parties in interest for all purposes, nothing in this Order or the Settlement Agreement shall prejudice claims and defenses regarding ownership of, or priority of liens against, the Disputed Units.

6. The mutual releases contained in the Settlement Agreement shall be effective as of the date hereof, and each party thereto shall be deemed to have released and to be permanently enjoined from asserting, pursuing or prosecuting in any manner and in any forum any and all claims released pursuant to the Settlement Agreement, including, but not limited to, claims arising from the negotiation of or entry into the Settlement Agreement.

7. The parties to the Settlement Agreement shall have all rights, obligations, and privileges as set forth therein. Further, the failure specifically to describe or include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such a provision, it being the intent of this Court that the Settlement Agreement be approved in its entirety.

8. The Debtors and their successors and assigns are authorized and directed to execute the Settlement Agreement and to take all such other actions necessary under the Settlement Agreement to effectuate the Settlement Agreement.

9. The Clerk of Court is authorized to take all actions necessary or appropriate to give effect to the relief granted in this Order.

10. Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Parties are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Parties may, without further delay, take any action and perform any act authorized or directed to occur under this Order.

11. No Disputed Units will be removed from Exhibit C to the [Binding Commitment] ("Commitment") unless and until there is a resolution of the Disputed Unit claims as defined in the Commitment by either settlement or final adjudication by a court of competent jurisdiction.

12. This Order incorporates and approves to the extent applicable, the terms and conditions of the stipulation attached hereto as Exhibit Z, among other things, resolving all of the Official Committee of Unsecured Creditors' objections to the relief granted hereby.

13. This Court shall retain jurisdiction with respect to any matters related to or arising from the implementation of this Order.

Dated: October 24, 2011
Wilmington, Delaware

_____
KEVIN GROSS, U.S.B.J.