IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | |
| FKF MADISON PARK GROUP OWNER, LLC | ) ) ) | Case No. 10-11867(KG) |
| | ) | |
| Reorganized Debtor. | ) ) | |
| | ) | **Re: Dkt. Nos. 1710, 1722, 1723, & 1724** |

## MEMORANDUM OPINION

The Court has addressed the background and complexities of this case in previously issued rulings and will not repeat them here. The Court is now addressing the Plan Administrator's Third Omnibus Objection to Certain Claims (the "Objection") and the oppositions of three claimants, Maria Schiller and Harvey Schiller ("Schiller"), Allison Scollar and Michael Moshan ("Scollar"), and Mark Melrose ("Melrose") (collectively, the "Claimants")[1]. Each of the claims is based on payments due under separate buyback agreements ("Buybacks") between the Debtor and the Claimants. For the following reasons, the Court will overrule the Objection and rule in favor of the Claimants.

## FACTS

In 2007, the Debtor entered into separate purchase agreements with the Claimants for the sale of three condominium units located at One Madison Park Avenue, 23 East 22nd Street, New York, New York. Pursuant to the purchase agreements, the Claimants provided deposits for the individual unit they contracted to purchase.

---

[1] The Objection is devoid of any facts in support of the legal argument. The Claimants submitted declarations in support of their oppositions. The Court will refer to the Declaration of Harvey Schiller ("Decl.__") (D.I. 1722, Att. 1) for facts common to all of the Claimants. The Plan Administrator does not refute the Claimants' assertions.

Later, in 2008 and 2009, the Debtor sought to repurchase the condominium units in anticipation of an opportunity to sell them to third-parties at a higher price. To effectuate the third-party sales, the Debtor, on its own initiative, entered into Buybacks with the Claimants. (Decl. ¶ 3.) The Buybacks provided for the repurchase of the units from the Claimants at a price higher than the Claimants agreed to pay under the purchase agreements, plus the return of the deposit within two days of entering into the Buyback. The individual Claimants' purchase, deposit, Buyback and liquidated damages amounts are as follows:

<u>The Claimants</u>

1. <u>Schiller</u>
   Purchase Price        $7,150,000
   Deposit                  715,000
   Buyback Amount         8,000,000
   Liquidated Damages     1,700,000

2. <u>Scollar</u>
   Purchase Price        $1,510,000
   Deposit                  151,000
   Buyback Amount         2,000,000
   Liquidated Damages       500,000

3. <u>Melrose</u>
   Purchase Price        $1,530,000
   Deposit                   76,500
   Buyback Amount         2,000,000
   Liquidated Damages       500,000

The Buybacks defined the unpaid portion of the profit as a "Cancellation Fee." Each Buyback further provided that if the Debtor failed to pay the Cancellation Fee within 45 days of the issuance of the temporary certificate of occupancy for the unit, the Debtor would be required to pay .06% of the Buyback purchase price each day until paid in full. However, if the Debtor failed to pay the Cancellation Fee within three months of its due date, the Buyback obligated the Debtor to pay a lump sum to each Claimant as liquidated damages. Specifically, Schiller's Buyback provided for a lump

sum payment of $1,700,000.00; Scollar's Buyback provided for a lump sum payment of $500,000.00; and Melrose's Buyback also provided for a lump sum payment of $500,000.00.

By September 3, 2009, temporary certificates of occupancy had been issued for all of the units and, consequently, the Cancellation Fee under each Buyback became due shortly thereafter. However, as of the petition date, the Debtor had not paid the Cancellation Fee to any of the Claimants. Schiller further asserts that the Debtor has not refunded their deposit. (Decl. ¶ 23.) On March 29, 2011, Schiller filed a proof of claim for $1,700,000.00 and Scollar filed a proof of claim for $502,296.85. On April 1, 2011, Melrose filed a proof of claim for $802,860.66. All of the Claimants' proofs of claim were based on their respective Buyback, which the Claimants attached to their proofs of claim.

## DISCUSSION

The Plan Administrator objects to these three claims on the basis that they represent amounts due under a liquidated damages clause that is unenforceable as a penalty. The Claimants argue that they were entitled to specify the amount of damages due in the event of a breach. The Claimants further argue that they entered into the contracts for the purchase of the condominium units at a time when the risk to them was particularly high and their damages could have exceed millions of dollars. (Decl. ¶¶ 19, 20.)

"The burden of proof for claims brought in the bankruptcy court ... rests on different parties at different times." *Payne v. Lampe (In re Lampe)*, 665 F.3d 506, 514 (3d Cir. 2011) (quoting *In re Allegheny Int'l*, 954 F.2d 167, 173 (3d Cir. 1992)). In filing the proof of claim, a claimant must allege sufficient facts to support the claim. *Allegheny*, 954 F.2d at 173. Additionally, a claim based on a writing must include a copy of the writing with the proof of claim. Fed. R. Bankr. P. 3001(c)(1). A properly filed proof of claim is "prima facie evidence of the validity and amount of the claim." Fed.

R. Bankr. P. 3001(f).

A proof of claim "is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Upon the filing of an objection to a claim, "the court, after notice and a hearing, shall determine the amount of such claim... as of the date of the filing of the petition, and shall allow such claim in such amount...." 11 U.S.C. § 502(b). Thus, the burden shifts to the objector to provide evidence that refutes an element essential to the claim's legal sufficiency. *Allegheny*, 954 F.2d at 173-4. Although the burden shifts to the objector to provide evidence to negate the claim's prima facie validity, the claimant always bears "the burden of persuasion in a contested proceeding." *Lampe*, 665 F.3d at 514 (citing *Allegheny*, 954 F.2d at 174).

New York law[2] allows parties to provide for payment of liquidated damages in the event of a breach of contract so long as it is not unconscionable or contrary to public policy. *Evangelista v. Ward*, 308 A.D.2d 504, 505, 764 N.Y.S.2d 705, 706 (2003). The reasonableness of the damages is calculated as of the time of the contract's creation, not the time of the breach. *Rattigan v. Commodore Int'l Ltd.*, 739 F.Supp. 167, 169 (S.D.N.Y. 1990). The party seeking to avoid payment of the damages bears the burden of proving the liquidated damage clause is a penalty. *Id.* at 170.

A liquidated damages provision is appropriate if it reflects "a reasonable measure of the probable actual loss in the event of a breach, and … the actual loss suffered is difficult to determine precisely." *Irving Tire Co. v. Stage II Apparel Corp.*, 230 A.D.2d 772, 773-774 (1996). On the other hand, where "the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced." *Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 425, 393 N.Y.S.2d 365, 369, 361 N.E.2d 1015, 1018 (1977). "A clause setting damages much higher than the estimated actual loss does not provide fair compensation, but

---

[2] Both the purchase agreements and the Buybacks provide that New York law applies to any disputes.

secures 'performance by the compulsion of the very disproportion.'" *Rattigan,* 739 F.Supp. at 169 (quoting *Truck Rent-A-Center,* 41 N.Y.2d 420, 393 N.Y.S.2d at 361 N.E.2d at 1018).

Where the damages clause "is intended by the parties to operate in lieu of performance, it will be deemed a liquidated damages clause and may be enforced by the courts…. If such clause is intended to operate as a means to compel performance, it will be deemed a penalty and will not be enforced." *Rattigan,* 739 F.Supp. at 169 (quoting *Brecher v. Laikin*, 430 F.Supp. 103, 106 (S.D.N.Y. 1977)). It is the court's duty to determine the reasonableness of a liquidated damages clause, which may vary under the circumstances. *MarketXT Holdings Corp. v. Empyrean Inv. Fund (In re MarketXT Holdings Corp.)*, 376 B.R. 390, 416 (Bankr. S.D.N.Y. 2007).

At first glance and in the absence of facts, the amount of the Cancellation Fee is indicative of a penalty for delayed payment. The numbers are very large. Stepping back, however, and viewing the totality of the circumstances, the Court concludes that the Cancellation Fees are not penalties but, instead, appropriate, negotiated liquidated damages. The Court's reasoning is based on the facts.

- The Claimants entered into the Purchase Agreements at significant risk and as an investment. When they agreed to purchase units, construction had not yet begun. The Claimants' purchases assisted the Debtor which needed purchase agreements to obtain financing.

- The Debtor requested the Buybacks.

- The Buybacks limited the return on the Claimants' Investments.

- The Claimants agreed to the Buybacks - which benefitted Debtor - in reliance on receiving the Cancellation Fees.

- The parties who negotiated the Buybacks were sophisticated investors and were represented by their attorneys.[3]

---

[3] Several cases place significance on the sophistication of the parties, legal representation and equal bargaining power. *See*, *e.g.*, *United Merchs. and Mfrs., Inc. v. The Equitable Life Assurance Society of the United States (In re United Merchs. And Mfrs., Inc.)*, 674 F.2d 134 (2d Cir. 1982) (holding liquidated damages provision negotiated by sophisticated parties was valid under New York law); *Bigda v. Fishbach Corp.*, 849 F.Supp. 895, 902 (S.D.N.Y. 1994) ("Relevant here is whether the parties were sophisticated and represented by counsel..."); *In re Vanderveer Estates*

In attaching the Buybacks to the proofs of claim, the Claimants have clearly provided the Court with sufficient facts to support their claims thereby establishing *prima facie* validity. In contrast, the Plan Administrator produces little to no evidence to negate *prima facie* validity. Accordingly, the Court overrules the Objection as it relates to the Claimants and will allow the claims in the amounts of the liquidated damages provided in the Buybacks (without interest). The Court will issue an appropriate Order.

Dated: December 9, 2013

                                                          KEVIN GROSS, U.S.B.J.

---

*Holdings, Inc.*, 283 B.R. 122 (Bankr. E.D.N.Y. 2002) (holding a liquidated damages provision resulting from arm's-length negotiations between sophisticated parties was enforceable under New York law).